UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

SHARON LEWIS,                                        CIVIL ACTION
        Plaintiff

VERSUS                                               NO. 21-198-SM-RLB

LOUISIANA STATE UNIVERSITY, ET AL.,
        Defendants

PLAINTIFF'S RICO CASE STATEMENT

Pursuant to this Court's RICO Order, plaintiff provides the following information in support of her RICO claims. Plaintiff reserves the right to amend this Statement and/or supplement assertions stated herein after the benefit of discovery.

Responses

1.      The alleged conduct that is claimed to be in violation of 18 U.S.C. 1962 (a), (b), (c ) and/or (d)

Plaintiff asserts claims for violations of U.S.C. Sec. 1962 (c) and (d). The individual RICO Defendants and Enterprise Actors named herein formed an associate in fact enterprise with the intent to and purpose of concealing report of complaints of sexual harassment and criminal conduct from Title IX investigations, Title IX related oversight,  local law enforcement and state public records oversight. The association in fact enterprise targeted and retaliated against plaintiff for repeatedly reporting Title IX violations and/or complaints with vicious intent to damage her business and property interest in her employment.

For over eight (8) years, this enterprise carried out numerous and repeated acts that furthered the conspiracy, many of which qualify as predicate acts under the Civil RICO statute, giving rise to RICO liability under 18 U.S.C. 1962 (c ) and (d ). The specific conduct and

1

predicate acts carried out by the RICO Defendants and Enterprise Actors are set forth below in greater detail in their applicable sections pursuant to the Court's RICO Case Order.

## 2. List each defendant and state the alleged misconduct and basis of liability of each defendant

Defendant Garrett "Hank" Danos (Danos) sued in his individual capacity.  He was at all times acting within and outside of his authority as a member of LSU's Board of Supervisors and/or authority under color of law.  Danos participated in, directed and facilitated the scheme to conceal sexual harassment and criminal complaints from the reporting requirements of Title IX, to circumvent compliance with Title IX while receiving federal funds and avoided local law enforcement. Danos participated in, directed and facilitated the scheme to conceal the sexual harassment investigation of Les Miles from the reporting requirements of Title IX and from local law enforcement.  Defendant Danos' racketeering conduct directly and proximately damaged plaintiff's  business and property interest in her employment.

Defendant Robert "Bobby" Yarborough (Yarbrough) sued in his individual capacity.  He was at all times acting within and outside of his authority as a member of LSU's Board of Supervisors and/or authority under color of law.  Yarborough participated in, directed and facilitated the scheme to conceal  sexual harassment and criminal complaints from the reporting requirements of Title IX, to circumvent compliance with Title IX while receiving federal funds and avoided local law enforcement. Further, Yarborough participated in, directed and facilitated the scheme to conceal the sexual harassment investigation of Les Miles from the reporting requirements of Title IX and from local law enforcement. Defendant Yarborough's racketeering conduct directly and proximately damaged plaintiff's business and property interest in her employment.

Defendant James Williams (Williams) sued in his individual capacity. He was at all times acting within and outside of his authority as a member of LSU's Board of Supervisors and/or authority under color of law. Williams participated in, directed and facilitated the scheme to conceal sexual harassment and criminal complaints from the reporting requirements of Title IX, to circumvent compliance with Title IX while receiving federal funds and avoided local law enforcement. Further, Williams participated in and directed the scheme to control LSU's Athletic Department by directing F. King Alexander to fire Joe Alleva and hire Scott Woodward including the amount of Woodward's salary. Williams directed F. King Alexander to promote "his boy" Verge Ausberry including the amount of his salary. Defendant Williams' racketeering conduct directly and proximately damaged plaintiff's business and property interest in her employment.

Defendant Mary Leach Werner (Werner) sued in her individual capacity. She was at all times acting within and outside of her authority as a member of the LSU's Board of Supervisors and/or authority under color of law. Werner participated in, directed and facilitated the scheme to conceal sexual harassment and criminal complaints from the reporting requirements of Title IX, to circumvent compliance with Title IX while receiving federal funds and avoided local law enforcement. Further, Werner participated in and directed the scheme to control LSU's Athletic Department by directing F. King Alexander to fire Joe Alleva and hire Scott Woodward including the amount of Woodward's salary. Werner directed F. King Alexander to promote Verge Ausberry including the amount of his salary. Defendant Werner's racketeering conduct directly and proximately damaged plaintiff business and property interest in her employment.

Defendant William Jenkins (Jenkins) sued in his individual capacity. He was at all times acting within and outside the scope of his employment and/or authority under the color of law. Jenkins participated in, directed and facilitated the scheme to conceal sexual harassment and

criminal complaints from the reporting requirements of Title IX, to circumvent compliance with Title IX while receiving federal funds and avoided local law enforcement. Further, Jenkins participated in, directed and facilitated the scheme to conceal the sexual harassment investigation of Les Miles from the reporting requirements of Title IX and from local law enforcement. Jenkins participated in, directed and facilitated the scheme to bribe a student to drop her sexual harassment and sexual battery complaint against Miles. Jenkins participated in, directed and facilitated the scheme to file fraudulent Title IX Reports to the Department of Education (DOE) with material omissions. Defendant Jenkins' racketeering conduct directly and proximately damaged plaintiff 's business and property interest in her employment.

Defendant F. King Alexander (Alexander) sued in his individual capacity. He was at all times acting within and outside  the scope of his employment and/or authority under the color of law. Alexander participated in, directed and facilitated the scheme to conceal  sexual harassment and criminal complaints from the reporting requirements of Title IX, to circumvent compliance with Title IX while receiving federal funds and avoided local law enforcement. Further, Alexander participated in, directed and facilitated the scheme to conceal the sexual harassment investigation of Les Miles from the reporting requirements of Title IX and from local law enforcement. Alexander participated in, directed and facilitated the scheme to file fraudulent Title IX Reports to the Department of Education (DOE) with material omissions. Alexander participated in and directed the scheme to control LSU's Athletic Department by conspiring with William and Werner to fire Joe Alleva and hire Scott Woodward and  promote Verge Ausberry. Defendant Alexander's racketeering conduct directly and proximately damaged plaintiff's  business and property interest in her employment.

Defendant Joe Alleva (Alleva)  sued in his individual capacity. He was at all times acting

within and outside the scope of his employment and/or authority under the color of law. Alleva participated in, directed and facilitated the scheme to conceal sexual harassment and criminal complaints from the reporting requirements of Title IX, to circumvent compliance with Title IX while receiving federal funds and avoided local law enforcement. Further, Alleva participated in, directed and facilitated the scheme to conceal the sexual harassment investigation of Les Miles from the reporting requirements of Title IX and from local law enforcement. Defendant Alleva's racketeering conduct directly and proximately damaged plaintiff's business and property interest in her employment.

Defendant Scott Woodward (Woodward) sued in his individual capacity. He was at all times acting within and outside the scope of his employment and/or authority under the color of law. Woodward participated in, directed and facilitated the scheme to conceal sexual harassment and criminal complaints from the reporting requirements of Title IX, to circumvent compliance with Title IX while receiving federal funds and avoided local law enforcement. Further, Woodward participated in, directed and facilitated the scheme of the enterprise to control the LSU Athletic Department. Defendant Woodward's racketeering conduct directly and proximately damaged plaintiff business and property interest in her employment.

Defendant Miriam Segar (Segar) sued in her individual capacity. She was at all times acting within and outside the scope of her employment and/or authority under the color of law. Segar participated in, directed and facilitated the scheme to conceal sexual harassment and criminal complaints from the reporting requirements of Title IX, to circumvent compliance with Title IX while receiving federal funds and avoided local law enforcement. Further, Segar participated in, directed and facilitated the scheme to conceal the sexual harassment investigation of Les Miles from the reporting requirements of Title IX and from local law enforcement. Further,

Segar participated in, directed and facilitated the scheme to pressure a professor to change the grade of a student in order to bribe her into dropping her compliant. Segar participated in, directed and facilitated the scheme to initiate a fraudulent PM-73 Investigation (Title IX) against plaintiff to damage plaintiff's employment for reporting Title IX violations. Segar was suspended by LSU for concealing Title IX complaints in the Athletic Department. Defendant Segar's racketeering conduct directly and proximately damaged plaintiff's business and property interest in her employment.

Defendant Verge Ausberry (Ausberry) sued in his individual capacity. He was at all times acting within and outside the scope of her employment and/or authority under the color of law. Ausberry participated in, directed and facilitated the scheme to conceal sexual harassment and criminal complaints from the reporting requirements of Title IX, to circumvent compliance with Title IX while receiving federal funds and avoided local law enforcement. Further, Ausberry participated in, directed and facilitated the scheme to initiate a fraudulent PM-73 Investigation (Title IX) against plaintiff to damage plaintiff's employment for reporting Title IX violations. Ausberry repeatedly retaliated against plaintiff for bringing Title IX complaints by harassment, refusing to promote her, refusing to grant her pay raises and damaging her professional reputation. Ausberry was suspended by LSU for concealing Title IX complaints in the Athletic Department. Defendant Ausberry's racketeering conduct directly and proximately damaged plaintiff's business and property interest in her employment.

Defendant Shelby McKenzie (McKenzie) sued in his individual capacity. McKenzie at various material times served as General Counsel for LSU, while a partner at Taylor Porter. He was at all times acting within and outside the scope of his employment and/or authority under the color of law. McKenzie participated in, directed and facilitated the scheme to conceal sexual

harassment and criminal complaints from the reporting requirements of Title IX, to circumvent compliance with Title IX while receiving federal funds and avoided local law enforcement. Further, McKenzie participated in, directed and facilitated the scheme to conceal the sexual harassment investigation of Les Miles from the reporting requirements of Title IX and from local law enforcement including the scheme to bribe a student to drop her sexual harassment and sexual battery complaint against Miles. Taylor Porter's Billing Records show  McKenzie was a senior manager of the criminal enterprise.[1] Defendant McKenzie's racketeering conduct directly and proximately damaged plaintiff's  business and property interest in her employment.

Defendant Vicki Crochet (Crochet)  sued in her individual capacity. Crochet was at all times acting within and outside  the scope of her legal representation and/or  authority under the color of law. Crochet participated in, directed and facilitated the scheme to conceal  sexual harassment and criminal complaints from the reporting requirements of Title IX, to circumvent compliance with Title IX while receiving federal funds and avoided local law enforcement. Further, Crochet participated in, directed and facilitated the scheme to conceal the sexual harassment investigation of Les Miles from the reporting requirements of Title IX and from local law enforcement.  Crochet participated in, directed and facilitated the scheme  to bribe the student who filed a sexual harassment complaint against Miles,  including pressuring a professor to change the grade of the student in order to bribe the student into dropping her complaint. Taylor Porter's Billing Records show Crochet was a senior  manager in the enterprise.[2]  Defendant Crochet's racketeering conduct directly and proximately damaged plaintiff's  business and property interest in her employment.

---

[1] Exhibit 3 First Amended Complaint
[2] Id.

Defendant Robert Barton (Barton) sued in his individual capacity. Barton was at all times acting within and outside the scope of his legal representation and/or authority under the color of law. Barton participated in, directed and facilitated the scheme to conceal sexual harassment and criminal complaints from the reporting requirements of Title IX, to circumvent compliance with Title IX while receiving federal funds and avoided local law enforcement. Further, Barton participated in, directed and facilitated the scheme to conceal the sexual harassment investigation of Les Miles from the reporting requirements of Title IX and from local law enforcement. Barton participated in, directed and facilitated the scheme to bribe the student who filed a sexual harassment complaint against Miles to drop the complaint. Taylor Porter's Billing Records show Barton was a senior manager in the enterprise.[3] Defendant Barton's racketeering conduct directly and proximately damaged plaintiff's business and property interest in her employment.

Defendant Board of Supervisors (BOS) is a public corporation and governing authority of the LSU University System. The BOS was at all times acting within and outside of its governing authority and/or the under color of law. Taylor Porter's Billing Records show multiple wire and mail communications updating the BOS on the scheme to conceal the Miles Investigation and bribe a student to drop her complaint against Miles.[4] BOS participated in, directed and facilitated the scheme to conceal sexual harassment and criminal complaints from the reporting requirements of Title IX, to circumvent compliance with Title IX while receiving federal funds and avoided local law enforcement. Further, BOS participated in, directed and facilitated in submitting reports to the Department of Education (DOE) with material omissions of Title IX complaints. BOS participated in, directed and facilitated the scheme to control LSU's Athletic Department in

---

[3] Id.

[4] Id

violation of its by-laws, NCAA Guidelines and accreditation rules. Within weeks after Williams and Werner directed Alexander to fire Alleva and hire Woodward, the BOS approved the hire without undertaking a national search.  In 2021 the BOS, despite having been fully aware of the scheme to conceal the Les Miles acts of sexual misconduct in 2013,  otherwise acted in furtherance of the scheme and directed Taylor Porter to file legal action in the 19th JDC to fight the release of the  Miles Report from a public document request by *USA Today*. It knew or should have known of the fraudulent PM-73 investigations against plaintiff in order to damage her employment for reporting Title IX complaints. Defendant Board of Supervisors' racketeering conduct directly and proximately damaged plaintiff's  business and property interest in her employment.

### 3.  List the alleged wrongdoers, other than the defendants listed above, and state the misconduct of each wrongdoer.

Robert Dampf (Dampf) at various material relevant herein, served as Chairman of the Board of Supervisors and Chairman of the Athletic Committee and in such capacity conducted or participated in the conduct of the enterprise's affairs. Dampf was at the April 2019 meeting with Williams, Werner and F. King Alexander and participated in and directed  Alexander to fire Joe Alleva and hire Scott Woodward and promote Verge Ausberry. Dampf appeared before the Louisiana Legislative Women's Caucus and under oath knowingly made material omissions  in his testimony. Dampf's racketeering conduct directly and  proximately damaged plaintiff's business and property interest in her employment.

Remy Voisin Starns (Starns)  at various material times served as a member  of the Board of Supervisors and Chairman of the Athletic Committee and in such capacity conducted or participated in the conduct of the enterprise's affairs. Starns was at the April 2019 meeting with Williams, Werner and F. King Alexander in which they  directed  Alexander to fire Joe Alleva and

hire Scott Woodward and promote Verge Ausberry. The April 2019 BOS's minutes show Starns made the motion to hire Woodward. Starns' racketeering conduct directly and proximately damaged plaintiff's business and property interest in her employment.

Jeffrey Scott (Scott) at various material times served as Title IX Investigator and initiated a fraudulent PM-73 (Title IX) investigation against plaintiff. Scott issued a fraudulent finding that plaintiff failed to report a Title IX complaint. Scott purposely did not interview material witnesses and his report included material omissions that Miriam Segar had been designated as the person all Title IX complaints in the Athletic Department were to be directed and that plaintiff had directly reported the Title IX complaint to Segar. Scott's racketeering conduct directly and proximately damaged plaintiff's business and property interest in her employment.

Peter Ginsburg (Ginsburg) at various material times was the attorney for Les Miles and helped facilitate an exchange of money to bribe the student who filed a sexual harassment complaint reported against Miles. Ginsburg agreed to conceal the Miles Report in his New York office to shield the report from public documents. Ginsburg's racketeering conduct directly and proximately damaged plaintiff's business and property interest in her employment.

Bobby Jindal (Jindal) who at various material times was the Governor of the State of Louisiana and appointed the Board Of Supervisors. The public record shows Miles was a close political ally of Jindal and Jindal intervened to save his job in 2015. Plaintiff alleges through discovery she will show Jindal was aware of or should have been aware Miles had been accused of sexual misconduct and the scheme to conceal Miles' sexual conduct and other Title IX complaints would not have moved forward without his approval. Jindal's racketeering conduct directly and proximately damaged plaintiff's business and property interest in her employment.

Tiger Athletic Foundation (TAF), a non-profit who at various material times was the main

financial benefactor of the LSU Athletic Department. TAF poured tens of millions of dollars into supporting LSU's Athletic Department. Plaintiff through discovery will show TAF helped facilitate the exchange of money between Miles and a student in order to bribe her into dropping her complaint against Miles. Plaintiff through discovery will show TAF orchestrated the firing of Alleva and the hiring of Woodward and promotion of Ausberry in order to maintain control of the LSU Athletic Department. TAF holds so much power within LSU none of the schemes alleged in plaintiff's complaint would have taken place without their knowledge and support. TAF's racketeering conduct directly and proximately damaged plaintiff's business and property interest in her employment.

Taylor Porter's Billing Records repeatedly show emails and telephone conferences with **LSU Contacts** updating them on the scheme to conceal the Miles Investigation and to bribe a student into dropping her complaint against Miles. Plaintiff through discovery will show powerful government officials and boosters participated in and facilitated the pattern of racketeering outlined in plaintiff's First Amended Complaint. LSU Contacts' racketeering conduct directly and proximately damaged plaintiff's business and property interest in her employment.

**4**. **List the alleged victims and state how each victim allegedly was injured.**

Plaintiff was subjected to threats, harassment and intimidation to obstruct, delay, hinder or prevent her from reporting Title IX complaints against coaches and athletes. Plaintiff was denied promotions, pay increases, damage to her professional reputation, subjected to fraudulent disciplinary actions, subjected to lawsuits and as a result her employment was damaged. Plaintiff as well as students, faculty and staff were harmed by the toxic campus culture created through acts of the defendants, all of which were designed to protect the fraudulent schemes attributable to RICO violations by the RICO defendants set forth in plaintiff's First Amended Complaint.

**5. Describe in detail the pattern of racketeering activity.**

A.  Alleged Predicate Acts

18  U.S.C. § 1341 (relating to mail fraud);

18  U.S.C. § 1343 (relating to wire fraud);

18  U.S.C. § 1510 (relating to obstruction of criminal investigation);

18  U.S.C. § 1512 (relating to tampering with a witness, victim or an informant);

18  U.S.C. § 1513 (relating to retaliating against a witness, victim or an informant);

18  U.S.C. § 1951 (relating to interference with commerce, robbery or extortion); and

18 U.S. C. § 1952 (relating to interstate travel in aid of racketeering)

B. Dates, Participants in, and Description of the Predicate Acts.

i. 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud).

The circumstances constituting mail fraud and wire fraud "stated with particularity" are

set forth in detail in Exhibit 1 attached to Case Statement.

ii.  18  U.S.C.  §  1510  (relating  to  obstruction  of  criminal  investigation)

**Les Miles**

a.  Dates: March 15, 2013 to present

b.  Participants:  Garrett "Hank" Danos, Robert "Bobby" Yarborough, Stanley Jacobs, Shelby McKenzie, Joe Alleva; Miriam Segar,  Vicki Crochet,  Robert Barton, William Jenkins, Les Miles,   F. King Alexander, and Board Of Supervisors.

**c.**  Facts:   The  facts  surrounding  the  obstruction  of  a  criminal  investigation

predicate acts are detailed in ¶¶ 130 through 146 First Amended Complaint, and the Husch Blackwell Report Exhibit 1 of the First Amended Complaint, which is incorporated herein by reference. In summary the Defendants through their associate-in-fact enterprise: Agreed to conduct a fraudulent investigation of the sexual misconduct complaints against Les Miles and to conceal the investigation from LSU Campus Police or local law enforcement.

**Derrius Guice**

a.  Dates:  January 26, 2016 to present

b.  Participants:  Miriam Segar, Joe Alleva, Scott Woodward, F. King Alexander, Verge Ausberry, Board of Supervisors

c.  Facts: The facts surrounding the obstruction of a criminal investigation predicate acts are detailed in the Husch Blackwell Report Exhibit 1 attached to First Amended Complaint page 92 through 101, which is incorporated herein by reference. In summary the Defendants through their associate in fact enterprise: Concealed the criminal complaints against Guice by three (3) women from campus police and local law enforcement. Segar was made aware of the first complaint on January 26, 2016. Two additional students filed complaints on Guice. He played his final game for LSU on January 1, 2018, after a 70 year old Superdome employee complained to the head coach Guice sexually harassed her.

**Drake Davis**

a.  Dates: Summer of 2016  to present

b.  Participants:  Miriam Segar, Joe Alleva, Scott Woodward, F. King

13

Alexander, Verge Ausberry, F. King Alexander, and Board of Supervisors

c. Facts: The facts surrounding the obstruction of a criminal investigation predicate acts are detailed in the Husch Blackwell Report Exhibit 1 attached to First Amended Complaint page 54 through 59, which is incorporated herein by reference. In summary the Defendants through their associate in fact enterprise: Concealed the criminal complaint of domestic abuse against Davis.

In each of these three (3) incidents, plaintiff reported students complaints to her superiors and the associate in fact enterprise retaliated against her, damaging her employment.

iii. 18 U.S.C. § 1512 (relating to tampering with a witness, victim or an informant)

a. Dates: March 15, 2013 to present

b. Participants: Garrett "Hank" Danos, Robert "Bobby" Yarborough, Stanley Jacobs, Joe Alleva, Scott Woodward, Les Miles, Miriam Segar, Vicki Crochet, Robert Barton, William Jenkins, and F. King Alexander and Shelby McKenzie

c. Facts: The facts surrounding tampering with a witness, victim or informant predicate acts are detailed in ¶¶ 142 through 146 of the First Amended Complaint, which is incorporated herein by reference. In summary the Defendants through their associate-in-fact enterprise: Facilitated the exchange of money between Miles and the student who accused Miles of sexual misconduct, to bribe her into dropping her complaint against Miles. Segar and Crochet pressured a professor to change the grade of a student as a condition for her dropping her

complaint. Barton and Crochet met in New Orleans with Ginsburg, the student's father and attorney  to facilitate the exchange of money in order to bribe the student into dropping her complaint against Miles.

iv.  18 U.S.C. § 1513 (relating to retaliating against a witness, victim or an informant)

   a.  Dates: March 15, 2013 to present

   b.  Participants:  William Jenkins, F. King Alexander, Scott Woodward,  Joe Alleva, Les Miles, Miriam Segar, Verge Ausberry, Scott Woodward, Vicki Crochet and Bob Barton, and Board of Supervisors

   c. Facts:  The facts surrounding  retaliation against a witness, victim or an informant predicate acts are detailed in ¶¶ 33 through 185 of the First Amended Complaint, which is incorporated  herein by reference. In summary the Defendants through their associate-in-fact enterprise: Subjected plaintiff to threats, harassment and intimidation to obstruct, delay, hinder or prevent her from reporting Title IX complaints against coaches and athletes and as a result damaged her employment.[5]

v.  18 U.S.C. § 1951 (relating to interference with commerce, robbery or extortion)

   a. Dates: March 15, 2013 to present

   b. Participants: Garrett "Hank" Danos; Robert "Bobby" Yarborough, Stanley Jacobs, Les Miles, Scott Woodward, Joe Alleva,  Miriam Segar

---

[5] For a detailed and impartial analysis to the fraudulent PM-73 investigation against plaintiff see the Husch Blackwell Report page 59 through 66 attached as Exhibit 1 to First Amended Complaint.

Verge Ausberry, William Jenkins, F. King Alexander, James Williams, Mary Leach Werner, Board of Supervisors, Robert Barton, Vicki Crochet, and Shelby McKenzie

c. Facts: The facts surrounding the interference with commerce predicate acts are detailed in ¶¶ 128 through 185 Amended Complaint, which is incorporated herein by reference. In summary the Defendants through their associate-in-fact enterprise: Shielded star football players and coaches from Title IX and criminal investigations to ensure LSU's best players were available to play games. This undermined the competitive balance with other Top 5 Power rivals and allowed LSU to consistently compete for NCAA National Championships garnering millions of dollars in revenue and interfering with interstate commerce. Defendants used mail and wire and fraud extensively to further the criminal enterprise as detailed in Exhibit 1 attached to this RICO Case Statement.

vi. 18 U.S.C. § 1952 (relating to interstate travel in aid of racketeering);
   a. Dates: March 15, 2013 to present

   b. Participants: Garrett "Hank" Danos, Robert "Bobby" Yarborough, Stanley Jacobs, Les Miles, Scott Woodward, Joe Alleva, Miriam Segar Verge Ausberry, William Jenkins, F. King Alexander, James Williams, Mary Leach Werner, Board of Supervisors, Robert Barton, Vicki Crochet, Shelby McKenzie

c. Facts:  The facts surrounding the  interference with interstate travel predicate acts are detailed in ¶ 145 of the First Amended Complaint, which is incorporated  herein by reference. In summary the Defendants through their associate-in-fact enterprise: Les Miles' lawyers and a student's family and attorneys travelled  from out of  state to New Orleans to facilitate the exchange of money for the student to drop her complaint of sexual misconduct against Miles. Through discovery plaintiff will show Coaches and players whose conduct would have warranted termination and /or suspension for violating Title IX and criminal statutes travelled across the country to play games in a pattern  of racketeering interfering with interstate commerce.

C. Not Applicable.

D.   Describe whether the alleged predicate acts relate to the enterprise as part of a common plan.

The predicate acts are related to one another and to the enterprise as part of a common plan. The continuing frauds were committed through the enterprise as part of the same overarching scheme to avoid compliance with Title IX requirements and  concealed Title IX complaints and criminal acts by coaches and athletes from DOE and local law enforcement and to damage plaintiff's employment for repeatedly reporting said offenses. The ultimate goal of the RICO defendants was to gain a competitive advantage  over rival NCCA schools, maintain and bolster LSU Football teams' profitability and damage plaintiff's employment.

**6.  Describe in detail the alleged enterprise  for each RICO Claim.**

The individual enterprise Defendants acted as an enterprise within the meaning of 18 U.S.C.  1961 (4) which defines  "enterprise" as any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact and although not a legal entity.

a. See section 2-5 herein setting forth the individual RICO  defendants jointly formed  an association in fact enterprise.

b. The individual RICO defendants here are Board of Supervisor members, employees and private legal counsel of Louisiana State University. Together, and through their various roles, formed an association in fact enterprise. The enterprise consisting of individual RICO defendants named herein and the enterprise actors set for in Section 3, used their authority and power to develop and carry out a scheme  to conceal Title IX and criminal complaints filed against coaches and football players and control the LSU Athletic program to gain a competitive advantage among rival NCAA schools, garner millions of dollars in revenues and to damage plaintiff's employment.

c.  The association in fact enterprise  described herein  did not employ any of the individual RICO  defendants.

d.   The individual RICO defendants here are Board of Supervisor members, employees and legal counsel of Louisiana State University.   All of the RICO defendants  acted outside of the scope of their duties as LSU Officials  and /or employees and legal counsel and formed  an association in fact enterprise. The individual defendants' roles and authority conferred on them through their positions with LSU allowed them to advance the scheme

to conceal Title IX  complaints, criminal complaints and avoid Title IX compliance filed against coaches and football players and control the LSU Athletic program to gain a competitive advantage among rival NCAA schools, garner millions of dollars in revenue and to damage plaintiff's employment.

f.  The RICO defendants are separate and distinct from the association in fact enterprise they formed. Their roles originate from different positions, employers and areas of expertise.

**7. State whether you allege and describe in detail how the pattern of racketeering activity and the enterprise are separate or have merged into one entity.**

The Board of Supervisors, employees of LSU and Taylor Porter Defendants have an ascertainable structure separate and apart from the pattern of racketeering activity of the separate and distinct enterprise described here in. The individual defendants named herein that govern LSU, employees of LSU and retained legal counsel formed an alliance and created an enterprise that engaged in racketeering activity set forth in the applicable section herein

**8.  The alleged relationship between the activities of the enterprise and the pattern of racketeering activity including a description of the manner in which the racketeering activities differs, if at all, from the usual and daily activities of its employees.**

The Defendants named herein formed an association in fact enterprise that executed a plan to conceal Title IX and criminal complaints filed against coaches and football players and control the LSU Athletic program to gain a competitive advantage among rival NCAA schools and garner millions of dollars in revenue. These individuals and The Board of Supervisors that made up the enterprise had separate and distinct  roles from the enterprise itself.

**9. <u>The benefits, if any, the alleged enterprise received from the alleged pattern of</u>**

**racketeering.**

LSU's football program is one of the largest economic engines in Louisiana. Control of the program gave the RICO defendants tremendous power over concession contracts, tickets and unrivaled political influence in the state of Louisiana. See ¶¶ 165 through 166 First Amended Complaint. This generated millions of dollars in salary, bonuses and legal fees for RICO Defendants.

**10. The effect of the activities of the enterprise on interstate or foreign commerce.**

The enterprise's activties set forth herein involved interstate or foreign commerce through the use of Wire and U.S. Mail that are channels of interstate commerce. LSU Football is a member of the South Eastern Conference, which is a Power Five (5) Football Conference and the undermining of competitive balance impacted interstate commerce. Moreover, the enterprise actors as set forth herein involved members from outside of Louisiana and thus amounted to conduct that qualifies as interstate commerce.

**11. If the complaint alleges a violation of 18 U.S. C. Section 1962 (a ), provide the following information**

This complaint does not involve a claim that arises from a violation of 18 U.S.C. Section 1962 ( a )

**12. If the complaint alleges a violation of 18 U.S. C. Section 1962 (b ), provide the following information**

This complaint does not involve a claim that arises from a violation of 18 U.S.C. Section 1962 ( b )

**13. If the complaint alleges a violation of 18 U.S. C. Section 1962 (c ), provide the following information**

    a.  The individuals who are employed or associated with the enterprise

      See response to Section 6 (a)

    b.  Whether the same entity is both the liable  "person" and the "enterprise under

      Section 1962 (c )

      The association in fact enterprise set forth herein consists of numerous individuals who are not a part of a common entity, employer or corporation. Therefore, the liable individuals who formed the enterprise are not both the liable person and the enterprise under 1962 (c).

**14. If the complaint alleges a violation of 18 U.S. C. Section 1962 (d ), describe in detail the alleged conspiracy.**

      Sections 2-5 are incorporated herein by reference. As set forth in Sections 2-5, the RICO Defendants agreed and conspired to participate in the conduct of the affairs of the enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. 1962 (d ).

**15.  Describe the alleged injury to plaintiff's business or property**

      The injuries to plaintiff's  business and property include, inter alia, interference with her right to earn a living, fraudulent disciplinary proceedings, damage to her professional reputation, loss of promotion opportunities, loss of benefits,  exposure from lawsuits and damage to her employment as a result of the activities of the RICO  Defendants.

**16.  Description of the relationship between the alleged injury and violation of the RICO statute**

The alleged injury to plaintiff's business and property outlined in Sections 2-5 and Item 15 are directly related to, and proximately caused by, the predicate acts constituting the pattern of racketeering activity of the RICO Defendants.

**17. List the damages sustained by reason of the violation of Section 1962 indicating the amount for which each defendant is allegedly liable.**

The individual RICO Defendants are liable for the following damages:

| | |
|---|---|
| Interference with plaintiff's right to earn a living including fraudulent disciplinary proceedings | $1,000,000 |
| Interference with plaintiff's employment and damage to her professional reputation | $1,500,000 |
| Exposure to losses from lawsuits from activities of RICO Defendants | $1,000,000 |
| Loss of salary and bonuses | $1,000,000 |

Although plaintiff does not name LSU and Taylor Porter as liable RICO defendant persons, plaintiff argues in ¶ 190 First Amended Complaint that vicarious liability should be imposed on both.

**18. List all other federal cause of actions, if any, and provide the relevant statute numbers**

a. Title IX of the Education Amendments of 1972, 20 U.S.C § 1681

b. 42 U.S.C. §§1981 and 1982.

**19. List all pendant state claims, if any**

There are no pendant state claims in the complaint.

20. **Provide any additional information that may be helpful to the Court in processing the RICO clam**

Plaintiff  believes and wish to emphasize the significant volume of highly relevant evidence supporting the claims herein  attached as exhibits to plaintiff's  First Amended Complaint. Exhibit 1, the Husch Blackwell Report documents  the enterprise's continued scheme to conceal Title IX Investigations into 2021 and documents with specificity the fraudulent PM-73 Investigation that damaged plaintiff's employment and professional reputation; Exhibit 2, the May 15, 2013 Taylor Porter Memorandum To File memorializes the individual RICO Defendants agreeing to form the associate in fact enterprise; and  Exhibit 3, the Taylor Porter Billing records show in real-time the execution of a pattern of racketeering to achieve the enterprise's goals and document multiple predicate acts of wire and mail fraud, as well as time and dates of individual RICO defendants meeting to carry out the schemes of racketeering.

Plaintiff believes and wish to emphasize the significant volume of highly relevant evidence  supporting the claims herein will be obtained through discovery. Plaintiff reserves her right to supplement this form as this information comes to light so as to provide the Court with these additional facts. For example Taylor Porter's unredacted billing records and actual emails and correspondence referenced therein,  will likely further reinforce every fact and allegation contained herein and there are presently two federal investigations into this matter that are pending and have yet to disclose their findings or report.

Plaintiff believes and wish to emphasize the significant volume of highly relevant evidence  that is in the public record, as many of the individual defendants named herein have been fired, suspended and/or been reprimanded for the horrific set of events that created a toxic college campus that harmed plaintiff, students, employees and faculty. Individual RICO Defendants have

been quoted in local and national media outlets pointing the finger at other individual RICO defendants in order to absolve themselves from public blame. Numerous LSU officials have appeared under oath in the Louisiana Legislative Women's Caucus Hearings and acknowledge much of the facts in plaintiff's complaint.

Respectfully submitted:

*/s/ Larry English*
Larry English, LSB No. 22772
LARRY ENGLISH, ATTORNEY AT LAW
423 W. 127 Street, 7th Floor
New York, New York 10027
917-531-3909
englishlaw2008@gmail.com

*/s/ Tammye C. Brown*
Tammye C. Brown, LSB No. 29108
CAMPBELL BROWN LAW & CONSULTING
1220 E. Northside Drive, Suite 170-176
Jackson, Mississippi 39211
601-703-8911
601-703-8999 (fax)
tbrown@campbellbrownlaw.com

*/s/ Bridget Brown*
Bridgett Brown, LSB No. 18815
BROWN & ASSOCIATES
418 DeSoto Street
Alexandria, Louisiana 71301
lawyer4u.bridgett@gmail.com

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served on all counsel of record using the Court's CM/ECF system on June 29,  2021.

*/s/ Larry English*