UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
BATON ROUGE DIVISION

SHARON LEWIS                                       Civil Action No: 21-198-BAJ-RLB

Plaintiff

V.

BOARD OF SUPERVISORS OF LOUISIANA
STATE UNIVERSITY ET. AL.

Defendant

## MEMORANDUM IN OPPOSITION TO DEFENDANT
## EDWIN "LES" MILES' MOTION TO DISMISS

MAY IT PLEASE THE COURT:

NOW INTO THE COURT comes plaintiff Sharon Lewis who opposes Defendant

EDWIN "LES" MILES' (MILES) Motion to Dismiss for the following reasons:

Plaintiff adopts each and every argument in her Memorandum In Opposition To Taylor

Porter Defendants motion to dismiss (Doc. No. 80 ) in support of this Memorandum In

Opposition. Plaintiff has voluntarily dismissed Edwin "Les" Miles with prejudice as a Title IX

defendant (Doc. No. 83), therefore his arguments regarding Title IX are moot.

### I.    Introduction

When Edwin "Les" Miles  (Miles) led LSU to the 2008 BCS National Championship game

at the Louisiana Superdome, grown men in attendance cried. In football-starved Louisiana, Miles

was now one of the most powerful and beloved figures in the state. Leading LSU to a second

National Championship Game in 2011 only cemented his stature in the state.[1]

---

[1] Doc. No. 8 ¶ 166

But, in addition to Miles' prodigious talents as a football coach, he was sexual predator and bigot.[2] When Miles' egregious behavior threatened the lucrative football program[3] the enterprise agreed to conceal the investigation until forced to release it in 2020.  Moreover, Miles participated directly and through his lawyers Peter Ginsburg (Ginsburg) and A. Edward Hardin Jr. (Hardin) participated in the operation and management of the enterprise.

Further, multiple predicate acts that furthered the scheme to conceal Miles' sexual misconduct and violations of federal and state law were the direct and proximate cause of plaintiff's injuries to her property interest in her business and employment. It was reasonably foreseeable to the RICO Defendants that Miles would retaliate against plaintiff. These predicate acts, as detailed more fully herein,  were the  direct and proximate cause of plaintiff  being denied promotions, loss of bonuses, loss of benefits,  loss of pay increases,  damage to plaintiff's professional reputation and being named a defendant in a class action lawsuit.[4] These injuries are concrete and are recoverable under RICO.

Despite  plaintiff's well-pled First Amended Complaint (herein after referred to as "Complaint"), attached exhibits and RICO Case Statement,  Miles is now asking the court to suspend its common sense and dismiss plaintiff's well-pled Complaint as not plausible *Ashcroft v. Iqbal*,  556 U.S. 662, 664 (2009).[5]  Therefore, for the following reasons Miles' frivolous and unsupported motion to dismiss  should be denied:

---

[2] Doc. No. 8 ¶¶ 34 through 41, 129 through 134; Doc. No. 8-2, p. 3 through 10; Doc. No. 8-1, p 49 through 54
[3] Doc. No. 8 ¶165
[4] Doc. No. 8 ¶¶ 88, 101, 102, 200 (A) ; Doc. No. 45,  p.21  Section 15
[5] Miles was terminated from his Head Coach position at the University of Kansas for the conduct alleged in plaintiff's Complaint.

## II.    Plaintiff's First Amended Complaint Complies with 12(B)(6) Standards.

Miles' argument that plaintiff's claims are not plausible is both frivolous and nonsensical.  In ruling on a 12(b)(6) motion, the court must accept well-pled facts as true and view them in a light most favorable to plaintiff. *Collins v. Morgan Stanley Dean Witter*, 224 F. 3d 496, 498 (5th Cir. 2000). Plaintiff's complaint "need not contain detailed factual allegations," however, she must allege sufficient facts  "to state a claim to relief that is plausible on its face." *Colony Ins. Co. v. Peachtree Constr.*, Ltd., 647 F. 3d 248, 252 (5th Cir. 2011) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference Miles is liable for the misconduct alleged in plaintiff's RICO claims. *Ashcroft v. Iqbal* at 678 (citing *Twombly*, 550 U.S. at 556). Nevertheless, "a well-pled complaint may proceed even if it strikes a savvy Judge that actual proof  of those facts are improbable and that a recovery is very remote and unlikely." Id. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

Here, plaintiff's well-pled Complaint and RICO case statement allege each and every element required to prove her RICO claims.  In addition to the Miles Investigation, plaintiff attached to her Complaint the Husch Blackwell Report ( Doc. No. 8-1) and Taylor Porter Billing Records ( Doc. No. 8-4, 8-5, 8-6).  These documents support plaintiff's well-pled allegations Miles and his co-conspirators formed an associate in-fact enterprise around a common plan to conceal complaints of sexual harassment and criminal conduct from Title IX investigations, Title IX related oversight,  local law enforcement and state public records request and to control LSU Athletics.  Plaintiff pled six (6) schemes that worked in concert in furtherance of the enterprise's common plan. *United States v. Fattah*, 914 F.3d 112, 168,169  (3rd Cir. 2019).

Plaintiff's well-pled Complaint shows the association in-fact enterprise specifically targeted, retaliated against and facilitated a hostile working environment toward plaintiff for repeatedly reporting Title IX violations, injuring her property interest in her business and employment.[6] Moreover, the Husch Blackwell report documented plaintiff was the only individual in the LSU Athletic Department who consistently reported Title IX violations and was retaliated against for it.[7]

Moreover, plaintiff's well-pled Complaint show the Taylor Porter Defendants were brought in by William Jenkins to orchestrate, direct and aid in facilitating the scheme to conceal Miles' sexual misconduct from Title IX investigators and local law enforcement.[8] Taylor Porter specifically directed the RICO Defendants not to disclose the Miles sexual harassment investigation to LSU. [9] Further, they directed Miles' lawyers Ginsburg and Hardin to conceal the report in their offices.[10] Consequently, Ginsburg, Hardin and Taylor Porter Defendants' concealed the Miles Investigation in their law offices from LSU for eight (8) years, until they were forced to release them by the court.[11]

Title IX regulations specifically require that once a complaint has been received the institution must conduct an independent investigation. The Husch Blackwell Report concluded about Taylor Porter being designated to investigate Miles:

" *This designation raises conflicts of interest concerns as it is not clear how the*

*firm could have been neutral in the investigation. There was also no provision in the*

---

[6] Doc. No. 8 ¶¶ 86 through 105
[7] Doc No. 8-1, p. 49 ¶3
[8] Doc. No. 8-1 p. 51 ¶ 1
[9] Doc. No. 8¶ 141
[10] Doc No. 8-3 p. 6 ¶ 10
[11] See *Kenny Jacoby & S.B. v. Thomas Galligan et al* C-700649 21/D; The state court found LSU "was unreasonable, arbitrary and capricious in its refusal and delay and the redacted manner in which the documents were produced; Doc No. 8 ¶ 161

*applicable Title IX policy for these sorts of investigations to be outsourced to third*

*parties.*"[12]

In the face of overwhelming and uncontradicted facts, Miles is asking the court to suspend its common sense and find that plaintiff's RICO claims are not plausible. Therefore, assuming plaintiff's allegations are true and viewing her complaint in a light most favorable to plaintiff, Miles' motion to dismiss should be denied.

III.   **Lewis' RICO Claims are not time-barred**

Fraudulent Concealment

The RICO defendants engaged in fraudulent concealment of their racketeering activities. Under the doctrine of fraudulent concealment, "the limitations period is tolled until the plaintiff discovers or with reasonable diligence should have discovered the concealed fraud." *Joseph v. Bach & Wasserman, L.L.C.* (5th Cir. 2012) (citing *Love v. Nat'l Med. Enterprises*, 230 F.3d 765, 779 (5th Cir. 2000). Here, the RICO Defendants committed affirmative acts to wrongfully conceal material facts relating to their wrongdoing. [13] Further, in 2013 Vicki Crochet called plaintiff to her law office and specifically told her the sexual harassment complaints against Miles and star football players and the retaliation and hostile work environment for reporting such complaints, were not unlawful, nor a violation of LSU policy. [14] Thus, it was reasonable plaintiff would believe the attorney holding herself out as conducting the Title IX investigation, that no further investigation was required and she had no further options for legal actions.

---

[12]  Doc No. 8-1 p. 51 ¶ 1l
[13] Doc No. 8  ¶¶ 139, 140, 141; Doc No. 8-2 , p.2 ¶ 3;  Id Fn. 16
[14] Doc No. 8 ¶ 76

Moreover, from 2013 to 2020 plaintiff repeatedly reported Title IX violations to Verge Ausberry and Miriam Segar and was told her complaints had no merit and to look for a new job if she were unhappy.[15]  As a result, plaintiff did not discover the activities of the criminal enterprise until the release of the Husch Blackwell Report and Miles Report in March 2021.

Moreover, any RICO injury plaintiff suffered within the four-year limitations period was not time-barred, even if plaintiff knew, which she did not, of the fraudulent schemes involving similar conduct more than four years before she filed suit. *Joseph v. Bach & Wasserman, L.L.C.* at 775. Plaintiff has alleged she suffered multiple injuries to her business and property within the four-year limitation. [16]

The RICO Defendants racketeering activity was the direct and proximate cause of plaintiff suffering a nervous breakdown in 2013.[17] Plaintiff was hospitalized and remain under the care of mental health professionals until this day.[18] During this period plaintiff's mental incapacity prevented her from pursuing her RICO claims. *Hood v. Sears Roebuck and Co*., 168 F.3d 231, 233 (5th Cir. 1999). The equitable tolling during periods of mental capacity is a fact-based determination. *Mandarino v. Mandarino*, 180 F. App'x 258 (2d. Cir. 2006). Therefore, assuming plaintiff's allegations are true and viewing them in a light most favorable to plaintiff, her RICO claims are not time-barred and Miles' motion to dismiss should be denied.

IV. **Lewis stated a substantive RICO claim under 18.S.C. Section 1962 (c ).**

In order for plaintiff to show a violation of § 1962(c), she must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must allege each of

---

[15] Doc No. 8 ¶¶ 77, 80 through 85, 105
[16] Doc No. 8 ¶¶ 101, 102, 104, 175 through 185;  Doc. No.  45-1 p. 40 through 42
[17] Doc. No. 8 ¶ 99
[18] Id.

these elements to state a claim. *Sedima v. Imrex Company, Inc*, 473 U.S. 479, 496 (1985). Here plaintiff's well-pled complaint and RICO case statement stated each and every element necessary to prove her claim.

      a.  Plaintiff pled "conduct" of the RICO enterprise.

Plaintiff has alleged RICO Defendants formed an associate in-fact enterprise. *Boyle v. United States,* 556 U.S. 938 (2009). To "participate, directly or indirectly, in the conduct of such enterprise's affairs," an individual must have some part in the operation or management of the enterprise itself. *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 551 (5th Cir. 2012). Plaintiff's well-pled pleadings and RICO case statement prove Miles participated in the operation and management of the enterprise directly and through Ginsburg and Hardin by:

1. Vicki Crochet  (Crochet) contacted the head of LSU's Human Resources and pressured him to contact a professor to change a student's grade who had filed a complaint against Miles;

2. Taylor Porter Defendants travelled to New Orleans to meet with Ginsburg, complainant student and her father to facilitate the exchange of money to bribe student into dropping her sexual misconduct complaint against Miles;

3. Crochet called plaintiff to her downtown office and told her Miles had not violated any LSU policy or law in order to dissuade her from investigating and reporting complaints of sexual misconduct by coaches and players;

4. Ginsburg and Hardin concealed the Miles investigation in their offices from 2013 to 2020 to shield it from Title IX investigations, law enforcement and public documents requests;

5. Ginsburg directly participated in 74 predicate acts of mail and wire fraud sent in furtherance of the  criminal conspiracy.[19]

6. Hardin directly participated in 17 predicate acts of mail and wire fraud sent in furtherance of the  criminal conspiracy.[20]

Moreover,  Taylor Porter Billing Records show Miles had knowledge of, intent to and reached an agreement to conceal criminal conduct, Title IX violations and public records.[21]

Therefore, assuming plaintiff's allegations are true and viewing them in a light most favorable to plaintiff, the court must find Miles participated in the operation and management of the associate in-fact enterprise and his motion to dismiss should be denied.

   b.  Plaintiff has pled a valid enterprise

 Plaintiff's  RICO case statement alleges with specificity RICO Defendants formed an associate in-fact enterprise.[22]  All of the RICO Defendants knew each other. *United States v. Fattah* at 166.  Moreover, plaintiff's RICO case statement lists each defendant, their misconduct and the liability of each defendant.[23] Plaintiff's well-pled pleadings and RICO case statement show each RICO Defendant engaged in multiple predicate acts in furtherance of the conspiracy. Each RICO Defendant's alleged misconduct is referenced in an exhibit attached to plaintiff's complaint or a public statement made by RICO Defendants.

---

[19] Doc. No. 45-1
[20] Id.
[21] Doc. No. 8-4, 8-5, 8-6
[22]  Doc. No. 45, Section 6, p. 18- 19; The Miles Memo To File (Doc. No. 8-2,  p.2 ) state with specificity the participants in the management and operation of  associate in-fact enterprise in 2012/2013. Further, plaintiff's well-pled pleadings show additional RICO Defendants with knowledge of the fraudulent scheme took affirmative steps to further the conspiracy, thereby opting into the enterprise.
[23] Doc. No. 45, p. 2 – 9.

c.   The Association-in-Fact Enterprise is distinct from LSU

Plaintiff's Complaint and RICO statement does not name LSU as the enterprise nor is LSU named as a RICO defendant. Plaintiff alleges the individual RICO Defendants are Board of Supervisor members, employees and legal counsel of LSU which formed an associate in-fact enterprise. This allegation is sufficient to demonstrate the RICO Defendants are distinct from LSU. *Abraham v. Singh*, 480 F.3d. 351, 356 (5th Cir. 2007). The courts have allowed RICO complaints to proceed where the defendants are among the members of a separate association-in-fact enterprise. [24]

Furthermore, plaintiff has alleged all of the RICO Defendants acted outside of the scope of their duties as LSU Officials and /or employees and legal counsel and formed an association in fact enterprise.[25]  Stanley Jacobs (Jacobs), Robert Yarborough (Yarborough), Garrett Danos (Danos), James Williams (Williams) and  Mary Leach Werner (Werner) ("BOS RICO Defendants")  racketeering conduct was outside the scope and authority of their duties as BOS members. The Southern Association of Colleges and Schools (SACS) *Rule 5.2 (c)* states the President of LSU has ultimate control over the Athletic Department. [26] Yet, plaintiff's well-pled Complaint show the BOS Defendants participating in the management of the day-to-day operations of the Athletic Department. Further, the BOS RICO Defendants in 2013 and 2019

---

[24] *Ocean Energy II, Inc. v. Alexander & Alexander, Inc*., 868 F.2d 740, 749 (5th Cir. 1989) (factual question existed as to whether alleged association of insurance companies, company subsidiaries, and local agents who allegedly sold fraudulent policies constituted a RICO enterprise; *Alcorn County v. U.S. Interstate Supplies* 731 F.2d 1160, 1168 (5th Cir. 1984) (an association of individuals and a corporation that sold supplies to a county government by bribing a county employee could constitute a enterprise; *Living Designs, Inc. v. E. I. DuPont de Nemours and Co*., 431 F.3d 353, 361 (9th Cir. 2005) (allowing enterprise consisting of DuPont, its outside law firms, and expert witnesses retained by the law firms); ); *United States v. Console*, 13 F.3d 641, 652 (3d Cir. 1993) (an association-in-fact consisting of a law firm and a medical practice satisfies RICO's definition of enterprise)
[25]  Doc. No. 45 p. 18 -19
[26]  Doc. No. 8 ¶ 169

concealed their racketeering activity from their fellow Board members.[27] This was a violation of the *LSU By-Law 9 (A) (1)* that required " any matter having a significant long-term impact directly and indirectly" on any campus required the full board approval.[28]

RICO Defendants who are LSU employees acted outside of the scope of their employment. They actively concealed sexual and criminal misconduct of coaches and athletes from the full Board of Supervisors. They participated in the bribing of a student to withdraw her complaint against Miles. They instituted a fraudulent PM-73 (Title IX) Investigation against plaintiff.[29]  They participated in predicate acts that were the direct and proximate cause of plaintiff's property interest in her employment and business.

In October 2020 the full BOS, having knowledge of the fraudulent scheme to conceal the Miles Investigation,  nevertheless opted to act in furtherance of the scheme and directed Taylor Porter Defendants to fight its release, which had been requested by *USA Today* per *La. R.S. 44:32*.[30]  Plaintiff's well-pled Complaint shows the BOS engaged in a fraudulent scheme to conceal Title IX investigations from the Department of Education Office of Civil Rights in order to defraud the federal government out of federal funds that would have otherwise been restricted from the University. [31] Therefore, assuming plaintiff's allegations are true and viewing them in a light most favorable to plaintiff, the RICO Defendants at all times were acting outside of the scope of their authority, formed an associate in-fact enterprise and Miles' motion to dismiss should be denied.

---

[27] Doc. No. 8¶¶ 141, 171
[28] Through discovery plaintiff will show the BOS members not listed as RICO Defendants or Actors were aware of the scheme to conceal the Miles Investigation and bribe his victims.
[29] Doc. No. 8 ¶¶ 174 through 185
[30] Doc. No. 8 ¶ 161;  Doc. No. 45, p. 8 ¶ 2, p. 9 ¶ 1
[31] Id.

d.  Plaintiff plausibly alleged an "Ongoing Organization"

Plaintiff's well-pled Complaint specifically alleges the associate in-fact enterprise is ongoing. The enterprise was ongoing in order to complete the conspiracy. *United States v. Fattah* at 162. Taylor Porter Defendants, Ginsburg and Hardin hid the Miles investigation in their respective offices for eight (8) years. The enterprise concealed multiple Title IX and criminal violations of coaches and star football players from 2013 to 2020.

Moreover, many of the RICO Defendants and RICO Actors played a pivotal role in the hiring of the new LSU System President and Chancellor of the LSU Baton Rouge Campus in 2021 and, therefore, perpetuated the criminal enterprise.[32] It is unreasonable to believe these individuals would relinquish control of the LSU athletic department and its lucrative football program to a President and Chancellor they handpicked.[33] Without intervention from the court and/or federal government, the associate in-fact enterprise will continue to represent an existential threat to  the safety of plaintiff, students, employees and faculty at LSU.  Therefore, assuming plaintiff's allegations are true and viewing them in a light most favorable to plaintiff, Miles' motion to dismiss should be denied.

e.  Plaintiff pled a pattern of racketeering with continuity.

1.  Lewis alleged a pattern with required relationships.

In order to show relatedness plaintiff must simply show the racketeering predicate acts "have the same or similar purposes, results, participants, victims or methods of commission, or are otherwise are interrelated by distinguishing characteristics and are not isolated events." *Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996). Here

---

[32] Doc. No. 8 ¶¶ 164 – 173
[33] It is unfathomable the RICO Defendants who have shown a willingness to violate federal and state law to control the LSU Football program,  will now turn over control of their crown jewel to a young African-American President with no ties to the University or Louisiana.

each of the predicate act was done in furtherance of a conspiracy to avoid disclosing and/or reporting sexual misconduct on the part of coaches and star players to local law enforcement and Title IX investigators and to control and/or protect LSU Athletics and profits. Whenever a star football player was accused of sexual and criminal misconduct, the RICO Defendants concealed the investigation.[34] From 2013 to present, Crochet, Barton, McKenzie, Segar, Ausberry and various BOS members continue to participate in the operation and management of the enterprise.[35] Therefore, assuming plaintiff's allegations are true and viewing them in a light most favorable to plaintiff, Miles' motion to dismiss should be denied.

> 2. Lewis alleged a pattern of continuity.

To establish continuity, plaintiff must prove "continuity of racketeering activity or its threat." *Word of Faith World Outreach Center Church, Inc*. at 122. An open period of conduct involves the establishment of a threat of continued racketeering activity. This may be shown where there exists a "specific threat of repetition extending indefinitely into the future," or "where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business." *Id.* at 122. Plaintiff's well-pled Complaint show the associate-in-fact enterprise operated from 2013 to present. *Abraham v. Singh*, at 356. There are multiple victims of the enterprise racketeering conduct and the enterprise would have continued indefinitely had plaintiff not filed her suit.[36] *Id*. The sole purpose of the associate in-fact enterprise was to conceal sexual and criminal misconduct of coaches and star football players and maintain control of LSU's Athletic program. The predicate acts show, in addition to the persistent hostility to those who reported, bribery, intimidating witnesses, concealing investigations and using mail and wire

---

[34] Doc. No. 45 p. 12-14
[35] Segar and Ausberry consistently engaged in predicate acts starting in 2013 and continued through 2021.
[36] https://senate.la.gov/s_video/videoarchive.asp?v=senate/2021/03/032621SCWC_0;
https://senate.la.gov/s_video/videoarchive.asp?v=senate/2021/03/031021SCWC_0

fraud was the enterprise's regular way of conducting business. The enterprise engaged in a pattern of intimidation and retaliation against individuals who they deemed a threat, even their fellow RICO Defendants. [37] Therefore, assuming plaintiff's allegations are true and viewing them in a light most favorable to plaintiff, Miles' motion to dismiss should be denied.

> f.  Lewis alleged predicate acts with particularity

A pattern of racketeering requires at least two (2) acts of racketeering activity as enumerated in *18 U.S.C. Section 1961*. Plaintiff's well-pled pleadings allege six (6) schemes of racketeering and plaintiff's RICO case statement lists 569 predicate acts of wire and mail fraud undertaken in furtherance of the conspiracy. In each allegation where plaintiff alleges a fraudulent scheme, she lists the time, place, content of the false representations as well as the person making the misrepresentation and what that person(s) obtained.[38] In each mail and wire fraud, plaintiff lists the time, place, content and person(s) using mail and wire fraud to further the fraudulent schemes. In fact each wire and mail fraud is listed as a predicate act in the Doc. No. 45-1 and is supported by exhibits attached to plaintiff's Complaint.

Moreover, reckless indifference for the truth suffices for conviction under mail and wire statutes. Reasonable jurors can find the RICO Defendants conduct in this case was done in reckless disregard for the truth. *Babst v. Morgan Keegan & amp; Co*., 687 F. Supp 255, 258 (E.D. La. 1988); *Fed.R.Civ.P. 9 (b)*.

Miles argues plaintiff failed to allege Miles was "remotely" part of any wire and mail fraud scheme. This is patently false as Miles' lawyers Ginsburg and Hardin participated in 91

---

[37]When Joe Alleva wrote an email (Doc. No. 8-1, p. 52) to the President suggesting Miles be terminated for his sexual misconduct, it was a breach of disloyalty the RICO Defendants could not tolerate. In April 2019, in a scene reminiscent of the movie Godfather, Williams and Werner at Juban's Restaurant plotted to whack Alleva's employment at LSU. See Doc. No. 8, ¶ 168

[38] Doc No. 8 ¶¶ 148, 148; 152 through 163; Doc. No 45.

acts of mail and wire fraud.[39] Further, plaintiff in the next section state with specificity the facts

that support how each predicate act directly and proximately caused injury to plaintiff's property

interest in her employment and business.  Therefore, assuming  plaintiff's allegations are true

and viewing them in a light most favorable to plaintiff, Miles' motion to dismiss should be

denied.

> g.   Injuries to plaintiff's business and property interest was directly and proximately
>      caused by predicate acts of RICO Defendants.

_18.U.S.C. § 1341_ (relating to mail fraud)

_18. U.S. § 1343_ (relating to wire fraud)

Plaintiff's well-pled complaint and RICO case statement  lists with specificity the

predicate acts that directly and proximately caused injury to her business and employment.[40]

The  predicate acts of mail and wire fraud executed to conceal the Miles Investigation were the

direct and proximate cause of plaintiff being denied promotions, loss of bonuses, loss of benefits,

loss of pay increases, damage to her professional reputation.[41]  Once Miles knew his egregious

behavior was concealed and his job protected by the enterprise, he retaliated against plaintiff. [42]It

was reasonably foreseeable Miles would deny plaintiff  pay raises and promotions and continue

to create a pervasive hostile working environment toward plaintiff.[43]

Plaintiff lists multiple mail and wire frauds done in furtherance of the fraudulent PM-73

(Title IX) investigation. [44] Using the mail and wire to execute or attempt to execute a scheme  to

defraud are predicate acts under RICO, even if plaintiff did not rely on a misrepresentation.

---

[39] Doc. No. 45-1; Miles is attempting to separate his racketeering conduct by hiding behind his lawyer.
[40] Doc. No. 45-1, p. 15,  Section 5  (B) (iv ); "Scheme 1 and 6" Doc. 45-1 p. 1 – 22 and .Doc. No. 45-1 p. 40 -42
respectively.
[41] Doc. No.  ¶¶ 88, 101, 102, 200 (A) ;  Doc. No. 45, p. 21 ¶ 3
[42] Doc. No. ¶ 87, 88, 89,
[43] Doc. No. 8 ¶¶ 87, 88
[44] Doc.  No. 45-1, p. 40 through 42; Doc. No. 8-1, p. 20 through 23

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). It was reasonably foreseeable the mail and wire frauds executed in furtherance of fraudulent PM-73 investigation would be used by RICO Defendants to deny her pay raises and promotions. These injuries are concrete and her losses are recoverable under RICO. [45]

### *U.S.C. §1513* (relating to retaliating against a witness, victim or an informant

It is a violation *U.S.C. §1513* for anyone to knowingly "damage the tangible property of another person, or threatens to do so, with intent to retaliate against any person" for "any testimony given or any record, document, or other object produced by a witness in an official proceeding." *18 U.S. Code § 1515* defines official proceedings "as it pertains to sections *1512 1513*" in part "a proceeding before a Federal Government agency which is authorized by law." The Department of Education (DOE) promulgated the rules that governs Title IX proceedings.[46] Here, plaintiff's well-pled complaint show she repeatedly reported Title IX violations to Miriam Segar, who was designated as the Title IX officer per DOE regulations.[47] Plaintiff's well-pled Complaint shows the RICO Defendants retaliated against plaintiff for providing testimony, records and documents in formal proceedings.[48] Verge Ausberry (Ausberry) stated to plaintiff in 2020 she would never be promoted because "you use the word

---

[45] *See Brandenburg v. Seidel*, 859 F.2d 1179, 1187 (4th Cir. 1988) (loss of interest income), *overruled on other grounds by* Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (1996); *Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 747 F.2d 384, 398 (7th Cir. 1984) (excessive interest charges); *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168 n.4 (9th Cir. 2002) (workers alleging reduced wages from hiring illegal workers had a "legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate statutes"); *Miller v. Glen & Helen Aircraft, Inc.*, 777 F.2d 496, 498-99 (9th Cir. 1985) (depletion of settlement amount paid to plaintiff); *Robbins v. Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002) (economic injury from interference with business and property damage), *rev'd on other grounds*, *Wilkie v. Robbins*, 127 S. Ct. 2588 (2007); Williams v. Mohawk Indus., *Inc.*, 465 F.3d 1277, 1286-87 (11th Cir. 2006) (workers alleging reduced wages from hiring illegal workers sufficiently alleged injury to their "business interests")

[46] Doc. No. 8-1, p. 8 – 15; Doc. No. 8 ¶¶ 47, 48, 49, 50

[47] Doc. No. 8-1, p. 36 ¶ 3, p. 66 ¶ 1

[48] Doc No. 8 ¶ 77, ¶¶ 92 through 95, ¶101; Doc. No. 8-1, p. 67 ¶ 1

Title IX too much."[49] DOE has launched two investigations into LSU's failure to adhere to Title IX guidelines.[50] Therefore, it was reasonably foreseeable when Miles and his co-conspirators knowingly violated *18 U.S.C. § 1513*, it would directly and proximately cause injury to her property interest in her employment and business.

18 U.S.C. 1512 (relating to tampering with a witness, victim, or an informant)

It is a violation of *18 U.S.C. § 1512* for anyone to use physical force or the threat of physical force against any person, or attempts to do so, with intent to influence, delay, or prevent the testimony of any person in an official proceeding. Here, plaintiff's continuous reporting of Title IX violations represented an **existential** threat to the enterprise and Miles.[51] As a result Miles threatened to punch plaintiff "in her motherfucking mouth" to influence, delay, or prevent plaintiff's testimony in Title IX proceedings.[52] RICO Defendants then restructured plaintiff's immediate supervisor for promotion and salary purposes under Miles, who then denied plaintiff pay raises and promotions.[53] Therefore, it was reasonably foreseeable when Miles and his co-conspirators knowingly violated *18 U.S.C. § 1512*, it would directly and proximately cause injury to plaintiff's property interest in her employment and business.

*18.U.S.C. §1952* ( relating to interstate travel in aid of racketeering)

In furtherance of the scheme to conceal the Miles Investigation RICO defendants used interstate travel to aid in their racketeering scheme.[54] Miles' lawyer Ginsburg travelled from New York to New Orleans to meet with the complainant student, her father, and Taylor Porter

---

[49] Doc. No. 8 ¶ 101
[50] Doc. No. 45, p. 23 ¶ 1
[51] Doc. No. 8 ¶101: Ausberry told plaintiff "people are afraid of you" in reference to plaintiff continuously reporting Title IX violations.
[52] Doc. No. 8 ¶ 89.
[53] Doc. No. 8  ¶ 88
[54] Doc. No. 8 ¶145; Doc. No. 8-6, p. 1

Defendants to facilitate the exchange of money to student to bribe her into dropping her Title IX complaint against Miles.[55] This predicate act was done to protect Miles to return to his job where in retaliation he denied plaintiff promotions, pay raises and bonuses. It was reasonably foreseeable  when Miles and his co-conspirators knowingly violated  *18 U.S.C. 1512*, it would directly and proximately cause injury to her property interest in her employment and business.

Plaintiff through discovery will show the enterprise's execution of predicate act 18 *U.S.C. § 1951* and *§ 1503*  were the direct and proximate cause of injuries to plaintiff's property interest to her employment and business.

<u>Plaintiff's employment in NCAA college sports has been irreparably injured</u>

By any measurement Sharon Lewis had one of the most successful careers of any woman and African-American executive in NCCA football history.[56] However, subject to a fraudulent PM-73 investigation, being named a defendant in a class action lawsuit and the subject of national media coverage from LSU's toxic sexual scandal has rendered her unemployable in NCAA athletics. It was reasonably foreseeable RICO Defendants pattern of racketeering would end in scandal and litigation and plaintiff's property interest in her employment and business would be damaged. Therefore, assuming the allegations in plaintiff's Complaint are true and viewing them in a light most favorable to plaintiff, RICO Defendants predicate acts were the direct and proximate cause of injury to plaintiff's  property interest in her employment  and business  and Miles' motion to dismiss should be denied.

**V.    Lewis stated a valid conspiracy claim under Section 1962 (d)**

Anyone who agrees or conspires to pursue the same criminal objectives can be held liable for a RICO violation. *Salinas v. United States*, 522 U.S. 52, 63-64 (1997).  Here the evidence

---

[55] Id.
[56] Doc. No. 8 ¶ 24

shows the conspirators agreed to (1) conceal the Miles investigation from the full Board of Supervisors, local law enforcement, Title IX oversight and public documents request; (2) conceal the written report in Taylor Porter Defendants, Ginsburg and Hardin's law offices; and (3) oppose any public documents request without exhaustive and costly litigation and final order from the court.[57] Each scheme alleged in plaintiff's well-pled Complaint combined to assist the enterprise in executing its illicit agreement around a common plan.

Plaintiff's well-pled pleadings show additional RICO Defendants opted into the enterprise. Each conspirator had knowledge of the essential nature of the common plan and engaged in an act to further the conspiracy. *United States vs. Elliot*, 571 F.2d 880, 903-04 (5th Cir. 1978); *United States v. Fattah*, 914 F.3d 112, 168,169, 170 (3rd Cir. 2019); *Salinas* at 65. Moreover, plaintiff does not have to prove the later RICO Defendants knew all of the details of the unlawful enterprise or the number or identities of all of the co-conspirators. *United States v. Posada-Rios*, 158 F. 3d 832, 858 (5th Cir. 1998). Nor is it necessary for plaintiff to prove each RICO Defendant committed two predicate acts. *Salinas* at 64. Each RICO Defendant is liable for the predicate acts carried out by their co-conspirator(s). *Salinas at 65; United States v. Fattah* at 169. Therefore, assuming the allegations in plaintiff's Complaint are true and viewing them in a light most favorable to plaintiff, she has shown the RICO Defendants reached an agreement and each one of them undertook an act in furtherance of the conspiracy and Miles' motion to dismiss should be denied.

## VI.    Request For Judicial Notice

Judicially noticed fact must be one not subject to dispute in that it is either (1) generally known with the territorial jurisdiction of the trial court (2) accuracy cannot be reasonably

---

[57] Doc. No. 8-2, p. 2

18

questioned. *Funk v. Stryker Corp*., 631 F.3d 777, 783 (2011). When reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Basic Capital Mgmt., Inc. v. Dynex Capital, Inc*., 976 F.3d 585, 589 (5th Cir. 2020).  Plaintiff respectfully requests the court take judicial notice of the investigative reporting of Louisiana's paper of record *The Advocate* on the current LSU sex scandal. RICO Defendants, Actors and various Board of Supervisor members are quoted making statements that directly impact this case.  *The Advocate's* reporting on this matter is generally known within the territorial jurisdiction of the trial court. Various RICO Defendants and Actors are quoted verbatim. Thus their accuracy cannot be questioned. *Id.* Plaintiff respectfully requests the court take judicial notice of Louisiana Senate Committee on Women and Children hearings in *Fn. 36* and *Fn. 7* Miles terminated from Kansas. *Id*.

### VII.    Conclusion

For the above stated reasons, plaintiff respectfully requests Miles' Motion to Dismiss should be denied and a scheduling order be issued at the appropriate time allowing discovery to move forward.

Respectfully submitted:

*/s/ Larry English*
Larry English, LSB No. 22772
LARRY ENGLISH, ATTORNEY AT LAW
423 W. 127 Street, 7th Floor
New York, New York 10027
917-531-3909
englishlaw2008@gmail.com

*/s/ Tammye C. Brown*
Tammye C. Brown, LSB No. 29108
CAMPBELL BROWN LAW & CONSULTING

1220 E. Northside Drive, Suite 170-176
Jackson, Mississippi 39211
601-703-8911
601-703-8999 (fax)
tbrown@campbellbrownlaw.com


*/s/ Bridget Brown*
Bridgett Brown, LSB No. 18815
BROWN & ASSOCIATES
418 DeSoto Street
Alexandria, Louisiana 71301
lawyer4u.bridgett@gmail.com

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served on all counsel of record using the Court's CM/ECF system on August 16, 2021.


*/s/ Larry English*