UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**SHARON LEWIS,**
    **Plaintiff**

**CIVIL ACTION**

**VERSUS**

**NO. 21-198-SM-RLB**

**LOUISIANA STATE UNIVERSITY, ET AL.,**
    **Defendants**

## ORDER AND REASONS

Before the Court is a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 17(b)(3), filed by Defendants the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board"), James Williams ("Williams"), and Mary Leach Werner ("Werner").[1] The defendants move this Court for dismissal of Plaintiff's claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. ("RICO") and Plaintiff's claims for retaliation under Title IX of the Education Amendments of 1972 ("Title IX") against LSU and against the Board to the extent the claims arise from events occurring before April 8, 2020.[2] Plaintiff Sharon Lewis ("Plaintiff") filed an opposition[3] to Defendants' motion to dismiss.

On May 5, 2021, Plaintiff Sharon Lewis filed an amended complaint alleging claims under Title IX of the Education Amendments of 1972, the Racketeer Influenced Corrupt Organizations Act, and 42 U.S.C. § 1981.[4] This order deals with only the motions to dismiss the Title IX claims.[5] In her amended complaint, Plaintiff named Louisiana State

---

[1] R. Doc. 71. The motion to dismiss also moves for dismissal of Louisiana State University ("LSU"). *See generally* R. Doc. 71, and R. Doc. 71-1.

[2] *See* R. Doc. 71.

[3] R. Doc, 96.

[4] *See* R. Doc. 8.

[5] The Court will issue a separate order with respect to the motions to dismiss the RICO claims.

University, a recipient of federal funds, the Board of Supervisors of Louisiana State University, William Jenkins, Felton "King" Alexander; Joseph "Joe" Alleva, Scott Woodward, Leslie Edwin "Les" Miles, Verge Ausberry, and Miriam Segar as defendants with respect to her Title IX claims.[6] On August 15, 2021, Plaintiff filed a Motion for Voluntary Partial dismissal,[7] seeking to dismiss with prejudice her Title IX claims against William Jenkins, Felton "King" Alexander, Joseph Alleva, Leslie Miles, Miriam Segar and Verge Ausberry. The Court granted the motion.[8] On September 2, 2021, Plaintiff filed a Motion for Voluntary Partial Dismissal,[9] seeking to dismiss with prejudice her Title IX claims against Scott Woodward with prejudice. The Court granted the motion.[10] Accordingly, the only remaining Title IX defendants are LSU and the Board of Supervisors (the "LSU Defendants").

## BACKGROUND[11]

Plaintiff is an African American woman and a resident of Louisiana who has worked at Louisiana State University in the Athletics Department since approximately 2001.[12] Plaintiff is a graduate of LSU and was an athlete and student worker in LSU's Athletic Department.[13] In 2001, Plaintiff was hired as the Coordinator for Recruiting Operations under then-head football coach, Nick Saban.[14] In 2007, Plaintiff was promoted to Assistant Athletics Director for Football Recruiting and Alumni Relations, and she remained in that position for approximately 13 years.[15] In August 2020, Plaintiff

---

[6] R. Doc. 8 at ¶ 43.
[7] R. Doc. 83.
[8] R. Doc. 88.
[9] R. Doc. 101.
[10] R. Doc. 106.
[11] The background facts are based on Plaintiff's amended complaint, at R. Doc. 8.
[12] R. Doc. 8 at ¶ 1, 24.
[13] R. Doc. 8 at ¶ 24.
[14] *Id.*
[15] *Id.*

was promoted to Associate Athletics Director for Football Recruiting and Alumni Relations.[16] Plaintiff's job duties include management of full-time employees and approximately 40 student workers by overseeing day-to-day recruiting and related activities.[17] Plaintiff also oversaw recruiting events such as dinners and pregame and postgame events.[18] Verge Ausberry was Plaintiff's immediate supervisor at all relevant times.[19] Miriam Segar was the Athletics Department designee for receiving and investigating Title IX related complaints and reports at all relevant times. [20]

In 2005, Leslie "Les" Miles was hired as head football coach at LSU.[21] In her first meeting with Miles, Plaintiff alleges Miles made racist comments and, stated he "prefers the blonde over the brunette," and made inappropriate comments about hiring women based solely on appearance.[22] Plaintiff grew concerned about Miles' fixation with female student workers and reported her concerns to Ausberry.[23] Miles began complaining to Plaintiff about the appearance of the female student workers, allegedly commenting that they were "too fat," "too black," "too ugly," and "looked like a bad bowling team," and ordered Plaintiff to fire them, but she refused.[24]

On November 21, 2010, Miles allegedly stated in a staff meeting that he had "ugly girls here," and Plaintiff reported Miles' statements to Ausberry, who took no action.[25] Sometime in 2010, Miles began labeling female student workers as "AM girls and PM girls," with AM girls doing solely in-office work and the PM girls, being the "pretty" ones—

---

[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.* at ¶ 32.
[20] *Id.* at ¶ 31.
[21] *Id.* at ¶ 34.
[22] *Id.* at ¶ 35.
[23] *Id.* at ¶ 35.
[24] *Id.* at ¶ 36.
[25] *Id.* at ¶ 37.

the "ones people like to look at and we need to use for recruiting events."[26] Miles also directed Plaintiff to hire "blondes with big boobs."[27] Plaintiff again complained to Ausberry, who told Plaintiff she was making too big of a deal out of Miles' comments.[28] In addition, Frank Wilson directed certain individuals in the Athletics Department to tell Plaintiff "to hire prettier girls, more light skinned black girls and that would stop Miles from bullying Plaintiff."[29] Plaintiff also complained to Bo Bahnsen, Senior Associate Athletic Director, about Miles' comments and Bahnsen told Plaintiff that it was possibly time for her to look for a new job.[30]

After LSU lost the 2011 National Championship game, Plaintiff alleges Miles' fixation with female student workers "grew to an obsession," and he complained to Plaintiff about "ugly," "fat," and "black" female student workers and again directed Plaintiff to hire "blonde girls with big boobs."[31] Plaintiff reported Miles' "sexist and racist comments" to her supervisors, but nothing was done.[32]

Sometime in 2012, Plaintiff was informed that Miles had stated he would take over interviewing and hiring female student workers.[33] Miles directed that the interviews take place in his office at night and requested Plaintiff to set up the interviews; Plaintiff complained that doing so would be inappropriate.[34] Nevertheless, Miles began interviewing female student workers in his office at night and also went to sorority houses to recruit female student workers.[35] Several of the girls interviewed by Miles complained

---

[26] *Id.* at ¶ 38.
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.* at ¶ 39.
[32] *Id.*
[33] *Id.* at ¶ 40.
[34] *Id.*
[35] *Id.* at ¶ 40.

to Plaintiff that Miles had asked about their sex lives, even allegedly asking one girl if she was a virgin.[36] Plaintiff reported Miles' behavior to Ausberry and Segar.[37] Ausberry told Plaintiff if she "did not like it here, leave."[38] Plaintiff alleges her superiors became hesitant to meet with her after she reported Miles' "sexist and racist comments."[39]

Plaintiff alleges that, in 2009, she began complaining to her immediate supervisors that Miles was sexually harassing female student workers, and subjecting Plaintiff and African American student workers to racist insults, but that no action was taken to investigate or discipline Miles.[40] In 2013, two female student workers ("Students 1 and 2") notified Plaintiff about Miles engaging in inappropriate behavior, and Plaintiff reported the complaints to Segar.[41] In 2015, Plaintiff filed a complaint with Segar against Ausberry for verbal harassment, emotional abuse, belittling, and open humiliation.[42] Sometime in 2016, Plaintiff filed a complaint with Segar concerning a third student.[43] In the fall of 2016, a fourth student reported misconduct on the part of a football player who was involved in a drink tossing incident at a local bar, and Plaintiff reported the complaint to Segar.[44] Around May of 2016, Plaintiff received a report involving a fifth student worker who complained that Earl Chevalier, a member of the Athletics Department coaching staff, was seeking to date or otherwise pursue an inappropriate relationship with the student worker.[45] Plaintiff reported the complaint from the fifth student to Segar.[46] In

---

[36] *Id.* at ¶ 41.
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.* at ¶ 73.
[41] *See id.* at ¶ 74-75.
[42] *Id.* at ¶ 77.
[43] *Id.*
[44] *Id.* at ¶ 80.
[45] *Id.* at ¶ 81.
[46] *Id.*

2017, Plaintiff received two additional reports of Title IX misconduct from student workers, and reported both complaints to Segar.[47] In 2017, Plaintiff received another Title IX report from a student worker and reported that complaint to Segar, as well.[48]

Once Miles was cleared of any wrongdoing in May of 2013, Plaintiff alleges he began to retaliate against her for reporting the complaints of Student 1 and Student 2 against him.[49] Plaintiff alleges Miles left her off of recruiting emails and excluded her from recruiting meetings.[50] In addition, Plaintiff alleges the Athletics Department restructured her position so that Miles controlled her pay raises.[51] When Miles granted pay raises to other members of the Athletics Department staff, Plaintiff asked Miles why she was not included in the pay raises, and Miles allegedly told Plaintiff her pay increase was dependent on "how the girls looked."[52] Plaintiff further alleges sometimes in 2013, Miles threatened to punch her "in her motherf****** mouth."[53] Plaintiff alleges in 2013, she was sent admonishment letters by the Athletics Department for recruiting violations she did not commit and was not aware of, and that she was written up for NCAA violations by Athletics Department officials for violations she did not commit and was not aware of.[54]

Plaintiff alleges that from some time in 2012 to present, "Ausberry has continually and systematically retaliated against Plaintiff for continually bringing Title IX violations to his attention."[55] Plaintiff alleges Ausberry routinely screamed at and belittled her in front of others, and called her a "stupid incompetent bitch" during a meeting attended by

---

[47] *Id.* at ¶ 82-83.
[48] *Id.* at ¶ 84.
[49] *Id.* at ¶ 87.
[50] *Id.* at ¶ 87.
[51] *Id.* at ¶ 88.
[52] *Id.*
[53] *Id.* at ¶ 89.
[54] *Id.* at ¶ 90.
[55] *Id.* at ¶ 93.

Athletics Department staff members.[56] Plaintiff alleges she made numerous complaints about Ausberry to Segar and that she was told to "stop being emotional and defensive."[57] In 2019, Plaintiff alleges she was denied the same athletic gear as other Athletic Department staff members despite being told she would receive the gear at the time of her promotion in 2007.[58] Plaintiff alleges that, as a result of being subjected to a continuing pattern of retaliation and a hostile work environment, she suffered a mental breakdown and underwent treatment in 2013.[59] Plaintiff further alleges she continues to seek mental health support to "cope with continued retaliation and harassment she is subjected to for bringing Title IX violations to the attention of her supervisors."[60]

Plaintiff alleges as a result of her filing Title IX complaints against Miles and other Senior Athletics Department officials, LSU has repeatedly refused to promote her from 2013 to present.[61] In 2020, when Plaintiff complained to Ausberry about not being promoted, he told her she was not being promoted because she uses "the word Title IX too much" and "people are afraid" of her, and that she would never be promoted because she "file[s] Title IX complaints."[62] Plaintiff further alleges from 2013 to present she received significantly lower compensation than her similarly situated male co-workers.[63] Plaintiff alleges in 2020, she was promoted to Associate Athletic Director of Football Recruiting and Alumni Relations but "received no increase in pay although her responsibilities were increased."[64] Plaintiff alleges from 2013 to present, she was "denied

---

[56] *Id.*
[57] *Id.* at ¶ 94.
[58] *Id.* at ¶ 97.
[59] *Id.* at ¶ 99.
[60] *Id.*
[61] *Id.* at ¶ 101.
[62] *Id.*
[63] *Id.* at ¶ 102.
[64] *Id.*

access to resources and support of administrative staff and subjected to repeated disciplinary actions because of her repeated complaints of Title IX violations in the Athletics Department."[65] Plaintiff also alleges on October 1, 2018, LSU opened a PM-73 (Title IX) investigation against her for failure to report a Title IX complaint, and that she was subsequently found to have violated LSU's Title IX and Sexual Misconduct Policy.[66] Plaintiff appealed the decision to Human Recourses and was told the decision was "found to be reversed but Plaintiff has never received any written confirmation" of the reversal and "the PM-73 (Title IX) violation wrongfully remains in her personnel file."[67]

On April 8, 2021, Plaintiff filed her original complaint.[68] On May 5, 2021, Plaintiff filed her first amended complaint.[69] Plaintiff's first amended complaint alleges, *inter alia*, claims under Title IX of the Education Amendments of 1972 against the LSU and the Board of Supervisors.[70] On August 4, 2021, the LSU Defendants filed a motion to dismiss Plaintiff's claims, including Plaintiff's Title IX claims against the LSU Defendants to the extent they are based on events that occurred before April 8, 2020.[71] On August 26, 2021, Plaintiff filed an opposition to the LSU Defendants' motion to dismiss.[72]

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle

---

[65] *Id.* at ¶ 103.
[66] *Id.* at ¶ 104.
[67] *Id.*
[68] R. Doc. 1.
[69] R. Doc. 8.
[70] *See id.* As discussed above, Plaintiff voluntarily dismissed her Title IX claims against all defendants other than LSU and the Board of Supervisors of LSU.
[71] R. Doc. 71.
[72] R. Doc. 96.

him to relief.[73] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[74] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[75] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[76] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[77]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[78] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]'—that the pleader is entitled to relief."[79] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[80]

## LAW AND ANALYSIS

### Plaintiff's Title IX claims against LSU are dismissed because LSU is not a proper party-defendant.

In their motion to dismiss, the LSU Defendants seek "a full dismissal of LSU" because "LSU is not a proper party defendant for any claim."[81] The LSU Defendants argue

---

[73] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[74] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[75] *Id.*
[76] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[77] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[78] *Twombly*, 550 U.S. at 555.
[79] *Id.* (quoting FED. R. CIV. P. 8(a)(2)).
[80] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).
[81] R. Doc. 71-1 at p. 1 n.1.

Louisiana law does not grant LSU the capacity to sue or be sued and that the Board of Supervisors exercises "all governance over the rights and property of LSU, and the Board, not LSU, is empowered to sue and be sued."[82] The LSU Defendants argue LSU is not a proper party defendant under Federal Rule of Civil Procedure 17(b)(3) because LSU lacks the capacity to sue or be sued.[83] In her opposition, Plaintiff argues LSU is a proper party defendant with respect to her Title IX claims.[84] Plaintiff argues state recipients of Title IX funding "waive their Eleventh Amendment immunity against suits alleging sex discrimination."[85]

Federal Rule of Civil Procedure 17(b) provides as follows:

(b) Capacity to Sue or Be Sued. Capacity to sue or be sued is determined as follows:

(1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile;

(2) for a corporation, by the law under which it was organized; and

(3) for all other parties, by the law of the state where the court is located, except that:

(A) a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws; and

(B) 28 U.S.C. §§ 754 and 959(a) govern the capacity of a receiver appointed by a United States court to sue or be sued in a United States court.[86]

Under Rule 17(b)(3), an entity's capacity to sue or be sued is determined by the law of the

---

[82] R. Doc, 71-1 at p. 2.
[83] *Id.*
[84] R. Doc. 96 at p. 3.
[85] *Id.*
[86] Fed. R. Civ. P. 17(b).

state in which the district court is located.[87] In this case, LSU's capacity to be sued is determined by Louisiana law. The Constitution of the State of Louisiana creates the Board of Supervisors of LSU and provides the Board of Supervisors "shall supervise and manage" the LSU system.[88] The underlying statutory authority for the LSU system states the LSU system is "composed of institutions under the supervision and management of the Board of Supervisors" of LSU.[89] Under Louisiana law, the Board of Supervisors is vested with all powers "necessary to supervise and manage the day-to-day operations" of LSU, including the authority to "[s]ue and be sued."[90] In *Delahoussaye v. City of New Iberia*, the Fifth Circuit ruled that "the [University of Southwestern Louisiana] Board has the right to sue and be sued in its own name, [but] the University does not."[91] Similarly, in *EEOC v. Univ. of Louisiana at Monro*e, the EEOC filed suit on behalf of Van McGraw against the University of Louisiana at Monroe ("ULM") for employment discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA").[92] ULM filed a motion to dismiss, arguing ULM lacks the capacity to be sued because it is not a juridical person and that the Board of Trustees for State Colleges and Universities is the proper party defendant.[93] The court granted ULM's motion, finding ULM lacked the capacity to be sued, and, as a result, was not a proper defendant.[94] Just as with the University of Louisiana System, the LSU Board of Supervisors, and not LSU, is the proper party defendant.

---

[87] *Lancaster v. Harris Cty.*, 821 F. App'x 267, 271 (5th Cir. 2020).
[88] La. Const. Ann. art. VIII, § 7. (A).
[89] La. Stat. Ann. § 17:3215.
[90] La. Stat. Ann. § 17:3351.A.
[91] *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 148 (5th Cir. 1991). The University of Southwestern Louisiana is now known as the University of Louisiana at Lafayette ("ULL").
[92] *EEOC v. Univ. of Louisiana at Monroe,* No. CV 05-1158, 2006 WL 8442630, at *1 (W.D. La. Mar. 17, 2006), report and recommendation adopted, No. CV 05-1158, 2006 WL 8442631 (W.D. La. May 5, 2006).
[93] *Id.*
[94] *Id.* at *2. ULL and ULM are part of the University of Louisiana System. La. R.S. § 17:3217(7), (8).

Under Louisiana law, LSU lacks capacity to be sued and, therefore, is not a proper party defendant in this case. The motion to dismiss LSU is granted.[95]

**Plaintiff's Title IX retaliation claims against the Board of Supervisors based on actions that occurred before April 8, 2020 are prescribed.**

With respect to Plaintiff's Title IX retaliation claims against the Board of Supervisors, the LSU Defendants argue "many of the employment actions Plaintiff alleges under Title IX are untimely and must be dismissed."[96] Specifically, the LSU Defendants argue that claims under Title IX are "subject to Louisiana's one year prescriptive period for personal injury actions," and that such claims accrue when the plaintiff knows or has reason to know of the injury giving rise to the claim.[97] The LSU Defendants further argue the continuing violations doctrine does not apply to employment retaliation because retaliation is a "one-time employment event" and, therefore, a plaintiff may only recover for unlawful employment retaliation to the extent the retaliatory event occurred within the one-year limitations period.[98] The LSU Defendants argue any retaliatory events predating April 8, 2020, are time-barred because Plaintiff's original complaint was filed on April 8, 2021.[99]

In her opposition, Plaintiff argues her Title IX retaliation claims are not time barred.[100] Plaintiff states she suffered a nervous breakdown in 2013, was hospitalized, and remains "under the care of mental health professionals to this day."[101] Plaintiff argues her mental incapacity during this period "prevented her from pursuing her Title IX claims."[102]

---

[95] For these same reasons, Plaintiff's claims under 42 U.S.C. § 1981 against LSU also are dismissed.
[96] R. Doc. 71-1 at p. 21.
[97] *Id.* at p. 20-21.
[98] *Id.* at p. 21.
[99] *Id.*
[100] R. Doc. 96 at p. 20.
[101] *Id.*
[102] *Id.*

In her amended complaint, Plaintiff alleges that, "as a result of being subjected to a continuing pattern of retaliation and [to a] hostile work environment" she suffered a mental breakdown in 2013 and underwent treatment.[103] Plaintiff further alleges she "continues to seek mental health support to cope with the continued retaliation and harassment she is subjected to for bringing Title IX violations to the attention of her superiors.[104] Plaintiff argues that, as a result, the limitations period was equitably tolled during her period of mental incapacity.[105]

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."[106] Title IX claims are subject to state statutes of limitations for personal injury actions.[107] Under Louisiana Civil Code article 3492, the prescriptive period for personal injury actions is one year.[108] "Absent tolling, the limitations period runs from the moment a plaintiff's claim 'accrues,' and while we borrow the limitations period from state law, 'the particular accrual date of a federal cause of action is a matter of federal law.'"[109] The Fifth Circuit has held that, under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury giving rise to the claim—that is, the limitations period begins to run the moment the plaintiff becomes aware that she has suffered an injury or otherwise obtains sufficient information to know

---

[103] R. Doc. 8 at ¶ 99.
[104] *Id.*
[105] R. Doc. 96 at p. 20.
[106] *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015) (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir.2003)).
[107] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583 (5th Cir. 2020); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015); *Griffin v. Round Rock Indep. Sch. Dist.*, 82 F.3d 414, 1996 WL 166999, at *1 (5th Cir. 1996) (unpublished per curiam).
[108] La. C. C. art. 3492.
[109] *King-White*, 803 F.3d at 762. (quoting *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir.2011)).

that she has been injured.[110] Plaintiff bears the burden of showing that this case presents a rare and exceptional circumstance in which equitable tolling applies.[111]

In her amended complaint, Plaintiff asserts Title IX retaliation claims against the LSU Board of Supervisors arising out of the following events: denial of promotions from 2013 to present; denial of access to resources and administrative support staff from 2013 to present; subjection to repeated disciplinary actions; subjection to a retaliatory investigation on October 1, 2018; and receipt of significantly lower compensation than her male counterparts from 2013 to present.[112]

There is no allegation in Plaintiff's amended complaint that she was unaware of the alleged retaliatory acts against her at the time each retaliatory act occurred. On the contrary, it is apparent from the allegations in Plaintiff's amended complaint she was well aware of the alleged retaliatory acts.[113] As a result, the prescriptive period for each of Plaintiff's claims began to run on the date the underlying retaliatory action occurred, that is, on the date Plaintiff's injuries were sustained. Plaintiff filed her original complaint on April 8, 2021.[114] All of Plaintiff's Title IX claims arising out of retaliatory events occurring prior to April 8, 2020 are prescribed unless equitable tolling applies.

In *Chappell v. Emco Machine Works Co.*, the Fifth Circuit listed the three possible bases for equitable tolling of a limitations period: (1) the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of the facts giving rise to the

---

[110] *King-White*, 803 F.3d at 762.
[111] *Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999). *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002) (quoting *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998)).
[112] *See* R. Doc. 8 at ¶ 101-105.
[113] For example, when Plaintiff did not receive certain athletic gear, she complained; when Plaintiff was not promoted by Miles along with other Athletics Department staff, she confronted Miles; Plaintiff appealed the result of the alleged retaliatory PM-73 investigation. In addition, employees of LSU's Athletics Department are public employees and salary information is available online, and that information, as well as Plaintiff's own pay checks, would have provided her awareness of her unfair wages claim.
[114] *See* R. Doc. 1.

claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of her rights under Title VII.[115] While the Fifth Circuit has "opined that there may be other bases that warrant equitable tolling,"[116] no other such basis has been officially recognized. Plaintiff does not rely on any of three above-listed bases for tolling. Instead, Plaintiff asks the Court to recognize a fourth equitable tolling category—namely, mental incapacity preventing an individual from pursuing her legal rights.[117]

In *Hood v. Sears Roebuck & Co.*, the plaintiff urged the Fifth Circuit to adopt the traditional rule of equitable tolling for mental illness, which provides that mental illness or incapacity tolls a statute of limitations if the mental illness or incapacity "'prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them.'"[118] Similar to Plaintiff in the instant case, the plaintiff in *Hood* argued equitable tolling should apply because her mental incapacity rendered her unable to pursue her rights.[119] The Fifth Circuit affirmed the district court as to its rejection of the plaintiff's equitable tolling argument, and as to its finding the plaintiff's Title VII claims were barred because the EEOC charge was untimely filed.[120]

---

[115] 601 F.2d 1295, 1302-03 (5th Cir. 1979). *See Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 644 (5th Cir. 1988)(listing the three potential bases for equitable tolling); *see also Manning v. Chevron Chemical Co.*, LLC, 332 F.3d 874, 880 (5th Cir. 2003)(same)*; see also Melgar v. T.B. Butler Publishing Co., Inc.*, 931 F.3d 375 (5th Cir. 2019)(same).

[116] *Melgar*, 931 F.3d at 381 (citing *Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999)). *Blumberg v. HCA Mgmt. Co*., 848 F.2d 642, 644–645 (5th Cir. 1988).

[117] R. Doc. 96 at p. 20.

[118] *Hood*, 168 F.3d at 232–33 (quoting *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996)).

[119] *Id.*

[120] *Hood*, 168 F.3d at 232. A Title VII claimant must file charges with the EEOC within 180 days after the alleged illegal conduct. The 180-day period for an employee to file a charge with the EEOC operates as a statute of limitations, and, as such, is subject to equitable tolling. *See Zipes v. Trans World Airlines, Inc*., 455 U.S. 385, 393 (1982); *see also Blumberg v. HCA Management Co*., 848 F.2d 642, 644 (5th Cir. 1988); *Kerver v. Exxon Prod. Rsch.* Co., No. CIV.A. H-85-1525, 1986 WL 8872, at *1 (S.D. Tex. May 15, 1986) (stating that the time period for filing an EEOC charge "is in the nature of a statute of limitations and is thus subject to equitable tolling."), *aff'd sub nom*., *Kerver v. Exxon Prod. Rsch*., 810 F.2d 196 (5th Cir. 1987).

In response to the *Hood* plaintiff's request that the court adopt mental incapacity as a fourth basis for equitable tolling, the Fifth Circuit declined to rule on the issue, concluding that, even assuming the correctness of the approach advocated by the plaintiff, equitable tolling was inapplicable.[121] The Fifth Circuit noted that:

> As in *Kerver v. Exxon Production Research Company*, . . . our decision makes unnecessary consideration of how our holding in *Quina v. Owens–Corning Fiberglas Corporation*, . . . that a barebones allegation of "emotional and mental shock" was insufficient to support equitable tolling jibes with the view that equity may necessitate tolling when the claimant is mentally incapacitated during the 180–day filing period.[122]

It must be noted that in this case the Court is not confronted with a plaintiff who has been adjudicated incompetent or otherwise institutionalized.[123] The allegations in Plaintiff's amended complaint show she continued working full-time throughout the period when she was allegedly incompetent to pursue her legal rights under Title IX.[124] Indeed, during this period Plaintiff took on increased job responsibilities.[125] The allegations in Plaintiff's amended complaint reflect that Plaintiff was functioning at a high level throughout the relevant period. Plaintiff did not allege she was mentally incompetent and unable to manage her affairs. Her allegation that she receives "ongoing mental health support" for a nervous breakdown, which occurred roughly eight years earlier, is nothing more than a "barebones allegation" of a poor mental state. Plaintiff does not sufficiently allege she was prevented "from managing [her] affairs and thus from understanding [her] legal rights and acting upon them."[126] As in *Hood* and *Kerver,* even

---

[121] *Hood*, 168 F.3d at 233.
[122] *Id.* at, 234 at n.3.
[123] *See Kerver v. Exxon Production Research Company*, 1986 WL 8872 (S.D.Tex. 1986), *aff'd*, 810 F.2d 196 (5th Cir. 1987),
[124] *See generally* R. Doc. 8 at ¶ 74-105.
[125] *Id.* at ¶ 102.
[126] *Hood*, 168 F.3d at 232–33 (quoting *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir.1996)).

if this Court were to assume the prescriptive period may be equitably tolled on account of mental incompetence, equitable tolling would not apply under the circumstances present in this case. As a result, equitable tolling does not apply, and Plaintiff's Title IX claims arising out of retaliatory events occurring before April 8, 2020 are prescribed.[127]

Finally, Plaintiff argues the Court should not decide the equitable tolling issue on a motion to dismiss.[128] Plaintiff cites the unpublished Second Circuit Court of Appeals decision in *Mandarino v. Mandarino*,[129] for the proposition that "[t]he equitable toll during periods of mental incapacity is a fact-based determination," which should be decided on summary judgment.[130] In *Mandarino*, the plaintiff alleged he was mentally incapacitated after a heroin overdose and was unable to recall certain events.[131] The district court, rejecting the plaintiff's equitable tolling argument, granted the defendants' motion to dismiss because the plaintiff had participated in two other lawsuits during the alleged period of incapacity.[132] The Second Circuit found the plaintiff should have been allowed to present "evidence demonstrating how he could have been mentally incapable of timely pursuing this action at the same time that he was able to pursue other lawsuits."[133] The Second Circuit concluded that, "*in the circumstances presented*, the District Court should not have resolved the fact-specific equitable tolling issue on defendants' motion to dismiss. *When, as here, the facts are disputed*, the best practice is

---

[127] Plaintiff does not argue the continuing violations doctrine applies to her Title IX retaliation claims. Even if she had, the defendants are correct that it does not apply. Because Plaintiff's retaliation claims focus on discrete, adverse actions, such as failure to promote and denial of resources, as opposed to "a hostile environment claim aris[ing] from the 'cumulative effect of individual acts,'" the one-year prescriptive period applies to each discrete act giving rise to Plaintiff's retaliation claim. *See Sewell v. Monroe City Sch. Bd.,* 974 F.3d 577 (5th Cir. 2020).

[128] R. Doc. 96 at p. 20.

[129] 180 F. App'x 258 (2d. Cir. 2006).

[130] *See* R. Doc. 96 at p. 20.

[131] *Mandarino*, 180 F. App'x at 259–260.

[132] *Id.* at 260.

[133] *Id.* at 261.

to analyze a question of mental incapacity in the context of summary judgment."[134] *Mandarino* is inapposite to this case. First, the Second Circuit recognizes mental incapacity as a basis for equitable tolling.[135] Second, unlike the plaintiff in *Mandarino*, Plaintiff has not alleged she was mentally incapacitated. Instead, Plaintiff alleged only that she underwent treatment for a nervous breakdown in 2013 and continues to seek mental health support.[136] Even taking Plaintiff's allegations as true, they are nevertheless insufficient as a matter of law. This Court may properly resolve the equitable tolling issue on the instant motion to dismiss, based on the insufficiency of Plaintiff's allegations.

<u>**CONCLUSION**</u>

**IT IS ORDERED** that Plaintiff Sharon Lewis's claims under Title IX and under 42 U.S.C. § 1981 against Louisiana State University are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff Sharon Lewis's Title IX claims against the Board of Supervisors of Louisiana State University based on actions that occurred before April 8, 2020 are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this 10th day of September, 2021.

*Susie Morgan*
_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[134] *Id.* (emphasis added).
[135] *Compare, Mandarino v. Mandarino*, 180 F. App'x 258, 261 (2d Cir. 2006) (stating that "mental incapacity, if satisfactorily shown, can be a proper basis for such tolling") *with Hood v. Sears Roebuck & Co.*, 168 F.3d 231 (5th Cir. 1999) (recognizing that equitable tolling based on mental incompetence has not been officially adopted in the Fifth Circuit).
[136] R. Doc. 8 at ¶ 99; R. Doc. 96 at p. 20.