UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
BATON ROUGE DIVISION

SHARON LEWIS                                          Civil Action No: 21-198-BAJ-RLB

Plaintiff

V.

BOARD OF SUPERVISORS OF LOUISIANA
STATE UNIVERSITY ET. AL.

Defendant

MEMORANDUM IN OPPOSITION TO ROBERT BARTON,
VICKI CROCHET AND SHELBY McKENZIE'S MOTION FOR
RULE 11 SANCTIONS

**MAY IT PLEASE THE COURT:**

NOW INTO THE COURT comes plaintiff Sharon Lewis who opposes Defendants Robert "Bob" Barton (Barton), Vicki Crochet (Crochet), William Shelby McKenzie's (McKenzie) Motion For Rule 11 Sanctions for the following reasons:

Plaintiff adopts and incorporates by reference each and every argument in her Memorandums In Oppositions to Taylor Porter Defendants (Doc. No. 80 ), Edwin "Les" Miles (Doc. No. 84), Garrett "Hank" Danos, Robert "Bobby" Yarborough and Stanley Jacobs (Doc. No. 85), Miriam Segar (Doc. No.86), William Jenkins (Doc. No. 90), James Williams, Mary Leach Werner and Louisiana State University Board of Supervisors (Doc. No. 96), Verge Ausberry (Doc. No. 97 ), Scott Woodward (Doc. No. 102) Motions To Dismiss, plaintiff's First RICO Case statement (Doc. No. 45 ) and plaintiff's Motion To Leave To File Second Amended Complaint (Doc. No. 112 ) in support of this Memorandum in Opposition to Taylor Porter Defendants Motion For Sanctions.

1

I.      INTRODUCTION

On April 8, 2021 plaintiff filed an Original Complaint (Doc. No.1) naming the law firm Taylor Porter Brooks & Phillips LLC, Robert Barton, Vicki Crochet and Shelby McKenzie as defendants in her RICO Claims. Plaintiff attached to her Original Complaint (3) three exhibits: (1) Husch Blackwell Report (Doc. No.8-1 ); (2) Miles Report (Doc. No. 8-2, 8-3); and Taylor Porter's Billing Records (Doc. No., 8-4, 8-5, 8-6 ) in support of her RICO claims. Additionally plaintiff's Original Complaint cites RICO Defendant Stanley Jacobs' comments in *Sports Illustrated* that Crochet, Barton and McKenzie demanded he and several other RICO Defendants keep the Title IX investigation of Les Miles secret from the full Board of Supervisors.

On May 5, 2021 Plaintiff filed her First Amended Complaint (Doc. No. 8 ) and attached the Husch Blackwell Report, Miles Report, Taylor Porter's Billing Records and Exhibit J of the Husch Blackwell Report (Doc. No. 8-7) as exhibits in support of her RICO claims. Plaintiff's First Amended Complaint cite statements of LSU officials in multiple local and national news publications that support her RICO claims.

On August 6, 2021 plaintiff filed a voluntary dismissal with prejudice of the law firm Taylor Porter Brooks & Phillips LLC (Doc. No. 74) as a RICO Defendant. On August 9, 2021 the court granted the motion and dismissed the law firm (Doc. No. 77). On September 15, 2021 plaintiff filed a Motion To Leave to File a Second Amended Complaint and First Amended RICO Case Statement (Doc. No. 112). On September 17, 2021 Crochet, Barton and McKenzie filed a Motion For Rule 11 Sanctions against plaintiff and her attorneys (Doc. No. 116). On September 23, 2021 plaintiff filed a voluntary dismissal without prejudice as to F. King Alexander as a RICO Defendant (Doc. No. 120). On September 23, 2021 the court granted plaintiff's motion and dismissed F. King Alexander as a defendant in the RICO case without

prejudice (Doc. No. 121).

Plaintiff's counsels have endeavored to source each and every claim and argument in multiple pleadings filed in this case. Plaintiff's counsels have voluntarily dismissed defendants as dictated by their ongoing review of facts, law and understanding of the case. Plaintiff has further moved to amend her pleadings in the early stages, so as not to waste the court's time and resources and not prejudice defendants.

> <u>Taylor Porter's law firm, Crochet, Barton and McKenzie are using Rule 11
> to threaten, harass and intimidate plaintiff and her legal counsels.</u>

Taylor Porter Defendants and their legal counsels at the initiation of these proceedings, without any basis in fact or law, threatened to file Rule 11 sanctions against plaintiff.[1] Taylor Porter Defendants counsels refused to offer plaintiff's counsels the professional courtesy of requesting whether they opposed motions they were bringing before the court.[2] Taylor Porter Defendants legal counsels engaged in ex-parte communications with the court's Legal Clerk.[3] Taylor Porter Defendants and their counsels filed their motion for sanctions three (3) days after plaintiff filed a motion to leave to file a Second Amended Complaint and First Amended RICO statement. Taylor Porter Defendants filed motion for sanctions although the court has yet to rule on their motion to dismiss (Doc. No. 60).

The filing of this frivolous motion for sanctions against plaintiff and her legal counsels was done for the sole purpose to intimidate and harass plaintiff into dropping her RICO claims, delay these proceedings and drive up her litigation cost. Therefore, for the following reasons, Vicki

---

[1] Doc. No. 6-1, Fn. 1
[2] Doc. No. 34
[3] Id.

3

Crochet, Robert Barton and William Shelby McKenzie's motion for sanctions should be denied and they be directed to reimburse plaintiff's legal counsels for the time and expenses they incurred in defending this frivolous motion for sanctions:

**II.    LAW AND ARGUMENTS**

   A.  Rule 11 Sanctions

Rule 11(b) of the Federal Rules of Civil Procedure provides, in pertinent part:
By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances:

  (1) it is not being presented for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation;

  (2) the claims, defenses and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law; [and]

  (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

The goal of Rule 11 is to "impose a duty to base claims upon factually and legally supportable grounds and to punish litigants and lawyers who unreasonably pursue frivolous suits." *FDIC v. Calhoun*, 34 F.3d 1291, 1296 (5th Cir. 1994). In assessing a litigant's conduct, the Court considers whether the lawyer's certification that she has complied with Rule 11(b) is

4

objectively reasonable under the circumstances and whether the filing was submitted for an improper purpose. *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 805 (5th Cir. 2003). The party moving for sanctions bears the burden to overcome the presumption that pleadings are filed in good faith. *Tompkins v. Cyr*, 202 F.3d 770, 788 (5th Cir. 2000).

When pre-filing conduct is in issue, the Fifth Circuit has identified a number of factors that should be considered in determining whether an attorney made a reasonable inquiry into the law or the facts, including: (1) the time available for investigation; (2) the extent to which the attorney relied on his client for factual support; (3) the feasibility of conducting a pre-filing investigation; (4) whether the attorney accepted the case from another attorney; (5) the extent development of the facts underlying the claim requires additional discovery; (6) the complexity of the factual and legal issues involved; (7) the plausibility of the legal view espoused; and (8) the litigant's pro se status. *Thomas v. Cap. Sec. Servs.*, 836 F.2d 866, 875–76 (5th Cir. 1988) (en banc); see *Childs v. State Farm Mut. Auto. Ins*. Co., 29 F.3d 1018, 1026 (5th Cir. 1994).

B. Arguments

<u>Barton, Crochet and McKenzie's motion for sanctions is frivolous and in bad faith</u>.

Barton, Crochet and McKenzie contend they are entitled to sanctions and plaintiff and her counsels should suffer the ultimate reprimand because plaintiff failed to conduct pre-filing investigation.  However Taylor Porter Defendants motion for sanctions fail to overcome the presumption that plaintiff's  pleadings were filed in good faith. *Tompkins v. Cyr*, 788. Therefore for the following reasons Taylor Porter Defendants motion for sanctions is frivolous and in bad faith and should be dismissed:

5

Plaintiff Pre-Filing Investigation

Before plaintiff filed her First Amended Complaint, plaintiff and her legal counsel reviewed (1) The Husch Blackwell Report; (2) The Miles Report; (3) Taylor Porter's Billing Records; (4) Investigations published in local and national media; (4) Judicial proceedings in the 19th JDC East Baton Rouge; and (5) Louisiana State Senate Select Committee on Women and Children Hearings. A summary of the review found:

### Husch Blackwell Report

Husch Blackwell law firm was hired by LSU to conduct an independent investigation of LSU's handling of Title IX complaints against coaches and star athletes and it concluded the following about Taylor Porter Defendants being designated as Title IX investigators of Les Miles sexual misconduct:

> " *This designation raises conflicts of interest concerns as it is not clear how the firm could have been neutral in the investigation. There was also no provision in the applicable Title IX policy for these sorts of investigations to be outsourced to third parties.*"[4]

> " *LSU outside counsel ultimately concluded that Student's 2 allegations, even if true, would not constitute prohibited sexual harassment under applicate law. We disagree.*"[5]

> The Miles Investigation and others were was not handled "*in a manner consistent with then-existing legal guidance, well recognized best practices, and institutional policy*."[6]

---

[4] Doc. No. 8-1, p. 51 ¶1
[5] Doc. No. 8-1, p. 51 ¶4
[6] Doc. No. 8-1, p. 49 ¶4

### Miles Report

After conducting a Title IX investigation of Les Miles, Crochet and Barton issued a written report and the pertinent part stated:

> *"Following a comprehensive discussion of the attachments, all copies of the attachment were returned to Taylor Porter to maintain in its file."*[7]
>
> *"After review and discussion of the investigation, those present agreed to and **accepted findings and recommendation of counsel**... Also those present agreed that this was an appropriate administrative action that should be taken without further review by the full board.*[8]
>
> *"The original and all copies of this letter will be maintained in the files of your law offices and undersigned counsel's law offices only. Miles, his counsel, LSU and its counsel agree to keep this letter (and its contents) confidential unless compelled to divulge it by a final order of a court of competent jurisdiction: any such order shall be contested by LSU's counsel and at Miles' option, Miles' undersigned counsel. Should your office, Miles,' our office or LSU receive a public records request, subpoena, court order or another legal process seeking this document, the recipient of the request shall provide notice and a copy of the request to the other party within twenty-four (24) hours of receiving the request. **Neither you, undersigned counsel, Miles or LSU will release this document without a final order of court** of competent jurisdiction requiring such release.*[9]

### Taylor Porter's Billing Records

The Taylor Porter Billing records when read in conjunction with the Miles Report show Crochet, Barton and McKenzie executing the schemes to conceal the Miles Investigation and Miles Report from official Title IX proceedings, bribe a student from testifying against Miles in an official Title IX proceeding and Crochet, Barton and McKenzie defrauding LSU out of eighty ($80,000) thousand dollars. Furthermore, Taylor Porter's Billing Records show Crochet, Barton and McKenzie used mail and wire communications to facilitate their racketeering conduct.

---

[7] Doc. No. 8-2, p. 2 ¶2-3
[8] Id.
[9] Doc. No. 8-3, p.6 ¶5, p.7 ¶1

7

**Local and National Media Coverage**

Plaintiff in multiple pleadings cites specific statements made by RICO Defendants and LSU Officials in local and national news outlets and asked the court to take judicial notice in support of her RICO Claims.

**Judicial Proceedings**

Plaintiff reviewed *Kenny Jacoby v. Galligan*, Suit No. 703746, 19th JDC Parish of East Baton Rouge and *Kenny Jacoby & S.B. v. Thomas Galligan et al* C-700649 21/D, 19th JDC Parish of East Baton Rouge, which supported plaintiff's allegations that Taylor Porter Defendants concealed the Miles Investigation in their offices for eight (8) years until forced to release them by the court.

Furthermore based on a review of the above information plaintiff determined the following undisputed facts:

a. McKenzie at various material times served as LSU's in-house legal counsel and partner at Taylor Porter and advised LSU on Title IX and legal matters;[10]

b. Crochet, at various material times advised LSU's Athletic Department on Title IX and legal matters;[11]

c. Barton at various material times advised LSU's Athletic Department on Title IX and legal matters;[12]

d. Crochet and Robert Barton were at all material times during the Miles Investigation

---

[10] Doc. No. 8-1
[11] Id.
[12] Id.

8

conducting an investigation in an official Title IX proceeding;[13]

e. McKenzie at all material times during the Miles Investigation served a dual role as LSU's General Counsel and a partner at Taylor Porter;[14]

f. On May 15, 2013 Danos, Yarborough, Jacobs McKenzie, Alleva, Segar, Crochet and Barton met to discuss the Miles Report and accepted the recommendation of Barton and Crochet not to take any action against Miles and not to inform the full Board of Supervisors and agreed to conceal the Miles Investigation from an official Title IX proceeding;[15]

g. At the May 15, 2013 meeting, Barton, Crochet, McKenzie, Miles, Danos, Yarborough, Jacobs, Jenkins, Alleva and Segar agreed Crochet and Barton would conceal the Miles Report in their offices off campus away from public documents request and an official Title IX proceeding;[16]

h. On April 29, 2013 Miles, Ginsberg, Hardin, Barton, Crochet and Alleva agreed to conceal the Miles Report in Ginsberg, Hardin, Barton and Crochet's offices off campus away from public documents request and an official Title IX proceeding;[17]

i. Ginsberg, Hardin, Crochet and Barton concealed the Miles Report in their law offices from 2013 to 2021, until they were forced to release it by the court;[18]

j. On or about July 1, 2013 Ginsberg, Complainant Student and her attorney travelled to New Orleans to meet Vicki Crochet and Bob Barton to discuss her Title IX complaint against Les Miles;[19]

---

[13] Id.
[14] Id.
[15] Doc. No. 8-2
[16] Id.
[17] Doc. No. 8-3
[18] Doc. No. 8-1; Doc. No. 8 ¶ 161
[19] Doc. No., 8-4, 8-5, 8-6

9

k. Miles reached a private settlement with student;[20]

l. Taylor Porter's Billing Records time entries show Crochet, Barton and McKenzie participating in and directing (1) concealment of the Miles Investigation, (2) bribing a student to drop her complaint against Miles and (3) defrauding LSU out of eighty ($80,000) thousand dollars;[21] and

m. LSU terminated its relationship with Taylor Porter after eighty (80) years after the release of the Husch Blackwell Report;[22]

In addition to the above undisputed facts plaintiff in multiple filings have shown there exists a significant volume of highly relevant evidence in the public record, as many of the individual defendants named in her complaint have been fired, suspended and/or been reprimanded and individual RICO Defendants have been quoted in local and national media outlets pointing the finger at other individual RICO defendants in order to absolve themselves from public blame. Numerous LSU officials have appeared under oath in the Louisiana Senate Select Committee on Women and Children and acknowledged many of the facts in plaintiff's complaint.

A reasonable attorney reviewing the record and local and national media coverage would conclude Crochet, Barton, and McKenzie formed a criminal enterprise with other RICO Defendants to conceal the Miles Title IX investigation and Miles Report from an official Title IX proceeding; the meeting in New Orleans with complainant student was to dissuade her from testifying against Miles in official Title IX proceedings; Crochet, Barton and McKenzie fraudulently billed LSU for carrying out their racketeering conduct; at all material times Crochet, Barton, and McKenzie participated in the operation and management of the criminal enterprise

---

[20] Doc. No. 8 ¶¶144 – 146; Id.
[21] Doc. No., 8-4, 8-5, 8-6
[22] Doc. No. 8 ¶ 150

and violated *18 U.S.C. § 1512 (b )(1), 18 U.S.C. § 1512 (b )( (2 ) (A), U.S.C. § 1512 (c) (2), 18 U.S.C. § 1512 (K)* and *18 U.S.C. § 1951.* Therefore, a reasonable attorney reviewing would conclude Crochet, Barton, and McKenzie violated *18 U.S.C. § 1962 (c)* and *18 U.S.C. § 1962 (d)*

### The Court's granting of plaintiff's motion to leave to file a Second Amended Complaint would render Taylor Porter Defendants motion for sanctions moot.

Plaintiff's Motion To Leave to File Second Amended Complaint and First Amended RICO case statement, if granted, renders Taylor Porter Defendants Motion for Sanctions moot. Although plaintiff's motion to leave to file a Second Amended Complaint is pending before the court, Taylor Porter Defendants nevertheless filed a motion for sanctions based on plaintiff's First Amended Complaint. An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading. *Canal Ins. Co. v. Coleman*, 625 F.3d 244, 246 n.2 (5th Cir. 2010) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994)); *La. Fiber Corp. v. Fireman's Fund Ins. Co.*, 105 F.3d 655 (5th Cir. 1996). Thus, upon granting plaintiff's motion to leave to file Second Amended Complaint and First Amended RICO Case statement, Taylor Porter's motion for sanctions based on plaintiff First Amended Complaint would be moot. Therefore, Taylor Porter Defendants and their legal counsel filed this motion for sanctions for the sole purpose to harass and intimidate plaintiff into dropping her RICO Claims, delay these proceedings and to drive up her litigation cost.

### Taylor Porter Defendants motion for sanctions was filed in bad faith.

Plaintiff at this early stage of the proceedings has placed into the record an extortionary amount of evidence to support her RICO Claims. No rational attorney reviewing that evidence would believe there is anything in the record to support Taylor Porter Defendants motion for

11

sanctions. *Ind. Risk Ins. v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1448 (11th Cir. 1998), cert. denied, 525 U.S. 1068 (1999)[23].

Moreover, at the filing of their motion for sanctions Taylor Porter Defendants and legal counsel knew plaintiff's motion to leave to file a Second Amended Complaint was pending. A reasonable attorney would know based under the Federal Rules of Civil Procedure and fifth circuit precedent, only under extraordinary circumstances would plaintiff's motion to leave be denied.[24] Furthermore, Taylor Porter Defendants have a pending motion to dismiss before the court. Nevertheless, rather than wait to see if plaintiff's motion to leave would be granted/denied or their motion to dismiss would be granted/denied, Taylor Porter Defendants and their legal counsel rushed to file this motion for sanctions based on plaintiff's First Amended Complaint for the sole purpose to harass and intimidate plaintiff into dropping her RICO claims, to delay these proceedings and drive up her litigation costs.[25]

Crochet, Barton and McKenzie are partners in one of the oldest and most powerful law firms in the state of Louisiana. Plaintiff fears unless the court imposes severe monetary penalties they will continue to bring frivolous pleadings and prejudice plaintiff's ability to prosecute her claims. Therefore, Vicki Crochet, Robert Barton and William Shelby McKenzie's motions for sanctions should be denied and they and their legal counsels be ordered to reimburse plaintiff's legal fees and cost for defending this frivolous motion for sanctions.

---

[23] Frivolousness defined as having "no factual and legal support in the record"

[24] See plaintiff's memorandum in support of her motion to leave to file Second Amended Complaint.

[25] Plaintiff contends even if there was no motion to leave to amend the pending complaint, Taylor Porter Defendants motion for sanctions were nevertheless filed in bad faith and frivolous.

### III. Conclusion

For the above stated reasons, plaintiff respectfully requests Vicki Crochet, Robert Barton and William Shelby McKenzie's motions for sanctions be denied and they and their legal counsels be ordered to reimburse Plaintiff legal fees and cost for defending this frivolous Motion For Sanctions.

Respectfully submitted:

*/s/ Larry English*
Larry English, LSB No. 22772
LARRY ENGLISH, ATTORNEY AT LAW
423 W. 127 Street, 7th Floor
New York, New York 10027
917-531-3909
englishlaw2008@gmail.com

*/s/ Tammye C. Brown*
Tammye C. Brown, LSB No. 29108
CAMPBELL BROWN LAW & CONSULTING
1220 E. Northside Drive, Suite 170-176
Jackson, Mississippi 39211
601-703-8911
601-703-8999 (fax)
tbrown@campbellbrownlaw.com

*/s/ Bridget Brown*
Bridgett Brown, LSB No. 18815
BROWN & ASSOCIATES
418 DeSoto Street
Alexandria, Louisiana 71301
lawyer4u.bridgett@gmail.com

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served on all counsel of record using the Court's CM/ECF system on September 28, 2021.

*/s/ Larry English*