## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**SHARON LEWIS,**
    **Plaintiff**

**CIVIL ACTION**

**VERSUS**

**NO. 21-198-SM-RLB**

**LOUISIANA STATE UNIVERSITY, ET AL.,**
    **Defendants**

### <u>ORDER AND REASONS</u>

Before the Court is a Motion for Leave to File a Second Amended Complaint and a First Amended RICO Case Statement,[1] filed by Plaintiff Sharon Lewis.

Defendants W. Shelby McKenzie, Vicki M. Crochet, and Robert W. Barton, all partners or former partners in the law firm of Taylor, Porter, Brooks & Phillips, L.L.P. (hereinafter, collectively, the "TP Defendants"), filed an opposition.[2] Plaintiff filed a reply.[3]

Defendant F. King Alexander filed an opposition.[4] Plaintiff did not file a reply.

Defendants Board of Supervisors of Louisiana State University (the "Board"), Mary Leach Werner, and James Williams filed an opposition.[5] Plaintiff filed a reply.[6]

---

[1] R. Doc. 112. The corrected version of the proposed second amended complaint is on the record at R. Doc. 144-2.

[2] R. Doc. 125. Plaintiff filed a motion for voluntary dismissal of all claims against Taylor, Porter, Brooks & Phillips, L.L.P. R. Doc. 74. The Court granted the motion (R. Doc. 77), thereby dismissing, with prejudice, the law firm Taylor, Porter, Brooks & Phillips, L.L.P. from the case.

[3] R. Doc. 126. On October 29, 2021, the TP Defendants filed an amended opposition to Plaintiff's motion for leave. R. Doc. 150.

[4] R. Doc. 127. All claims against F. King Alexander have been dismissed. *See* R. Docs. 83, 88, 120, 121. In addition, F. King Alexander is not named as a defendant in the proposed second amended complaint. *See* R. Doc. 144-2.

[5] R. Doc. 128.

[6] R. Doc. 136.

Defendant Leslie Miles filed an opposition.[7] Plaintiff filed a reply.[8]

Defendant Miriam Segar filed an opposition.[9] Plaintiff filed a reply.[10]

Defendant William Jenkins filed an opposition.[11] Plaintiff filed a reply.[12]

Defendants Garrett Danos, Robert Yarborough, and Stanley Jacobs filed an opposition.[13] Plaintiff filed a reply.[14]

Defendant Verge Ausberry filed an opposition.[15] Plaintiff filed a reply.[16]

Defendant Scott Woodward filed an opposition.[17] Plaintiff filed a reply.[18]

Also pending before the Court are the following motions to dismiss Plaintiff's civil RICO claims.[19]

The TP Defendants filed a motion to dismiss Plaintiff's civil RICO claims for failure to state a claim.[20] Plaintiff filed an opposition.[21] The TP Defendants filed a reply.[22]

Defendant Miriam Segar filed a motion to dismiss Plaintiff's civil RICO claims for failure to state a claim.[23] Plaintiff filed an opposition.[24] Miriam Segar filed a reply.[25]

Defendant Leslie Miles filed a motion to dismiss Plaintiff's civil RICO claims for

---

[7] R. Doc. 129.
[8] R. Doc. 137. On November 3, 2021, Miles filed an amended opposition to Plaintiff's motion for leave. R. Doc. 153.
[9] R. Doc. 130.
[10] R. Doc. 140.
[11] R. Doc. 131.
[12] R. Doc. 138.
[13] R. Doc. 132.
[14] R. Doc. 142.
[15] R. Doc. 133.
[16] R. Doc. 143.
[17] R. Doc. 134.
[18] R. Doc. 139.
[19] The Court previously ruled on the Board's motion to dismiss Plaintiff's claims against the Board under Title IX, and Plaintiff's claims against Louisiana State University under 42 U.S.C. § 1981 and Title IX. *See* R. Doc. 107.
[20] R. Doc. 60.
[21] R. Doc. 80.
[22] R. Doc. 95.
[23] R. Doc. 66.
[24] R. Doc. 86.
[25] R. Doc. 108.

failure to state a claim.[26] Plaintiff filed an opposition.[27] Leslie Miles filed a reply.[28]

Defendants the Board, Mary Leach Werner, and James Williams filed a motion to dismiss Plaintiff's civil RICO claims for failure to state a claim.[29] Plaintiff filed an opposition.[30] The Board, Mary Leach Werner, and James Williams did not file a reply.

Defendants Garrett Danos, Robert Yarborough, and Stanley Jacobs filed a motion to dismiss Plaintiff's civil RICO claims for failure to state a claim.[31] Plaintiff filed an opposition.[32] Garrett Danos, Robert Yarborough, and Stanley Jacobs filed a reply.[33]

Defendant William Jenkins filed a motion to dismiss Plaintiff's civil RICO claims for failure to state a claim and for lack of subject matter jurisdiction.[34] Plaintiff filed an opposition.[35] William Jenkins filed a reply.[36]

Defendant Verge Ausberry filed a motion to dismiss Plaintiff's civil RICO claims for failure to state a claim.[37] Plaintiff filed an opposition.[38] Verge Ausberry did not file a reply.

Defendant Scott Woodward filed a motion to dismiss Plaintiff's civil RICO claims

---

[26] R. Doc. 67.

[27] R. Doc. 84.

[28] R. Doc. 99.

[29] R. Doc. 71. In their motion to dismiss, the Board, Werner, and Williams also sought dismissal of all claims against Louisiana State University, and dismissal of Plaintiff's Title IX claims against the Board based on retaliatory events predating April 8, 2020. *See id.* The motion to dismiss was granted on these issues in the Court's Order and Reasons of September 10, 2021. *See* R. Doc. 107. In addition, Plaintiff voluntarily dismissed her Title IX claims against the individual defendants, and the Board is the only remaining Title IX Defendant. *See* R. Docs. 83, 88, 101, 106.

[30] R. Doc. 96.

[31] R. Doc. 72.

[32] R. Doc. 85.

[33] R. Doc. 104.

[34] R. Doc. 76.

[35] R. Doc. 90.

[36] R. Doc. 123.

[37] R. Doc. 81.

[38] R. Doc. 97.

for failure to state a claim.[39] Plaintiff filed an opposition.[40] Scott Woodward filed a reply.[41]

At the November 12, 2021 oral argument on Plaintiff's motion for leave to amend and the Defendants' motions to dismiss, the Court allowed the parties to file supplemental memorandums addressing the statute of limitations with respect to Plaintiff's civil RICO claims.[42] Supplemental memorandums were filed by the TP Defendants,[43] Leslie Miles,[44] Plaintiff,[45] William Jenkins,[46] and Scott Woodward.[47]

## **BACKGROUND**[48]

The actions complained of by Plaintiff allegedly began in 2012 and 2013.[49] On April 8, 2021, Plaintiff filed her original complaint.[50] On April 29, 2021, the TP Defendants filed a motion to dismiss for failure to state a claim.[51] On May 5, 2021, Plaintiff filed her first amended complaint[52] as a matter of course without leave, in accordance with Federal Rule of Civil Procedure 15(a)(1). As a result, the TP Defendants' April 29, 2021 motion to dismiss was denied as moot without prejudice on May 21, 2021.[53]

Plaintiff's first amended complaint alleges the following claims:

Claims under Title IX of the Education Amendments of 1972 against the

---

[39] R. Doc. 98.
[40] R. Doc. 102.
[41] R. Doc. 118.
[42] R. Doc. 158.
[43] R. Doc. 159.
[44] R. Doc. 160.
[45] R. Doc. 161.
[46] R. Doc. 162.
[47] R. Doc. 163.
[48] The background facts, based on Plaintiff's first amended complaint (R. Doc. 8), are more extensively set forth in the Court's September 10, 2021 Order and Reasons. *See* R. Doc. 107.
[49] *See* R. Doc. 8 at ¶¶ 87–104. In her first amended complaint, Plaintiff alleges she reported complaints of Title IX violations beginning in 2009. *See id.* at ¶¶ 73–84. In her proposed second amended complaint, Plaintiff alleges the actions against her began in 2005. *See* R. Doc. 144-2 at ¶ 23.
[50] R. Doc. 1.
[51] R. Doc. 6.
[52] R. Doc. 8.
[53] R. Doc. 12.

Board;[54]

A private cause of action for damages under RICO, specifically, a substantive racketeering claim pursuant to 18 U.S.C. §1962(c),[55] and a conspiracy-to-commit racketeering claim under 18 U.S.C. § 1962(d),[56] against the individual defendants and the Board; and

Claims under 42 U.S.C. § 1981 against the Board.[57]

On May 24, 2021, the Court entered a RICO Order, requiring Plaintiff to file a RICO case statement setting forth in detail the facts relied upon by Plaintiff to support her civil RICO claims.[58] On June 8, 2021, Plaintiff filed a motion to extend the deadline for filing her RICO case statement.[59] The Court granted the motion, thereby extending the deadline for the RICO case statement to June 29, 2021.[60] Plaintiff filed her RICO case statement on June 29, 2021.[61]

All defendants other than Joseph Alleva have now filed motions to dismiss the first amended complaint,[62] and the motions are fully briefed and argued. On September 10, 2021, the Court entered an order ruling on the motion to dismiss filed by the Board, Mary Leach Werner, and James Williams,[63] insofar as the motion to dismiss sought dismissal of Plaintiff's claims against Louisiana State University and Plaintiff's claims against the

---

[54] *See* R. Doc. 8. Plaintiff voluntarily dismissed her Title IX claims against all defendants other than LSU and the Board of Supervisors of LSU. In addition, the Court dismissed LSU, as distinct from the Board of Supervisors, from all of Plaintiff's claims. *See* R. Doc. 107. Thus, the Board is the only remaining Title IX defendant.

[55] R. Doc. 8 at ¶¶ 186–187.

[56] *Id.* at ¶¶ 188–189.

[57] *Id.* at ¶¶ 191–197. In addition to the Board of Supervisors, Plaintiff also named Louisiana State University as a defendant on her § 1981 claims. On September 10, 2021, the Court entered an Order and Reasons dismissing all claims against Louisiana State University, as the University itself lacks capacity to sue or be sued. R. Doc. 107.

[58] R.Doc. 15.

[59] R. Doc. 41.

[60] R.Doc.43.

[61] R. Doc. 45.

[62] R. Docs. 60, 66, 67, 71, 72, 76, 81, and 98. Joseph Alleva is the only named defendant who has not filed a motion to dismiss. On November 26, 2021, Plaintiff filed into the record a waiver of service signed by Joseph Alleva on November 18, 2021. *See* R. Doc. 164. Joseph Alleva's answer is not yet due.

[63] R. Doc. 71.

Board under Title IX.[64] Specifically, the Court dismissed with prejudice all of Plaintiff's claims against Louisiana State University, and dismissed with prejudice Plaintiff's Title IX retaliation claims against the Board to the extent such claims are based on retaliatory events occurring before April 8, 2020.[65]

On September 15, 2021 Plaintiff filed the instant motion for leave to file a second amended complaint and first amended RICO case statement.[66] Plaintiff attached a copy of her proposed second amended complaint to her motion for leave.[67] On October 19, 2021 Plaintiff filed a motion for leave to file into the record a corrected copy of the proposed second amended complaint.[68] Plaintiff sought to file a corrected copy of the proposed second amended complaint into the record to correct two errors, namely to remove F. King Alexander as a RICO Defendant, and to correct the numbering of the paragraphs.[69] The Court granted the motion and ordered that the corrected version of the proposed second amended complaint, at R. Doc. 144-2, be substituted in the record for the proposed second amended complaint, at R. Doc. 112-3.[70]

On November 12, 2021 the Court heard oral argument on the pending motions to dismiss[71] and the pending motion for leave to amend.[72]

## **LEGAL STANDARD**

### **Amendment of Pleadings under Rule 15:**

Federal Rule of Civil Procedure 15(a) provides, in pertinent part:

(1) A party may amend its pleading once as a matter of course within:

---

[64] *See* R. Doc. 107.
[65] *See id.*
[66] R. Doc. 112.
[67] *See* R. Doc. 112-3.
[68] R. Doc. 144.
[69] *Id.*
[70] R. Doc. 146.
[71] R. Docs. 60, 66, 67, 71, 72, 76, 81, and 98.
[72] R. Doc. 112.

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.[73]

Under Rule 15(a)(2), the Court should freely grant leave to amend before trial, but only when justice so requires.[74] "[W]hen justice so requires" is not a mechanical absolute—the circumstances under which leave is to be granted are committed to the careful discretion of the trial court.[75] As recognized by the Fifth Circuit, "[d]etermining when justice requires permission to amend rests within the discretion of the trial court."[76] In exercising its discretion to grant leave to amend pleadings, the trial court is guided by underlying purpose of the applicable rule—to facilitate decision on the merits rather than on pleadings or technicalities.[77]

Leave to amend should be freely granted unless a plaintiff has acted with "undue delay, bad faith or dilatory motive" in seeking leave to amend; the plaintiff has made "repeated failure[s] to cure deficiencies by amendments previously allowed;" "undue prejudice [will result] to the opposing party by virtue of allowance of the amendment;" or the amendment would be completely futile.[78] The probability that undue delay, bad faith, undue prejudice, and futility may be playing a role becomes greater each time a complaint

---

[73] Fed. R. Civ. P. 15(a).

[74] *Id.*

[75] *Dunn v. Koehring Co.*, 546 F.2d 1193, 1198 (5th Cir.), *decision clarified on reh'g sub nom., Hyde Const. Co. v. Koehring Co.*, 551 F.2d 73 (5th Cir. 1977); *Freeman v. Cont'l Gin Co.*, 381 F.2d 459, 468 (5th Cir. 1967).

[76] *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1024 (5th Cir. 1981).

[77] *See Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).

[78] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

is amended.[79] Moreover, leave to amend should be denied if "the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so."[80] If "the plaintiffs have already alleged their best case," the trial court may deny leave to further amend.[81] Generally, courts should give plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case under Rule 12(b)(6).[82]

It is within the district court's discretion under Rule 15 to deny leave to amend if the amendment would be futile.[83] The Fifth Circuit has held futility means "the amended complaint would fail to state a claim upon which relief could be granted."[84] To determine futility, therefore, the Fifth Circuit applies "the same standard of legal sufficiency as applies under Rule 12(b)(6)."[85] To survive a Rule 12(b)(6) motion to dismiss, the complaint must state a claim for relief that is plausible on its face.[86] A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."[87] In determining whether facial plausibility is met, the court looks to the factual allegations supporting the necessary elements of the plaintiff's claim, and does not assume the truth of conclusory statements.[88] Factual assertions are presumed to be true, but "labels and conclusions" or

---

[79] *StoneEagle Servs., Inc. v. Valentine*, No. 3:12-CV-1687-P, 2013 WL 12123938, at *1 (N.D. Tex. Mar. 21, 2013).

[80] *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citing *O'Brian v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 675-76 (2d Cir. 1991)).

[81] *Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 200 (5th Cir. 2015).

[82] *Id.*

[83] *Stripling v. Jordan Prod. Co.*, LLC, 234 F.3d 863, 872–73 (5th Cir. 2000) (citing *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co.,* 195 F.3d 765, 770 (5th Cir.1999) and *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir.1994)).

[84] *Stripling*, 234 F.3d at 873.

[85] *Id.*

[86] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

[87] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly.*, 550 U.S. at 556).

[88] *Iqbal*, 556 U.S. at 679.

"a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a Rule 12(b)(6) motion.[89]

Another factor the court must weigh in determining whether to grant leave to amend is whether undue prejudice will result to the opposing party if the amendment is allowed. Undue prejudice is defined as "'improper or unfair treatment amounting to something less than irreparable harm.'"[90] District courts within the Fifth Circuit have found undue prejudice when the defendant would be forced, by virtue of the proposed amendment, to file a duplicative dispositive motion.[91]

## **Motion to Dismiss under Rule 12(b)(6).**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of her claim that would entitle her to relief.[92] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[93] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[94] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as

---

[89] *Id.* at 678.

[90] *See, e.g., Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*, No. CV H-16-02625, 2017 WL 7201927, at *2 (S.D. Tex. July 27, 2017), *aff'd*, 912 F.3d 805 (5th Cir. 2019), *as revised* (Jan. 29, 2019), *as revised* (Feb. 14, 2019) (*quoting Barrett v. Wilson*, No. 4:11-CV-02852, 2011 WL 13134638, at *3 (S.D. Tex. Aug. 15, 2011)) (internal quotations omitted).

[91] *See, e.g., Springboards*, 2017 WL 7201927, at *2; *Nowell v. Coastal Bend Surgery Ctr.*, No. C-10-205, 2011 WL 338821, at *8 (S.D. Tex. Feb. 2, 2011).

[92] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

[93] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

[94] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556.

factual conclusions will not suffice to prevent a motion to dismiss."[95] "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[96]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[97] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."[98] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[99]

## I.    SUBJECT MATTER JURISDICTION

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims."[100] Under Federal Rule of Civil Procedure 12(h)(3), this Court *sua sponte* may raise the issue of subject matter jurisdiction.[101] "Eleventh amendment immunity is a jurisdictional issue that cannot be ignored, for a meritorious claim to that immunity deprives the court of subject matter jurisdiction of the action."[102]

### A.    The Court lacks subject matter jurisdiction over Plaintiff's claims for damages and prospective relief against the Board of Supervisors under civil RICO and under 42 U.S.C. §§ 1981 and 1983.

In her first amended complaint, Plaintiff brings several claims against the Board,

---

[95] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[96] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[97] *Twombly*, 550 U.S. at 555.
[98] *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (internal quotations omitted).
[99] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam).
[100] *In re FEMA Trailer Formaldehyde Products Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012).
[101] *See* Fed. R. Civ. P. 12(h)(3).
[102] *Burge v. Par. of St. Tammany*, 187 F.3d 452, 465 (5th Cir. 1999) (quoting *McDonald v. Board of Miss. Levee Comm'rs*, 832 F.2d 901, 906 (5th Cir.1987)) (internal quotations omitted).

namely, a claim under 42 U.S.C. § 1981, claims under Title IX, and civil RICO claims under 18 U.S.C. §§ 1961 *et seq*.[103] In Plaintiff's proposed second amended complaint,[104] Plaintiff seeks to add a new claim under 42 U.S.C. § 1983 against the Board.[105] Although the Board has not raised a defense of sovereign immunity with respect to the claims against it,[106] the Court will consider the issue *sua sponte,* because it bears on the Court's subject matter jurisdiction.[107] The Court must determine whether Eleventh Amendment immunity applies to Plaintiff's claims against the Board under Title IX, § 1981, § 1983, and civil RICO.[108]

The Eleventh Amendment provides "[t]he judicial power of the United States shall not be construed to extend to any suit in law or in equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[109] "The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court."[110] The Fifth Circuit has held that, "[a]bsent a waiver or consent by the state or an express negation of immunity by act of Congress, the eleventh amendment prohibits a federal court from

---

[103] *See* R. Doc. 8. Plaintiff's proposed second amended complaint seeks to add a new claim under 42 U.S.C. § 1983 against the Board, Danos, Jacobs, Yarborough, Williams, Werner, Alleva, Segar, Ausberry ¶and Woodward. (*See* R. Doc. 144-2 at ¶¶ 124 *et seq*.).

[104] *See* R. Doc. 144-2.

[105] *See* R. Doc. 144-2 at ¶¶ 124–134.

[106] Several individual defendants have raised the Eleventh Amendment immunity defense. The Eleventh Amendment offers no protection to the individual defendants, however, because they are sued in their individual capacities, and not in their official capacities.

[107] *See Pegues v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. CV 18-2407, 2018 WL 4076385, at *1 (E.D. La. Aug. 27, 2018); *see also Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 333 n.8 (5th Cir. 2002) ("[W]e may consider this [sovereign immunity] issue sua sponte because it bears on this court's subject-matter jurisdiction." (citing *Burge*, 187 F.3d at 465–66)).

[108] In her post-hearing supplemental memorandum, Plaintiff states she "has no opposition that the court lacks subject matter jurisdiction" as to her claims against the Board under § 1983 and civil RICO. (R. Doc. 161 at p. 1).

[109] U.S. CONST. amend. XI.

[110] *Board of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001).

awarding either legal or equitable relief against the state."[111] The State of Louisiana has not expressly waived its Eleventh Amendment immunity from suits in federal court.[112]

The Eleventh Amendment bars suits in federal court by citizens of a state against the state itself, as well as suits against an agency or department of the state.[113] It is well established that "even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment."[114] A plaintiff may not circumvent a state's immunity under the Eleventh Amendment by suing a state agency or an arm of the state instead of the state itself.[115] "When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit."[116]

The Fifth Circuit has taken a "case-by-case approach to determining whether a state is the real party in interest in suits brought against entities which appear to be" alter egos or arms of the state.[117] Federal courts must "examine the particular entity in question and its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the state itself."[118] The Fifth Circuit has applied the following six-factors to determine whether an entity is an arm of the state:

(1) Whether the state statutes and case law characterize the agency as an arm of the state
(2) The source of funds for the entity
(3) The degree of local autonomy the entity enjoys

---

[111] *Neuwirth v. Louisiana State Bd. of Dentistry*, 845 F.2d 553, 555 (5th Cir. 1988).
[112] La. R.S. § 13:5106.
[113] *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 186 (5th Cir. 1986).
[114] *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).
[115] *Richardson v. S. Univ.*, 118 F.3d 450, 452 (5th Cir. 1997).
[116] *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147 (5th Cir. 1991) (quoting *Ford Motor Co. v. Department of Treasury of State of Louisiana*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Georgia,* 535 U.S. 613 (2002)).
[117] *Richardson*, 118 F.3d at 452.
[118] *Delahoussaye*, 937 F.2d at 147 (quoting *Laje v. R.E. Thomason General Hospital*, 665 F.2 724, 727 (5th Cir. 1982)).

(4) Whether the entity is concerned primarily with local, as opposed to state-wide, problems

(5) Whether the entity has authority to sue and be sued in its own name and

(6) Whether the entity has the right to use and hold property.[119]

These factors, listed in *Delahoussaye,* were first enumerated by the Fifth Circuit in *Clark v. Tarrant County* and are frequently referred to as the *Clark* factors.[120] Not all of these factors are given the same weight, and a defendant is not required to satisfy each factor to benefit from Eleventh Amendment sovereign immunity.[121] The second factor is the most important because "an important goal of the Eleventh Amendment is the protection of state treasuries."[122] Courts "typically deal with the last two factors in a fairly brief fashion."[123] These factors help the courts "balance the equities and determine as a general matter 'whether the suit is in reality a suit against the state itself.'"[124]

The Court will now apply the six factors listed in *Delahoussaye* to determine whether the Board is an arm of the State of Louisiana entitled to Eleventh Amendment immunity.

(1) Whether state law characterizes the agency as an arm of the state:

The Louisiana State University is established by state statute.[125] The Constitution of Louisiana establishes the Board of Supervisors of Louisiana State University.[126] The Louisiana Supreme Court has stated "[i]f the office is created by the legislature, or is established in the first instance by the constitution, it is a state office."[127] The fact that the

---

[119] *Delahoussaye*, 937 F.2d at 147 (citing *Minton v. St Bernard Parish School Bd.*, 803 F.2d 129, 131 (5th Cir. 1986) and *Clark v. Tarrant County*, 798 F.2d 736, 744 (5th Cir.1986)).
[120] *See Clark*, 798 F.2d at 744–45; *Williams v. Dallas Area Rapid Transit*, 242 F.3d 315, 319 (5th Cir. 2001).
[121] *Hudson v. City of New Orleans*, 174 F.3d 677, 681–82 (5th Cir. 1999).
[122] *Delahoussaye*, 937 F.2d at 147–48; *see also Hudson*, 174 F.3d at 682.
[123] *Hudson*, 174 F.3d at 682.
[124] *Id.* (quoting *Laje v. R.E. Thomason General Hosp.*, 665 F.2d 724, 727 (5th Cir.1982)).
[125] *See* La. R.S. § 17:3215(1).
[126] La. Const. art. VIII, § 7. (A).
[127] *Mullins v. State*, 387 So.2d 1151 (La. 1980).

Board was established by the state constitution suggests that Louisiana would characterize the Board as part of the state.

The Louisiana Department of Education, which administers the functions of the Board,[128] is a part of the executive branch of the Louisiana State government.[129] As an agency within the Louisiana Department of Education, the Board also is a part of the executive branch of the state government.[130] The Fifth Circuit has found that Louisiana would consider agencies within the executive branch of Louisiana's government to be arms of the state.[131] The Fifth Circuit has stated, "[i]n every recent case in which a Louisiana political entity has been held to be an 'arm of the state,' the state agency being sued was part of a department within the executive branch."[132] The fact that the Board is an agency within the Louisiana Department of Education, part of the executive branch of Louisiana's government, suggests Louisiana would view the Board as an arm of the state.

The first factor favors Eleventh Amendment immunity for the Board.

<u>(2) Source of Funds</u>

The source of funding factor encompasses two inquiries: first, whether the entity under scrutiny receives funds from the state, and, even more importantly, whether money damages assessed against the entity are paid from the state treasury.[133]

As an agency within the executive branch, the university system administered by the Board receives funding from the state. Under the Constitution of Louisiana,

---

[128] La. R.S. § 36:642.B. ("The Department of Education . . . shall, in accordance with law, provide for the education of the people of the state and shall be the agency through which the state administers the functions of . . . the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College.")

[129] La. R.S. § 36:4.

[130] *See* La. R.S. § 36:651; La. R.S. § 36:642.B.

[131] *See Earles v. State Board of Certified Public Accountants of Louisiana*, 139 F.3d 1033, 1037 (5th Cir. 1998); *see also Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 186 (5th Cir.1986).

[132] *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 692 (5th Cir. 2002) (citations omitted).

[133] *Richardson v. S. Univ*, 118 F.3d 450, 456 (5th Cir. 1997).

"[a]ppropriations for the institutions of higher education shall be made to their managing boards. The funds appropriated shall be administered by the managing boards and used solely as provided by law."[134] Accordingly, by way of legislative appropriations, the Board receives state money for funding of its operations.

"Because an important goal of the Eleventh Amendment is the protection of state treasuries, the most significant factor in assessing an entity's status is whether a judgment against it will be paid with state funds."[135] Because the Board is considered to be an agency of the state, any money judgment rendered against the Board is payable from funds appropriated by the Louisiana Legislature.[136]

The second, most important, factor weighs heavily in support of a conclusion that the Board is an arm of the State of Louisiana.

(3) Degree of Autonomy

The Constitution of Louisiana provides the Board "shall supervise and manage" the Louisiana State University system.[137] The underlying statutory authority for the Louisiana State University system provides the system is "composed of the institutions under the supervision and management of the Board of Supervisors of Louisiana State University."[138] Under Louisiana law, the Board is vested with all powers "necessary to supervise and manage the day-to-day operations" of LSU, including the authority to "[s]ue and be sued."[139]

---

[134] La. Const. art. VIII, § 12.
[135] *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147 (5th Cir. 1991).
[136] La. Const. art. XII, § 10 ("No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered.")
[137] La. Const. art. VIII, § 7.(A).
[138] La. R.S. § 17:3215.
[139] La. R.S. § 17:3351.

The Board's authority to exercise power to supervise and manage the day-to-day operations of Louisiana State University is "[s]ubject only to the powers of the Board of Regents [as] specifically enumerated in Article VIII, Section 5 of the Constitution of Louisiana."[140] Article VIII, Section 5 of the Constitution of Louisiana imbues the Louisiana Board of Regents, consisting of fifteen members appointed by the Louisiana governor with the consent of the senate,[141] with responsibility and authority to "plan, coordinate, and have budgetary responsibility for all public postsecondary education" and with "other powers, duties, and responsibilities provided in this Section or by law."[142] The Board of Regents has authority and responsibility over certain elements of Louisiana State University's functions and operations, and supervises the general powers of the Board.[143] Furthermore, the Board's authority to borrow money and issues notes, bonds, or certificates of indebtedness is subject to the oversight of the State Bond Commission.[144]

The Board is composed of fifteen members who are appointed by the governor with the consent of the senate,[145] making the composition of the Board a matter under the control of the State of Louisiana. The Board has authority to appoint the president of the university, and the president serves at the pleasure of the Board.[146]

An examination of the third factor demonstrates the Board has a great deal of, but not complete, autonomy. This factor weighs in favor of Eleventh Amendment immunity for the Board.

---

[140] *Id.*
[141] La. R.S. § 17:3121.B.
[142] La. Const. art. VIII § 5.
[143] *See id.*; *see also* La. R.S. § 17:3351.A.
[144] La. R.S. § 17:3351.A(4).
[145] La. Const. art. VIII, § 7.
[146] La. R.S. § 17:3302.

(4) Whether the entity is primarily concerned with local, as opposed to statewide, problems:

The Board manages universities and campuses throughout the state of Louisiana, with campuses in Baton Rouge, Alexandria, Eunice, Shreveport, and New Orleans.[147] In addition, the purpose of Louisiana State University is to "serve the educational needs of the people of the state."[148] As the operative arm of Louisiana State University, the Board's concerns are primarily statewide, as opposed to local.

The fourth factor weighs in favor of Eleventh Amendment immunity for the Board.

(5) and (6) Whether the entity has the right to sue and be sued in its own name, and whether the entity has the right to hold and use property:

The Board has the authority to sue and be sued, and to purchase and hold property for the use of the Louisiana State University System.[149]

The Court finds that each of the six factors to be considered points to the conclusion the Board is an arm of the State of Louisiana. As a result, the State of Louisiana is the real party in interest. The Court's holding is consistent with "[t]he majority of decisions concerning the eleventh amendment status of state universities" which have concluded "the institutions were arms of the state."[150] Plaintiff's first amended complaint does not name the State of Louisiana as a party,[151] however, suit is barred if the State of Louisiana is the real party in interest behind the Board. Because the Board is an arm or alter ego of the State of Louisiana, the State of Louisiana is the real party in interest, and Eleventh Amendment immunity applies.

---

[147] La. R.S. § 17:3215(1)–(6).
[148] La. R.S. § 17:3220.
[149] La. R.S. § 17:3351.A.(1), (6).
[150] *Richardson v. S. Univ.*, 118 F.3d 450, 454 (5th Cir. 1997) (citing *United Carolina Bank v. Board of Regents*, 665 F.2d 553, 557 (5th Cir. Unit A 1982)).
[151] *See* R. Doc. 8.

This conclusion is borne out by the jurisprudence. The Fifth Circuit has found that Southern University and its Board of Supervisors,[152] and the University of Southwestern Louisiana,[153] are entitled to sovereign immunity. In *Raj v. Louisiana State University*, the Fifth Circuit concluded "the LSU Board is an arm of the state and is immune from suit under the Eleventh Amendment."[154] Similarly, in the unpublished opinion of *Pastorek v. Trail*, the Fifth Circuit held "the LSU Board is an 'arm of the state' that enjoys Eleventh Amendment immunity."[155] Moreover, the Fifth Circuit implicitly recognized that LSU and its Board possess Eleventh Amendment immunity when it held that "LSU waived its Eleventh Amendment sovereign immunity by accepting federal funds under Title IX."[156]

Although the Board ordinarily is entitled to Eleventh Amendment immunity, that immunity may be waived by action of the state or the Board or by an express negation of immunity by act of Congress. For example, with respect to Plaintiff's claims against the Board under Title IX, the Fifth Circuit has held that "LSU waived its Eleventh Amendment sovereign immunity by accepting federal funds under Title IX."[157] As a result of this waiver of Eleventh Amendment immunity for Title IX claims against the state, the Board also has waived its immunity. The Court has subject matter jurisdiction over Plaintiff's Title IX claims against the Board.

Plaintiff brings claims against the Board for damages and injunctive relief under 42 U.S.C. §§1981 and 1983. In *Quern v. Jordan*, the Supreme Court clarified its prior

---

[152] *Richardson,* 118 F.3d at 451.
[153] *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 146–48 (5th Cir. 1991).
[154] *Raj v. Louisiana State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013).
[155] *Pastorek v. Trail*, 248 F.3d 1140, at *2 (5th Cir. 2001).
[156] *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 875 (5th Cir. 2000). *See Gruver v. Louisiana Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll.,* 959 F.3d 178, 184 (5th Cir.) ("LSU has waived Eleventh Amendment immunity by accepting federal funds."), *cert. denied sub nom., Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll. v. Gruver,* 141 S. Ct. 901 (2020).
[157] *Pederson*, 213 F.3d at 875.

opinions by explicitly holding that 42 U.S.C. § 1983 does not abrogate the Eleventh Amendment immunity of the states.[158] Further, in *Howlett v. Rose*, the Supreme Court explained that its decision in *Will v. Michigan Dept. of State Police*[159] "establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal court or state court."[160] In addition, the Fifth Circuit has held that "[s]ection 1981 contains no congressional waiver of the state's eleventh amendment immunity," indicating Congress did not intend, by the general language of the Civil Rights Act of 1871, to invoke its power under the enforcement provisions of section 5 of the Fourteenth Amendment to the United States Constitution.[161] Because the State of Louisiana has Eleventh Amendment immunity against Plaintiff's claims under §§ 1981 and 1983, the Board also has Eleventh Amendment immunity against those claims.

Although the states have Eleventh Amendment immunity against claims under §§ 1981 and 1983, the Supreme Court has created exceptions to this immunity. One such exception was created by the Supreme Court in its seminal case, *Ex parte Young*.[162] The *Ex parte Young* exception applies when the following three elements are met: the suit (1) is brought against a state officer acting in his or her official capacity; (2) seeks prospective relief to redress an ongoing violation; and (3) alleges a violation of federal law.[163] Plaintiff argues her §§ 1981 and 1983 claims against the Board for injunctive relief are not barred

---

[158] *Quern v. Jordan*, 440 U.S. 332, 338–42 (1979).
[159] 491 U.S. 58 (1989) (holding that an entity with Eleventh Amendment immunity is not a "person" within the meaning of § 1983.)
[160] *Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 365 (1990).
[161] *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981). *See Hines v. Mississippi Dep't of Corr.*, 239 F.3d 366 (5th Cir. 2000) ("Congress has not chosen to abrogate the states' immunity for suits under §§ 1981 [and] 1983.")
[162] *Ex parte Young*, 209 U.S. 123 (1908).
[163] *Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020).

by the Eleventh Amendment because injunctive relief is a form of prospective relief.[164] While it is true the *Ex parte Young* exception applies in suits in which the plaintiff seeks relief that is "declaratory or injunctive in nature and prospective in effect,"[165] the exception applies only if the claim is "for prospective relief against a state employee acting in his official capacity."[166] The *Ex parte Young* exception is based on the legal fiction that a state official is not the state itself when a federal court commands the state official "to do nothing more than refrain from violating federal law."[167] Plaintiff's §§ 1981 and 1983 claims against the Board for prospective relief are barred by the Eleventh Amendment because the Board is not a state officer acting in his or her official capacity.

The Fifth Circuit has recognized the *Ex parte Young* exception applies only in suits against a state officer acting in his or her official capacity.[168] In *Jones v. Texas Juvenile Justice Dept.*, Jones brought a § 1983 suit against the Texas Juvenile Justice Department ("TJJD") and TJJD's interim executive director, Linda Brook, ("Director") in her official capacity.[169] Jones sought injunctive relief and reinstatement, which is a form of prospective relief.[170] The Fifth Circuit held Jones's claims against TJJD were barred by the Eleventh Amendment because TJJD is an arm of the state, but that, pursuant to the *Ex parte Young* exception, "the Eleventh Amendment does not bar Jones's § 1983 claims

---

[164] In her first amended complaint and proposed second amended complaint, Plaintiff prays for "injunctive relief to stop the violation of law and to require defendants to provide a workplace free of discrimination and racketeering and to make the Plaintiff whole in her job, duties and opportunities for advancement." R. Doc. 8 at p. 45; R. Doc. 144-2 at p. 76.

[165] *Williams on Behalf of J.E.*, 954 F.3d at 736 (*quoting Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998)) (internal quotations omitted).

[166] *Nelson v. Univ. of Texas at Dallas*, 535 F.3d 318, 321 (5th Cir. 2008).

[167] *Williams On Behalf of J.E.*, 954 F.3d at 736 (quoting *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011)) (internal quotations omitted).

[168] *See Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981) (noting that "injunctive or prospective relief may be sought against state officials without invoking the eleventh amendment bar")*; see also Williams on Behalf of J.E.*, 954 F.3d at 736; *Jones v. Texas Juv. Just. Dep't,* 646 F. App'x 374 (5th Cir. 2016).

[169] *Jones*, 646 F. App'x 374.

[170] *Id.*

against the Director for reinstatement and other prospective injunctive relief."[171] In *Jones*, the claim for prospective relief under § 1983 was against a state officer in her official capacity; in this case, the claim for prospective relief is against the Board. As a result, the Court lacks subject matter jurisdiction over Plaintiff's claims against the Board under §§ 1981 and 1983 for damages and prospective relief.

It does not appear the Fifth Circuit has addressed the question of whether the Eleventh Amendment applies to bar civil RICO claims against a state and its agencies. However, other federal appellate courts, and district courts within the Fifth Circuit, have held that Congress has not abrogated the states' Eleventh Amendment immunity under RICO.[172] Finding no express language in RICO's statutory provisions to indicate a waiver of state sovereign immunity was intended,[173] this Court agrees with the cited authorities that Congress has not abrogated the states' Eleventh Amendment immunity under RICO.

---

[171] *Id.* at 376. *See also Neuwirth v. Louisiana State Bd. of Dentistry*, 845 F.2d 553, 555 (5th Cir. 1988) (discussing the *Ex parte Young* exception and noting that "[w]hether the Louisiana Board of Dentistry [an arm of the state] or Dr. Chustz [a state officer] is entitled to eleventh amendment immunity are distinct issues."). The Court does not reach the issue of whether the Board is or is not a "person" under § 1983. In *Will v. Michigan Dept. of State Police*, the Supreme Court explained that, because the plaintiff in that case had filed his petition in state court, the "question whether a State is a person under § 1983 [is] squarely before us since the Eleventh Amendment does not apply in state courts." 491 U.S. 58, 63–64 (1989). The Supreme Court went on to hold "that a State is not a person within the meaning of § 1983." *Id.* at 64. *See also Adams v. Recovery Sch. Dist. ex rel. Louisiana, Dep't of Educ.*, 463 F. App'x 297, 298 (5th Cir. 2012) (holding that "[f]or purposes of § 1983, states and arms of a state are not 'persons,' and a § 1983 claim may therefore not be brought against those entities.")

[172] *See Banks v. ACS Educ.*, 638 Fed. Appx. 587, 589 (9th Cir. 2016) ("Congress has not abrogated state immunity under RICO"); *Wallis v. Levine*, No. 13-1594, 2013 U.S. App. LEXIS 19359, 2013 WL 5345502, *1 (7th Cir. Jun. 11, 2013) (applying Eleventh Amendment immunity to bar plaintiff's claims, including RICO allegations); *Johnson v. Ill. Commerce Comm'n*, 176 Fed. Appx. 662, 663 (7th Cir. 2006) (same); *Kadonsky v. New Jersey*, 188 Fed. Appx. 81, 84 (3rd Cir. 2006) (same); Akbar-El v. Ohio Dep't of Corr., 124 F.3d 196 (6th Cir. 1997) (same); *Brown v. Lee*, No. 3:19-CV-33-HTW-LRA, 2021 WL 1557410, at *5 (S.D. Miss. Mar. 29, 2021) ("[T]his court finds that the monetary claims of plaintiff against the State Defendants are barred by Eleventh Amendment immunity"); *Gaines v. Texas Tech Univ.*, 965 F.Supp. 886, 889 (N.D. Tex. 1997) ("Congress has not unequivocally expressed its intention to abrogate the states' sovereign immunity from claims brought pursuant to RICO."); *Cuccia v. Cyrus*, Civ. Action No. 94-2707, 1995 U.S. Dist. LEXIS 9208, 1995 WL 377073, *2 (E.D. La. Jun. 22, 1995) ("There is no express language in the statute to suggest that Congress intended to abrogate the Eleventh Amendment bar to suits against the States for violations of RICO.")

[173] *See* 18 U.S.C. §§ 1681 *et seq.*

Because there has been no waiver of Louisiana's state sovereign immunity, the Board retains its immunity. Plaintiff argues the Eleventh Amendment does not bar her civil RICO claim for prospective injunctive relief, relying on the *Ex parte Young* exception. As explained above, however, the *Ex parte Young* exception does not apply with respect to the Board.[174] The Court finds Plaintiff's civil RICO claims against the Board for damages and injunctive relief are barred by the Eleventh Amendment.

Because the Court lacks subject matter jurisdiction to adjudicate Plaintiff's civil RICO claim and her § 1981 claim against the Board in the first amended complaint, the Court must dismiss those claims without prejudice for lack of subject matter jurisdiction. In addition, the Court will not grant Plaintiff leave to add a § 1983 claim against the Board in her second amended complaint because the Court would lack subject matter jurisdiction over such a claim, rendering leave to amend to add such a claim completely futile.

**B.**    **The Court has subject matter jurisdiction over Plaintiff's civil RICO claims against the individual defendants in their personal capacities.**[175]

Plaintiff's first amended complaint contains a civil RICO claim against the Board, Danos, Yarborough, Jacobs, Williams, Werner, Alleva, Jenkins, Alexander, Woodward, Miles, Segar, Ausberry, McKenzie, Crochet, and Barton.[176] The Court has determined it lacks subject matter jurisdiction over Plaintiff's civil RICO claim against the Board and must dismiss that claim.[177] This same conclusion, however, does not necessarily follow

---

[174] The Court need not reach the issue of whether equitable relief is available to private RICO plaintiffs.

[175] Plaintiff refers to this claim as "Count IV" in her proposed second amended complaint. *See* R. Doc. 144-2 at ¶¶ 135–328.

[176] R. Doc. 8 at ¶¶ 107 *et seq.*

[177] *See supra.* Also, Plaintiff has dismissed all claims against F. King Alexander. (*See* R. Docs. 83, 88, 120, 121). In addition, F. King Alexander is not named as a defendant in the proposed second amended complaint. (*See* R. Doc. 144-2).

with respect to Plaintiff's civil RICO claims against the individual defendants in their personal capacities.

Plaintiff states in her first amended complaint[178] and in her proposed second amended complaint[179] she is suing the individual defendants in their "individual" capacity, meaning their "personal" capacity. In *Hafer v. Melo*, the Supreme Court explained an important distinction between personal- and official-capacity suits as follows:

> In *Kentucky v. Graham* . . . [w]e emphasized that official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. . . . Suits against state officials in their official capacity therefore should be treated as suits against the State. . . . Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law. . . . While the plaintiff in a personal-capacity suit need not establish a connection to governmental policy or custom, officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law.[180]

To the extent Plaintiff names Board members or LSU employees as defendants in their official capacities, the Court does not have jurisdiction because of the Eleventh Amendment bar.[181] The Court need not belabor the point, however, because Plaintiff expressly states she is suing the Board members and LSU employees in their individual or personal capacities; as a result, the Court has subject matter jurisdiction over such claims.[182]

---

[178] R. Doc. 8 at ¶¶ 4 *et seq.*
[179] R. Doc. 144-2 at ¶¶ 3 *et seq.*
[180] 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)) (internal quotations omitted).
[181] *See Graham*, 473 U.S. at 169. McKenzie, Crochet, and Barton are partners at the law firm Taylor, Porter, Brooks & Phillips, L.L.P., and are not state employees.
[182] *See, e.g., Brown v. Nationsbank Corp.,* 188 F.3d 579, 589 (5th Cir. 1999) (evaluating civil RICO claim seeking to impose monetary liability against individual government actors and concluding that the government actors were protected by qualified immunity.)

**LAW AND ANALYSIS**

**II.     PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

Plaintiff already has amended her complaint once as a matter of course, and Defendants oppose the instant motion to amend the complaint a second time. As a result, Plaintiff may amend only with the Court's leave.[183] After the dismissal of claims against the Board based on lack of subject matter jurisdiction, the claims remaining in Plaintiff's first amended complaint are: (i) a claim for retaliation under Title IX against the Board, to the extent based on retaliatory events occurring on or after April 8, 2020; and (ii) claims against the individual defendants in their personal capacities under civil RICO. Plaintiff argues the second amended complaint adds only one new claim—namely, a claim under 42 U.S.C. § 1983 for First Amendment Retaliation, "which is timely and relates back to Plaintiff's First Amended Complaint."[184] Because the Court lacks subject matter jurisdiction over a § 1983 claim against the Board, the Court will construe the motion as one to amend to add § 1983 claims against the individual defendants in their personal capacities. Plaintiff also seeks leave to amend the allegations of her civil RICO claims against the individual defendants and to file a first amended RICO case statement.

In her memorandum in support of her motion for leave to amend, Plaintiff argues the new complaint "maintains the counts and allegations against the same defendants from the First Amended Complaint, but accounts for the significant factual and procedural developments that have occurred since the First Amended Complaint was filed."[185] Plaintiff, without explanation, points to the following as significant factual and procedural developments: (1) Plaintiff's voluntary dismissal with prejudice of her Title IX

---

[183] *See* Fed. R. Civ. P. 15(a)(2).
[184] R. Doc. 112-1 at p. 1.
[185] *Id.*

claims against the individual defendants, and (2) the Court's issuance of an Order and Reasons on September 10, 2021.[186] The Court does not find these developments justify leave to amend.

Plaintiff further argues the factors which weigh against granting leave to amend are not present in this case.[187] Specifically, Plaintiff argues she is not seeking the amendment in bad faith or with a purpose to delay the proceedings, that the interests of justice and judicial economy will be served by permitting the amendment, and that the amendments are narrowly tailored to reflect the circumstances of the case as Plaintiff understands them.[188] Plaintiff argues no Defendant will "be prejudiced or caught off guard, as none of them have filed an answer."[189] Finally, Plaintiff argues the amendments are not futile because she has alleged sufficient facts to state a claim for relief that is facially plausible.[190] Plaintiff argues this Court has recognized, in its Order and Reasons of September 10, 2021 that her claims are not futile because in ruling on the motion to dismiss filed by the Board, Mary Leach Werner, and James Williams, the Court allowed her Title IX claims to go forward.[191]

The Defendants respond that Plaintiff has failed to state claims upon which relief may be granted, and that Plaintiff does not make any new substantive factual allegations

---

[186] *See id.* On August 15, 2021, Plaintiff filed a Motion for Voluntary Partial dismissal, seeking to dismiss with prejudice her Title IX claims against William Jenkins, Felton "King" Alexander, Joseph Alleva, Leslie Miles, Miriam Segar and Verge Ausberry. (R. Doc. 83). The Court granted the motion. (R. Doc. 88). On September 2, 2021, Plaintiff filed a Motion for Voluntary Partial Dismissal, seeking to dismiss her Title IX claims against Scott Woodward with prejudice. (R. Doc. 101). The Court granted the motion. (R. Doc. 106). As a result, the only remaining Title IX defendant is the Board of Supervisors. In addition, Plaintiff voluntarily dismissed her claims against Taylor, Porter, Brooks & Phillips, L.L.P., with prejudice. (R. Doc. 74, 77). Plaintiff also voluntarily dismissed her civil RICO claims against F. King Alexander, without prejudice. (R. Docs. 120, 121).
[187] R. Doc. 112-1 at p. 2.
[188] *Id.*
[189] *Id.*
[190] *Id.*
[191] *Id.* Plaintiff has interpreted the Court's ruling overbroadly.

in her proposed second amended complaint. Defendants argue Plaintiff's requested amendment is futile, would unduly delay the litigation, and would be prejudicial to the Defendants. In their opposition, the TP Defendants point out the following:

> Having filed three (3) complaints (original, First Amended, and RICO Case Statement), having filed eight (8) oppositions to the many motions to dismiss defending her deficient RICO claims, and having filed an opposition to the TP Defendants' Rule 11 Motion, Lewis has had twelve (12) opportunities to plead a claim.[192]

Citing to Fifth Circuit cases in which the court considered oppositions to motions to dismiss and RICO case statements as additional opportunities for the plaintiff to plead her claims, the TP Defendants argue that, because of Plaintiff's repeated opportunities and failures to cure deficiencies in her pleadings, the motion for leave to amend should be denied.[193]

### A. **Plaintiff is denied leave to amend her claim against the Board for retaliation under Title IX.**[194]

As mentioned above, in the Court's September 10, 2021 Order and Reasons, the Court allowed Plaintiff's Title IX retaliation claim against the Board to proceed to the merits, to the extent such claim is based on retaliatory events occurring on or after April 8, 2020.[195] In *Lowrey v. Texas A & M Univ. System*, the Fifth Circuit held Title IX encompasses a private right of action for retaliation.[196] In so holding, the Fifth Circuit meticulously distinguished between retaliation suffered as a consequence of participation in complaints and investigations challenging alleged employment discrimination, and retaliation suffered as a consequence of participation in complaints and investigations

---

[192] R. Doc. 150 at p. 8.
[193] *Id.* at p. 9.
[194] Plaintiff refers to this claim as "Count I" in her proposed second amended complaint. *See* R. Doc. 144-2 at ¶¶ 75–98.
[195] *See* R. Doc. 107.
[196] *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 254 (5th Cir. 1997).

challenging alleged violations of Title IX.[197] The Fifth Circuit, relying on its prior decision in *Lakoski v. James*, held that Title VII provides the exclusive remedy to employees for retaliation based on allegations of employment discrimination.[198] The *Lowrey* court went on to hold that Title IX "implies a private right of action for retaliation, narrowly tailored to the claims of employees who suffer unlawful retaliation solely as a consequence of complaints alleging noncompliance with the substantive provisions of Title IX."[199]

Contrary to the Fifth Circuit's decision in *Lowrey*, the Eleventh Circuit held "Title IX does not imply a private right of action in favor of individuals who, although not themselves the victims of gender discrimination, suffer retaliation because they have complained about gender discrimination suffered by others."[200] The Supreme Court in *Jackson v. Birmingham Board of Education* resolved this circuit split among the federal courts of appeals on the question of whether Title IX affords a private right of action for retaliation.[201] In *Jackson,* a teacher and former coach of the girls' basketball team at a high school in Birmingham, Alabama, sued the Birmingham Board of Education, alleging the Board retaliated against him because he complained about sex discrimination in the school's athletic program.[202] Specifically, the teacher had complained to his supervisors that the girls' basketball team was receiving unequal treatment.[203] Five months later, he was removed as basketball coach and he was denied his supplemental pay for coaching.[204] Thereafter, he brought suit against the Birmingham Board of Education, alleging

---

[197] *Id.* at 247–49.
[198] *Id.* at 247–48.
[199] *Id.* at 254.
[200] *Jackson v. Birmingham Bd. of Educ.*, 309 F.3d 1333, 1347 (11th Cir. 2002), *rev'd and remanded*, 544 U.S. 167 (2005).
[201] *Jackson v. Birmingham Board of Education,* 544 U.S. 167 (2005).
[202] *Id.* at 171.
[203] *Id.* at 171–72.
[204] *Id.* at 172.

retaliation in violation of Title IX.[205] The Supreme Court, agreeing with the Fifth Circuit, held the private right of action implied by Title IX encompasses claims of retaliation "where the funding recipient retaliates against an individual because he has complained about sex discrimination."[206]

In sum, under *Jackson* and *Lowrey*, an employee of an educational institution receiving federal funding who complains of sexual discrimination in violation of Title IX and is retaliated against has a private right of action under Title IX for retaliation. The Fifth Circuit has held that, to establish a prima facie case of retaliation under Title IX, "the plaintiff must show that: (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action."[207]

In her first amended complaint, Plaintiff alleges she reported complaints of Title IX violations by football coaches and players from 2009 to 2018.[208] Plaintiff also alleges she suffered adverse employment actions, including denial of a promotion in 2020 and receipt of unequal pay in 2020.[209] Plaintiff alleges a causal relationship between her protected activities and the adverse employment actions by pointing to Ausberry's statements Plaintiff would never be promoted because she filed reports of Title IX complaints and uses "the word Title IX too much."[210] Plaintiff sufficiently alleges a claim against the Board for retaliation under Title IX in her first amended complaint.

Plaintiff now seeks to amend her Title IX retaliation claim against the Board by

---

[205] *Id.* at 171.
[206] *Id.*
[207] *Collins v. Jackson Pub. Sch. Dist.*, 609 F. App'x 792, 795 (5th Cir. 2015) (citing *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014)).
[208] R. Doc. 8 at ¶¶ 73−84.
[209] *Id.* at ¶¶ 101−102.
[210] *Id.* at ¶ 101.

adding the following substantive allegation:

> Until the release of the report in March 2021, plaintiff was unaware the Board of Supervisors had knowledge of the pervasive harassment, heightened risk of retaliation plaintiff, students and employees suffered for reporting Title IX complaints. Plaintiff was also unaware of the severe institutional level of procedural deficiencies that avoided discipline for athletic coaches and athletic officials that retaliated against plaintiff for filing Title IX complaints, creating a basis to impute knowledge of Title IX violations and other wrongs in the Athletic Department to the Board of Supervisors.[211]

This is the only substantive factual allegation Plaintiff seeks to add to her retaliation claim in her second amended complaint; the rest of the changes are non-substantive.

As mentioned above, the purpose underlying the liberal amendment rule is to facilitate a decision on the merits rather than on the pleadings or on technicalities.[212] Plaintiff's Title IX retaliation claim against the Board has not been dismissed on the pleadings or on technicalities; in fact, the opposite is true. In the Court's Order and Reasons of September 10, 2021, the Court held that Plaintiff's Title IX retaliation claim against the Board, to the extent based on retaliatory events occurring on or after April 8, 2020, is *not* dismissed.[213] As a result, Plaintiff's Title IX retaliation claims already will proceed to the merits. Granting leave to amend the retaliation claim does not further facilitate decision on the merits of such a claim.

In addition, Plaintiff does not explain how the proposed amendment to her Title IX retaliation claim against the Board would have any substantive effect on the case or otherwise "rescue" her claim. The Court already has explained that the Title IX retaliation claim needs no "rescuing" at this stage of the litigation because it has not been dismissed under Rule 12(b)(6). Furthermore, the Court cannot discern any substantive impact the

---

[211] R. Doc. 144-2 at ¶ 96.
[212] *See Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).
[213] *See* R. Doc. 107.

proposed amendment might have on the case.[214] As a result, the ends of justice do not require the Court to grant leave to Plaintiff to amend her Title IX retaliation claim against the Board. Finally, permitting leave to amend the retaliation claim at this stage of the case would prejudice the Board because the Board has fully briefed its motion to dismiss this claim and the Court has already ruled thereon.[215] As a result, the Court denies Plaintiff leave to amend her Title IX retaliation claim against the Board.

### B.    Plaintiff is denied leave to amend to add a claim against the Board for a hostile environment under Title IX. [216]

Plaintiff argues in her motion for leave that she raised a Title IX hostile environment claim[217] in her first amended complaint and that her proposed second amended complaint adds only one new claim—namely, a claim under 42 U.S.C. § 1983.[218] In its opposition to Plaintiff's motion for leave to amend, the Board disagrees and argues Plaintiff is attempting to assert not only a new § 1983 claim but also a new Title IX hostile environment claim.[219]

In her reply memorandum, Plaintiff argues she raised her hostile environment claim in her first amended complaint.[220] In support of this contention, Plaintiff cites to paragraph 26 from the "Operative Facts" section of her first amended complaint and paragraph 99 from the "Of Title IX Retaliation" section of her first amended complaint, respectively:

---

[214] Neither would the amendment change the Court's ruling on the applicable prescriptive period. *See* R. Doc. 107.

[215] *See id.*

[216] Plaintiff refers to this claim as "Count II" in her proposed second amended complaint. *See* R. Doc. 144-2 at ¶¶ 99–123.

[217] Although the caption of Count II in the proposed second amended complaint refers to this as a "hostile environment" claim, Plaintiff sometimes refers to it as a hostile work environment claim. The courts refer to these claims as "hostile environment" claims, which is the reference this Court will use.

[218] *See* R. Doc. 112-1.

[219] R. Doc. 128 at p. 2.

[220] R. Doc. 136 at p. 2.

> Plaintiff alleges she has been subjected to discreet discriminatory acts and has experienced a racially hostile work environment throughout her employment since 2009 to present, including unlawful harassment for the relevant time periods referenced herein;[221]
>
> In 2013, as a result of being subjected to a continuing pattern of retaliation and hostile work environment plaintiff suffered a mental breakdown and underwent treatment and LSU paid plaintiff's medical bills. Plaintiff continues to seek mental health support to cope with the continued retaliation and harassment she is subjected to for bringing Title IX violations to the attention of her supervisors.[222]

Plaintiff's own first amended complaint refutes her contention that she raised a Title IX hostile environment claim in her first amended complaint, as the first amended complaint provides Plaintiff "state[s] a cause of action based on hostile work environment based on 42 U.S.C. § 1981," not Title IX.[223] Moreover, Plaintiff's first amended complaint alleged a hostile environment based on race, but Title IX does not encompass racial discrimination of any type. Title IX prohibits only sex-based discrimination.[224] The Court agrees with the Board that Plaintiff's proposed second amended complaint raises a hostile environment claim under Title IX for the first time.

The Board argues Plaintiff's proposed second amended complaint is an attempt to avoid the impact of the Court's September 10, 2021 Order and Reasons dismissing Plaintiff's Title IX retaliation claim based on retaliatory events predating April 8, 2020 "by simply moving the retaliation allegations to a new section titled 'Count II Violation of Title IX Hostile Environment,'"[225] but that "her allegations remain rooted in

---

[221] R. Doc. 8 at ¶ 26.

[222] *Id.* at ¶ 99. In her first amended complaint, Plaintiff also alleged she "has suffered a continuing pattern of hostile work environment based on her race as an African American." (*Id.* at ¶ 193).

[223] *Id.* at ¶ 200.

[224] *See* 20 U.S.C. § 1681(a) (stating that "[n]o person . . . shall, *on the basis of sex*, be . . . subject to discrimination under any education programing or activity receiving Federal financial assistance.") (emphasis added).

[225] R. Doc. 128 at p. 3.

retaliation."[226]

The Court agrees that Plaintiff's first amended complaint alleges claims under Title IX for retaliation only. Now, in her proposed second amended complaint, Plaintiff is attempting to add a hostile environment claim under Title IX.[227] Because Plaintiff did not plead a hostile environment claim under Title IX in her first amended complaint, the Court concludes Plaintiff's Title IX hostile environment claim is "new." Plaintiff must obtain leave of Court to amend her complaint to add a new Title IX hostile environment claim. As a result, the Court must determine whether the ends of justice require that leave be granted, or whether leave should be denied because the proposed amendment would be futile.

Upon review of the allegations Plaintiff relies on to support her new claim, it indisputable that Plaintiff's "hostile environment" claim in her proposed second amended complaint is based on retaliatory events. For example, Plaintiff expressly alleges she experienced a hostile environment *in retaliation* for reporting Title IX complaints and other sexual misconduct by coaches and star football players. Plaintiff alleges she hid under a desk because the *retaliation* was so bad. Additionally, Plaintiff alleges Ausberry told her she would never be promoted because she filed Title IX complaints, which sounds in retaliation. The Court finds to the extent Plaintiff's hostile environment claim is premised on retaliation in violation of Title IX, the amendment should be denied because Plaintiff already has a claim for Title IX retaliation in her first amended complaint.[228]

To the extent Plaintiff's Title IX claims in her proposed second amended complaint

---

[226] *Id.*

[227] *See* R. Doc. 144-2 at ¶¶ 99–123.

[228] The Court's Order and Reasons of September 10, 2021, limits Plaintiff's Title IX retaliation claims to those based on retaliatory events occurring on or after April 8, 2020.

are not based on retaliation but are based on discriminatory harassment creating a hostile environment, any such amendment would be entirely futile for the following three reasons. First, Plaintiff's allegations are insufficient to establish the necessary elements of a hostile environment claim under Title IX. Title IX prohibits sexual discrimination, including sexual harassment.[229] The Fifth Circuit has expressly recognized that in analyzing sexual harassment claims under Title IX, courts may apply standards and principles borrowed from Title VII caselaw.[230] Under Title VII, the courts have recognized that sexual harassment can occur in two ways: quid pro quo harassment and hostile environment harassment.[231] Plaintiff in this case alleges sexual harassment of the hostile environment variety. To make out a prima facie case of hostile environment harassment under Title IX, the plaintiff must show that he or she was subjected to unwelcome sexual advances so "severe or pervasive" that they altered his or her educational environment.[232] As stated by the United States Supreme Court "[t]he gravamen of any sexual harassment claim is that the alleged sexual advances were unwelcome."[233] Plaintiff's original complaint, first amended complaint, and proposed second amended complaint are devoid of any allegation that Plaintiff was the target of any unwelcome sexual advances. Plaintiff has not alleged she experienced an actionable hostile environment for purposes of Title IX.

Second, Title IX is meant to protect students, not school employees, from sexual

---

[229] *See Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 75 (1992) (noting that under *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64 (1986), Title VII's prohibition on sex discrimination is violated by sexual harassment and concluding that "the same rule should apply" under Title IX).

[230] *Sewell v. Monroe City School Bd.*, 974 F.3d 577, 584 n.2 (5th Cir. 2020) (*citing Carder v. Cont'l Airlines, Inc.*, 636 F.3d 172, 180 (5th Cir. 2011)) (recognizing that Title IX borrows on Title VII principles).

[231] *See generally Meritor*, 477 U.S. 57.

[232] *Id.* at 67.

[233] *Id.* at 68.

harassment. Plaintiff argues she was subjected to a hostile environment for reporting coaches' and football players' acts of sexual misconduct toward students.[234] In all reported Fifth Circuit Title IX sexual harassment cases, the plaintiff was a *student*, not an *employee* complaining of harassment of a student.[235] A non-student plaintiff such as the Plaintiff in this case does not have a private right of action under Title IX to bring claims of sex-based employment discrimination, including hostile environment claims.

Third, in *Lakoski v. James*, the Fifth Circuit held there is no private right of action for employment discrimination under Title IX because such a claim falls within the exclusive purview of, and is preempted by, Title VII.[236] Plaintiff, however, contends her Title IX hostile environment claim is not preempted by Title VII. In support of this contention, Plaintiff cites *Lowrey*[237] and *Jackson*,[238] arguing these cases recognize a private right of action under Title IX for sex discrimination which encompasses hostile environment employment discrimination. In *Lowrey*, the Fifth Circuit interpreted Title IX to afford a private right of action for retaliation against employees who report violations of Title IX.[239] In *Jackson,* the Supreme Court, resolving a circuit split and agreeing with *Lowrey,* held the private right of action implied by Title IX includes claims for retaliation against students or employees who report or complain of sexual

---

[234] R. Doc. 161 at 8.

[235] *Compare Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (citing *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)) *with Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 356 (5th Cir. 2020) (citing *Gebser v. Lago Vista Independent School District,* 524 U.S. 274, 277 (1998)).

[236] *Lakoski v. James,* 66 F.3d 751, 754 (5th Cir. 1995).

[237] *See Lowrey v. Texas A & M Univ. Sys.,* 117 F.3d 242 (5th Cir. 1997). Title IX does not afford a private right of action for employment discrimination on the basis of sex in federally funded educational institutions.

[238] *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005).

[239] *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 249 (5th Cir. 1997) (holding that "title IX affords a private right of action for retaliation against the employees of federally funded educational institutions.")

discrimination.[240] To the extent Plaintiff relies on *Lowrey* to support her contention that Title IX encompasses a private right of action for employment discrimination, Plaintiff ignores the explicit statement in *Lowrey* that "Title IX does not afford a private right of action for employment discrimination on the basis of sex in federally funded educational institutions."[241] In addition, Plaintiff does not explain, and the Court cannot discern, how *Jackson*'s holding that Title IX's private right of action encompasses retaliation claims could have overruled *Lakoski*'s holding that Title IX's private right of action does not encompass employment discrimination claims. *Jackson* and *Lowrey* provide no support for the existence of a private right of action for employment discrimination under Title IX. The Court concludes *Lakoski* remains good law within the Fifth Circuit, and, in the Fifth Circuit, "Title VII is the exclusive remedial scheme for employment discrimination claims, including hostile work environment claims."[242] Accordingly, Plaintiff's Title IX hostile environment claim is preempted by Title VII.

Plaintiff, in an attempt to state a hostile environment claim under Title IX, argues the retaliation she suffered for reporting complaints was so severe it created a hostile environment. Plaintiff *may* have had a claim for a retaliatory hostile work environment under Title VII, but she does not have a claim for a hostile environment under Title IX. As explained above, Title IX hostile environment cases are based on unwelcome sexual advances so severe and pervasive as to interfere with a student's educational atmosphere and opportunities.[243] For example, in *Davis Next Friend LaShonda D. v. Monroe County*

---

[240] *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178 (2005).

[241] *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

[242] *Normore v. Dallas Indep. Sch. Dist.*, No. 3:18-CV-2506-N, 2019 WL 2189258, at *3 (N.D. Tex. May 21, 2019) (citing *Lakoski v. James, 66 F.3d 751, 754 (5th Cir. 1995)*).

[243] *See Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 633 (1999) (stating that student-on-student harassment is actionable under Title IX when it is "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit."); *see also*

*Board of Education*, the district court dismissed petitioner's Title IX claim on the ground that "student-on-student" harassment provides no ground for a private cause of action under the statute, and the Court of Appeals for the Eleventh Circuit, sitting en banc, affirmed.[244] The United States Supreme Court granted certiorari and held a private damages action under Title IX may lie against the school board in cases of student-on-student harassment when the funding recipient acts with deliberate indifference to known acts of harassment in its programs and activities, and when the harassment is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit.[245] In *Davis*, LaShonda, the victim, a fifth-grade student, was subject to a prolonged pattern of sexual harassment by G.F., one of her classmates at school.[246] G.F. engaged in several unwelcome sexual advances toward LaShonda over the course of several months, including attempting to touch LaShonda's breasts and genital area, telling her he wanted to get in bed with her and feel her breasts, placing a doorstop in his pants and proceeding to act in a sexually suggestive manner towards LaShonda, rubbing his body against LaShonda in a sexually suggestive manner, and other harassing behavior of a sexual nature.[247] LaShonda's formerly high grades plummeted because she was unable to focus on her studies, and she wrote a suicide note.[248] The Petitioner in *Davis* sufficiently alleged LaShonda was subject to a hostile environment in violation of Title IX. Though the Supreme Court specifically addressed

---

*Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir.2007); *Escue v. N. OK Coll.*, 450 F.3d 1146, 1152 (10th Cir.2006); *Matthews v. Nwankwo*, 36 F. Supp. 3d 718, 724 (N.D. Miss. 2014) ("[T]his Court concludes that sexual harassment by a teacher of a student is actionable only when it is so severe or pervasive that it creates a hostile and harmful school atmosphere for that student.")

[244] *Davis,* 526 U.S. at 633.

[245] *Id.*

[246] *See id.* at 633–34.

[247] *Id.*

[248] *Id.* at 634.

only the question of whether a recipient of federal education funding may be liable for damages under Title IX for student-on-student sexual harassment, the Court's analysis presupposed that the petitioner had sufficiently alleged LaShonda was subject to a hostile environment by another student.[249] In *Smith v. Metropolitan School District Perry Township Smith*, a student brought a Title IX claim alleging sexual harassment creating a hostile environment.[250] The student alleged her teacher, Mr. Rager, initiated kissing with her during September of her senior year of high school, and that she and Mr. Rager engaged in sexual intercourse on the school's campus throughout the remainder her senior year, causing her to feel confused and disturbed.[251] The Seventh Circuit found Mr. Rager's treatment of the student constituted sexual harassment creating a hostile environment under Title IX.[252] In *Carmichael v. Galbraith*, the parents of a middle school student who committed suicide after allegedly being bullied by his fellow students sufficiently alleged a hostile environment in violation of Title IX.[253] The plaintiff-parents alleged students videotaped an incident in which the students stripped their son nude, tied him up, and placed him in a trash can while calling him anti-gay slurs.[254] The parents also alleged that on other "numerous occasions" their son was accosted by a group of boys in the locker room, oftentimes having his underwear forcibly removed and stripped nude.[255] The district court dismissed the parents' Title IX claim, but the Fifth Circuit reversed, concluding that "[t]he removal of a person's underwear without their consent

---

[249] *See generally Davis*, 526 U.S. 629. The Court noted the Board did not argue "that student-on-student harassment cannot rise to the level of discrimination for purposes of Title IX." *Id.* at 639.
[250] 128 F.3d 1014 (7th Cir. 1997).
[251] *Id.* at 1017–1018.
[252] *Id.* at 1022.
[253] 574 F. App'x 286, 288 (5th Cir. 2014).
[254] *Id.*
[255] *Id.* at 290.

on numerous occasions plausibly constitutes pervasive harassment of a sexual character," and that "uninvited contact with the private parts of either the victim's or harasser's body has often been held to constitute sexual harassment under Title IX."[256] Finally, in *Matthews v. Nwankwo*, a student brought a Title IX claim alleging a professor sexually harassed her, thereby creating a hostile environment.[257] The defendant-university filed a motion for summary judgment on the student's sexual harassment claim.[258] The record reflected that on one occasion the professor grabbed the student's buttocks and attempted to kiss her, and that, as a result of this incident, the student's class schedule was disrupted and she suffered mental and emotional distress.[259] The district court refused to grant summary judgment for the defendant, noting that "'the deliberate and unwanted touching of a person's intimate body parts can constitute severe sexual harassment.'"[260]

The common denominator in the above-cited cases is that the plaintiff was a student who was subjected to unwelcome sexual advances of a severe and pervasive nature. Plaintiff has no hostile environment claim under Title IX because she clearly is not a student and she has never alleged she was subjected to unwelcome sexual advances.

Allowing Plaintiff to amend her complaint to add a hostile environment claim under Title IX would be completely futile because Plaintiff has failed to allege she was subject to unwelcome sexual advances, Plaintiff is not a student, and Plaintiff's hostile environment claim is preempted by Title VII. As a result, the Court will not grant Plaintiff leave to amend her complaint to add this claim.

---

[256] *Id.*
[257] 36 F. Supp. 3d 718 (N.D. Miss. 2014).
[258] *Id.* at 721.
[259] *Id.*
[260] *Id.* at 724 (*quoting Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 436 (5th Cir.2005)).

### C.    Plaintiff is granted leave to amend to add claims against certain individuals for First Amendment retaliation under 42 U.S.C. § 1983.[261]

The Court already has determined it lacks subject matter jurisdiction over Plaintiff's proposed § 1983 claim against the Board. As a result, the Court will not grant Plaintiff leave to add a § 1983 claim against the Board, because doing so would be completely futile.

However, to the extent Plaintiff seeks leave to add a § 1983 claim against Danos, Jacobs, Yarborough, Williams, Werner, Alleva, Segar, Ausberry, and Woodward, the Court will grant leave. The Court has federal question jurisdiction over Plaintiff's § 1983 claims against these individual defendants. In *Hafer v. Melo*, the Supreme Court held the Eleventh Amendment does not forbid personal-capacity suits under § 1983 against state officials in federal court.[262] Specifically, the Court held "the Eleventh Amendment does not erect a barrier against suits to impose individual and personal liability on state officials under § 1983."[263]

### III.    DEFENDANTS' MOTIONS TO DISMISS

In their motions to dismiss, Defendants argue Plaintiff's civil RICO claims for damages[264] based on injuries discovered before April 8, 2017, are time barred and should be dismissed with prejudice. Miles, Jenkins, Danos, Yarborough, Jacobs, and the TP Defendants further argue *all* RICO claims for damages against them should be dismissed with prejudice as time barred because Plaintiff makes no allegations against them based

---

[261] Plaintiff refers to this claim as "Count III" in her proposed second amended complaint. *See* R. Doc. 144-2 at ¶¶ 124–134.

[262] *Hafer v. Melo*, 502 U.S. 21, 29–30 (1991).

[263] *Id.* at 30–31 (internal quotations omitted).

[264] Plaintiff refers to this claim as "Count IV" in her proposed second amended complaint. *See* R. Doc. 144-2 at ¶¶ 135–328.

on conduct that could have caused an injury after 2013.

### A.    The injury discovery rule and the separate accrual rule apply in civil RICO cases in the Fifth Circuit.

Section 1964(c), the statutory provision in Title 18 commonly referred to as civil RICO, provides that "[a]ny person injured in his business or property by reason of a violation" of RICO's criminal provisions may recover treble damages and attorney fees.[265] A RICO plaintiff must allege and prove she suffered an injury to her business or property and that such injury occurred "by reason of" a substantive violation of the provisions of § 1962.[266] Section 1964(c) does not contain an express limitations period.[267]

In *Agency Holding Corporation v. Malley-Duff & Associates*, the Supreme Court applied a four-year statute of limitations for civil RICO claims.[268] Finding that "the civil action provision of RICO was patterned after the Clayton Act," the Supreme Court adopted the Clayton Act's four-year limitations period for private antitrust damage claims.[269] After the Supreme Court's decision in *Malley-Duff*—which left open the question of when a civil RICO claim accrues—three different approaches emerged among the federal courts of appeals on the question of accrual.[270] Some courts of appeals applied an injury-discovery rule,[271] others applied an injury plus pattern discovery rule,[272] and the

---

[265] 18 U.S.C. § 1964(c).

[266] *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 422 (5th Cir.2001) (quoting *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

[267] *See* 18 U.S.C. § 1964(c).

[268] *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987).

[269] *Id.* at 150.

[270] David B. Smith & Terrance G. Reed, Civil RICO ¶ 9.01 (Matthew Bender 2021).

[271] Under the injury discovery rule, the limitations period begins to run when a plaintiff knows or should know of her injury. *Id.*

[272] Under the injury plus pattern discovery rule, a RICO claim accrues when a plaintiff discovers, or should discover, the existence of a pattern of racketeering activity in addition to the existence of her injury. *Id.*

Third Circuit applied a rule known as the "last predicate act" rule.[273, 274] In *Klehr v. A.O. Smith Corp*, the Supreme Court expressly rejected the last predicate act rule because application of the last predicate act rule could potentially result in courts applying a decades-long limitations period, which would conflict with the basic objective of repose—an important goal of limitations law.[275] In *Rotella v. Wood*, the Supreme Court rejected the injury plus pattern rule of accrual.[276] In rejecting the injury plus pattern rule, the Supreme Court admitted it was not settling upon a final accrual rule.[277] In addition to the injury discovery rule, the Supreme Court in *Rotella* also recognized an injury occurrence rule, under which discovery by the plaintiff of her injury is irrelevant to the question of accrual.[278]

In the context of civil RICO, the Fifth Circuit has adopted the injury discovery rule and the rule of separate accrual.[279] In *Love v. National Medical Enterprises*, the Fifth Circuit explained the interaction between the injury discovery and separate accrual rules as follows:

> Under the injury discovery rule, a civil RICO claim accrues when the plaintiff discovers, or should have discovered, the injury. . . . When a pattern of RICO activity causes a continuing series of separate injuries, the separate accrual rule allows a civil RICO claim to accrue for each injury when the plaintiff discovers, or should have discovered, that injury. . . . The logical end result is that a plaintiff may sue for any injury he discovers or should have discovered within four years of the commencement of his suit,

---

[273] Under the last predicate act rule, a civil RICO claim accrues when the plaintiff knows or should know that the elements of the civil RICO cause of action exist, but begins to run anew upon occurrence of an additional injury or upon occurrence of the last predicate act which is part of the same pattern of racketeering activity. *Id.*

[274] *Klehr v. A.O. Smith Corp*, 521 U.S. 185, 185–86 (1997) (collecting cases).

[275] *Id.* at 183.

[276] *Rotella v. Wood*, 528 U.S. 549, 551 (2000).

[277] *Id.* at 554 n.2.

[278] *Id.*

[279] *Love v. National Medical Enterprises*, 230 F.3d 765, 773 (5th Cir.), *reh'g denied*, 239 F.3d 367 (5th Cir. 2000) (quoting *Bankers Trust v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir. 1988), *cert. denied*, 490 U.S. 1007 (1989)). (internal quotations omitted)

regardless when the RICO violation causing such injury occurred.[280]

**B.**    **Plaintiff's civil RICO claims against the individual defendants based on injuries that were discovered, or should have been discovered, before April 8, 2017 are time barred.**

Defendants point to Plaintiff's allegation in her first amended complaint that she reported sexual harassment incidents involving Miles in 2013, and that she was injured in 2013 by being denied promotions, denied access to resources, and denied support of administrative staff.[281] Defendants argue Plaintiff's own allegations demonstrate she was aware of her employment-related injuries in 2013, and that the four-year limitations period began to run in 2013 and ended in 2017. Although Plaintiff contends she was not aware of the "enterprise racketeering scheme" until the release of the Husch Blackwell report in March 2021, Defendants argue this contention is irrelevant because the limitations period begins to run upon discovery of the injury, and not upon discovery of the other elements of a RICO claim, such as a pattern of racketeering activity.

Applying the injury discovery and separate accrual rules to the instant case requires the Court to first identify the injuries Plaintiff claims were caused by the alleged RICO violations. In so doing, the Court must read the allegations of the complaint and RICO case statement in the light most favorable to Plaintiff. Plaintiff alleges she suffered various employment-related injuries in 2013. Plaintiff alleges "[o]nce Miles was cleared of any wrongdoing" by the May 15, 2013 Taylor Porter report, "Miles began to immediately retaliate against plaintiff for reporting the complaints of Student 1 and Student 2."[282] Plaintiff alleges she experienced the following injuries: denial of promotions; denial of access to resources and administrative support staff; receipt of

---

[280] *Id.*
[281] *See* R. Doc. 8 at ¶¶ 101–103.
[282] R. Doc. 8 at ¶ 87.

significantly lower compensation than her male counterparts from 2013 to present; subjection to repeated disciplinary actions; and denial of other work-related opportunities, such as attending NCAA meetings.[283] Plaintiff connects these employment-related injuries with actions allegedly undertaken by Defendants to conceal the Miles' investigation and prevent Title IX reporting against Miles—that is, Plaintiff associates her employment-related injuries with the conduct which resulted in Miles being cleared of any wrongdoing in 2013.[284] According to Plaintiff's own allegations, this conduct took place no later than 2013.[285] Given the nature of the employment-related injuries associated with such conduct, Plaintiff would have discovered these injuries when the conduct giving rise to the injuries occurred, which was in 2013 or earlier. There is no suggestion in Plaintiff's complaint she was unaware of the alleged retaliatory acts against her at the time each act occurred. On the contrary, it is apparent from the allegations in Plaintiff's first amended complaint she discovered the injuries associated with the retaliatory acts when the retaliatory acts occurred.[286] Furthermore, in the Court's September 10, 2021 Order and Reasons, the Court found Plaintiff was aware of the retaliatory acts giving rise to these injuries on the date the underlying retaliatory acts occurred.[287] As a result, the four-year limitations period on such claims began to run in

---

[283] *Id.* at ¶¶ 87–89, 101–105.

[284] *See id.* at ¶¶ 130–147.

[285] *See id.*

[286] Plaintiff alleges "[o]nce Miles was cleared of any wrongdoing, Miles began to immediately retaliate against plaintiff for reporting the complaints of Student 1 and Student 2 . . . Plaintiff complained about the retaliation to her superiors . . . ." (R. Doc. 8 at ¶ 87). When the "Athletics Department restructured plaintiff's position so Miles controlled her pay raises . . . plaintiff complained about the restructuring to Verge Ausberry." (*Id.* at ¶ 88). "Miles granted pay raises to coaching and athletics department staff and . . . plaintiff asked Miles why she was not included in the raises." (*Id.*) In 2013, when Plaintiff was sent admonishment letters, and written up on two occasions, she was ordered to sign fraudulent reprimand letters, but she refused. (*Id.* at ¶ 90). In addition, employees of LSU's Athletics Department are public employees and salary information is available online, and that information, as well as Plaintiff's own pay checks, would have provided her awareness of her unfair wages claim.

[287] R. Doc. 107 at p. 14–15.

2013. Given that Plaintiff filed her original complaint on April 8, 2021, her claims for injuries discovered or that should have been discovered before April 8, 2017 are time barred unless equitable tolling applies. The Court has determined that equitable tolling does not apply in this case. [288] Pursuant to the four-year statute of limitations and the injury discovery rule, Plaintiff's civil RICO claims against all Defendants, based on injuries discovered, or that should have been discovered, before April 8, 2017, are dismissed with prejudice as time barred.

### C.    All of Plaintiff's civil RICO claims against Leslie Miles, Garrett Danos, Robert Yarborough, Stanley Jacobs, and William Jenkins are time barred.

Several of the defendants argue all RICO claims against them should be entirely dismissed because Plaintiff does not allege any actions undertaken by them after 2013, and that Plaintiff's injuries arising from any such actions that are alleged are time-barred. Miles argues the claims asserted against him are limited to conduct occurring in 2013, and that his association with LSU ended five years before Plaintiff filed her complaint against him.[289] Danos, Yarborough, and Jacobs also argue Plaintiff's only claim against them is made in connection with conduct occurring in 2013, and that such a claim is time barred.[290] Likewise, Jenkins argues he left LSU in 2013, and that Plaintiff "does not allege that Jenkins took any actions to cause [her] any injury, and the only actions of Jenkins are alleged to have occurred in 2013."[291] Plaintiff does not make any allegations against Miles, Danos, Yarborough, Jacobs, and Jenkins based on conduct occurring after 2013, either in her first amended complaint or her proposed second amended complaint. All of

---

[288] *See infra* Part III.E.
[289] R. Doc. 67-1; R. Doc. 99 at p. 7–8.
[290] R. Doc. 72 at p. 10–11.
[291] R. Doc. 123 at p. 2 (citing R. Doc. 8 at ¶¶ 132, 136, and 141).

Plaintiff's civil RICO claims against these Defendants are time barred. As a result, Plaintiffs civil RICO claims against Miles, Danos, Yarborough, Jacobs, and Jenkins, based on violations of §§ 1962(c) and (d), will be dismissed with prejudice in their entirety.[292]

### D. Plaintiff's civil RICO claims against the remaining individual defendants based on injuries that were discovered on or after April 8, 2017 are not time barred.

Aside from the employment-related injuries described above, Plaintiff alleges in her first amended complaint an injury associated with a "fraudulent" Title IX investigation opened against her in October 2018 for failure to report a Title IX complaint involving former LSU football player Drake Davis.[293] Plaintiff alleges this "fraudulent" investigation was furthered by "false testimony" of Segar and Ausberry.[294] Jeffrey Scott, LSU's Title IX Lead Investigator, concluded Plaintiff failed to follow the mandatory Title IX reporting requirements.[295] In January 2019, Plaintiff's appeal of Scott's decision was forwarded to Human Resources.[296] Plaintiff alleges Human Resources determined Scott's investigation was fraudulent and informed her the discipline was removed from her personnel file.[297] Plaintiff alleges, however, the "violation remains in [her] personnel file to intentionally interfere with and damage plaintiff's employment and employability."[298] The injury associated with the "fraudulent" Title IX investigation into Plaintiff was discovered by Plaintiff less than four years ago, and, as a result, such injury is not time barred. Plaintiff also alleges the TP Defendants undertook actions after April 8, 2017,

---

[292] Nor can Plaintiff's time-barred injuries form the basis of a claim for damages against the TP Defendants, Segar, Williams, Werner, Ausberry, or Woodward. To the extent Plaintiff's makes such claims against the TP Defendants, Segar, Williams, Werner, Ausberry, and Woodward, they are also dismissed with prejudice.
[293] R. Doc. 8 at ¶¶ 178.
[294] *Id.*
[295] *Id.* at ¶ 179.
[296] *Id.* at ¶ 180.
[297] *Id.*
[298] *Id.* at ¶ 181.

described below.[299] The Court will allow Plaintiff an opportunity to amend her complaint

with respect to actions by the individual Defendants on or after April 8, 2017.

### E.    Equitable tolling does not apply in this case.

The Court rejects Plaintiff's argument that equitable tolling applies. Plaintiff

argues in her oppositions to the motions to dismiss that her civil RICO claims are not time

barred because the Defendants engaged in fraudulent concealment thereby tolling the

statute of limitations.[300] In her each of her several oppositions, Plaintiff makes the same

argument as to why her RICO claims are not time barred. Plaintiff argues:

> The RICO defendants engaged in fraudulent concealment of their
> racketeering activities. . . . Here, the RICO Defendants committed
> affirmative acts to wrongfully conceal material facts relating to their
> wrongdoing. Further, in 2013 Vicki Crochet called plaintiff to her law office
> and specifically told her the sexual harassment complaints against Miles
> and star football players and the retaliation and hostile work environment
> for reporting such complaints, were not unlawful, nor a violation of LSU
> policy. Thus, it was reasonable plaintiff would believe the attorney holding
> herself out as conducting the Title IX investigation, that no further
> investigation was required and she had no further options for legal actions.
> Moreover, from 2013 to 2020 plaintiff repeatedly reported Title IX
> violations to Verge Ausberry and Miriam Segar and was told her complaints
> had no merit and to look for a new job if she was unhappy. As a result,
> plaintiff did not discover the activities of the criminal enterprise until the
> release of the Husch Blackwell Report and Miles Report in March 2021.[301]

Plaintiff cites to the following allegations from her complaint in support of her contention

that the Defendants performed "affirmative acts" to "wrongfully conceal material facts"

relating to their alleged wrongdoing: that "Miles' name appears as 'XXX' in the Taylor

Porter investigation in order to hide his identity";[302] that "any written directives given to

---

[299] *See infra* Part IV.

[300] R. Doc. 80 at p. 7–8. *See* R. Doc. 84 at p. 5–6; R. Doc. 85 at p. 6; R. Doc. 86 at p. 5–6; R. Doc. 90 at p. 6; R. Doc. 97 at p. 7; R. Doc. 102 at p. 6–7.

[301] R. Doc. 80 at p. 7–8. *See* R. Doc. 84 at p. 5–6; R. Doc. 85 at p. 6; R. Doc. 86 at p. 5–6; R. Doc. 90 at p. 6; R. Doc. 97 at p. 7; R. Doc. 102 at p. 6–7.

[302] R. Doc. 8 at ¶ 139.

Miles about his conduct were exchanged between Taylor Porter and Miles' lawyers in order to shield the documents from public documents requests";[303] and that "[t]he enterprise directed the written report be hidden in Taylor Porter's downtown Baton Rouge Offices" in an attempt to bury "the Miles investigation off campus away from the public in order to shield the investigation from the Title IX reporting requirements and possible criminal investigation."[304]

Under the doctrine of fraudulent concealment, the limitations period is tolled until the plaintiff discovers, or with reasonable diligence should have discovered, that her injury was fraudulently concealed.[305] Because accrual of the limitations period on a civil RICO claim is tied to discovery of the injury, in order to toll the limitations period, the fraudulent concealment must be such as to prevent the RICO plaintiff from discovering the fact that she was injured.[306] The Supreme Court has held that "fraudulent concealment in the context of civil RICO embodies a due diligence requirement."[307] One of the central functions of civil RICO is to encourage private victims to diligently investigate and uncover unlawful activity themselves, and the Supreme Court reasoned that a due diligence requirement furthers this function.[308]

In her oppositions, Plaintiff argues the Defendants engaged in affirmative acts of concealment, that she was misled by Crochet and others, and that, as a result, she did not discover the illegal activities until the Husch Blackwell report was released in March

---

[303] *Id.*

[304] *Id.* at ¶ 140.

[305] *Love v. National Medical Enterprises*, 230 F.3d 765, 779 (5th Cir.), *reh'g denied*, 239 F.3d 367 (5th Cir. 2000) (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 185, 194 (1997)).

[306] *See, e.g., Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173 (5th Cir. 2012); *see also Warden v. Barnett*, 252 F.3d 1356 (5th Cir. 2001).

[307] *Klehr*, 521 U.S. at 195.

[308] *Id.* at 195–96.

2021.[309] In support of her argument that this concealment tolled the statute of limitations, Plaintiff relies on the Fifth Circuit's opinion in *Joseph v. Bach & Wasserman*. However, an examination of *Joseph* undermines, rather than supports, Plaintiff's contention that the limitations period should be tolled on account of her alleged inability to discover the illegal activity.

In *Joseph v. Bach & Wasserman, L.L.C.*, the plaintiffs filed a complaint in federal court on May 28, 2011 alleging violations of RICO.[310] The district court dismissed the plaintiffs RICO claim on the basis that it was time-barred.[311] On appeal, the plaintiffs argued that the defendant fraudulently concealed his actions, and continued to do so, such that the plaintiffs were and remained "in the dark regarding their injuries and the extent of those injuries."[312] In December of 2004, the plaintiffs filed a state court complaint against the defendant.[313] The Fifth Circuit observed that the plaintiffs' federal court complaint alleged no injury due to any action taken by defendant since 2004.[314] The Fifth Circuit also observed the plaintiffs' federal court complaint tracked their state court complaint closely, alleging the same injuries, and that plaintiffs' federal court complaint alleged no new injuries incurred after the filing of their state-court complaint.[315] The court rejected the plaintiffs' fraudulent concealment argument, concluding the plaintiffs were clearly aware of their injury when they filed their state court complaint, which was filed nearly seven years prior to the federal court complaint.[316] Thus, because the plaintiffs

---

[309] R. Doc. 80 at p. 7–8. *See* R. Doc. 84 at p. 5–6; R. Doc. 85 at p. 6; R. Doc. 86 at p. 5–6; R. Doc. 90 at p. 6; R. Doc. 97 at p. 7; R. Doc. 102 at p. 6–7.
[310] *Joseph*, 487 F. App'x at 175.
[311] *Id.* at 176.
[312] *Id.* at 177.
[313] *Id.* at 175.
[314] *Id.* at 177.
[315] *Id.*
[316] *Id.*

were aware of their injury well over four years prior to instituting their civil RICO action, they could not invoke the doctrine of fraudulent concealment to save their time-barred RICO claims.

In *Joseph*, the Fifth Circuit cited to *Warden v. Barnett* in support of its conclusion the plaintiffs could not invoke the doctrine of fraudulent concealment.[317] In *Warden*, the plaintiff filed a complaint in state court in November 1991 alleging misappropriation of stock, and in 1998, the plaintiff filed a complaint in federal court alleging RICO violations.[318] The Fifth Circuit agreed with the district court that the misappropriation of stock formed the basis for the federal RICO claim and the state court complaint, demonstrating the plaintiff was aware of the stock misappropriation by 1991.[319] The plaintiff argued tolling based on fraudulent concealment should apply.[320] The Fifth Circuit rejected the plaintiff's fraudulent concealment argument because, if the plaintiff knew in 1991 that the defendants had misappropriated his stock, then under the injury discovery rule he was aware of his injury in 1991 and the limitations period ran long before the federal RICO claim was filed in 1998.[321]

A review of *Joseph and Warden* makes clear that, even when fraudulent concealment is alleged, accrual of the limitations period is tied to discovery—or concealment—of the *injury*. More to the point, in rejecting the injury plus pattern discovery rule of accrual, the Supreme Court in *Rotella* analogized a civil RICO plaintiff to a medical malpractice victim.[322] Identifying medical malpractice may be a matter of

---

[317] *Id.* (citing *Warden v. Barnett*, 252 F.3d 1356 (5th Cir. 2001)).
[318] *Warden*, 252 F.3d at *1.
[319] *Id.*
[320] *Id.*
[321] *Id.*
[322] *Rotella v. Wood*, 528 U.S. 549, 556 (2000).

real complexity, yet accrual of a medical malpractice claim is not contingent on discovery by the plaintiff of the malpractice itself.[323] Similarly, in the context of civil RICO, a pattern of predicate acts may well be "complex, concealed, or fraudulent," and very difficult for a plaintiff to discover. [324] The Supreme Court went on to explain that

> [t]he fact, then, that a considerable effort may be required before a RICO plaintiff can tell whether a pattern of racketeering is demonstrable does not place him in a significantly different position from the malpractice victim. A RICO plaintiff's ability to investigate the cause of his injuries is no more impaired by his ignorance of the underlying RICO pattern than a malpractice plaintiff is thwarted by ignorance of the details of treatment decisions or of prevailing standards of medical practice.[325]

Similarly, in *Love*, the Fifth Circuit explained, to the extent the lower court's opinion "could be interpreted as holding [the plaintiff's] civil RICO claims accrued when it became aware in 1991 of [the defendants'] allegedly fraudulent conduct, such a conclusion would be erroneous, because again, under the injury discovery rule, the claims did *not* accrue until [the plaintiff] knew, or should have known, that it suffered an injury caused by that allegedly fraudulent conduct."[326] Under the injury discovery rule adopted in the Fifth Circuit, it is discovery of the injury, and not discovery of the other elements of a RICO claim, that starts the limitations period running.[327] Therefore, it would be inconsistent for this Court to find that the limitations period is tolled in this case based on concealment of the conduct or illegality, when the alleged injuries were not concealed. Said differently, this Court's refusal to apply fraudulent concealment under the circumstances alleged in this case is consistent with the injury discovery rule, because the

---

[323] *Id.*
[324] *Id.* at 556.
[325] *Id.* at 556–57.
[326] *Love v. National Medical Enterprises*, 230 F.3d 765, 777 (5th Cir.), *reh'g denied*, 239 F.3d 367 (5th Cir. 2000) (emphasis in original).
[327] *Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173, 176 (5th Cir. 2012) (citing *Rotella*, 528 U.S. at 556).

focus is on discovery of the injury, and not on discovery of the other elements of the RICO claim. As explained above, Plaintiff discovered her employment-related injuries in 2013 when they occurred.[328] As a result, Plaintiff's argument she did not discover the activities of the criminal enterprise until March 2021 is unsuccessful. Accordingly, application of the doctrine of fraudulent concealment is not warranted in this case. Plaintiff's claims based on her employment-related injuries that were discovered or should have been discovered before April 8, 2017 are time-barred.

Plaintiff also argues in her oppositions she experienced a mental breakdown and that her mental incapacity prevented her from pursuing her RICO claims.[329] In the Court's Order and Reasons of September 10, 2021, the Court rejected Plaintiff's argument that equitable tolling based on mental incapacity should apply.[330] For the same reasons stated in the Courts September 10, 2021 Order and Reasons, the Court rejects Plaintiff's argument that equitable tolling based on mental incapacity should apply to toll the limitations period on her civil RICO claims.

## IV.  PLAINTIFF'S MOTION FOR LEAVE TO AMEND HER CIVIL RICO CLAIMS

Amending a claim that is time barred on its face is completely futile. Plaintiff's civil RICO claims based on injuries discovered or that should have been discovered before April 8, 2017 clearly are time barred and are hereby dismissed with prejudice. The Court will not grant Plaintiff leave to amend these claims because it would be futile to do so.

Nevertheless, Plaintiff has filed only one amended complaint, and it was filed as a matter of course without leave after the TP Defendants filed their first motion to dismiss.

---

[328] *See supra* at p. 43–44.
[329] R. Doc. 80 at p. 9. *See also* R. Doc. 84; R. Doc. 85; R. Doc. 86; R. Doc. 90; R. Doc. 97; R. Doc. 102.
[330] R. Doc. 107.

Under Rule 15(a)(2), the Court should freely grant leave to amend before trial when justice so requires.[331] The Court finds the ends of justice require granting leave for Plaintiff to amend her first amended complaint and her RICO case statement with respect to her civil RICO claims that have not been dismissed for lack of subject matter jurisdiction and that have not been dismissed as time barred.

In particular, the TP defendants argue that "[a]fter 2013, Lewis provides no allegations of acts undertaken by, or purported injuries caused by, the Taylor Porter Defendants."[332] In her first amended complaint, Plaintiff makes vague allegations regarding actions undertaken by the TP Defendants after April 8, 2017.[333] In her proposed second amended complaint, Plaintiff seeks to add allegations that on or after April 8, 2017 the TP Defendants continued to conceal documents in connection with the Miles investigation, causing injury to her employment and business in the form of denial of promotions, pay raises, and bonuses.[334] Although these allegations are weak, the Court finds the Plaintiff should be given leave to amend her complaint to test their sufficiency.

Plaintiff may request leave of Court to amend her civil RICO claims against William Shelby McKenzie, Vicki Crochet, Robert Barton, Miriam Segar, Joseph Alleva, James Williams, Mary Leach Werner, Verge Ausberry, and Scott Woodward, and may file an amended RICO case statement, but only to the extent she seeks to recover for injuries discovered on or after April 8, 2017.

## CONCLUSION

**IT IS ORDERED** that Plaintiff's civil RICO claim and her claim under 42 U.S.C.

---

[331] *See* Fed. R. Civ. P. 15(a)(2).
[332] R. Doc. 60-1 at p. 13.
[333] *See* R. Doc. 8 at ¶¶ 146, 149, 162.
[334] R. Doc. 144-2 at ¶¶ 209, 217–218, 222.

§ 1981[335] against the Board of Supervisors of Louisiana State University are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that the motions to dismiss filed by Leslie Miles,[336] Garret Danos, Robert Yarborough, Stanley Jacobs,[337] and William Jenkins,[338] are **GRANTED.** Plaintiff's civil RICO claims against Leslie Miles, Garret Danos, Robert Yarborough, Stanley Jacobs, and William Jenkins are **DISMISSED WITH PREJUDICE** as time barred.

**IT IS FURTHER ORDERED** that the motions to dismiss filed by William Shelby McKenzie, Vicki Crochet, Robert Barton,[339] Miriam Segar,[340] James Williams, Mary Leach Werner,[341] Verge Ausberry,[342] and Scott Woodward,[343] are **GRANTED IN PART** to the extent they seek dismissal of Plaintiff's civil RICO claims based on injuries discovered or that should have been discovered before April 8, 2017. Plaintiff's civil RICO claims against William Shelby McKenzie, Vicki Crochet, Robert Barton, Miriam Segar, James Williams, Mary Leach Werner, Verge Ausberry, and Scott Woodward are **DISMISSED WITH PREJUDICE** to the extent based on injuries discovered or that should have been discovered before April 8, 2017.

**IT IS FURTHER ORDERED** that Plaintiff Sharon Lewis may seek leave of Court on or before **Friday, December 10, 2021** to file a second amended complaint as follows:

To add a claim for retaliation for her exercise of her First Amendment right to free

---

[335] The claims are made in Plaintiff's first amended complaint, at R. Doc. 8.
[336] R. Doc. 67.
[337] R. Doc. 72.
[338] R. Doc. 76.
[339] R. Doc. 60.
[340] R. Doc.66.
[341] R. Doc. 71.
[342] R. Doc. 81.
[343] R. Doc. 98.

speech under 42 U.S.C. § 1983 against Garrett Danos, Stanley Jacobs, Robert Yarborough, James Williams, Mary Leach Werner, Joseph Alleva, Miriam Segar, Verge Ausberry, and Scott Woodward, in their individual capacities, as set forth in paragraphs 124 to 134 of Plaintiff's proposed second amended complaint at R. Doc. 144-2; and

To amend her civil RICO claims against William Shelby McKenzie, Vicki Crochet, Robert Barton, James Williams, Mary Leach Werner, Joseph Alleva, Miriam Segar, Verge Ausberry, and Scott Woodward, in their individual capacities, as generally set forth in paragraphs 135 to 328 of Plaintiff's proposed second amended complaint at R. Doc. 144-2.[344]

If Plaintiff timely requests leave to file her second amended complaint, the motions to dismiss filed by William Shelby McKenzie, Vicki Crochet, Robert Barton, James Williams, Mary Leach Werner, Miriam Segar, Verge Ausberry, and Scott Woodward, to the extent seeking dismissal of Plaintiff's civil RICO claims based on injuries discovered on or after April 8, 2017,  will be denied as moot without prejudice.[345]

Plaintiff may seek leave of Court on or before **Friday, December 10, 2021** to file into the record those portions of her First Amended RICO Case Statement[346] relevant to claims that have not been dismissed for lack of subject matter jurisdiction or as time barred.[347]

**New Orleans, Louisiana, this 2nd day of December, 2021.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[344] Plaintiff's motion for leave is **DENIED** in all other respects.

[345] R. Docs. 60, 66, 67, 71, 72, 76, 81, and 98.

[346] R. Doc. 112-11.

[347] Assuming Plaintiff timely files a motion for leave of Court to file her proposed second amended complaint and leave is granted, the remaining claims will be: (1) a claim for Title IX retaliation against the Board of Supervisors of Louisiana State University based on retaliatory events occurring on or after April 8, 2020; (2) a claim for First Amendment retaliation under 42 U.S.C. § 1983 against Garrett Danos, Stanley Jacobs, Robert Yarborough, James Williams, Mary Leach Werner, Joseph Alleva, Miriam Segar, Verge Ausberry, and Scott Woodward, in their individual capacities; and (3) a civil RICO claim against William Shelby McKenzie, Vicki Crochet, Robert Barton, James Williams, Mary Leach Werner, Miriam Segar, Verge Ausberry, and Scott Woodward, in their individual capacities, based on injuries discovered or that should have been discovered on or after April 8, 2017.