**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**SHARON LEWIS**         *    **CIVIL ACTION NO.: 21-198**

                    *

**VERSUS**            *    **JUDGE: SM**

                    *

**LOUISIANA STATE UNIVERSITY, ET AL ***    **MAGISTRATE JUDGE: RLB**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**MEMORANDUM IN SUPPORT OF**
**JOSEPH "JOE" ALLEVA'S MOTION TO DISMISS**

**MAY IT PLEASE THE COURT:**

Defendant, Joseph "Joe" Alleva ("Alleva"), respectfully submits this Memorandum in Support of his Motion to Dismiss the claims filed against him by Plaintiff, Sharon Lewis ("Plaintiff/Lewis"), in the First Amended Complaint for Damages ("First Amended Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**I.  BACKGROUND AND PROCEDURAL HISTORY.**

The allegations in the First Amended Complaint arise out of Lewis' employment with the Louisiana State University ("LSU") Athletic Department. She began working for LSU in 2001 as the Coordinator for Recruiting Operations. In 2007, Lewis was promoted to Assistant Athletics Director for Football Recruiting and Alumni Relations. In 2020, she was promoted again to the position of Associate Athletics Director for Football Recruiting and Alumni Relations. Alleva served as LSU's Athletics Director from July 1, 2008, through April 17, 2019. While Lewis remains an employee of LSU today, Alleva is no longer employed by LSU in any capacity.[1]

---

[1] Rec. Doc. 8, at pp. 3–5, ¶¶ 16, 24.

1

A. **Overview of Plaintiff's Claims.**

Lewis filed an Original Complaint and Jury Demand on April 7, 2021, ("Original Complaint"),[2] and a First Amended Complaint on May 5, 2021,[3] naming various entities and individual defendants involved in the operation of LSU's Athletic Department ("Athletic Department") or served as LSU's outside legal counsel, and alleging violations of Title IX, 20 U.S.C. § 1681 ("Title IX"),[4] and the Racketeering Influenced Corruption Organizations Act, 18 U.S.C. §§ 1961–68 ("RICO").[5]  The crux of Lewis' allegations is that she experienced various types of workplace retaliation because of her attempts to report alleged Title IX violations committed by (a) former LSU football coach, Edwin "Les" Miles ("Miles"), between 2009 and 2013, and (b) certain student athletes in 2016, 2017, and 2018.[6]  According to Lewis' allegations, Defendants engaged in "a pattern of racketeering activity," or conspired to engage in a "pattern of racketeering activity," in connection with investigations into the alleged misconduct and Title IX complaints of "LSU's athletic officials and football players" and in failing to adequately report and respond to those complaints, to promote the continued success of LSU's football program.[7]

Lewis alleges six (6) separate "schemes," which were violative of RICO, in her First Amended Complaint, as follows:

(1) Scheme to Conceal the Les Miles' Sexual Harassment Investigation ("Scheme 1");

(2) Scheme to Obstruct Justice and Prevent Lawful Reporting of Miles Alleged Misconduct ("Scheme 2");

---

[2] Rec. Doc. 1
[3] Rec. Doc. 8.
[4] The Title IX claims against Alleva were voluntarily dismissed by Lewis.  *See* Rec. Doc. 88.
[5] Lewis also asserts claims under 42 U.S.C. §§ 1981 and 1982 against other defendants but those claims are not being asserted against Alleva. Rec. Doc. 8, at p. 43, ¶ 192.
[6] Rec. Doc. 8, at pp. 16–18, ¶¶ 73–76, 79–84.
[7] Rec. Doc. 8, at pp. 27–41, ¶¶ 30, 109, 125–27, 130–87.

(3) Scheme to Defraud the Federal Government ("Scheme 3");

(4) Ongoing Scheme to Evade Title IX Investigations and Reporting ("Scheme 4");

(5) Ongoing Scheme to Control LSU Athletics and Avoid Title IX ("Scheme 5");

(6) Scheme to Damage Lewis' Employment and Employability ("Scheme 6").[8]

Schemes 1 and 2 involve alleged actions and injuries occurring in 2013, which have already been dismissed by this Honorable Court as time barred.[9]  For those same reasons, Lewis' RICO claims under Schemes 1 and 2 against Alleva are likewise time barred, and thus, should be dismissed.  To the extent Lewis' claims against Alleva relating to Scheme 3 are not time-barred,[10] they should be dismissed because there are no allegations asserted against Alleva.

Lewis does not plead sufficient factual allegations against Alleva to support her claims that he engaged in " pattern of racketeering activity"; nor does she allege she was injured by Schemes 4 and 5.[11]  In fact, in her allegations, Lewis asserts Alleva was the *target* of the alleged racketeering activity, which ultimately led to him being fired as LSU's Athletics Director.[12]  Scheme 6 is devoid of any allegations against Alleva, and thus, fails to meet the federal pleading requirements.

**B.    Prior Actions of the Court.**

A RICO Order was issued by this Honorable Court, on May 24, 2021, requiring Lewis to provide additional detailed factual information to support her federal RICO allegations.[13]  On June

---

[8] Rec. Doc. 8, at pp. 27–31, ¶¶ 130–42 (Scheme 1); Rec. Doc. 8, at pp. 31–32, ¶¶ 143–47 (Scheme 2); Rec. Doc. 8, at pp. 32–33, ¶¶ 148–52 (Scheme 3); Rec. Doc. 8, at pp. 33–35, ¶¶ 153–64 (Scheme 4); Rec. Doc. 8, at pp. 36–38, ¶¶ 165–74 (Scheme 5); Rec. Doc. 8, pp. 38–41, ¶¶ 175–85 (Scheme 6).

[9] Rec. Doc. 165, at p. 42.

[10] The allegations relating to Scheme 3 do not make any allegations against Alleva, but rather, the LSU Board of Supervisors.  Nevertheless, the allegations relating to Scheme 3 pertain to the money spent by LSU to hire Taylor Porter to conduct the Miles investigation in 2013.  If any of Lewis' allegations relate to Alleva, her claims are untimely.

[11] The allegations of Schemes 4 and 5 allege there were issues with how LSU handled Title IX complaints.

[12] Rec. Doc. 8, at p. 37, ¶ 168.

[13] Rec. Doc. 15.

29, 2021, Lewis filed her RICO Case Statement ("Case Statement").[14]  On September 10, 2021, the Court dismissed Lewis' Title IX claims against the LSU Board of Supervisors for actions occurring prior to April 8, 2020—one (1) year prior to the filing of the Original Complaint—on the grounds they were time barred by the limitations period applicable to Title IX claims.  On December 2, 2021, the Court issued its ruling on all of the Defendants' Motions to Dismiss filed pursuant to Fed. R. Civ. P 12(b)(6) ("Ruling"),[15] except Alleva's (whose responsive pleadings were not due at the time of the Ruling).[16]  In the Order and Reasons for Ruling, this Court dismissed various claims asserted by Lewis but afforded her the opportunity to file a Second Amended Complaint and First Amended RICO Case Statement consistent with the Court's Ruling.[17]

## II.    SUMMARY OF THE ARGUMENT

Lewis' claims against Alleva fail because she lacks standing to assert a cause of action against him under RICO.  First, Lewis' alleged injuries were not proximately caused by any of the purported predicate acts she claims Alleva engaged in, and are not otherwise recoverable under RICO.  Second, qualified immunity applies to Lewis' RICO claims against Alleva.  Third, all of her claims based on any alleged damages occurring prior to April 7, 2017 are time barred.  Finally, Lewis fails to make specific allegations as to Alleva's participation in a pattern of racketeering activity; fails to distinguish the RICO person from the alleged RICO enterprise; and fails to allege an ongoing organization or a continuing unit, relatedness between the predicate acts, or the threat

---

[14] Rec. Doc. 45.

[15] Rec. Doc. 165, at p. 5 n.62.

[16] Plaintiff did not send Alleva a request for waiver of service until November 17, 2021.  Alleva, through counsel, promptly signed the waiver of service as requested and returned it to Plaintiff's counsel, who filed it with the Court on November 26, 2021.  Pursuant to Fed. R. Civ. P. 4(d)(3), Alleva's answer is not due until sixty (60) days after the waiver of service was sent to undersigned counsel.

[17] Rec. Doc. 165.

of continuing racketeering activity as required under RICO. Therefore, Lewis' claims against Alleva should be dismissed, with prejudice.

### III.    ARGUMENT

**A.  Plaintiff's RICO Claims Brought Pursuant to 18 U.S.C. §§ 1962(c) and (d) Should be Dismissed.**

**1.  Lewis Lacks Standing to Assert Claims Under RICO Against Alleva.**

**i.  *Lewis' damages were NOT proximately caused by the alleged predicate acts.***

To have standing to assert a RICO claim, a plaintiff must satisfy two elements: injury and causation. *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998).[18] To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plausibly plead that her injuries were proximately caused by the alleged RICO violation. *Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 784–85 (5th Cir. 2020). The burden is on the plaintiff to establish she has standing to bring claims under RICO. *Arroyo v. Oprona, Inc.*, 736 F. App'x 427, 429 (5th Cir. 2018); *Jackson v. NAACP*, 546 F. App'x 438, 442 (5th Cir. 2013).

RICO is designed to compensate a plaintiff for injury to "business or property by reason of" a racketeering violation. 18 U.S.C. § 1964(c). The language "by reason of" in § 1964(c) has been held to impose a proximate cause requirement for a RICO plaintiff's damages. *Cullom v. Hibernia Nat. Bank*, 859 F.2d 1211, 1214 (5th Cir. 1988). Proximate cause for purposes of RICO does not turn on the question of foreseeability; instead, a plaintiff must demonstrate the alleged violation "led directly" to her injuries." *Molina-Aranda*, 983 F.3d at 784–85. When there is a

---

[18] Courts use a stricter analysis when assessing whether a plaintiff has standing to sue under RICO to guard courts from an overflow of complex RICO cases with speculative or attenuated damages. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460 (2006). Another motivating factor in applying a stricter analysis of the types of injuries that are compensable under RICO, is the difficulty in courts ascertaining the damages caused by a remote or indirect action. *Anza*, 547 U.S. at 458; *Treadway v. Lisotta*, No. CIV. A. 08-1375, 2008 WL 3850462, at *5 (E.D. La. Aug. 15, 2008).

lack of directness between the conduct (predicate acts) and the harm, there is no cognizable RICO claim. *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 12 (2010). A causal link that is too remote, purely contingent, or indirect is insufficient to constitute a RICO injury. *Id.* at 9.[19] Furthermore, "damage to a plaintiff's subjective expectations cannot form the basis of a RICO claim." *Gil Ramirez Grp., L.L.C. v. Hous. Indep. Sch. Dist.*, 786 F.3d 400, 409–10 (5th Cir. 2015); *Price*, 138 F.3d at 607; *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995).[20]

Lewis does not plead a concrete financial loss to her business or property that was proximately caused by the alleged predicate acts of Alleva. Rather, she seeks damages for loss of past and future wages and benefits, loss of earning potential, and various types of personal injuries.[21] Her alleged injuries stem from the denial of promotions, employment benefits and pay increases, damage to her professional reputation, and fraudulent disciplinary actions and lawsuits.[22] In addition, Lewis claims she was subjected to retaliation in an effort to prevent her from reporting Title IX complaints against "LSU officials and football players."[23]

Lewis fails to plausibly plead how her purported injuries were proximately caused by the alleged predicate acts of Alleva or any of the other Defendants. *Price*, 138 F.3d at 606. Lewis offers nothing more than conclusory allegations to support that the harm she purportedly sustained, stemming from various employment benefits she contends to have been denied due to her reporting of Title IX complaints, was proximately caused by the predicate acts of mail fraud, wire fraud,

---

[19] A claim that must rely on a "domino effect" of causation fails to state a RICO/racketeering claim. *In re Oil Spill*, 802 F. Supp. 2d 725, 729 (E.D. La. 2011).

[20] Injury to an intangible property interest, even if very valuable, is not the sort of injury RICO was meant to compensate. *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d at 523.

[21] Rec. Doc. 8, at pp. 44–45.

[22] Rec. Doc. 45, at p. 11.

[23] Rec. Doc. 8, ¶¶ 30, 109, 125–27; Rec. Doc. 45, at p. 11.

obstruction of a criminal investigation, witness tampering, witness retaliation, interference with commerce, and/or interstate travel in aid of racketeering.  The relationship between Lewis' purported injuries and the alleged RICO activity is far too attenuated to support a finding of proximate cause sufficient to confer standing in this case.

Based on her own allegations in the First Amended Complaint, Lewis' purported injuries were caused by decisions made by her employer regarding whether to promote her or increase her salary  It is well-settled under established U.S. Fifth Circuit precedent that employment-related injuries cannot form the basis of a RICO claim.  *Cullom*, 859 F.2d at 1216; *Jackson*, 546 F. App'x at 442–43; *Alden v. Allied Adult & Child Clinic, L.L.C.*, 171 F. Supp. 2d 647, 653 (E.D. La. 2001).[24]  Furthermore, adverse employment actions taken against a person who allegedly refused to participate in a RICO scheme does not confer RICO standing, unless the injuries were proximately caused by the alleged predicate acts.  *Cullom*, 859 F.2d at 1214.[25]  In *Cullom*, the U.S. Fifth Circuit held that, "**[w]histle blowers do not have standing to sue under RICO for the injury caused by the loss of their job.**"  *Id.* at 1215 (emphasis added).[26]  The court held the proximate cause of the plaintiff's injuries (loss of employment) was the defendant's decision to fire him, not the predicate acts of mail and securities fraud alleged by the plaintiff.  *Id.* at 1216. The U.S. Fifth Circuit's decision in *Cullom* is controlling and its holding should apply with even

---

[24] Other U.S. Courts of Appeals have reached similar conclusions regarding standing to bring RICO claims for loss of employment/employment benefits.  *Pujol v. Shearson/Am. Exp., Inc.*, 829 F.2d 1201, 1205 (1st Cir. 1987); *Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990); *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 154 (6th Cir. 1990); *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 952–53 (8th Cir. 1999); *Morast v. Lance*, 807 F.2d 926, 933 (11th Cir. 1987).

[25] *See also Alden v. Allied Adult & Child Clinic, L.L.C.*, 171 F. Supp. 2d 647, 653 (E.D. La. 2001) (physician did not have standing under RICO for damages relating to his loss of employment after he was terminated for complaining about an alleged fraudulent billing scheme).

[26] The holding and reasoning in *Cullom* would also apply to employment benefits such as promotions and pay increases, which Lewis alleges caused her damages.

greater force in this case because Lewis is not claiming she was terminated, but rather, that she "lost" certain speculative employment benefits she felt she deserved.

The only harm allegedly suffered by Lewis is the tangential harm to her employment. However, any employment-related damages she allegedly sustained were not proximately or directly caused by any alleged predicate acts of Alleva, and are not recoverable under RICO. Accordingly, Lewis lacks standing to assert a cause of under RICO in this case; thus, she is precluded from bringing her RICO claims against Alleva. *Cullom*, 859 F.2d at 1216; *Jackson*, 546 F. App'x at 442–43; *Alden*, 171 F. Supp. 2d at 653.

> ### ii. *Damages for personal injuries or expenses related to personal injuries are not recoverable under RICO.*

In addition to damages for her alleged employment-related injuries, Lewis is seeking damages relating to and/or arising from various personal injuries.[27]  However, RICO does not allow a plaintiff to recover damages for personal injuries or that are related to personal injuries. *Vickers v. Wks. Marine, Inc.*, 414 F. App'x 656, 657 (5th Cir. 2011) (*per curiam*);[28]  *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 422 (5th Cir. 2001).[29]  Even pecuniary damages that are closely related to or arise out of personal injuries are not recoverable under RICO. *Vickers*, 414 F. App'x

---

[27] Lewis seeks damages for the following personal injuries: emotional pain, mental anguish, humiliation, suffering of discrimination, enjoyment of life, inconvenience, physical and mental health, damage to reputation, character, and defamation.  Rec. Doc. 8, at pp. 44–45.

[28] The opinion in *Vickers*, which provides more detail regarding the prohibition against asserting a RICO claim relating to personal injuries, is found at *Vickers v. Weeks Marine, Inc.*, No. CV 09-6230, 2010 WL 11570439, at *2 (E.D. La. Apr. 7, 2010).

[29] "[E]ven if the Court undertook some philosophical approach" and construed the *lost opportunity* to bring a personal injury lawsuit as a property right, "the Court nevertheless would be unable to adopt such an interpretation because it would contravene Congress' intent in enacting the RICO statute." *Bradley v. Phillips Petroleum Co.*, 527 F. Supp. 2d 625, 647 (S.D. Tex. 2007), *aff'd sub nom.*, *Bradley v. Phillips Chem. Co.*, 337 F. App'x 397 (5th Cir. 2009)(emphasis added); *See also*, *Capdeboscq v. Francis*, No. CIV.A. 03-0556, 2003 WL 21418499, at *2 (E.D. La. June 16, 2003) (damages for humiliation and embarrassment not recoverable under RICO); *Robinson v. Castle*, No. CIV.A. H-11-649, 2011 WL 3813292, at *6 (S.D. Tex. Aug. 29, 2011) (damages for mental anguish and loss of consortium not recoverable); *Gaines v. Tex. Tech Univ.*, 965 F. Supp. 886, 890 (N.D. Tex. 1997) (loss of future earning potential not recoverable).

656.[30]   Damages courts have found to be closely associated with personal injuries and not recoverable for a RICO claim include: expenses incurred for psychological counseling/therapy,[31] loss of future earning capacity,[32] medical expenses,[33] and lost opportunities.[34]   Furthermore, Lewis' alleged damages are not concrete financial losses and are not recoverable under RICO since they would be too speculative and difficult to quantify.   *Scheppegrell v. Hicks*, No. CV 15-5794, 2016 WL 3020884, at *4 (E.D. La. May 26, 2016).

As evidenced by the First Amended Complaint and Case Statement, aside from her employment-based damages, Lewis alleges damages that arise from physical, emotional, and economic injuries related to her allegations of harassment and retaliation in response to her reporting of Title IX violations.   Under well-established precedent, her alleged injuries do not confer standing to assert a cause of action under RICO in this case; thus, Lewis' claims against Alleva should be dismissed.

---

[30] *In re Vioxx Prod. Liab. Litig.*, No. MDL 1657, 2007 WL 3104220, at *1 (E.D. La. Oct. 23, 2007)(physical, emotional and economic damages related to injuries from the use of a prescription drug were not recoverable under RICO).

[31] *Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 329–30 (E.D.N.Y. 2012) (plaintiffs brought RICO claims against school officials who allegedly covered up or failed to properly investigate claims of sexual assault to students by the football coach).

[32] *Gaines*, 965 F. Supp. at 890.

[33] *Borskey v. Medtronics, Inc.*, No. CIV. A. 94-2302, 1995 WL 120098, at *3 (E.D. La. Mar. 15, 1995), *aff'd in part*, *Borskey v. Medtronics, Inc.*, 105 F.3d 651 (5th Cir. 1996)

[34] *Gaines*, 965 F. Supp. at 890 (lost opportunity to play in the NFL not recoverable).  As a general rule, damages for lost opportunity, regardless of whether it arises from personal injuries or injuries to business or property, are not recoverable because lost opportunity damages are too speculative to be recoverable under RICO.  *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d at 523.

### 2.   Sovereign and Qualified Immunity Apply to Plaintiff's RICO Claims.

As the Court has previously found, sovereign immunity applies to Lewis' claims against Alleva in his official capacity.[35]   Additionally, qualified immunity applies to Lewis' RICO claims asserted against Alleva in his individual capacity.  *Brown v. Nationsbank Corp.*, 188 F.3d 579, 588 (5th Cir. 1999).[36]   Alleva, at all relevant times, was serving as Athletics Director and Vice Chancellor of LSU; thus, he is entitled to qualified immunity.[37]   *Kooros v. Nicholls State Univ.*, 379 F. App'x 377, 379 (5th Cir. 2010).

Qualified immunity is grounded in the need to shield government officials from harassment, distraction, and liability for reasonable acts taken while performing his or her duties. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).[38]   Once a defendant raises the defense of qualified immunity, the burden shifts to the plaintiff to show qualified immunity is not applicable.  *Kooros*, 379 F. App'x. at 379.  To defeat qualified immunity, the plaintiff must show there was a violation of a constitutional right or statutory right, and that the right was clearly established at the time of the alleged violation.  *Brown*, 188 F.3d at 587.  To qualify as a clearly established right, existing precedent must have placed the statutory or constitutional question *beyond debate.  Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011).[39]   A government official does not lose qualified

---

[35] Rec. Doc. 165, at p. 23.  Sovereign immunity applies to RICO claims against a state official.  *Treece v. State*, No. CIV. A. 99-1567, 2000 WL 1480356, at *4 (E.D. La. Oct. 4, 2000); *Gaines*, 965 F. Supp. at 889.  Furthermore, since a lawsuit against a public official in his official capacity is actually a suit against the state, Lewis' RICO claims fail because governmental entities are immune from punitive damages that are mandatory under RICO.  *Gil Ramirez Grp.*, 786 F.3d at 411–13.

[36] Since qualified immunity is an immunity from suit rather than a defense to liability, the issue of whether qualified immunity applies should be decided at the earliest stages of litigation.  *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009).

[37] Rec. Doc. 8, at pp. 3–4, ¶ 16.

[38] Qualified immunity gives government officials "breathing room" for potential mistakes in judgment so long as the conduct is reasonable and does not violate clearly established rights.  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017).

[39] It is Lewis' burden to point to controlling authority or a significant amount of persuasive authority which defines the contours of the right with a high degree of particularity.  *Morgan*, 659 F.3d at 371–72.

immunity if a certain right is only established in the abstract.  *Cantrell v. City of Murphy*, 666 F.3d 911, 920 (5th Cir. 2012).

The Court must analyze Alleva's qualified immunity defense considering the specific allegations made against him in the First Amended Complaint and Case Statement, of which there are few.[40]  In the RICO context, the court should evaluate qualified immunity as to each predicate act under the two-part qualified immunity analysis, to determine if there was a clearly established constitutional or statutory right violated and whether Alleva's conduct was "objectively reasonable."  *Brown*, 188 F.3d at 588.  To satisfy her burden, Lewis cannot rest on the general allegations of her First Amended Complaint but must put forth specific evidence supporting her claims that Alleva violated RICO and committed the alleged predicate acts.  *Id.* at 587-88.

None of the predicate acts alleged against Alleva constitute a violation of a clearly established constitutional or statutory right, and none of Lewis' allegations show that he acted unreasonably.[41]  First, any potential violation or noncompliance with Title IX does not rise to the level of a "clearly established" right required for qualified immunity and is not an enumerated predicate act.  Second, the First Amended Complaint and exhibits attached thereto show Alleva issued several internal communications reminding all LSU Athletic Department personnel to abide by the requirements of Title IX and LSU's policies and discouraged any self-investigation by the

---

[40] Courts must evaluate whether qualified immunity applies as to each specific defendant; thus, Lewis cannot lump in general allegations made against other Defendants to defeat Alleva's qualified immunity.  *Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007).  Furthermore, legal conclusions couched as factual allegations are not sufficient to carry Lewis' burden of proving Alleva is not entitled to qualified immunity.  *Minnis v. Bd. of Sup'rs of La. State Univ. & Agric. & Mech. Coll.*, 972 F. Supp. 2d 878, 886–87 (M.D. La. 2013).

[41] By Lewis' own admission, Alleva recommended Coach Miles be fired because of the 2013 investigation into claims of his sexual misconduct.  Rec. Doc. 8, at p. 29, ¶ 136.

Athletic Department staff.[42]   Alleva's communications show he acted reasonably; thus, he is entitled to qualified immunity.  It is Lewis' burden to point to controlling authority or a significant amount of persuasive authority to demonstrate Alleva violated a right that was "clearly established" at the time of the alleged conduct, which she has not and cannot do; thus, Lewis cannot meet her burden of defeating Alleva's qualified immunity defense and her RICO claims against him should be dismissed, with prejudice. *Morgan*, 659 F.3d at 371–72.

### 3.   Plaintiff's RICO Claims Against Alleva are Time-Barred.

Civil RICO actions, for both substantive violations and RICO conspiracy, are subject to a four-year statute of limitations.  *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987); *Boulmay v. Rampart 920, Inc.*, 124 F. App'x 889, 891 (5th Cir. 2005).  Applying the four-year statute of limitations, as well as the "injury discovery" and the "separate accrual" rules required by the U.S. Fifth Circuit to this case, this Court held, in its Ruling, equitable tolling did not apply to Lewis' claims, and thus, that any and all claims that were discovered or should have been discovered before April 8, 2017, were time barred.[43]   Because the same rationale and reasoning contained in the Ruling applies with equal force to Lewis' allegations against Alleva, all of her claims against him arising out of injuries that were, or should have been, discovered before April 8, 2017, are time barred and should be dismissed.[44]

---

[42] *See* Rec. Doc. 8, at pp. 13, ¶ 55; Rec. Doc. 8, at p. 17, ¶ 78; Rec. Doc. 8-1, at pp. 195–98 (Email from Alleva to all Athletics Staff dated June 8, 2016); Rec. Doc. 8-1, at pp. 199-200 (Alleva Memo to all Athletics employees dated February 14, 2018).  Exhibits to the First Amended Complaint can be considered by the Court when ruling on Alleva's Motion to Dismiss.  *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004).  To the extent there are conflicts between the Amended Complaint and the exhibits, the contents of the exhibit controls.  *Rouege Trucking, LLC v. Canales*, No. CIV.A. 14-304-JJB, 2015 WL 127870, at *7 (M.D. La. Jan. 7, 2015).

[43] Rec. Doc. 165, at pp. 40–42, 46–51.

[44] Scheme 1 and Scheme 2 relating to the handling of the Miles investigation are time barred on their face as the alleged conduct and injuries occurred in 2013.  The claims relating to Scheme 3 are time barred as they occurred prior to April 8, 2017.  *See supra*, n. 11.

**B.    Lewis Fails to Plead Plausible RICO Claims Against Alleva.**

A civil RICO lawsuit is quasi-criminal in nature and should not be brought against Alleva without a sufficient legal and factual basis because such claims inevitably stigmatize a RICO defendant. *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990).  To protect innocent parties, courts should dismiss frivolous RICO claims at the earliest possible stage of litigation. *Id.*  In fact, the U.S. Supreme Court has instructed district courts to *expeditiously* dismiss claims that clearly fail to provide any legal relief to the plaintiff. *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

To establish her RICO claims against Alleva, Lewis must show that he is (1) a person who engages in (2) a pattern of racketeering activity and is (3) connected to the acquisition, establishment, conduct, or control of an enterprise. *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996).  "Racketeering activity" is defined as two or more predicate acts as enumerated in 18 U.S.C. § 1961. *Id.*  To establish a "pattern of racketeering activity," a plaintiff must show the racketeering predicate acts are related and amount to or pose a threat of continued criminal activity. *Id.*  An "enterprise" is statutorily defined as any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.  18 U.S.C. § 1961(4).  All of the elements of RICO must be sufficiently plead pursuant to applicable federal pleading standards. *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989).  Lewis' allegations in the First Amended Complaint and Case Statement fail to plead plausible RICO claims against Alleva, and thus, should be dismissed.

### 1.  Plaintiff Fails to Allege any Legally Cognizable Enterprise.

An "enterprise" must be an entity separate from the pattern of activity in which it allegedly engages.  *Elliott*, 867 F.2d at 881.[45]  Allegations that an enterprise is created by the racketeering activity, itself, is not sufficient to plead an "enterprise" that is separate and apart from the pattern of racketeering activity for purposes of stating a cognizable RICO claim.  *Zastrow v. Hous. Auto Imps. Greenway Ltd.*, 789 F.3d 553, 562 (5th Cir. 2015).  Specific facts, not mere conclusory allegations, must be plead to establish the existence of an "enterprise."  *Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir. 1988).

Lewis fails to distinguish the alleged "pattern of racketeering activity" from the purported "association-in-fact" enterprise.  She alleges the enterprise was created by the racketeering activity consisting of predicate acts of mail fraud, wire fraud, obstruction of a criminal investigation, witness tampering, witness retaliation, interference with commerce, and/or interstate travel in aid of racketeering.  She further alleges the predicate acts were associated with a "common plan" to conceal alleged Title IX violations to gain a competitive advantage in college athletics.[46]

Claiming the predicate acts were committed during the operation of Defendants' business is insufficient to state a RICO claim as there is no distinction between the RICO person and the RICO enterprise.  *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 230 (5th Cir. 2003).  In fact, Lewis fails to properly differentiate the activities of the "enterprise" and "pattern of racketeering," from the usual and daily activities of the enterprise's employees.[47]  Since Lewis has failed to plead

---

[45] The plaintiff alleging RICO violations must do more than allege a legal entity committed predicate acts through its agent or agents during the course of its business.  *Elliott*, 867 F.2d at 881; *See also, Atkinson v. Anadarko Bank & Tr. Co.*, 808 F.2d 438, 441 (5th Cir. 1987) (finding a bank, its holding company, and three of the bank's employees were not sufficient to create an enterprise when the alleged racketeering activity involved the regular activities of the bank).

[46] Rec. Doc. 45, at p. 17.

[47] Rec. Doc. 45, at p. 19, ¶ 8.

an "enterprise" that is separate and distinct from the alleged "pattern of racketeering activity," her allegations do not meet the requirements of RICO.

### 2. Plaintiff Fails to Plead the Enterprise is Separate and Distinct from the RICO Person.

For purposes of 18 U.S.C. § 1962(c), Lewis "must demonstrate not only that the enterprise is distinct from the series of predicate acts constituting racketeering activity, but also, that the RICO 'person' who commits the predicate acts is distinct from the enterprise." *Whelan,* 319 F.3d at 229. Under RICO, the alleged "enterprise" must be separate and distinct from the alleged RICO person, which is the defendant in a civil or criminal racketeering action. *Crowe v. Henry,* 43 F.2d 198, 204 (5th Cir. 1995)*.* The "person-enterprise" distinction cannot be satisfied by alleging officers or employees of a corporation committed predicate acts in the course of its own business. *Whelan*, 319 F.3d at 230.[48] According to Lewis, the alleged "association-in-fact" enterprise consisted of the LSU Board of Supervisors, LSU's private legal counsel, and the individually named Defendants, who are current or former employees of LSU.[49] In essence, Lewis contends that LSU or the Athletic Department is the purported enterprise. LSU and the individual Defendants cannot be both the "RICO persons" and the "RICO enterprise." Because the First Amended Complaint and Case Statement fail to properly identify an enterprise that is separate and distinct from the alleged RICO persons, i.e., the Defendants, Lewis' claims against Alleva fail.

---

[48] *See also, Warnock v. State Farm Mut. Auto. Ins. Co.*, 833 F. Supp. 2d 604, 612 (S.D. Miss. 2011) (finding a law firm and its corporate client could not form a separate and distinct RICO enterprise).
[49] Rec. Doc. 45, at p. 18.

### 3. Plaintiff Cannot Show the Alleged Acts were Related to or Posed a Threat of Continued Racketeering Activity.

Lewis cannot establish a RICO claim against Alleva because she is unable to demonstrate a "pattern of racketeering activity" as required by statute. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). To establish a "pattern of racketeering activity," Lewis must show the relatedness between Alleva's alleged criminal (predicate) acts and a threat of continued racketeering activity. *Id.* Indeed, relatedness and continuity have been called the critical features of a pattern of racketeering activity. *Id.* at 239.[50] To prove relatedness, Lewis must show the alleged predicate acts have either the same or similar purposes, results, participants, victims, or methods of commission. *Word of Faith World Outreach Ctr. Church*, 90 F.3d at 122–23.

Lewis merely alleges separate and independent incidents of alleged criminal conduct that, at best, are loosely related to a "common plan" to gain a competitive advantage for the continued success of LSU's football program. Furthermore, LSU has made a concerted effort to remedy any alleged mishandling of reports of sexual misconduct and Title IX violations; therefore, there is no threat of continued racketeering activity. *See Id.* Thus, Lewis' allegations do not satisfy the relatedness and continuity requirements necessary to support a claim under RICO.

### 4. Plaintiff Fails to Plausibly Plead Predicate Acts to Support her Claims.

To support her RICO claims, Lewis must sufficiently allege Alleva committed at least two (2) of the enumerated statutory predicate acts under federal pleading standards. 18 U.S.C. § 1961(5). In the First Amended Complaint, Lewis alleges Alleva engaged in the predicate acts mail

---

[50] "RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff…must prove predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at 239; See also *Heller Fin., Inc. v. Grammco Comput. Sales, Inc.,* 71 F.3d 518, 524 ( 5th Cir. 1996)("It is this factor of continuity plus relationship which combines to produce a pattern.").

fraud, wire fraud, obstruction of a criminal investigation, witness tampering, witness retaliation, interference with commerce, or interstate travel in aid of racketeering.[51]  For each of the alleged predicate acts, Lewis is required to allege the requisite element of criminal intent even when pursuing civil RICO claims.  *Babst v. Morgan Keegan & Co.*, 687 F. Supp. 255, 258 (E.D. La. 1988).  The First Amended Complaint fails to allege any affirmative *criminal* conduct on behalf of Alleva that indicates he violated *any* of the alleged predicate acts, much less two (2) or more predicate acts as required by RICO.[52]  For the reasons set forth below, Lewis' allegations against Alleva fall short of plausibly pleading his involvement in the purported racketeering activity.

### i. *Mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343.*

Lewis alleges Alleva participated in the predicate act of mail fraud but fails to make any specific allegations against Alleva.[53]  The elements of mail fraud for purposes of supporting a RICO claim are: (1) a scheme to defraud by means of false/fraudulent representation(s); (2) defendant's interstate or intrastate use of the mail system to execute the scheme; and (3) actual injury to the plaintiff.  *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993).  The elements of wire fraud are the same as mail fraud except the second element involves the use of interstate wire communication facilities instead of the mail system.  *Brown v. Coleman Invs., Inc.*, 993 F. Supp. 416, 426 (M.D. La. 1998).

Since fraud is an element of both mail and wire fraud, the heightened pleading requirements of Rule 9 of the Federal Rules of Civil Procedure applies, meaning Lewis must allege the time,

---

[51] Rec. Doc. 45, at p. 12.
[52] Passive acquiescence to the commission of predicate acts by other RICO defendants is not enough to plead a RICO claim. *Wang v. Ochsner Med. Ctr.-Kenner, L.L.C.*, No. CV 17-5134, 2017 WL 6055167, at *11 (E.D. La. Dec. 7, 2017).
[53] Rec. Doc. 45, at pp. 12–14.

place, contents of the false representations, as well as the identity of the person making the alleged misrepresentations. *JMF Med., LLC v. Team Health, LLC*, 490 F. Supp. 3d 947, 979 (M.D. La. 2020) (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)). The heightened pleading requirements for fraud do not allow Lewis to rely on speculation or conclusory allegations. *Robinson v. Standard Mortg. Corp.*, 191 F. Supp. 3d 630, 640 (E.D. La. 2016).

Lewis does not sufficiently plead the false representations Alleva allegedly made using the mail system to support mail fraud as a predicate act for purposes of RICO. Rather, she merely contends the list of communications contained in Exhibit 1 to her Case Statement satisfies the pleading requirement for mail and/or wire fraud.[54] These general allegations fail to satisfy Rule 9's heightened pleading requirements and fail to demonstrate that Alleva made any representations whatsoever to anyone, much less any misrepresentations.[55] Thus, Lewis has failed to plausibly plead Alleva engaged in the alleged predicate acts of mail or wire fraud to support her RICO claims.

### ii. *Obstruction of a criminal investigation in violation of 18 U.S.C. § 1510.*

Lewis alleges Alleva participated in the predicate act of obstruction of a criminal investigation. The crime obstruction of a criminal investigation involves a defendant's willfully bribery of a potential witness or informant to delay the communication of information to a criminal investigator relating to any violation of a United States statute. 18 U.S.C. § 1510(a). To support a claim for obstruction of a criminal investigation, the "criminal investigator" must be a federal officer/agent authorized to conduct or engage in investigations into potential violation of federal

---

[54] Rec. Doc. 45-1; Rec. Doc. 45, at p. 12.
[55] In the 42-page list of various communications, Alleva is not alleged to have authored any of the purported fraudulent representations. Rec. Doc. 45-1.

criminal law(s).  18 U.S.C. § 1510(c).  Lewis does not allege Alleva prevented anyone from speaking with a federal officer/agent regarding potential violations of federal criminal law; thus, Lewis has failed to even plead the predicate act of obstruction of a criminal investigation. Furthermore, Lewis contends Alleva, along with numerous other Defendants, agreed to conduct a fraudulent investigation into complaints of sexual misconduct against Coach Miles and allegedly concealed complaints of sexual misconduct against two (2) LSU football players.[56]  However, in her First Amended Complaint Lewis asserts Alleva recommended Coach Miles be fired for cause, following the investigation into reports of his misconduct, which is *inconsistent* with the theory that Alleva participated in an alleged scheme to conceal those complaints.[57]  Second, Exhibit A to the First Amended Complaint shows Alleva requested that all LSU Athletic Department employees use the proper channels for reporting Title IX complaints.[58]  Thus, the allegations in Lewis' Case Statement are expressly refuted by her own allegations in and attachments/exhibits to the First Amended Complaint.

### iii.  *Witness tampering violation of 18 U.S.C. § 1512 and witness retaliation in violation of 18 U.S.C. § 1513.*

Lewis alleges Alleva participated in the predicate acts of tampering and/or retaliating against a witness.[59]  A statutory element of witness tampering and witness retaliation is "an official proceeding" before a judge or court of the United States, Congress, federal agency, or related to insurance that affects interstate commerce.  18 U.S.C. § 1515(a)(1).  State court actions or investigations do not meet the statutory requirement for witness tampering and/or witness

---

[56] Rec. Doc. 45, at pp. 12–14.  The two LSU football players are identified as Derrius Guice and Drake Davis.

[57] Rec. Doc. 8, at p. 29, ¶ 136.

[58] Rec. Doc. 8-1, at pp. 195–98 (Email from Alleva to all Athletics Staff dated June 8, 2016); Rec. Doc. 8-1, at pp. 199-200 (Alleva Memo to all Athletics employees dated February 14, 2018).

[59] Rec. Doc. 45, at pp. 14–15.

retaliation. *Park S. Assocs. v. Fischbein*, 626 F. Supp. 1108, 1113 (S.D.N.Y. 1986), *aff'd sub nom.*, *Park S. Assoc. v. Fischbein*, 800 F.2d 1128 (2d Cir. 1986); *McKinney v. State of Ill.*, 720 F. Supp. 706, 708–09 (N.D. Ill. 1989). Lewis fails to make any allegations that any witness was tampered with or retaliated against relating to an "official proceedings" as defined by the statute.[60] Therefore, Lewis' claims regarding Alleva's alleged violations of 18 U.S.C. §§ 1512 and 1513 fail to satisfy the plausibility test.

### iv. *Interference with commerce, robbery, or extortion in violation of 18 U.S.C. § 1951.*

Lewis asserts that Alleva, along with other Defendants, interfered with interstate commerce by robbery or extortion.[61] The predicate act of interference with commerce by threats or violence is defined as:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, *by robbery or extortion* or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a) (emphasis added). The plain language of § 1951 requires interference with commerce by either robbery or extortion.[62] Lewis' theory pertaining to Defendants' alleged interference with commerce by threats or violence is that they concealed certain Title IX

---

[60] Rec. Doc. 45, at pp. 14–15.
[61] Rec. Doc. 45, at pp. 14–15.
[62] Robbery is defined as:
> "The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining."

18 U.S.C. § 1951(b)(1). "The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

investigations and complaints, which allowed for LSU to compete for collegiate football national championships and bring in millions of dollars in revenue; however, there are no allegations that Alleva committed robbery or extortion.[63]  Thus, Lewis fails to plausibly plead that Alleva engaged in the predicate act of interference with commerce by threats or violence.

<strong>v.    <em>Interstate travel in aid of racketeering in violation of 18 U.S.C. § 1952</em>.</strong>

The predicate act of interstate travel in aid of racketeering prohibits an individual from traveling across state lines to distribute proceeds of unlawful activity, commit a crime of violence or further any unlawful activity, and otherwise promote, manage, establish, carry on, or facilitate any unlawful activity.  18 U.S.C. § 1953(a).  Lewis fails to allege Alleva traveled across state lines or otherwise committed any of the enumerated acts.[64]  Therefore, she has failed to sufficiently plead the predicate act of interstate travel in aid of racketeering against Alleva.

<strong>5.    Plaintiff Fails to Allege How Alleva Conducted or Participated in Affairs of<br>the Alleged Enterprise.</strong>

Lewis' substantive RICO claim under § 1962(c) requires her to prove Alleva conducted or participated in the affairs of the enterprise through a pattern of racketeering activity.  Her allegations regarding Alleva's participation in the affairs of the purported enterprise are wholly contrary to the exhibits Lewis attaches to her First Amended Complaint and Case Statement, and are insufficient to support a claim under § 1962(c).[65]  Lewis alleges Defendants, through their various roles at LSU, had control of the alleged enterprise to carry out a scheme to conceal Title IX and criminal complaints filed against "LSU officials and football players," to gain a competitive

---

[63] Rec. Doc. 45, at pp. 15–16.

[64] Rec. Doc. 45, at pp. 16–17.

[65] Rec. Doc. 8, at p. 29, ¶ 136 (alleging Alleva sent an email in 2013 regarding the continued employment of Miles in light of the complaint made against him); Rec. Doc. 45, at p. 3 (discussing how Alleva was fired by other defendants who had control over the Athletic Department).

21

advantage over other NCAA schools.[66]  Lewis' assertion that Alleva used his position as LSU's Athletics Director to further the scheme of concealing Title IX violations is contradicted by the Husch Blackwell Report, which is attached to her First Amended Complaint.[67]  The Husch Blackwell Report demonstrates Alleva made numerous attempts to facilitate compliance with LSU's reporting policies by employees in the LSU Athletic Department.  In fact, he specifically instructed LSU Athletic Department employees to not self-investigate Title IX complaints.[68]

Lewis has repeatedly failed to show how Alleva could "control" the purported enterprise while, at the same time, also instructing employees of the Athletic Department to behave in a manner that is in direct conflict with the alleged purpose of the "enterprise."  Accordingly, her claims  against Alleva under § 1962(c) should be dismissed.

### 6. Plaintiff Fails to Plausibly Plead Alleva was Engaged in a Conspiracy to Violate RICO under 18 U.S.C. § 1962(d).

To sufficiently plead Alleva conspired to violate RICO, Lewis must allege he agreed with one or more persons to violate the substantive provisions of RICO and agreed with the overall objective of the racketeering activity.  *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 203 (5th Cir. 2015).  Simply alleging an agreement existed is not sufficient to properly plead an actionable conspiracy claim under RICO.  *Martin v. Magee*, No. CIV.A. 10-2786, 2011 WL 2413473, at *8–9 (E.D. La. June 10, 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544).  A defendant cannot be held liable for a RICO conspiracy claim merely because he

---

[66] Rec. Doc. 45, at p. 18.

[67] Rec. Doc. 8-1, at pp. 195–98 (Email from Alleva to all Athletics Staff dated June 8, 2016); Rec. Doc. 8-1, at pp. 199-200 (Alleva Memo to All Athletics Employees dated February 14, 2018).

[68] Rec. Doc. 8-1, at pp. 195–98 (Email from Alleva to all Athletics Staff dated June 8, 2016); Rec. Doc. 8-1, at pp. 199–200 (Alleva Memo to All Athletics Employees dated February 14, 2018).

associated with other alleged conspirators or was in close proximity to a climate of activity that "reeks something foul." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010).

Lewis' own allegations in the First Amended Complaint and Case Statement show that Alleva was not in agreement with the overall objective of the racketeering activity regarding the Miles investigation. In fact, Lewis even asserts that Alleva was terminated as Athletics Director of LSU because other Defendants wanted to "further the scheme to control LSU athletics."[69]

Lewis' contention that Alleva conspired with the other Defendants in violation of 18 U.S.C. § 1962(d) likewise fails because she cannot establish an actionable claim under § 1962(c). *Beck v. Prupis*, 529 U.S. 494, 505 (2000). Moreover, any alleged acts she alleges were done in furtherance of the conspiracy must also violate RICO to be actionable; that is, such acts must be "independently wrongful" under RICO. *Id.*[70] Because Lewis has failed to sufficiently plead violations of § 1962(c), her claims against Alleva under § 1962(d) should be dismissed.

### C. The First Amended Complaint Fails to Meet Federal Pleading Requirements and Lewis Should Not be Given an Opportunity to Amend.

Based on the foregoing, it is evident Lewis fails to make any specific allegations to support her RICO claims against Alleva in her First Amended Complaint and Case Statement.[71] Instead, she merely relies on labels, legal conclusions, and formalistic recitations of the elements of a cause of action under RICO. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (citing *Bell Atlantic Corp.*,

---

[69] Rec. Doc. 8, at p. 29, ¶ 136; Rec. Doc. 8, at pp. 36–37, ¶¶ 167–72.

[70] To state a cause of action for RICO conspiracy, a plaintiff must sufficiently allege his or her injuries were caused by a predicate act. Furthermore, to the extent Lewis attempts to plead Alleva was negligent, a civil conspiracy cannot be premised on negligence. *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 526 (5th Cir. 2016).

[71] Lewis' Case Statement is subject to the pleading requirements under the Federal Rules of Civil Procedure including the heightened pleading requirements for allegations pertaining to fraudulent conduct. *Wang*, 2017 WL 6055167, at *12..

550 U.S. 544).[72]  Lewis is required to plead more than mere allegations that are consistent with

Alleva's liability to satisfy the plausibility requirement.  *Id.*  She must plead Alleva engaged in the

specific criminal conduct (predicate acts) set forth in § 1961 and cannot lump him together with

the other Defendants in her allegations, as she has done in her First Amended Complaint and Case

Statement.  *In re MasterCard Int'l Inc., Internet Gambling Litig.*, 132 F. Supp. 2d 468, 476 (E.D.

La. 2001), *aff'd sub nom.*, *In re MasterCard Int'l Inc.*, 313 F.3d 257 (5th Cir. 2002).[73]

The First Amended Complaint and Case Statement are devoid of specific allegations

regarding Alleva's alleged racketeering activity that occurred after April 8, 2017.[74]  In addition,

the alleged predicate acts pertaining to fraud—mail fraud and wire fraud—must satisfy the

heightened pleading requirements of Rule 9.  *Williams* 112 F.3d at 177.  Because Lewis has failed

to sufficiently plead the "time, place, and contents of the false representations, as well as the

identity of the person making the misrepresentation and what [that person] obtained thereby," her

allegations do not meet Rule 9's heightened pleading requirements.  *Id.*  The generalized

accusations Lewis asserts against Alleva run afoul of this Honorable Court's RICO Order and fail

to satisfy pleading requirements; thus, her claims against him should be dismissed.

Lewis should not be afforded another opportunity to amend her Complaint.[75]  *Price*, 138

F.3d at 608.  In *Price*, the plaintiffs were represented by counsel and had already been afforded

---

[72] Even though courts are instructed to accept all of the allegations contained in the complaint as true, courts are not required accept as true legal conclusions cloaked as factual allegations.  *Ashcroft*, 556 U.S. at 677–78.

[73] *See also*, *Walker v. Beaumont Indep. Sch. Dist.*, 1:15-CV-379, 2017 WL 928459, at *7 (E.D. Tex. Mar. 6, 2017), *report and recommendation adopted*, 1:15-CV-379, 2017 WL 1166779 (E.D. Tex. Mar. 28, 2017), *aff'd*, 938 F.3d 724 (5th Cir. 2019).

[74] Alleva no longer served as the Athletics Director of LSU after April 17, 2019.  Rec. Doc. 8, at p. 37, ¶ 168.  The only allegations specifically pertaining to Alleva that occurred in 2017 (date not specified) relate to Alleva's decision to not send Lewis to an NFL meeting, which is not an enumerated predicate act under RICO.

[75] While normally federal courts give a plaintiff an opportunity to amend his or her complaint to state a cause of action upon which relief may be granted, the Fifth Circuit has held this rule does not apply with as much force when a plaintiff alleges RICO claims against the defendants.  *Price*, 138 F.3d at 608.

three (3) opportunities to articulate their alleged facts and damages theory—in the complaint, RICO case statement and opposition to the motion to dismiss—to support their RICO claims. As a result, the U.S. Fifth Circuit affirmed the district court's decision not to permit the plaintiffs another attempt to state a cognizable claim under RICO because it held that the defendant should not be subjected to further litigation costs. *Id.* Similarly, Lewis has already filed an original and amended Complaint, a RICO Case Statement and multiple oppositions to the Motions to Dismiss filed by other Defendants in this case, and she will presumably file an opposition to the instant Motion to Dismiss filed by Alleva. As in *Price,* Lewis has had ample opportunity to allege facts and damages recoverable under RICO. Thus, if Alleva's Motion to Dismiss is granted, Lewis claims should be dismissed, with prejudice, without being afforded another opportunity to amend her Complaint. *Id.*

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, Joseph "Joe" Alleva prays that his Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) be granted and that all of Plaintiff's claims against him be dismissed, with prejudice, at Plaintiff's sole cost.

Respectfully submitted:

**JEFF LANDRY**
**ATTORNEY GENERAL**


*/s/ S. Brooke Barnett-Bernal*
**MICHAEL A. PATTERSON** (#10373)
**S. BROOKE BARNETT-BERNAL** (#31031)-T.A.
**SETH F. LAWRENCE** (#38316)
*Special Assistant Attorneys General*
LONG LAW FIRM, L.L.P.
1800 City Farm Drive, Building 6
Baton Rouge, Louisiana 70806
Telephone:     (225) 922-5110
Facsimile:      (225) 922-5105
map@longlaw.com
bbb@longlaw.com
sfl@longlaw.com
*Attorneys for Joseph "Joe" Alleva*


## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *Memorandum in Support of Joseph "Joe" Alleva's Motion to Dismiss* was electronically filed with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, on this 14th day of January, 2022.

*/s/ S. Brooke Barnett-Bernal*
**S. Brooke Barnett-Bernal**