## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**SHARON LEWIS,**

        **Plaintiff,**

**v.**

**LOUISIANA STATE UNIVERSITY;**
**BOARD OF SUPERVISORS OF LOUISISANA**
**STATE UNIVERSITY;** *et al.*,

        **Defendants.**

**CIVIL ACTION NO: 21-cv-00198**

**JUDGE: SUSIE MORGAN**

**MAG. JUDGE: RICHARD L.**
        **BOURGEOIS JR.**

### MEMORANDUM OF LAW IN SUPPPORT OF
### DEFENDANT LES MILES' MOTION FOR RULE 11 SANCTIONS

Defendant Les Miles ("Miles" or "Defendant") respectfully submits this Memorandum in Support of his Motion for Rule 11 Sanctions against Plaintiff Sharon Lewis ("Plaintiff" or "Lewis") and her counsel Tammye C. Brown, Bridgett Brown, and Larry English (hereinafter "Plaintiff's Counsel"), for violating Federal Rule of Civil Procedure 11 by failing to conduct a reasonable prefiling investigation of the law and facts before asserting unsupported and unfounded Title IX and Civil RICO claims against Miles. Plaintiff's RICO claims against Miles were indisputably stale and based upon legally specious theories but also were based upon unsupported, speculative, and conclusory allegations of fact that were unanchored by any evidence. Plaintiff also initially asserted (and subsequently voluntarily dismissed—but only after Miles was forced to file a Motion to Dismiss those claims) a time-barred and completely unfounded Title IX claim. On December 2, 2021, the Court dismissed with prejudice Plaintiff's Civil RICO claims against Miles. Plaintiff's relentless pursuit of a frivolous lawsuit against Miles forced Defendant to waste time and incur costs and attorneys' fees in defending against these frivolous claims.

The factual and legal allegations in Plaintiff's Complaint (ECF No. 1), First Amended Complaint (ECF No. 8) and RICO Case Statement (ECF No. 45) (and repeated in Plaintiff's Proposed Second Amended Complaint and Proposed Amended RICO Case Statement), are contrary to law and factually baseless. Because Plaintiff's claims were objectively unreasonable in light of clear precedent and unsupported by fact, Rule 11 sanctions should be imposed against both Plaintiff and her counsel.

## I.    INTRODUCTION

Despite multiple opportunities to fashion viable RICO claims against Miles—the original Complaint, First Amended Complaint (FAC), and RICO Case Statement (and, subsequently, an intellectually bankrupt attempt to present a Proposed Second Amended Complaint (Proposed SAC), and Proposed Amended RICO Case Statement)—Plaintiff utterly failed to do so.[1] The FAC asserted untimely and otherwise legally defective Title IX claims and similarly untimely and inadequately pled Civil RICO claims. Following the parties' full briefing of Defendant's motion to dismiss the FAC but before the Court could rule on the motion, Plaintiff voluntarily dismissed her Title IX claims. Most recently, the Court dismissed Plaintiff's RICO claims as to Miles because they are untimely. Accordingly, both claims failed but, before they failed, Miles was forced to expend time and incur expenses in defending against frivolous claims that Plaintiff and Plaintiff's Counsel never should have filed.

Plaintiff and Plaintiff's Counsel levied destructive and fabricated accusations against Miles, demonstrating an utter disregard for Miles, his family, and his reputation. RICO is fundamentally a criminal statute.[2] Although §1964(c) creates a civil cause of action, the

---

[1] As the Court denied Plaintiff's motion for leave to file a second amended complaint on December 14, 2021, [ECF No. 167], the FAC remains the operative complaint and all "¶" references herein are to the FAC.

[2] The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. ("RICO") was adopted in 1970 as Title IX of the Organized Crime Control Act of 1970. The purpose of the statute was to combat long-term organized

racketeering activity giving rise to RICO liability is criminal in nature.[3]  Accordingly, Plaintiff and her counsel alleged that Miles committed serious criminal offenses.  Plaintiff's broad-brush, speculative, and conclusory allegations were clearly insufficient to allege that Miles participated in predicate criminal acts necessary to support any civil RICO claim.

In considering the sufficiency of civil RICO allegations, courts "must be mindful of the devastating effect such claims may have on defendants."[4]  "'Because the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants,' courts should strive to flush out frivolous RICO allegations at an early stage of the litigation."[5]  As a result, a court must carefully scrutinize the pleading allegations of a RICO plaintiff like Lewis.

Any reasonable legal and factual inquiry into possible Civil RICO claims against Miles would have revealed that no legal or factual basis exists for such claims—including in light of the Fifth Circuit's heightened RICO pleading requirements.  Rather than analyze and investigate first before holding a press conference and naming Miles in a publicly filed Complaint alleging criminal conduct and seeking "no less than $50,000,000 [sic] million" in damages, Plaintiff and her Counsel deliberately chose—not once but twice—to file first and to hold a proper investigation in abeyance.

---

crime, such as the mafia. Senate Committee on the Judiciary, Report on Organized Crime Control Act of 1969, S Rep No. 617, 91st Cong, 1st Sess 76-78 (1969); *see, e.g., Oscar v. University Students Co-Op Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992) cert denied, 506 U.S. 1020 (1992). The statute proscribes criminal infiltration of legitimate businesses. 18 U.S.C. § 1962.

[3] *See Bridge v. Phx. Bond & Indem. Co*., 553 U.S. 639, 641 (2008) (RICO "provides a private right of action for treble damages to '[a]ny person injured in his business or property by reason of a violation' of the Act's criminal prohibitions"); *Rogers v. McDorman,* 521 F.3d 381, 387 (5th Cir. 2008) ("civil RICO liability is dependent upon a defendant's committing criminal RICO acts").

[4] *Manhattan Telecommunications Corp., Inc. v. DialAmerica Marketing, Inc*., 156 F. Supp. 2d 376, 380 (S.D.N.Y. 2001); Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) ("Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device") (citation and internal quotation marks omitted).

[5] *Allen v. New World Coffee, Inc*., No. 00-2610, 2001 WL 293683, at *3 (S.D.N.Y. Mar. 27, 2001) (quoting *Schmidt v. Fleet Bank*, 16 F. Supp.2d 340, 346 (S.D.N.Y. 1998)).

And while Plaintiff and her Counsel belatedly recognized that their Title IX claims had long ago expired and were therefore invalid, wisely opting voluntarily to dismiss these claims against Miles and others, they continued to assert equally invalid and frivolous Civil RICO claims through multiple rounds of briefing.  As a result of their ill-advised choices to file frivolous RICO and Title IX claims against Miles—and to maintain the RICO claims well into the pleading stage— both Plaintiff and her Counsel should be sanctioned under Rule 11.

## II.    PLAINTIFF'S BASELESS ALEGATIONS

The Court is familiar with the facts of this case by now.  Lewis, a longtime employee of Louisiana State University (LSU), commenced this action on April 8, 2021, asserting Title IX and Civil RICO claims against LSU and various LSU employees and agents, including Miles.  In sum, Plaintiff alleges that LSU and LSU employees within the Athletics Department, including Miles, retaliated against her for her reports of students' sexual misconduct complaints and took adverse administrative action against her and denied her professional advancement opportunities.  Plaintiff amended her initial complaint on May 5, 2021, Miles waived and his counsel accepted service of the First Amended Complaint on June 2, 2021,[6] and Plaintiff submitted a RICO Case Statement on June 29, 2021.  On July 30, 2021, Miles moved to dismiss the First Amended Complaint as to him, arguing, *inter alia*, that Plaintiff's Title IX claims were time-barred and that Plaintiff's RICO claims likewise were time-barred and, moreover, that Plaintiff had failed to establish a single element of her Civil RICO claims as to him.

Following briefing of the motion to dismiss but before the Court could rule, Plaintiff, on August 15, 2021, voluntarily dismissed her Title IX claims as to Miles and other individual

---

[6] On June 2, 2021, Plaintiff sent Miles a Notice of Lawsuit and Request to Waive Service of Summons.  *See* ECF No. 44.  By agreeing to waive service, Miles received 60 days (that is, until August 2, 2021) from the date of Plaintiff's notice to respond, which he timely did by filing a motion to dismiss the FAC on July 30, 2021.

Defendants.  On September 15, 2021, Plaintiff filed a motion for leave again to amend her complaint, a proposed SAC, and a proposed First Amended RICO Case Statement. On December 2, 2021, the Court dismissed with prejudice Plaintiff's RICO claims as to Miles, ruling that they were barred by the four-year statute of limitations.  On December 14, 2021, the Court denied Plaintiff's motion for leave to file a proposed SAC and proposed Amended RICO Case Statement. Most recently, on December 17, 2021, Plaintiff moved for reconsideration.  That motion was ultimately denied by this Honorable Court on January 19, 2022 (Rec. Doc. 185).

### III.    ARGUMENT

#### a.  Rule 11 Standard

This Court should impose Rule 11 sanctions.  Plaintiff and Plaintiff's Counsel failed to make a reasonable inquiry into the facts and law before signing and filing a pleading. Fed. R. Civ. P. Rule 11(b).  Rule 11 imposes affirmative duties on litigants and attorneys who sign pleadings, motions or other documents to: 1) conduct a reasonable pre-filing inquiry into the factual basis of the pleading or other paper (Fed. R. Civ. P.  11(b)(3)); and 2) confirm that the pleading or other paper is warranted by existing law or a good faith argument for its extension, modification, or reversal or the creation of new law (Fed. R. Civ. P. 11(b)(2)).  *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399, 110 S. Ct. 2447, 2457, 110 L. Ed. 2d 359 (1990); *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1023–24 (5th Cir. 1994).  Rule 11 sanctions are not appropriate for "advocacy of a plausible legal theory, particularly where . . . the law is arguably unclear." *Castro & Co., LLC v. Diamond Offshore Servs. Ltd.*, No. 3:18-CV-574-M, 2018 WL 6069973, at *12 (N.D. Tex. Oct. 29, 2018), report and recommendation adopted, No. 3:18-CV-574-M, 2018 WL 6068977 (N.D. Tex. Nov. 20, 2018) (citations and quotation marks omitted).  Rule 11 sanctions are appropriate when a claim is legally indefensible.  Further, "the standard certification

for factual allegations under Rule 11(b)(3) is that there is (or likely will be) evidentiary support for the allegation, not that the party will prevail with respect to its contention." *Id.* (citations and quotation marks omitted).

In determining compliance with Rule 11, "the standard under which an attorney is measured is an objective, not subjective, standard of reasonableness under the circumstances." *Worrell v. Houston CanA Acad.*, 287 F. App'x 320, 325 (5th Cir. 2008). *See also M2 Tech., Inc. v. M2 Software, Inc.*, 748 F. App'x 588, 589–90 (5th Cir. 2018) (same). "The reasonableness of the conduct involved is to be viewed at the time counsel ... signed the document alleged to be the basis for the Rule 11 violation." *Worrel*, 287 F. App'x at 325. This is the so-called "snapshot rule," which focuses on the instant the attorney affixes a signature to the document. *Ayissi v. Kroger Texas, L.P.*, No. CV H-20-227, 2020 WL 6703844, at *9 (S.D. Tex. Nov. 13, 2020), aff'd, 849 F. App'x 489 (5th Cir. 2021). Thus, the eventual failure of a claim is insufficient; sanctions are applied where at the time of the filing, the position advocated was unwarranted because it had no defensible legal theory or factual basis or both.

Notably, a court may impose Rule 11 sanctions even after a voluntary dismissal of a claim, such as Plaintiff's dismissal of her Title IX claim here. *See Cooter*, 496 U.S. at 397–98 (finding compatibility between Rule 11 and Rule 41(a)(1) in curbing abuses of the judicial system: "Rule 41(a)(1) does not codify any policy that the plaintiff's right to one free dismissal also secures the right to file baseless papers").

"RICO should not be construed to give a pleader license to bully and intimidate nor to fire salvos from a loose cannon. Irresponsible or inadequately considered allegations should be met with severe sanctions pursuant to Rule 11." *Foval v. First National Bank of Commerce in New*

*Orleans, et al*., 1987 WL 7912 (E.D. La. 1987); reversed and remanded on other grounds, 841 F.2d 126 (5th Cir. 1988) (quoting *Saine v. A.I.A., Inc.*, 582 F.Supp.2d 1299, 1306 (D. Colo. 1984).

Plaintiff's Counsel had a duty to investigate the facts and the law before filing suit; instead, Plaintiff and her Counsel chose to file first and struggle to articulate a colorable legal theory later. Rule 11's duty of reasonable pre-complaint inquiry is not satisfied by rumor or speculation, nor should there be an escape from such sanctions as a result of a strategy that a defendant will succumb to press conferences and scurrilous accusations. Sanctions are proper—and vital to our system of justice—when one side makes outrageous allegations without any basis in law or fact. *See Stewart v. RCA Corp*., 790 F.2d 624, 633 (7th Cir. 1986) (finding that "Rule 11 **requires** lawyers to think first and file later, on pain of personal liability").

This Court has imposed sanctions when a reasonable investigation would have revealed that the RICO allegations were "clearly foreclosed" by long standing Fifth Circuit precedent. *Bruno v. Starr*, Civ. A. No. 05-1887, 2006 WL 2631861, at *4 (E.D. La. Sept. 12, 2006). There should be no doubt that Plaintiff and her counsel should be sanctioned here.

### b. The Fifth Circuit Applies a Heightened Pre-Filing Duty to Investigate RICO Claims

Because RICO claims involve "complex litigation" and "high legal costs," the Fifth Circuit places an even greater duty on an attorney to investigate before she files a RICO claim. *See Chapman & Cole v. Itel Container International B. V*., 865 F.2d 676, 685 (5th Cir. 1989). In *Chapman*, the Fifth Circuit upheld the awarding of sanctions against an attorney and his client for asserting RICO claims "without enough concrete evidence to bring a cause of action . . . ." *Id*. at 604. In recognizing an attorney's heightened duty to do a pre-filing investigation before asserting a RICO claim, the Fifth Circuit stated:

> Given the resulting proliferation of Civil RICO claims and the potential for
> frivolous suits in search of treble damages, greater responsibility will be placed on
> the bar to inquire into the factual and legal bases of potential claims or defenses
> prior to bringing such suit or risk sanctions for failing to do so.

*Id.* at 685.   The Fifth Circuit's "greater responsibility" rule has been quoted and applied in

numerous Louisiana federal cases.   *See, e.g.*, *Bruno v. Starr*, No. CIV.A. 05-1887, 2006 WL

2631861, at *4 (E.D. La. Sept. 12, 2006), aff'd, 247 F. App'x 509 (5th Cir. 2007); *Moore v. Astra*

*Pharm. Prod., Inc.*, No. CIV. A. 91-2206, 1992 WL 245678, at *2–3 (E.D. La. Sept. 15, 1992).

In *Bruno*, 2006 WL 2631861, this Court recognized a plaintiff's heightened pre-filing duty

in a RICO case and set forth the basic framework for analyzing whether to impose Rule 11

sanctions:

> This Court is acutely concerned with the interaction of Rule 11 and RICO. Rule 11
> requires that any factual claim made have evidentiary support, which is particularly
> compelling when a claim, such as RICO, alleges criminal conduct. Furthermore,
> the Fifth Circuit views an attorney's duty under Rule 11 as particularly important
> in RICO cases. There is a greater possibility of abuse and, as a result, the Court
> places a heightened responsibility on attorneys to inquire into the factual and legal
> bases of potential claims or defenses prior to bringing such suit or risk sanctions for
> failing to do so.

The Court acknowledged that the complexity of RICO law notwithstanding, the legal theory in the

plaintiff's pleadings was not plausible in light of the Fifth Circuit's RICO precedent.   Indeed, the

Court noted that the Fifth Circuit, in its opinion affirming the Court's decision regarding the

motion to dismiss, described the plaintiff's claims as "clearly foreclosed by [its] precedent."   The

Court observed that "[s]ince the RICO claims were so 'clearly foreclosed' by Fifth Circuit

precedent, [Plaintiff's counsel] likely put little effort into researching the applicable law."   *Id.* at

*4.   The Court went on:

> To avoid sanctions, an attorney must conduct a reasonable inquiry into the relevant
> law. The imposition of Rule 11 sanctions for inadequate legal support for a claim
> is based on a standard of objective reasonableness under the circumstances, not the
> attorney's good faith belief that there is proper legal support for the claim. A

> reasonable inquiry certainly would reveal long standing precedent. Failure to find such clearly applicable law and/or not even mention or try to distinguish it points to a lack of effort on the part of [counsel] in verifying that the RICO claims were well grounded in the law. Thus, he violated Rule 11.

*Id*. (citations omitted).

As is detailed in Miles' motion to dismiss the FAC and further illuminated below, Plaintiff's claims were clearly foreclosed by Fifth Circuit form; even a rudimentary review of case law would have indicated to Plaintiff's Counsel here that Plaintiff's RICO claims were grossly time-barred at the filing of her complaint.  Plaintiff  manufactured a "conspiracy" narrative that had no factual basis in a futile effort to attempt to avoid clear caselaw regarding when a claim for relief ripens and the statutory time period begins to run.  Plaintiff's Counsel further fabricated a theory that discovery of facts constituting the 'Enterprise' (assuming an Enterprise existed) triggers the statutory time period for commencing an action rather than the underlying conduct. Plaintiff's Amended Complaint (and the subsequent iteration that is the proposed SAC) offended established jurisprudence governing Civil RICO claims and constitutes a woefully inadequate and fatally flawed pleading that warrants Rule 11 sanctions.

### c.  Plaintiff's Counsel Filed Frivolous Legal Claims for RICO and Title IX Violations

As set forth in detail in Miles' Memorandum in Support of Motion to Dismiss (ECF No. 67) and Miles' Amended Opposition to Plaintiff's Motion for Leave to File (ECF No. 153), there are numerous reasons why Plaintiff's RICO claims were legally baseless and warranted dismissal. This Court appropriately dismissed the RICO claims against Miles as untimely but, even if they had been timely, there were numerous other legal deficiencies that would have equally warranted dismissal of her RICO claims.  The same analysis applied to Plaintiff's initial Title IX claims against Miles; although they were untimely as filed, Plaintiff's pleading of her Title IX claim was

so fraught with deficiencies that multiple other grounds would have equally warranted dismissal. Because no reasonable attorney would conclude that Plaintiff had a plausible civil RICO claim or viable Title IX claim against Miles given the current state of applicable law and the facts as alleged by Plaintiff, Plaintiff's counsel should be sanctioned pursuant to Rule 11(b)(2) for their abdication of their duty properly to investigate and research the law underpinning Plaintiff's claims.[7]  Indeed, Plaintiff's pleadings either were purposely designed to mislead the Court regarding Civil RICO jurisprudence or were grossly unprofessional.

### i.  Plaintiff's Legally Defective RICO Claims

As the Court ruled, the Civil RICO claims against Miles were time-barred.  At the time of filing, Plaintiff's Counsel knew or should have known that Plaintiff's RICO claims were no longer timely as to Miles and therefore not viable under Fifth Circuit precedent.  "Civil RICO actions are subject to a four-year statute of limitations."  *Boulmay v. Rampart 920, Inc*., 124 F. App'x 889, 891 (5th Cir. 2005).  The Fifth Circuit follows the "injury discovery" rule, under which the limitations period runs from the date "when a plaintiff knew or should have known of his injury." *Id.*  Plaintiff's Counsel's failure to recognize the appropriate statute of limitations and understand its applicability is egregious.  Whether Plaintiff's Counsel failed to conduct the research or failed to understand the relevant law or failed correctly to apply the statute of limitations to Plaintiff's facts, it was objectively unreasonable to file an expired claim.

As noted above, the Fifth Circuit applies a heightened requirement to conduct a pre-filing inquiry in RICO cases.  Plaintiff's Counsel's filing of patently untimely civil RICO claims indicates a woefully inadequate pre-filing inquiry or, instead, palpable bad faith.

---

[7] Because the legal theory of a claim is within the province of the attorney, the sanction for this violation should be limited to Plaintiff's Counsel.  *See Skidmore Energy*, 455 F.3d at 567-68.

In addition to the fact that Plaintiff's Civil RICO claims against Miles were facially prescribed as a matter of law, Plaintiff's Counsel also failed to establish a single predicate act as to Miles.  Plaintiff alleged mail and wire fraud acts as the predicate acts, but the FAC did so in a fatally conclusory fashion: the "RICO Defendants used wire and mail, effecting interstate commerce, in furtherance of their conspiracy to hide Miles' Title IX violations from the federal government."  FAC ¶ 130.  Further on, Lewis claimed that "sometime in March 2021, F. King Alexander stated in an Oregon State University Board of Supervisor's meeting that LSU 'siloed' Title IX cases involving high profile football players and from 2013 to present the Board of Supervisors have approved of and submitted annually fraudulent Title IX reports to various federal agencies that did not include complaints filed against high profile football players and coaches by U.S. mail and email."  FAC ¶ 151.  And, in similarly cursory fashion, Plaintiff alleged that the "RICO Defendants used wire and mail fraud and bribery in a racketeering scheme to control LSU Athletics that affected interstate commerce."  FAC ¶ 166.

There was not a single allegation that Miles committed a predicate act.  Lumping the "RICO Defendants" in such an overly broad and amorphous allegation does not satisfy the pleading requirements for Civil RICO.

The pleading also ignores that predicate acts involving fraud (mail and wire fraud, namely) carry a heightened pleading requirement under Rule 9(b).  The FAC woefully failed to allege mail or wire fraud with the requisite specificity.  She does not specify the time and place of the communications, the identity of the speakers, or the contents of the communications.  *See Robinson,* 191 F. Supp. 3d at 640 (E.D. La. 2016) (fraud allegations insufficiently specific where plaintiff "provides no details about the contents of any of these documents.  Nor does she specify when defendants made these communications or to whom, specifically, they were directed.");

*Tipton v. Northrop Grumman Corp.*, No. CIV.A. 08-1267, 2009 WL 3160163, at *7 (E.D. La. Sept. 29, 2009) (finding "insufficient detail regarding the time, place, and contents of the alleged false representations in the first three alleged schemes to defraud").[8] Moreover, there was no allegation that Miles himself was remotely part of any wire or mail fraud scheme. *At The Airport v. ISATA, LLC*, 438 F. Supp. 2d 55, 61 (E.D.N.Y. 2006) ("Where there are multiple defendants, Rule 9(b) requires that the plaintiff allege facts specifying each defendant's contribution to the fraud").

Plaintiff also failed properly to plead the predicate acts of witness tampering, witness retaliation, obstruction of a criminal investigation, interference with commerce, and interstate travel in aid of racketeering. Indeed, rather than attempt to plead the elements of any discrete offense under Fifth Circuit precedent or work within the RICO statutory framework, Plaintiff's Counsel chose to rely on poorly sketched enumerated "schemes," which amounted to nothing more than speculative narratives. At the conclusion of each "scheme," Plaintiff's Counsel assigned, without elaboration, statutory citations to RICO predicate acts, often grouping several offenses as applicable to one scheme. *See, e.g.*, FAC ¶¶ 142, 147, 152, 164, 174. Plaintiff's Counsel's legal theories were woefully inchoate and astonishingly confusing. For instance, Scheme 5 sets out a lengthy section detailing attempts to control LSU athletics and the internal politics of the university—factual allegations that seemingly have little to do with any RICO predicate act or any possible injury to Plaintiff. *See* FAC ¶¶ 165-174. Nonetheless, at the conclusion of this section,

---

[8] *See also Elliott*, 867 F.2d at 882 ("Elliott does not identify the contents of any communications, nor does she explain how the communications advanced the alleged scheme of the defendants to defraud her"); *Brown v. Coleman Invs., Inc.*, 993 F. Supp. 439, 447 (M.D. La. 1998) ("[N]either the plaintiffs' Second Amended Complaint nor their RICO Case Statement contains any allegations regarding the time, place or manner of specific actions taken by Coleman which furthered the alleged fraud. Moreover, the plaintiffs have failed to plead the when, where and how of the specific actions committed by Coleman which were fraudulent."); *Hill v. Hunt*, No. CIV A 307–CV–2020–O, 2010 WL 54756, at *4 (N.D. Tex. Jan. 4, 2010) (dismissing fraud claim under Rule 9(b) when complaint did "not identify any particular mail or wire communication(s), [defendant's] relationship to the communication(s), when or how the communication was made, or why the communication was fraudulent").

the FAC cites both the witness tampering (18 U.S.C. § 1512) and the witness retaliation (18 U.S.C. § 1513) statutes as implicated in the described conduct.  *See* ¶ 174. Thus, the pleading leaves the Court and Defendants to determine which scheme implicates which particular RICO predicate act and how and which defendant is alleged to be involved in which predicate act.

Furthermore,  as detailed in Defendant's motion to dismiss the FAC and opposition to Plaintiff's motion for leave to amend to file a proposed SAC, in addition to failing to allege a single predicate act involving Miles, Plaintiff also failed to allege the requisite continuity to establish a pattern of racketeering.  "It is not enough for a plaintiff to file a RICO claim, chant the statutory mantra, and leave the identification of predicate acts to the time of trial."  *Synergy v. Zarro*, 329 F. Supp. 2d 701, 712 (W.D.La. July 20, 2004), quoting *N. Bridges Assocs., Inc. v. Boldt*, 274 F. 3d 43 (1st Cir. 2001); *accord, Parker & Parsley Petroleum Co. v. Dresser Indus*., 972 F. 2d 580, 584 (5th Cir. 1992); *see also Zito v. Leasecomm Corp*., 2003 WL 22251352, at *13 (S.D.N.Y. Sept. 30, 2003) ("to state a violation of §1962(c) by any defendant, plaintiffs must allege that that defendant personally committed two or more predicate acts," as defined in 18 U.S.C. §1961(1)).[9] Nor did Plaintiff illuminate how the acts levied against Miles (and other defendants) led to the injuries about which she complained, namely, hostile work environment and retaliation.  "Section 1964(c) embodies the only standing requirement which the civil RICO statute itself imposes. Only persons who have been injured 'by reason of' the commission of predicate acts have standing to bring suit under section 1964(c)." *Ocean Energy II, Inc. v. Alexander & Alexander, Inc*., 868 F.2d 740, 744 (5th Cir. 1989).  To state a claim under Civil RICO, the plaintiff must show that a RICO

---

[9] Predictably, having failed to establish a single predicate act as to Miles, Plaintiff also failed to plead a pattern of racketeering activity necessary to sustain the RICO claim against Miles.  Lewis' allegations concerning a pattern of adverse and retaliatory employment actions against her personally, which she claims occurred over several years, constitutes, at most, an employment issue between Lewis and LSU.  This did not support a pattern of continuous racketeering activity, and certainly not involving Miles.

predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well." *Hemi Grp., LLC v. City of New York, N.Y.,* 559 U.S. 1, 9 (2010) (internal citations and quotation marks omitted).  Proximate cause, in turn, requires "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* "A link that is too remote, purely contingent, or indirect is insufficient." *Id.  See also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries").  Even assuming the presence of predicate acts such as mail and wire fraud and witness tampering, Lewis nonetheless failed to plead a direct injury.  Lewis does not allege that any of the supposed predicate acts are directed at her, aside from the inadequately alleged witness retaliation.  Thus, Plaintiff's pleadings also lacked the relevant standing necessary to assert a RICO claim.

In light of everything that Plaintiff's Counsel failed to accomplish, it is difficult to fathom what pre-filing inquiry, if any, counsel conducted into the relevant legal authority supporting a valid RICO claim.  A reasonable pre-filing inquiry would have indicated to Plaintiff's Counsel that Plaintiff's Civil RICO claims as to Miles were "clearly foreclosed" by long standing Fifth Circuit precedent.  *Bruno*, 2006 WL 2631861, at *4.  Plaintiff's Counsel's neglect of their basic duties warrants sanctions.

### ii.  Plaintiff's Legally Defective Title IX Claims

As discussed above, Plaintiff initially filed but subsequently voluntarily dismissed her Title IX claims against Miles and certain other Defendants.  As argued in Miles' motion to dismiss the FAC, at the time that Plaintiff's Counsel signed the initial and First Amended Complaint, which included the Title IX claims, the claims were untimely and Plaintiff's Counsel knowingly filed a frivolous time-barred claim.  While Title IX does not specify a limitations period, *see* 20 U.S.C. §

1681, *et seq.* the appropriate statute of limitations for claims arising under Title IX is the most analogous period established under state law. *See Reed v. United Transp. Union,* 488 U.S. 319, 323, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989) (noting that in the absence of an express statute of limitations, the Court has "generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law"). The Fifth Circuit has held that the appropriate statute of limitations for a Title IX claim is the state's personal injury limitations period. *See Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583 (5th Cir. 2020); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015). In Louisiana, that prescriptive period is one year running from the day the injury or damage is sustained. *See* La. Civ. Code art. 3492. As Miles argued in the motion to dismiss the FAC, the one-year prescriptive period began to run in 2013 when the alleged conduct occurred and Lewis learned of Miles' purported retaliatory action against her. Plaintiff's Counsel's egregious failure to conduct elementary research relating to timeliness of claims must be sanctioned.

### d. Plaintiff and Her Counsel Filed Frivolous and False Factual Allegations in Support of Plaintiff's Civil RICO Claims

Because no reasonable person or attorney would allege obviously false and speculative factual allegations against Miles, as Plaintiff did here, both Plaintiff and Plaintiff's Counsel should be sanctioned pursuant to Rule 11(b)(3). Plaintiff's pleadings offered a manufactured and fictionalized narrative derived from speculation, rumor, and Plaintiff's gross mischaracterization of Taylor Porter billing records.

Here, it is entirely proper to sanction Plaintiff as well as her counsel for the factually baseless allegations that comprise Plaintiff's pleadings and RICO Case Statements. According to the plain language of Rule 11, sanctions may be assessed against "any attorney, law firm, *or party*" that violates the rule or is responsible for the violation. Fed. R. Civ. P. 11(c)(1) (emphasis added).

"The Advisory Committee notes regarding the 1983 Amendment further make clear that . . . 'Even though it is the attorney whose signature violates the rule, it may be appropriate under the circumstances of the case to impose a sanction on the client.'"

While the legal viability of the claims is within the province an attorney, the client may be sanctioned for *factually* groundless allegations.  *See Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 567 (5th Cir. 2006) (quoting FED. R. CIV. P. 11 Advisory Committee Notes).  With respect to factually baseless claims, an attorney should also be sanctioned for failing to conduct a pre-filing inquiry.  *Worrel*, 287 F. App'x at 325.  Accordingly, both Plaintiff and her Counsel must account for the false and grossly mischaracterized factual allegations relating to Miles.

Plaintiff submitted Taylor Porter billing records that purportedly served as the foundation for the alleged predicate acts, including the purported concealment of the Miles investigation and an alleged settlement between Miles and a student accuser.  *See* FAC at 27 n.1 ("Taylor Porter's Billing Records in Exhibit 3 lay out in exhaustive detail RICO defendants use of wire and mail effecting interstate commerce in furtherance of RICO defendants racketeering activity as to all schemes alleged herein").  A review of these records indicates that the documents do not support Plaintiff's characterization of these communications.  Plaintiff's pleadings are rife with unfounded and unsupported factual allegations concerning Miles' alleged involvement in various predicate acts.

The Taylor Porter billing records either did not support or, worse, directly belied her factual allegations and fanciful narratives.  For instance, purportedly relying on the Taylor Porter billing records, Plaintiff alleged that "In June 2013 Taylor Porter had multiple meetings, phone calls and emails with F. King Alexander, Miriam Segar, Miles' legal counsel, student family and legal counsel and the Board of Supervisors to update them on settlement discussions between Miles, the

16

student and LSU." FAC ¶ 144. Further on, Plaintiff alleges that "throughout July 2013 Taylor Porter had multiple meetings, phone calls and emails with F. King Alexander, Miriam Segar, Miles' legal counsel, the student's family and legal counsel and the Board of Supervisors to update them on settlement discussions between Miles, the student and LSU." FAC ¶ 145. But nothing in the Taylor Porter billing records in Exhibit 3 supports Plaintiff's characterization of these communications and purported meetings. For instance, a July 5, 2013 entry reads: "(11:00 a.m.) Telephone conferences with VMC and coach's counsel. Telephone conference with VMC and family's counsel. Telephone conference with WSM and Joe Alleva. Emails with LSU contacts re: status. Emails with counsel." Nothing about this entry indicates that it relates to a settlement concerning sexual impropriety, much less any sort of criminal offense that would support a RICO charge.

Not satisfied to merely rest on the documents before her, Plaintiff made the further leap of speculating that "Taylor Porter is in possession of billing records and documents that show actual settlement amount to student and the parties that provided financial support to the enterprise to bribe or otherwise influence student from moving forward with her Title IX and criminal complaint." FAC ¶ 146.[10]

---

[10] Although the Court has since denied Plaintiff's motion for leave to file her proposed SAC, the proposed SAC would not have cured any of the above pleading deficiencies and indeed suggested that the trajectory of Plaintiff's pleading was toward ever more fanciful and false factual allegations. For instance, in the proposed SAC, Plaintiff alleged that, on May 3, 2013, Crochet sent electronic messages to Ginsberg and Miriam Seger, which Plaintiff characterizes as "Email on the status of scheme to hide Miles Investigation." Amended proposed SAC ¶ 205. Crochet's Taylor Porter billing record for that date (attached as Exhibit 5 to Plaintiff's Motion for Leave to File Second Amended Complaint), merely says: "Emails with Coach's counsel and Miriam re: status." Ex. 5, at 2. There is nothing to support the allegation that the emails were for the purpose of communicating "on the status of scheme to hide Miles Investigation." An equally egregious example was Plaintiff's allegation that, as part of the Wire Fraud, Barton wrote to Ginsberg on August 22, 2013: "Email discussing 'revisions to directive letter' proposed by coach's counsel' in which Miles will agree to certain disciplinary terms and in return the RICO Defendants will conceal the Miles Report." Amended proposed SAC ¶ 224. Barton's time entry for that date states: "Emails and conferences with VMC re: directive. Multiple emails with Ginsberg re: proposed revisions to directive. Emails with LSU contacts re: same." Ex. 6, at 8. Plaintiff's allegation that Miles "will agree to certain disciplinary terms and in return the RICO Defendants will conceal the Miles Report" is manufactured, offensive, and false. Similarly, Plaintiff alleged that, "On April 29, 2013 Miles, Ginsberg, Hardin, Barton, Crochet and Alleva agreed to conceal the Miles Report in Ginsberg, Hardin, Barton

The exhibits that Plaintiff submitted in support of her motion for leave to amend likewise either do not support or directly belie her factual allegations.  For instance, in the proposed SAC, Plaintiff alleges, with regard to her Wire Fraud claim, the existence of 33 electronic messages and other communications in which Miles' attorney was a participant.  Amended proposed SAC ¶ 205.  Without providing any support, Plaintiff characterizes those communications in the proposed SAC with descriptions such as "Telephone call in furtherance of scheme to hide Miles Investigation" (six times), and "Email on the status of scheme to hide Miles Investigation" (26 times).  *Id.*  With regard to the Mail Fraud allegation, Plaintiff cites a single letter, from an unnamed "Miles Attorney" dated March 19, 2013, alleged to be a "Letter in furtherance of the scheme to hide Miles investigation."  Amended proposed SAC ¶ 206.  Regarding apparently a second alleged Mail Fraud scheme, Plaintiff alleges that correspondence dated August 29, 2013, from Taylor Porter attorneys Robert W. Barton and Vicki M. Crochet to Miles' attorney consisted of a "Federal Express Letter directing Ginsberg and Hardin to conceal Miles Report from an official Title IX proceeding and public documents requests in their offices."  Amended proposed SAC ¶ 225.  Regarding apparently a second alleged Wire Fraud scheme, Plaintiff alleges the existence of multiple electronic messages allegedly directed to "facilitate[ing] a financial settlement between Miles and Student" that, according to Plaintiff, are "[i]n furtherance of the scheme to tamper with a witness in a Title IX proceeding."  Amended proposed SAC ¶ 240.

Despite burdening the Court files with reems of paper, Plaintiff produced no evidence to support her allegations as to predicate acts involving Miles' attorney but, instead, offers Taylor

---

and Crochet's offices off campus away from public documents request and an official Title IX proceeding."  Amended proposed SAC ¶ 215.  Barton's and Crochet's billing records reference a meeting with Ginsberg but provide absolutely no support for Plaintiff's description of the substance or purpose of the meeting.  Ex. 4, at 13, 16.  Plaintiff's and Plaintiff's Counsel's willingness to manipulate documentary evidence to conform to a manufactured narrative demands a reprimand.

Porter billing records for support.  An examination of those records reveals that these documents, rather than supporting Lewis' allegations, instead highlight her irresponsible and specious suit against Miles and willingness to attempt to tarnish reputations without conscience.

Plaintiff alleges that, on May 3, 2013, Crochet sent electronic messages to Miles' attorney and Miriam Seger, which Plaintiff characterizes as "Email on the status of scheme to hide Miles Investigation."  Amended proposed SAC  ¶ 205.  Crochet's Taylor Porter billing record for that date (attached as Exhibit 5 to Plaintiff's Motion for Leave to File Second Amended Complaint), merely says: "Emails with Coach's counsel and Miriam re: status."  Ex. 5, at 2.  There is nothing to support the allegation that the emails were for the purpose of communicating "on the status of scheme to hide Miles Investigation."

An equally egregious example is Plaintiff's allegation that, as part of the Wire Fraud, Barton wrote to Miles' attorney on August 22, 2013: "Email discussing 'revisions to directive letter' proposed by coach's counsel' in which Miles will agree to certain disciplinary terms and in return the RICO Defendants will conceal the Miles Report."  Amended proposed SAC ¶ 224. Barton's time entry for that date states: "Emails and conferences with VMC re: directive.  Multiple emails with Ginsberg re: proposed revisions to directive.  Emails with LSU contacts re: same." Ex. 6, at 8.  Plaintiff's allegation that Miles "will agree to certain disciplinary terms and in return the RICO Defendants will conceal the Miles Report" is manufactured, offensive and false.

Similarly, Plaintiff alleges that, "On April 29, 2013 Miles, Ginsberg, Hardin, Barton, Crochet and Alleva agreed to conceal the Miles Report in Ginsberg, Hardin, Barton and Crochet's offices off campus away from public documents request and an official Title IX proceeding." Amended proposed SAC ¶ 215.  Barton's and Crochet's billing records reference a meeting with Miles' attorney but provide absolutely no support for Plaintiff's description of the substance or

purpose of the meeting.  Ex. 4, at 13, 16.  Indeed, the evidence is that Miles' attorney did not review, receive or obtain the Miles Report or any draft of the Miles Report until the March 2021 Open Records litigation, *Jacoby v. Galligan, et al.*, Docket No. C-70374626 (19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana).

In sum, Plaintiff does not have a single piece of evidence to support the allegation that Miles or Miles' attorney participated in any event that could conceivably be deemed a predicate of any RICO activity or that Miles' attorney acted in any capacity other than as Miles' counsel.

Plaintiff's capacity to mischaracterize documents that are before the Court provides additional support for awarding sanctions against Plaintiff and Plaintiff's counsel.

In sum, Plaintiff failed to offer a single piece of evidence to support the allegation that Miles participated in any event that could conceivably be deemed a predicate of any RICO activity. Lewis' fictional characterizations constitute irresponsible speculation for which Lewis and her counsel must be now made to answer.

## IV.    CONCLUSION AND PRAYER FOR RELIEF

In light of the fact that Plaintiff and her Counsel have made frivolous allegations against Miles without any basis in law or fact and Plaintiff's pleadings are objectively unreasonable, Plaintiff and her counsel should be sanctioned appropriately pursuant to Rule 11.

After a finding by this Honorable Court that Rule 11 sanctions are appropriate, Miles respectfully requests that: (a) he be given an opportunity to submit evidence regarding the amount of attorneys' fees and litigation expenses incurred because of Plaintiff's frivolous suit; and (b) after allowing Plaintiff to respond and/or following a contradictory hearing, Plaintiff and her counsel be ordered to reimburse to Miles the full amount of attorneys' fees and litigation expenses sustained by Miles as a result of Plaintiff's sanctionable conduct.

More than 21 days have passed since service was made of this Rule 11 Motion and Plaintiff has not withdrawn or otherwise remedied her RICO claim. Therefore, for the foregoing reasons, Defendant's Motion for Rule 11 Sanctions should be GRANTED, and sanctions in the form of attorneys' fees and litigation expenses should be imposed against Sharon Lewis and her counsel, Tammye C. Brown, Bridgett Brown, and Larry English, for violating Rule 11.

Respectfully submitted,

| | |
|---|---|
| */s/ J. Christopher Zainey, Jr.* | */s/ Peter R. Ginsberg* |
| J. Christopher Zainey, Jr. | Peter R. Ginsberg |
| The Lambert Firm, PLC | Moskowitz and Book, LLP |
| 701 Magazine St. | 345 Seventh Avenue |
| New Orleans, LA 70130 | New York, NY 10001 |
| czainey@thelambertfirm.com | pginsberg@mb-llp.com |
| 504-581-1750 | 212-221-7999 |
| *Attorneys for Defendant Leslie Edwin "Les" Miles* | |

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of January, 2022, a copy of the foregoing pleading was served upon all counsel of record by electronic transmission via the Court's CM/ECF system.

*s/ J. Christopher Zainey, Jr.*
**J. CHRISTOPHER ZAINEY, JR.**