UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
BATON ROUGE DIVISION

SHARON LEWIS                                                    Civil Action No: 21-198-BAJ-RLB

Plaintiff

V.

BOARD OF SUPERVISORS OF LOUISIANA
STATE UNIVERSITY ET. AL.

Defendant

MEMORANDUM IN OPPOSITION TO ROBERT BARTON,
VICKI CROCHET AND SHELBY McKENZIE'S MOTION FOR
RULE 11 SANCTIONS

**MAY IT PLEASE THE COURT:**

NOW INTO THE COURT comes plaintiff, Sharon Lewis (Plaintiff), who opposes Defendants Robert "Bob" Barton (Barton), Vicki Crochet (Crochet), and William Shelby McKenzie's (McKenzie) Second Motion For Rule 11 Sanctions for the following reasons:

Plaintiff adopts and incorporates by reference each and every argument in her Memorandum In Opposition to Taylor Porter Defendants (R. Doc. 80); Edwin "Les" Miles (R. Doc. 84); Garrett "Hank" Danos, Robert "Bobby" Yarborough and Stanley Jacobs (R. Doc. . 85); Miriam Segar (Doc. No.86); William Jenkins (R. Doc. 90); James Williams, Mary Leach Werner and Louisiana State University Board of Supervisors (R. Doc. 96); Verge Ausberry (R. Doc. 97); Scott Woodward (R. Doc. 102) Motions To Dismiss: Plaintiff's First Amended RICO Case statement (R. Doc. 45 ); Plaintiff's Motion To Leave To File Second Amended Complaint (R. Doc.112 ); and Plaintiff's Memorandum in Opposition To TP Defendants Motion For Sanctions

1

(R.Doc 122) in support of this Memorandum in Opposition to Taylor Porter Defendants Motion For Rule 11 Sanctions. For the following reasons, they should be denied:

## I. LAW AND ARGUMENTS

### A. Rule 11 Sanctions

Rule 11(b) of the Federal Rules of Civil Procedure provides, in pertinent part:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances:

(1) It is not being presented for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation;

(2) The claims, defenses and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law; [and]

(3) The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

The goal of Rule 11 is to "impose a duty to base claims upon factually and legally supportable grounds and to punish litigants and lawyers who unreasonably pursue frivolous suits." *FDIC v. Calhoun*, 34 F.3d 1291, 1296 (5th Cir. 1994). In assessing a litigant's conduct, the Court considers whether the lawyer's certification that she has complied with Rule 11(b) is objectively reasonable under the circumstances and whether the filing was submitted for an improper purpose. *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 805 (5th Cir. 2003). The party moving for

sanctions bears the burden to overcome the presumption that pleadings are filed in good faith. *Tompkins v. Cyr*, 202 F.3d 770, 788 (5th Cir. 2000).

When pre-filing conduct is in issue, the Fifth Circuit has identified a number of factors that should be considered in determining whether an attorney made a reasonable inquiry into the law or the facts, including: (1) the time available for investigation; (2) the extent to which the attorney relied on his client for factual support; (3) the feasibility of conducting a pre-filing investigation; (4) whether the attorney accepted the case from another attorney; (5) the extent development of the facts underlying the claim requires additional discovery; (6) the complexity of the factual and legal issues involved; (7) the plausibility of the legal view espoused; and (8) the litigant's pro se status. *Thomas v. Cap. Sec. Servs.*, 836 F.2d 866, 875–76 (5th Cir. 1988) (en banc); see *Childs v. State Farm Mut. Auto. Ins*. Co., 29 F.3d 1018, 1026 (5th Cir. 1994). Before filing Plaintiff's SAC, Plaintiff conducted the following legal analysis of Plaintiff's RICO claims against the RICO Defendants:

### B. Criminal Intent

For the purposes of 18 U.S.C. § 1512, an official proceeding need not be pending or about to be instituted at the time of the offense; and the student complainant testimony, or the Miles Report be admissible in evidence or free of a claim of privilege.[1] Plaintiff does not have to prove a RICO Defendant's state of mind with respect to the circumstance that the official proceeding was before the Department of Education.[2] At all material times, Crochet and Barton advised LSU on all Title IX issues, and Segar was designated as the Title IX coordinator in the LSU Athletic Department.[3] Assuming that the allegations in Plaintiff's Second Amended Complaint (SAC) are

---

[1] *18 U.S.C. 1512(f)*
[2] *18 U.S.C. 1512(f)*
[3] This sufficient to show the nexus between RICO Defendants conduct and the official DOE proceeding. *Arthur Andersen* 544 U.S. 696, 698, 707-708 (2005)

true, this is sufficient to show the nexus between the RICO Defendants conduct and a foreseeable official proceeding.

### 1. The TP Defendants conspired to violate 18.U.S.C. § 1512 (c)(1),(c )(2) and 1512(K) (concealing a record).

The essential elements of 18 U.S.C. § 1512 (c)(1) as they pertain to Plaintiff's RICO claims are as follows:

Whoever corruptly:

1. *conceals a record, or attempts to do so;*

2. *with the intent to impair the object availability; and*

3. *for use in an official proceeding*

#### a. The Miles Report

The Miles Report, written by TP Defendants, clearly states the RICO Defendants' intentions to unlawfully conceal the Miles Report in TP Defendants, Ginsberg and Hardin law offices. Plaintiff draws the court's attention specifically to the Taylor Porter Memo To File[4] (TP Memo) and Miles Disciplinary Letter[5] (MDL) within the Miles Report. The TP Memo states:

> "*Following a comprehensive discussion of the attachments, **all copies were returned** to Taylor Porter **to maintain in its file**… Also, those present agreed that this was appropriate administrative action that could and should be taken without further review of the full Board.*"[6]

---

[4] R.Doc 219-2 p. 2
[5] R.Doc 219-2-1 p. 5-7
[6] The Taylor Porter Billing Records (TPBR) show that Crochet billed LSU for preparing for a meeting March 15, 2013, the same day the TP Memo state that the RICO Defendants met and agreed to conceal the Miles Report in TP Defendants law offices and conceal the Miles Investigation from the full Board of Supervisors.

TP Defendants stated in Miles Report about concealing the Miles Report from an official proceeding:

> "**In order to attempt to minimize the possibility of this,** *we suggest that the written directive to XXX (as described above) be sent by our law firm to the law firm representing XXX. Each law firm would maintain copies of the document in its files.*"[7]

The Taylor Porter Billing Records (TPBR) show starting on August 14, 2013, Ginsberg and TP Defendants negotiating, drafting, and revising the MDL culminating in its execution on August 29, 2013.[8] The MDL executed by Hardin, Ginsberg, Barton, Crochet and Alleva states:

> *The original and all copies of this letter will be **maintained in the files of your law offices, and undersigned counsel's law offices only.***[9]

After agreeing to unlawfully conceal the Miles Report, the TP Defendants and their co-conspirators agreed to keep the knowledge of the documents secret. RICO Defendant Jacobs stated in *Sports Illustrated* the TP Defendants demanded that he and other BOS members keep the Miles Investigation confidential.[10] TP Defendants, Ginsberg, and Hardin "intentionally stored offsite"[11] the Miles Report in their law offices for eight years until forced to deposit them with LSU by the courts.[12] LSU BOS member Lee Mallet stated: "*Taylor Porter should be let go and never hired*

---

[7] R.Doc 219-2 p.10 ¶3
[8] See TPBR
[9] Id. Fn. 5
[10] R. Doc 219 ¶ 154
[11] R.Doc. 219-1 p. 52, ¶ 2
[12] R.Doc 219 ¶ 175

*again*" for their concealing the Miles Report.[13] A reasonable attorney would conclude **this satisfies the first element of the 18 U.S.C. § 1512 (c) (1)**.

The facts stated *supra* show that RICO Defendants intended to make the Miles Report unavailable. A reasonable attorney would conclude **this satisfies the second element of 18 U.S.C. § 1512 (c)(1)**.

At all material times, Crochet and Barton were conducting an investigation in an official proceeding of the DOE. A reasonable attorney would conclude **this satisfies the final element 18 U.S.C. § 1512 (c)(1).**

### b. Miles' predatory behavior was not protected by a right to privacy.

TP Defendants falsely assert that they were justified in concealing the Miles Report in their law office because Miles private attorney "insisted on confidentiality and threatened suit if LSU violated his privacy rights." However, a state employee being investigated for sexual misconduct in the workplace has no reasonable expectation of privacy. *Capital City Press v. East Baton Rouge Parish Metropolitan Council*, 696 So.2d 562 (La. 1997); *Hilburn v. State, ex rel. Division of Administration*, 745 So.2d 1189 (La. App. 1st Cir. 1999); *Hilburn* 745 So.2d. Additionally, the public had the right to know that the head football coach of LSU had been accused of sexual harassment and assault. *Parish Nat. Bank v. Lane*, 397 So.2d 1282, 1286 (La. 1981).[14] And under Title IX, even if the student requested confidentiality, LSU had the authority to discipline and/or terminate Miles for his sexual misconduct.[15] Moreover, Miles and TP Defendants bribed the student for her silence.[16] Therefore, assuming the allegations in Plaintiff's complaints are true, a

---

[13] R.Doc 219 ¶158; https://www.theadvocate.com/baton_rouge/news/education/article_50b5f770-97df-11eb-950f-3f13d1718c43.html;
[14] The La. Supreme Court held the right of privacy is limited by society's right to be informed about legitimate subjects of public interest.
[15] R.Doc. 125-2 p.23 ¶2; p. 29 ¶3; p.30 ¶3
[16] R.Doc 219 ¶¶ 185 through 198

6

reasonable attorney would conclude the TP Defendants and their co-conspirators violated *18 U.S.C. § 1512 (c )(1); 1512 (c )(2)[17] ; 1512 (2)(B) and 1512(K)[18]*.

## 2. The TP Defendants conspired to violate 18.U.S.C. § 1512 (b)(1), 1512(b)(2(A) and 1512(K).

The essential elements of 18.U.S.C. § 1512 (b)(1) as the pertain to this case are as follows:

1. *Whoever knowingly corruptly persuade another person, or attempts to do so with the intent to*

2. *influence, delay or prevent the testimony of any person from an official proceeding.*

On May 5, 2013, Crochet and Segar attempted to pressure LSU HR Director A.G. Monaco (Monaco) to allow the complaining student to retake a failed quiz. [19] On July 1, 2013, Crochet and Barton met with Ginsberg, complaining student, and her father in New Orleans to negotiate a settlement between Miles and Student.[20] A July 2, 2013 entry in the TPBR confirms that Barton updated Alleva, Alexander, and "board members" about the negotiations.[21] Miles with the direct assistance of TP Defendants paid the complaining student to drop her complaint. A reasonable attorney would conclude **this satisfies first element of 18.U.S.C. § 1512 (b)(1).**

---

[17] 18 U.S.C ¶1512(c)(2): otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
[18] 18 U.S.C ¶1512(K): Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.
[19] R.Doc 219 ¶ 189; TPBR entry by Crochet on May 5, 2013 show Crochet spoke with HR Dir Monaco.
[20] R.Doc. ¶¶ 191-192; A July 1, 2013 entry in TPBR stated Barton and Crochet met with "coach' counsel and family's counsel."
[21] The TPBR show multiple emails and phone conversations between TP Defendants, Miles lawyers and student worker and her father negotiating a settlement between Miles and student worker.

The student worker was a witness in an official proceeding.[22] A reasonable attorney would conclude **this satisfies the second element of R.S. 18.U.S.C. § 1512 (b )(1) and 1512(b)(2)(A )[23] and 1512(K).**

### 3.  RICO Defendants violated *18.U.S.C. § 1512(c)*(1) (Alter document to impair integrity in an official proceeding).

The essential elements of *18.U.S.C. § 1512(c)(1)* as the pertain to this case are as follows:

1. *Whoever corruptly alters a document or attempt to do so*

2. *with the intent to impair the document integrity for use in an official proceeding.*

### a. The Miles Report contained the following false statements and false representation of material fact.

1. The Miles Report included the false statement and false representation of material fact that Miles sexual misconduct was not a violation of applicable law.[24] The Husch Blackwell Report disagreed.[25] Athletic Director Joe Alleva disagreed, and on April 19, 2013, the following

---

[22] *18 U.S.C. § 1515 (1)(c)* defines "official proceeding" as used in *18 U.S.C. § 1512* as a "proceeding before a Federal Government Agency which is authorized by law.".

[23] *18 U.S.C. § 1515(2)(A)* states: withhold testimony, or withhold a record, document, or other object, from an official proceeding;

[24] TP Defendants knew this was false as they had advised the Athletic Department on workplace harassment. R.Doc. 291-2 p.31 ¶5

[25] R.Doc. 219-1 p. 51, ¶¶ 3-4 4

email[26] to Chancellor Williams Jenkins:

> As we move closer to deciding how to handle the results of our investigation I want to recommend at minimum a few items… a written reprimand outlining his inappropriate behavior and the consequences for it occurring again, some sort of counseling, and a reduction to any bonuses paid to him equal to the attorney fees incurred as a result of his inappropriate behavior….I also believe the full board needs to made aware of the situation before any decisions are made. I think his continued employment needs to be seriously considered. When reviewing the use of a secret personal phone, the text messages, the fact that I had already advised him against such behavior, the evening meeting off campus, etc. it gives me great concern for the future. This issue can or will have serious impact on our university and athletic department.

On June 21, 2012 Alleva sent the following email[27] to incoming LSU President F. King Alexander:

> Bob and King, thanks for call today…one more time I want us to think about which scenario is worse for LSU. Explaining why we let him go or explaining why we let him stay. Proactive or reactive…I always believe that people are innocent until proven guilty and in this case I believe he is guilty of insubordination, inappropriate behavior, putting the university, athletic dept and football program at great risk. I think we have cause. I specifically told him not to text, call or be alone with any student workers and he obviously didn't listen. I know there are many possible outcomes and much risk either way, but I believe it is in the best interest in the long run to make a break. The court of public opinion would favor us. The court room? On July 2nd we will know more but the facts will remain the same….thanks.

    2. The Miles Report included the false statement and false representation of material fact that Miles conduct was not a violation of his employment contract. As stated *supra* Miles boss Alleva wrote emails to Jenkins and Alexander stating Miles should be terminated. Before his tenure at LSU, Miles was embroiled in a sexual scandal at Oklahoma.[28] Despite these facts, TP

---

[26] R.Doc. 219-2  52, ¶ 3
[27] Id.
[28] R.Doc 219-2  p. 53

9

Defendants knowingly falsely stated in the Miles Report that Miles did not violate his employment contract."[29]

   3. The Miles Report included the false statement and false representation of material fact that Miles had a right to privacy that required them to conceal the Miles Report in their law offices. As stated, *supra* Louisiana jurisprudence is clear a state employee being investigated for sexual misconduct has no reasonable expectation of privacy. *Hilburn* 745 So.2d at 1190. A reasonable attorney would conclude this **this satisfies the first element of *18.U.S.C. § 1512(c(1).***

At all material times Crochet and Barton were conducting a "impartial" Title IX investigation of Miles. A reasonable attorney would conclude this **this satisfies the second element of *18.U.S.C. § 1512(c)(1)*.** Therefore, a reasonable attorney assuming the allegations in Plaintiff's complaint are true would conclude the TP Defendants and their co-conspirators violated *18.U.S.C. § 1512(c(1)* and 1512(K).

**4. <u>RICO Defendants violated *18.U.S.C. § 1512 (b)(1)(b)(2)(A) and 1512(K).*</u>**

The essential elements of *18.U.S.C. § 1512(b)(2)(A)* that is pertinent to this claim are:

   *1. Whoever knowingly use intimidation and threats or attempts to do so with intent to*

   *2. influence, delay or prevent the testimony of any person in an official proceeding; or;*

   *3. cause or induce any person to withhold testimony from an official proceeding*

Plaintiff has alleged sufficient facts to show RICO Defendants used threats with the intent to influence Plaintiff to delay, prevent, and withhold testimony in an official Title IX proceeding.

---

[29] A reasonable attorney reviewing Alleva emails and Miles conduct documented in the Miles Report would have concluded that Miles violated his employment contract and recommended his termination.

10

In 2013, Miles threatened to punch Plaintiff in her "motherfucking mouth" for filing a Title IX complaint against him and others. [30]

Plaintiff filed multiple Title IX complaints against Ausberry but no investigation was ever undertaken.[31] The HBR stated about Ausberry conduct toward Plaintiff:

> *"In interviews with Husch Blackwell, Football Operations employees confirmed witnessing Ausberry "hollering" and "screaming" at Lewis repeatedly over the course of the last several years. As one employee put it, "**there's just certain things that Verge does to Sharon**. I don't know if they think—and I don't understand it."*[32]

In 2020, Ausberry threatened to withhold pay raises, bonuses, and promotions from Plaintiff to influence, delay, prevent, and withhold her testimony from an official proceeding of DOE. [33] A reasonable attorney would conclude **this satisfies the first element of *18.U.S.C. § 1512(b)(1)(b)(2(A)***.

Once Plaintiff filed a Title IX complaints against Miles and Ausberry under Title IX regulations, she became a witness in an official proceeding of DOE.[34] A reasonable attorney would conclude **this satisfies the second element of *18.U.S.C. § 1512(b)(1)(b)(2(A)***. Therefore, a reasonable attorney assuming the allegations in Plaintiff's complaint are true would conclude the TP Defendants and their co-conspirators violated *18.U.S.C. § 1512(b)(1)(b)(2(A)* and *1512(K)*.

### 5. **TP Defendants Defrauded LSU 14: 138 (18 U.S.C. *§ 1341 and 1343).*

Rule 9 required Plaintiff to plead with specificity that the RICO Defendants engaged in a pattern of racketeering conduct. As part of that obligation Plaintiff alleged with specificity that the

---

[30] R.Doc ¶ 285
[31] R. Doc. 219-1, p.66 ¶2 and Fn. 164; p.67 ¶¶1-2 and Fn. 166; R.Doc 219 ¶242
[32] R.Doc. 219-1 Fn. 166
[33] R.Doc 219 ¶¶ 255-256; Plaintiff does not have to prove that prove an official proceeding was pending. Ausberry specifically referenced Plaintiff reporting Title IX which shows he knew his conduct had a nexus with a future official proceedings.
[34] See R.Doc 219-1, R. Doc 125-2

TP Defendants used mail and wire fraud to defraud LSU out of eighty-thousand ($80,000.00) dollars.

The essential elements of **18 U.S.C. *§ 1341*** that are pertinent to this case are:

1. *Whoever having devised or intending to devise any scheme or artifice to defraud for obtaining money by means of false and fraudulent pretenses*
2. *places in any post office or authorized depository for mail any matter or thing*

The elements of 18 U.S.C. 1343 that are pertinent to this case are:

1. *Whoever having devised or intending to devise any scheme or artifice to defraud for obtaining money by means of false and fraudulent pretense; or*

2. *Transmits or causes to be transmitted by wire.*

McKenzie[35], who was acting as LSU General Counsel hired[36] his law partners Crochet and Barton to conduct an "impartial investigation". This was a conflict of interest. The April 4, 2011 Dear Colleague Letter (DCL) issued by the Department of Education (DOE) stated: " A school's investigation and hearing process cannot be equitable unless they are impartial." [37] LSU's PM-73 policy specifically state that "*Any such investigations shall be conducted by the Campus Title IX Coordinator..*".[38] The HBR found that the hiring of TP Defendants was a conflict of interest. [39]

However, Crochet and Barton did not conduct an "impartial investigation."  Instead, they concealed the Miles Report in their law offices and billed LSU for concealing a Title IX investigation of Miles and assisting him in bribing a victim. A reasonable attorney  would conclude **this satisfies the first element of *18.U.S.C. § 1341 and 1343.*** Assuming the allegations in

---

[35] R.Doc. 219-1  Fn. 132
[36] Id. Fn. 130
[37]  Id.  Fn. 131
[38] See LSU PM-73 Memorandum No. 73 (PM-73) Title IX and Sexual Misconduct Policy attached as Exhibit A to R.Doc. 219-1.
[39] R.Doc. 219 ¶ 147;  R.Doc. 219-1 Fn. 131

Plaintiff's SAC are true, the TP Defendants place the TPBR in the mail and sent by email to LSU. A reasonable attorney would conclude **this satisfies the second element of <u>18.U.S.C. § 1341and 1343.</u>**

**C**. **Plaintiff's injuries were proximately caused by the violations of predicate acts by RICO Defendants.**

When the RICO Defendants met on March 15, 2013, and agreed to conceal the Miles Report in TP Defendants law offices, they began an eight (8) year pattern of racketeering that violated 1962(c). The HBR stated about the concealing of the Miles investigation:

> *"It is difficult to meaningfully determine the full extent of the impact this incident and the University's handling of it had on the climate within the Athletics Department—* ***both in terms of creating a culture which tolerated sexual misconduct and dissuaded employees from reporting that misconduct****. It certainly was not positive."*[40]

One impact of RICO Defendants' conduct was that Plaintiff was specifically targeted by the enterprise whom they determined to be a threat.[41] In the HBR, a long-time LSU Football staff member stated Plaintiff was targeted for reporting Miles:

> ***"and then—poor Sharon [Lewis] though. I mean, like I said, she had most of the brunt of it because she was over the girls.*** *[42]*

The HBR further documented the retaliatory conduct Plaintiff faced:

> *The only person in the entire University who has ever been disciplined in any form for failing to make a report under PM-73 is Athletics Department employee Sharon Lewis, a long-time Football Operations employee and current Associate Athletic Director for*

---

[40] R. 219-1  p. 54 ¶ 3
[41] R. Doc. 219 ¶¶ 237-288
[42] R.Doc. 219-1 p.53 ¶ 1

13

*Football Recruiting and Alumni Relations.* **This is ironic because Lewis has lodged several reports of sexual harassment throughout her tenure**. [43]

Plaintiff has plead sufficient material facts to show "direct relation between" Plaintiff's injuries and the RICO Defendants racketeering conduct. *Hemi Grp. LLC v. City of New York*, 130 S.Ct. 983,989-990 (2009) (citing *Holmes v. Securities Investor* 503 U.S. 258 (1992).

Plaintiff alleges that the LRA Defendants' RICO violations was not only the but for cause of plaintiff's injury, but was the proximate cause as well." *Jackson v. NAACP*, 546 F. Appx. 438, 442 (5th Cir. 2013). LRA Defendants placed Plaintiff under the direct supervision of Miles.[44] Ausberry and Miles then denied Plaintiff pay raises, promotions, and bonuses[45] with the intent to drive her from her job.[46] But for LRA Defendants violating 18. U.S.C § 1512,[47] Miles would have been terminated from his job[48] and Plaintiff would have never been placed under his direct supervision. It was the TP Defendants and their co-conspirators violation of RICO that that led directly to Plaintiff's injuries. *Molina-Aranda v. Black Magic Enters., L.L.C*., 983 F.3d 779, 784–85 (5th Cir. 2020). There is no plausible argument that Plaintiff's economic injuries were caused by "the caprice of chance." *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 676 (5th Cir. 2015).[49]

---

[43] R.Doc. 219-1  p.47 ¶ 3
[44] R. Doc 219 ¶ 243
[45] Id.
[46] When Plaintiff reported violations of Title IX she was told repeatedly go find another job. R.Doc. 219  ¶¶ 34, 38, 164, 243, 245
[47] *supra*
[48] When the LSU Board of Supervisors became aware that Taylor Porter had concealed the Miles investigation in 2013 they were terminated. Upon the release of the Husch Blackwell Report Miles was terminated as the Head Coach at Kansas( https://www.espn.com/college-football/story/_/id/31030339/les-miles-kansas-jayhawks-head-football-coach). Upon the release of the Husch Blackwell Report F. King Alexander was forced to resign as the President of Oregon State.  (https://www.wafb.com/2021/03/23/f-king-alexander-resigns-osu/). It is reasonable to conclude that Miles would have been terminated for sexual misconduct in light of Alleva's emails that show Miles had been repeatedly warned to leave the student workers alone, and he ignored Alleva's direct warnings. See Alleva's emails *supra.*
[49] The LRA Defendants in their filings have never alleged there were intervening factors that caused Plaintiff's economic injuries. TP Defendants do not dispute Plaintiff was injured only that her injuries were "employment-related".

14

Further, in 2020, Ausberry knowingly violated *18.U.S.C. § 1512(b)(1)(b)(2)(A)*, which was the direct and proximate cause of Plaintiff's employment injuries. *Id*. Ausberry's threats to Plaintiff could not have been clearer: "You will never be promoted because you file Title IX complaints. You even filed one against me."[50] Then in a thuggish statement that goes to the heart of the criminal conspiracy[51] Auberry told Plaintiff, "you can complain to Scott Woodward but he is my boy."[52]  This was no idle threat by a co-worker. Woodward and Ausberry had complete control over Plaintiff's career. [53]  Assuming that the allegations in Plaintiff's complaint are true, a trier of fact must assume that Ausberry meant and did carry out his threat. It is simply not plausible there was some intervening event between Ausberry's threat and his failure to promote Plaintiff. *Id*. Therefore **but for** Ausberry's violation of RICO, Plaintiff would have been promoted *and*  Ausberry's  RICO  conduct was  the proximate cause of Plaintiff's economic injuries.[54]

Moreover, the question of whether of Plaintiff's RICO injuries were the direct and proximate cause of RICO Defendants violation of the RICO is a fact to be determined at trial. In determining whether proximate cause exists for RICO standing, factors that are weighed include, "preconceived  purpose,  specifically  intended  consequence,  necessary  or  natural result, reasonable foreseeability of result, the intervention of independent causes, whether the defendant's acts are a substantial factor in the sequence of responsible causation, and the factual directness of the causal connection." *Livingston Downs Racing Ass'n Inc. v. Jefferson Downs*

---

[50] R.Doc. 219 ¶256; In November 2020  Ausberry told Plaintiff " you use the word Title IX too much and people are afraid of you". R.Doc. 219 ¶83
[51] Woodward and Ausberry were hired and promoted in the back room of Juban's Restaurant. R.Doc 219 ¶¶ 209-237
[52] Woodward is LSU Athletic Director and Ausberry is LSU Athletic Director and they had complete control over Plaintiff's career. This was no idle threat by a co-worker.
[53] From the day Woodward was hired, he never met with Plaintiff even though she was a Senior Athletic official. R.Doc 219 ¶ 253
[54] Every time Ausberry denied Plaintiff a promotion after April 8, 2017 was the direct and proximate cause of Plaintiff's economic injury.

15

Corp., 192 F. Supp. 2d 519 (M.D. La. 2001). Plaintiff is not required to prove those elements in her pleadings. She only has to state sufficient material fact that her injuries were the direct and proximate cause of RICO Defendants violation of the R.S. 1353 ( C ). *Plaquemine Marine, Inc. v. Mercury Marine,* 859 So.2d 110, 115 (La. App. 1 Cir. 7/25/03).

Assuming that the allegations in Plaintiff's complaints are true, a reasonable trier of fact would have concluded Plaintiff has stated sufficient material facts RICO Defendants violation of the RICO was the direct and proximate cause of Plaintiff's injuries.

### D.  Plaintiff's Attorney First Amendment Speech

Even though Rule 11 Sanctions are based explicitly on Plaintiff's pleadings, the TP Defendants are asking the trial court to impose Rule 11 Sanctions because Plaintiff's counsel commented to the media about issues, which were public knowledge.[55] The trial court has no authority under Rule 11to impose sanctions on Plaintiff and her attorney for engaging in speech protected by the First Amendment. *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991). Assuming the allegations in Plaintiff's complaints are true, a reasonable attorney in a trial involving one of the highest profile football programs in the country would conclude he has a duty to engage the press to "protect the rights of his client and prevent abuse of the courts."[56] *Gentile v. State Bar of Nevada*, 501 U.S at 1058.

### E.  Taylor Porter Billing Records Exhibit A[57]

The TP Defendants are accusing Plaintiff's counsel of being creative in interpreting fraudulent mail and wire communications.[58] This is a disingenuous argument because Plaintiff was required to plead with specificity the time, place, content and person(s) using mail and wire to

---

[55] See R.Doc 256-3
[56] See R.Doc 262: See  Judge Timothy E. Kelley bias in favor of TP Defendants.
[57] Attached to T p Defendants Memorandum in Support
[58] R.Doc 262-2

further their fraudulent schemes. [59] Using mail and wire to execute or attempt to execute a scheme to defraud are predicate acts under RICO, even if plaintiff did not rely on a misrepresentation. *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639 (2008). It is enough if the mailings and wire communications are an incident to an essential part of the scheme. *Schmuck v. United States*, 489 U.S. 705 (1989).

Plaintiff's counsel during his pre-trial investigation became aware of the TPBR in a news story in the Advocate.[60] A close review of each entry of the TPBR shows the TP Defendants and their co-conspirators conspiring to obstruct an official proceeding of the DOE. The first entry March 1, 2013, is conference with Crochet, Alleva and Segar on "football HR complaint." The billing invoices dated August 13, 2013 and September 13, 2013 show the TP Defendants and Miles attorneys negotiating and finalizing the MDL. Each phone call, email or letter sent by TP Defendants from March 1, 2013 through September 30, 2013 was done in furtherance of the criminal enterprise conspiracy to conceal the Miles Investigation from an official proceeding and constituted mail and wire fraud under the federal RICO statute. *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. at 647 (citing *Schmuck v. United States*, 489 U.S. at 712).

### F. TP Defendants are using Rule 11 to harass Plaintiff.

The TP Defendants frivolous motion for Rule 11 was filed to harass Plaintiff and drive up her litigation cost.[61] Further, they are using Rule 11 to attempt to intimidate Plaintiff into dismissing her RICO claims against them.[62]

---

[59] Federal Rule Civil Procedure 9(b)
[60] https://www.theadvocate.com/baton_rouge/sports/lsu/article_66929b8e-8bff-11eb-bda4-175354618886.html
[61] Federal Rule 11(b)(1)
[62] R.Doc 262-9

**CONCLUSION**

For the above stated reasons, Plaintiff respectfully requests Vicki Crochet, Robert Barton, and William Shelby McKenzie's Motions for Rule 11 Sanctions be denied, and they and their legal counsels be ordered to reimburse Plaintiff legal fees and cost for defending the frivolous motions.

Respectfully submitted:

*/s/ Larry English*
Larry English, LSB No. 22772
LARRY ENGLISH, ATTORNEY AT LAW
423 W. 127 Street, 7th Floor
New York, New York 10027
917-531-3909
englishlaw2008@gmail.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served on all counsel of record using the Court's CM/ECF system on July 11, 2022

*/s/ Larry English*