SHARON LEWIS

CIVIL ACTION NO. 3:21-cv-00198

VERSUS

JUDGE SUSIE MORGAN

LOUISIANA STATE UNIVERSITY,
ET AL.

MAGISTRATE JUDGE RICHARD
L. BOURGEOIS

## REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

Defendant, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board"), in accordance with this Court's order, submits this reply in support of its Motion for Protective Order. For the reasons outlined below, and in the Board's original memorandum, the Board's Motion for Protective Order should be granted.

## BACKGROUND

In her opposition, Plaintiff claims that several documents protected by the attorney client and/or work product privilege are discoverable under the crime fraud exception. *See* R. Doc. 295, pp. 7-16. After a status conference on November 15, 2022, during which the parties discussed the pending Motion for Protective Order, the Court ordered the Board to submit a reply addressing the applicability of the crime fraud exception as asserted by Plaintiff. R. Doc. 297. Plaintiff has since submitted a supplemental opposition in furtherance of her crime fraud exception argument, to which the Board now responds. R. Doc. 304.[1]

Plaintiff seeks unredacted versions of the Miles Report and Taylor Porter Billing Records, in addition to documents underlying or associated with each. As Plaintiff acknowledges, she bears the burden of showing that a privilege exception applies. R. Doc. 304, p. 2. She cannot satisfy such

---

[1] As ordered, the Board will limit its briefing to the crime fraud exception. However, the Board maintains its original arguments in support of its Motion for Protective Order, including that Plaintiff's continuous references in her supplemental opposition to alleged conduct occurring from 2013-2016 are untimely and irrelevant.

burden; therefore, the Board's Motion for Protective Order should be granted, and Plaintiff's attempts to seek privileged information should be denied.

## LAW AND ARGUMENT

### A. Plaintiff Bears the Burden of Showing the Crime Fraud Exception Applies.

The crime-fraud exception can overcome the attorney-client privilege only where the communication or work product is intended to further continuing or future criminal or fraudulent activity. *In re Grand Jury Subpoena,* 419 F.3d 329, 335 (5th Cir. 2005) (internal citations omitted). Plaintiff bears "the burden of establishing a prima facie case that the attorney-client relationship was intended to further criminal or fraudulent activity." *Id*. (internal citation omitted). This involves a two-step showing.

First, the party challenging the privilege must make an independent prima facie case that a crime has been committed. *Ward v. Succession of Freeman*, 854 F.2d 780, 789-90 (5th Cir. 1988). A prima facie case for these purposes is evidence of a crime "such as will suffice until contradicted and overcome by other evidence . . . a case which has proceeded upon sufficient proof to that stage where it will support a finding if evidence to the contrary is disregarded." *In re Grand Jury Subpoena*, 419 F.3d at 336 (quoting *In re International Systems and Controls Corp. Securities Litigation*, 693 F.2d 1235, 1242 (5th Cir. 1982)). Pleadings and mere allegations of crime or fraud are not evidence. *Id*. Additionally, "[a] mere charge of illegality will not dispense with the privilege." *Synair Corp. v. American Indus. Tire, Inc*., 645 F.Supp. 1080, 1084 (S.D.Tex. 1986) (citing *Clark v. United States,* 289 U.S. 1, 53 S.Ct. 465, 469 (1933)).

If a party makes a prima facie showing, she must then demonstrate that the client intended to further a crime during the attorney-client representation. *In re Grand Jury Subpoena,* 419 F.3d at 346. *"*The test is whether the client's purpose is the furtherance of a future fraud or crime; it is

not enough that a communication merely provides evidence of fraud." *Southern Scrap Material Co. v. Fleming*, 2003 WL 21474479, at \*2 (E.D.La. 2003) (internal citations omitted). Additionally, the privileged information must bear a relationship to the alleged crime or fraud, such that the communications or work-product materials "reasonably relate to the fraudulent activity." *In re Grand Jury Subpoena,* 419 F.3d at 346. "Courts should evaluate whether the proponent has borne its burden of showing criminal or fraudulent activity without considering the allegedly privileged communications." *InPwr Inc. v. Olson Restoration LLC*, 2022 WL 2286182, \*4 (W.D.La. 2022).

### B. <u>Plaintiff Has Not Made a Prima Facie Case for Violation of a Criminal Law.</u>

Plaintiff fails to satisfy both prongs of the exception. First, plaintiff cannot make out a prima facie case that a crime has been committed.[2] At the outset, the Board points out that Plaintiff does not argue that any action taken by the client constituted criminal conduct.[3]

#### a. *Violations of 18 U.S.C. § 1512 – No "Official Proceeding."*

Plaintiff attempts to argue violations of 18 U.S.C. § 1512 for impairing or influencing the investigation of an "official proceeding" – § 1512(c)(1) (concealing a record with the intent to impair the object's availability for use in an "official proceeding") and § 1512(b)(1) & (k) (knowingly corruptly persuading another person, or attempts to do so, with the intent to influence, delay or prevent the testimony of any person from an "official proceeding" and conspiracy to do same), all of which fail.

Plaintiff bases these violations on the flawed premise that the Title IX investigation of Les Miles was an "official proceeding before the Department of Education." Yet, Plaintiff fails to

---

[2] The Board points out that plaintiff relies upon and cites to deposition testimony but does not attach any deposition transcripts. Plaintiff's interpretation of the testimony, without support, should not be afforded any weight.
[3] *U. S. v. Edwards*, 303 F.3d 606, 618 (5th Cir. 2002).

PD.40516742.2

explain how a Title IX investigation conducted by Barton and Crochet is an "official proceeding," or provide any legal support for the notion that the investigation conducted by Taylor Porter's attorneys is an "official proceeding." It simply was not. If, as Plaintiff suggests, "at all material times, Segar, Crotchet and Barton were conducting an investigation in an official proceeding," such that the Taylor Porter investigation was somehow the "official proceeding," then Plaintiff is seemingly arguing that the same person who conducted the official investigation (Taylor Porter) also "concealed" the evidence from themselves. This is nonsensical.

If, on the other hand, Plaintiff is relying on a hypothetical proceeding before the Department of Education, she still has not met her burden. As Plaintiff acknowledges, the alleged Department of Education "official proceeding" need not be pending under § 1512(f), but "the obstruction of justice requires some nexus between the obstructive act and some official government proceeding." *U.S. v. Simpson*, 741 F.3d 539, 552 (5th Cir. 2014) (internal citations omitted) R. Doc. 304, p. 2. The official proceeding "must at least be foreseen, such that the defendant has in contemplation some particular official proceeding in which the [concealed] evidence might be material." *Id*. Here, Plaintiff contends a "nexus" exists because Segar was "designated as the individual" to whom all Title IX complaints should be directed and because Crochet and Barton "advised the LSU Athletic Department on Title IX." R. Doc. 304, p. 3. In other words, Plaintiff contends that certain individuals' responsibilities created the requisite "nexus," but Plaintiff fails to include any "official proceeding" in this purported nexus. She simply declares that some "official proceeding" was "foreseeable," while offering no evidence of an "official proceeding" in which the Miles Report would be used, thereby failing her required burden.

### b. 1512(c)(1) - concealing a record with the intent to impair the object's availability for use in an "official proceeding."

As shown, Plaintiff already fails her burden of showing a prima facie case for a §

1512(c)(1) violation because there was no official proceeding. Plaintiff also fails her burden of

showing any record was "concealed."

Without question, the Miles Report contains legal opinions rendered by Taylor Porter to

its client. R. Doc. 219-2. p. 2. The attorney-client privilege, the duty of confidentiality owed to its

client,[4] and FERPA, 20 U.S.C. §1232g, 34 C.F.R. §99.30-.31[5] barred Taylor Porter from disclosing

the Miles Report and its underlying details to third parties. Thus, attorney/client privilege and

FERPA compliance are two legitimate intentions for not publicizing the information in question.

Moreover, Plaintiff has provided no authority showing that Title IX or its implementing

rules create an obligation to disclose Title IX investigations (including the Miles investigation) to

the DOE, the DOE OCR, the general public, or the entire Board. Plaintiff accuses the parties of

committing a crime by concealing something that is not required to be disclosed. The Rules

implementing Title IX concern themselves with how the university structures its own grievance

process to investigate and resolve allegations of sexual harassment. *See* 34 C.F.R. § 106.44

(amended 2021). Plaintiff cites to no requirement under Title IX that the Board report to the DOE

the fact of an investigation or the names of those involved in an investigation.[6]

---

[4] *See, U.S. v. Edwards,* 39 F.Supp.2d 716, 724 (M.D. La. 1999).

[5] "Records relating to an individual in attendance at the agency or institution who is employed as a result of his or her status as a student are education records" protected under the Family Educational Rights and Privacy Act (FERPA). 34 C.F.R. Sec. 99.3. Before the University may disclose personally identifiable information from a student's education records, the student must "provide a signed and dated written consent" specifying the records that may be disclosed, the purpose of the disclosure, and the person to whom disclosure may be made. 34 C.F.R. Sec. 99.30. The students involved in these investigations did not provide consent to disclosure of their records, and none of the exceptions to the requirement of prior authorization contained in 34 C.F.R. Sec. 99.31 are applicable here.

[6] In addition, in the Miles Report, Crochet and Barton advised the Board that, because of the confidentiality concerns of XXX (Miles), Students 1 and 2 (who did not and still do not want to be identified), and the Board, the *disciplinary directive to Miles* should be kept in the files of Taylor Porter and Miles' lawyer—but that such may ultimately have to be produced pursuant to a Public Records Act request. Doc. 219-2, p. 10 (Miles Report, p. 8). Plaintiff fails to provide authority regarding the alleged impropriety of this advice to a client, particularly when the Board lacked a general counsel to maintain the files at the time.

PD.40516742.2

Plaintiff's argument confusingly conflates language used in three documents as "evidence" of her prima facie case. For clarity, Plaintiff relies on (1) the Memo to File; (2) the Directive Letter; and (3) the Miles Report. The advice regarding storage of a document related to the Directive Letter—not the Miles Report. At no point did Taylor Porter suggest in the Miles Report that the Miles Report was a public record. It only referred to the Directive Letter when discussing storage of the document. Thus, storage of the Directive Letter has no relation to the storage of the Miles Report, which was always considered an attorney/client privileged communication. Plaintiff incorrectly blurs these documents. Plaintiff cites no authority for the proposition that the Miles Report was required to be disclosed to the general public. Thus, there could be no violation of §1512(c)(1). Plaintiff fails to show the parties engaged in unlawful concealment.

As discussed above and below, the focus of the crime fraud exception is on *the client's* intent when engaging counsel. *Edwards*, 303 F.3d at 618. Plaintiff consistently focuses on Taylor Porter's alleged actions at the end of the investigation, not on the client's purpose in engaging Taylor Porter. She acknowledges the purpose of the Board's engagement of Taylor Porter was the investigation, not the storage of any documents generated therein. R. Doc. 304, p. 3. The Board itself, who is the client, is not accused of any wrongdoing, further defeating Plaintiff's claim.

### c. *18 U.S.C. 1512(b)(1) and (k) – knowingly corruptly persuading another person, or attempts to do so, with the intent to influence, delay or prevent the testimony of any person from an "official proceeding" and conspiracy for same.*

Additionally, Plaintiff has failed to make out a prima facie case for a violation of 18 U.S.C. § 1512(b)(1) and (k). Plaintiff does not even discuss the provisions in a meaningful way. Instead, she offers statements with no factual value and gives no reasoning why this information is relevant or how it relates to the enumerated statutes. In particular, Plaintiff does not allege (1) who "persuaded" someone; (2) who was the "persuaded" person; or (3) how the latter person's

PD.40516742.2

testimony would be relevant in any "official proceeding" (which has already been shown not to exist). Plaintiff fails to plead any of the elements of the various acts with particularity, leaving the reader to try to piece together which allegations might relate to which purported crimes. Plaintiff's argument is insufficient to sustain her burden.

### d. *La. R.S. 14:132 – Injuring Public Records.*

Plaintiff claims the Board and Taylor Porter committed a violation of La. R.S. 14:132, "Injuring Public Records," which provides in pertinent part:

> Second degree injuring public records is the intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record, document, or other thing, defined as a public record pursuant to R.S. 44:1 et seq. and required to be preserved in any public office or by any person or public officer pursuant to R.S. 44:36.

Plaintiff argues, unconvincingly, that the Miles Report shows the Board and Taylor Porter "unlawfully conceal[ed] the Miles Report" at the Taylor Porter office.

At the most basic level, Plaintiff's argument fails because the unredacted Miles Report is not a public record.[7] Plaintiff summarily states that the Miles Report is a public record under 44:1(A)(2), but the Public Records Act exempts from disclosure "any writings, records, or other accounts that reflect the mental impressions, conclusions, opinions, or theories of an attorney." La. R.S. 44:4.1. Additionally, the attorney-client privilege functions as an exception to the public records law. *Texaco, Inc. v. Louisiana Land & Exploration Co*., 805 F. Supp. 385, 387 (M.D.La. 1992). Consistently, the Memo to File states that the Miles Report is a legal opinion. Accordingly, those portions are not subject to the Public Records Act, so no such violation could have occurred.

---

[7] Again, Plaintiff continues to conflate the three documents in question.

### e.  La. R.S. 14:118 – Public Bribery.

Once again, Plaintiff fails to allege any violation of this statute. Even if Student 2 was a "public employee" as defined by Louisiana law, the purported "bribe" must be given in relation to the individual's position, employment, or duty as an LSU Athletics Student Worker. Plaintiff has not shown that to be the case.

Moreover, "bribery" as contemplated by this statute cannot encompass all persons who negotiate and accept a private settlement unrelated to their job responsibilities. To construe this statute so expansively would preclude any public employee from entering into a settlement agreement in lieu of litigation.

### C.  Plaintiff Fails to Show that the Privileged Materials Were Made in Furtherance of a Crime.

Even if plaintiff had made a prima facie showing that a crime had been committed, which she did not, she fails to demonstrate that the privileged materials were made in furtherance of a crime. Importantly, the relevant focus is on *the client*, i.e., the Board. *Edwards*, 303 F.3d at 618 ("In determining whether the crime-fraud exception applies, we focus on the client's purpose in seeking legal advice.") Plaintiff spends much of her time criticizing the actions of Taylor Porter's attorneys' conduct, but their motives and actions are irrelevant. The emphasis here must be on the *client's* purpose in seeking the advice. *Id*. Plaintiff has not shown that the Board's purpose in communicating with Taylor Porter was to further a crime. To the contrary, Plaintiff concedes that the Miles Report and corresponding Billing Records were created in the course of Taylor Porter advising the LSU Athletic Department on Title IX. R. Doc. 304, p. 3. Plaintiff writes that "[h]ere, the undisputed facts show that Student 2 reported Miles for sexual harassment in February 2013[] and that Crochet and Barton were brought in 'shortly thereafter.'" R. Doc. 304, p. 9. Plaintiff does not suggest that the Board contacted counsel *for the purpose* of concealing the Miles Report,

PD.40516742.2

allegedly bribing a party, or allegedly corruptly influencing another party's testimony. *InPwr*, 2022 WL 2286182 at *5.

While plaintiff relies on language in the Memo to File, which she claims "recommended that the Miles Report be stored . . . in violation of state and federal law," the Memo to File, not the Miles Report, would be the document bearing a relationship to the purported crime, if any. Plaintiff has not cited any language in the Miles Report or Billing Records, or put forth any other evidence, to show that the privileged contents of those documents bear a relationship to the alleged crime. Nor has Plaintiff otherwise explained how the documents were created "in furtherance" of a crime to conceal the Miles Report. Plaintiff has put forth nothing besides conclusory, circular allegations.

A review of the unredacted Miles Report (provided to the Court) reveals no advice that would "assist the client in carrying out a contemplated illegal or fraudulent scheme." It is clear from the Miles Report that the purpose of the Board's reliance on Taylor Porter was lawful—to investigate the underlying conduct and make recommendations on remedial action. Indeed, the document largely includes legal analysis and conclusions concerning Student 2's allegations of Les Miles' behavior and contains no hint of the "crimes" Plaintiff alleges. The Miles Report contains the opinion of outside counsel concerning employee behavior and legal ramifications that "are the hallmark of the attorney-client privilege." *See Newport Ltd. V. Sears, Roebuck & Co.*, 1995 WL 295297, *2 (E.D.La. 1995). There is no evidence of alleged criminal violations that would compromise the privilege. *Id*.

For the same reason, the crime fraud exception also fails as to the Billing Records. Plaintiff lumps the Billing Records into her argument about the Miles Report, but she fails to provide any specific analyses of the Billing Records. Plaintiff argues, unconvincingly, that the "billing records show the BOS was actively engaged with Crochet and Barton to knowingly further the violation

PD.40516742.2

[sic] R.S. 14:132 and 18 U.S.C. 1512" and then proceeds to cite entries which show no such thing. R. Doc. 295, p. 13. In her supplemental opposition, Plaintiff says the records show the Directive Letter was being negotiated and later agreed to be concealed by Barton, Crochet and Ginsberg. R. Doc. 304, p. 8. This argument, too, is replete with conclusions and void of substance. This Court has already found that Plaintiff's conclusory allegations mischaracterize the Billing Records' content and are not supported. Doc. 254, pp. 36-37, n. 223 (". . . . Obviously, the billing entries do not refer to the parties having email and telephone conversations in furtherance of a conspiracy to hide the Miles investigation.") Plaintiff offers no support for a blanket demand that the entire billing records be produced unredacted. *See In re Grand Jury Subpoena,* 419 F.3d at 346.

For all of these reasons and those stated above, Plaintiff fails her burden of showing the crime fraud exception applies. The unredacted Miles Report and Billing Records are privileged, as are the underlying documents sought in Plaintiff's other requests. By extension, the crime fraud exception does not apply to any of the other related documents for which Plaintiff makes no attempt to advance specific arguments. Plaintiff's only effort is to argue the crime fraud exception applies to the Miles Report and Billing Records, without addressing any other underlying documents.

## CONCLUSION

Plaintiff's opposition demonstrates her inability to sustain her burden of showing a crime fraud exception to the attorney/client privilege. The documents sought are protected by the attorney client privilege and/or work product doctrine and the crime fraud exception does not apply.

Respectfully submitted,

PD.40516742.2

**PHELPS DUNBAR LLP**


By:   */s/ Susan W. Furr*
      Susan W. Furr Bar Roll No.  19582
      Karleen J. Green Bar Roll No.  25119
      Shelton Dennis Blunt Bar Roll No. 21230
      Michael B. Victorian Bar Roll No.: 36065
      Molly McDiarmid Bar Roll No.  36426
      II City Plaza | 400 Convention Street, Suite 1100
      Baton Rouge, Louisiana 70802
      Telephone: 225 346 0285
      Facsimile: 225 381 9197
      Email: susie.furr@phelps.com
      Email: karleen.green@phelps.com
      Email: dennis.blunt@phelps.com
      Email: michael.victorian@phelps.com
      Email: molly.mcdiarmid@phelps.com


**ATTORNEYS FOR BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE**

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Reply

in Support of Motion for Protective Order Limiting Plaintiff's Discovery was filed on this

1st day of December, 2022, by using the CM/ECF system, which will send a notice of electronic

filing to all participating counsel of record.

               */s/ Susan W. Furr*
               Susan W. Furr

PD.40516742.2