## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**SHARON LEWIS,**                                    CIVIL ACTION
    **Plaintiff**

**VERSUS**                                           NO. 21-198-SM-RLB

**LOUISIANA STATE UNIVERSITY, ET AL.,**
    **Defendants**

### ORDER AND REASONS

Before the Court is the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College's (the "Board") Motion for Protective Order.[1] The Board's Motion asks the Court to, *inter alia,* prevent Sharon Lewis's ("Plaintiff") discovery of the unredacted eight-page document captioned "Student Complaint" (hereinafter "Student Complaint Memo")[2] and related unredacted Taylor Porter billing records, in addition to documents underlying, or associated with each, on the basis of the attorney-client privilege.[3] Plaintiff opposes[4] the Board's Motion and asserts the crime-fraud exception to the attorney-client privilege.

---

[1] R. Doc. 289.

[2] The documents in dispute stem from an investigation conducted by Taylor Porter, a law firm, into allegations made by a student worker employed by Louisiana State University's Athletic Department against Leslie Miles. When the Plaintiff refers to the "Miles Report," she is referring to the (1) May 15, 2013 "memo to file" drafted by Vicki M. Crochet (hereinafter "Memo to File"); (2) eight-page document titled "Student Complaint" dated May 15, 2013 (hereinafter "Student Complaint Memo"); and (3) nine pages of attachments (hereinafter "Attachments"). The Board produced to Plaintiff an unredacted version of the Memo to File (BOS-023945), a redacted version of the Student Complaint Memo (BOS023946 – BOS023953), and an unredacted version of the Attachments (BOS023954 – BOS023962). The Board also produced to Plaintiff an unredacted version of the written directive letter and attachments (hereinafter "Directive Letter and attachments") sent by Taylor Porter on behalf of the Board to Leslie Miles and his counsel (BOS023963 – BOS023977). BOS023945 through BOS023977 are attached to this Order and Reasons and made a part of the record. *See* R. Doc. 316-1.

[3] R. Doc. 289-8 at pp. 11-13. In its Motion for Protective Order, the Board also vaguely asserts the application of "the work product doctrine" but wholly fails to address the required elements for that protection to apply. In terms of privilege, however, which the Board did assert, the Court has conducted in-camera review of the unredacted Student Complaint Memo and Taylor Porter billing records and finds the redactions made are of privileged information. Moreover, in her briefing, Plaintiff expressly concedes the Taylor Porter billing records are privileged and does not dispute the Board's contention that the Student Complaint Memo contains privileged information. R. Doc. 302 at p. 9.

[4] R. Docs. 295, 302, and 306.

**BACKGROUND**

The history of this case is set forth extensively in prior Orders and Reasons issued by this Court.[5] Accordingly, the Court will recite only the procedural developments relevant to the instant dispute. On October 28, 2022, the Board filed a Motion for Protective Order to "limit[] Plaintiff's discovery to the claims remaining in this matter" and to protect documents and testimony "protected by the attorney-client privilege."[6] The Board also filed a motion for expedited consideration,[7] which the Court granted.[8] On November 7, 2022, Plaintiff filed her first opposition to the Board's Motion.[9] On November 15, 2022, the Court held a status conference with the parties to discuss the Board's Motion for Protective Order.[10] With the assistance of this Court, during the November 15, 2022 status conference, the parties were able to reach agreements on certain items, thereby reducing the issues raised in the Board's Motion for Protective Order.[11] Notably, unresolved during the status conference was Plaintiff's argument raised in her first opposition that the crime-fraud exception should be applied to overcome the attorney-client privilege with respect to the unredacted Student Complaint Memo and related unredacted Taylor Porter billing records, plus documents underlying, or associated with, each.[12] The Board produced the unredacted Student Complaint Memo and unredacted Taylor Porter billing records to this Court for in-camera review.[13]

On November 21, 2022, Plaintiff filed a second opposition to the Board's Motion

---

[5] *See, e.g.*, R. Doc. 254.
[6] R. Doc. 289 at pp. 1, 4.
[7] R. Doc. 290.
[8] R. Doc. 291.
[9] R. Doc. 295.
[10] R. Doc. 297.
[11] *Id.*
[12] *Id.*
[13] *Id.*; *see also* R. Doc. 312. Any objections to this Court's in-camera review have been waived. *See In re Grand Jury Subpoena*, 419 F.3d 329, 336 (5th Cir. 2005).

for Protective Order, laying out more fully, *inter alia*, her crime-fraud exception arguments.[14] On December 1, 2022, the Board filed its reply memorandum specifically addressing Plaintiff's crime-fraud exception arguments.[15] On December 11, 2022, Plaintiff filed a third and final opposition to the Board's Motion for Protective Order, raising new crime-fraud exception arguments.[16] On December 12, 2022, the Court held an additional status conference with the parties.[17] The Court heard updates from the parties regarding the status of discovery and addressed additional issues raised in the Board's Motion for Protective Order. During the status conference, the Court granted the Board leave of Court to file a sur-reply in support of its Motion for Protective Order,[18] which the Board subsequently filed.[19] Also during the status conference, the parties urged the Court to decide the crime-fraud exception issue before deciding any remaining issues presented by the Board's Motion for Protective Order.

## LAW AND ANALYSIS

In her opposition to the Board's Motion for Protective Order, Plaintiff argues at least two documents otherwise protected by the attorney-client privilege are discoverable because the crime-fraud exception applies.[20] Specifically, Plaintiff seeks the unredacted Student Complaint Memo[21] and related Taylor Porter billing records,[22] plus all documents

---

[14] R. Doc. 302.
[15] R. Doc. 305.
[16] R. Doc. 306.
[17] R. Doc. 307.
[18] *Id.*
[19] R. Doc. 308.
[20] R. Doc. 295 at pp. 7-16.
[21] The Court conducted in-camera review of the Student Complaint Memo and determined that, unless the crime-fraud exception applies, the redactions were proper as they were of privileged information or were of sensitive information involving the student complainant, which the parties agreed to redact.
[22] The Court conducted in-camera review of the Taylor Porter billing records and determined that, unless the crime-fraud exception applies, the redactions were proper as they "'reveal the nature of services performed and/or the type of work performed by an attorney.'" *Calogero v. Shows, Cali & Wash, LLP*, 2021 WL 3617236 (E.D. La. 8/16/2021) (quoting *C.J. Calamia Constr. Co. v. Ardco/Traverse Lift Co.*, 1998 WL 395130, at *2 (E.D. La. 7/14/1998)). Moreover, in her briefing, Plaintiff concedes the Taylor Porter billing records are privileged. R. Doc. 302 at p. 9.

underlying, or associated with, each.[23]

The attorney-client privilege "exists to encourage full disclosure of pertinent information by clients to their attorneys."[24] This protection extends "to past criminal violations" because "the client, given the nature of [an] adversary system, has a legitimate interest in securing informed representation without fear of forced disclosure."[25] Be that as it may, "the client has no legitimate interest in seeking legal advice in planning future [or ongoing] criminal activities."[26] The crime-fraud exception is "firmly entrenched in the common law of attorney-client privilege."[27] As a result, the crime-fraud exception "comes into play [and defeats attorney-client privilege] if 'the client consults an attorney for advice that will assist the client in carrying out a contemplated illegal or fraudulent scheme.'"[28]

"In the instant case, subject matter jurisdiction is predicated upon a federal question. Accordingly, federal common law applies."[29] To successfully invoke the crime-fraud exception, the Fifth Circuit requires the moving party to establish the communication was intended to further criminal or fraudulent activity continuing at the time the communication was made or planned to occur in the future.[30] This involves a three-step showing. First, the moving party must "make an independent prima facie case

---

[23] Plaintiff argues in opposition that "[c]ommunications between Crochet and Barton directed to Miles, Ginsberg, Hardin, Student 2, Student 2' father, Student 2' attorney and any other individuals or organization in the TPBR are not privileged." *See* R. Doc. 302 at p. 15. Plaintiff does not reference any particular communication or document she wants produced. This Order and Reasons applies only to the Student Complaint Memo and the Taylor Porter billing records. The Court will not rule on a generalized argument that is not in reference to a specific communication or document.

[24] *See In re Intern'l Sys. & Controls Corp. Sec. Lit.*, 693 F.2d 1235, 1242 (5th Cir. 1982).

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.* (quoting *In re Murphy*, 560 F.2d 326, 337 (8th Cir. 1977)).

[29] *Melson v. Vista World Inc.& Ass.*, 2012 WL 6002680, at *4 (E.D. La. 11/30/2012) (Milazzo, J.). The Court will apply Louisiana state law to determine whether there have been prima facie violations of the Louisiana laws cited by Plaintiff.

[30] *In re Grand Jury Subpoena*, 419 F.3d 329, 335 (5th Cir. 2005).

that a crime [or fraud] has been committed."[31] A prima facie case for this purpose is evidence of a crime "such as will suffice until contradicted and overcome by other evidence," *i.e.*, "a case which has proceeded upon sufficient proof to that stage where it will support a finding if evidence to the contrary is disregarded."[32] Second, if the moving party has made a prima facie showing, the moving party must then demonstrate that the client intended to further a crime during the attorney-client representation. "The test is whether the client's purpose is the furtherance of a [continuing or] future fraud or crime; it is not enough that a communication merely provides evidence of fraud" or a crime.[33] Third, the moving party must "then demonstrate that the privileged information bears a relationship to the alleged crime or fraud."[34] Pleadings and allegations are not evidence that will satisfy the Fifth Circuit's analytical framework for the crime-fraud exception to privilege.[35] "Because the application of the attorney-client privilege is a fact question to be determined in light of the purpose of the privilege and guided by judicial precedents, [] the district court's finding [that the crime-fraud exception applies is reviewed] for clear error only."[36]

In support of Plaintiff's contention that ongoing or future crimes were furthered by attorney-client communications, and that as a result the crime-fraud exception applies, she points to a smattering of federal and state laws she claims were violated: (1)

---

[31] *Ward v. Succession of Freeman*, 854 F.2d 780, 790 (5th Cir. 1988).

[32] *In re Grand Jury Subpoena*, 419 F.3d at 336 (quoting *In re Intern'l Sys. and Controls Corp. Securities Litigation*, 693 F.2d 1235, 1242 (5th Cir. 1982)).

[33] *Southern Scrap Material Co. v. Fleming*, 2003 WL 21474479, at *2 (E.D. La. 6/18/2003) (internal citations omitted).

[34] *Ward*, 854 F.2d at 790.

[35] *See In re Intern'l Sys. & Controls Corp. Sec. Lit.*, 693 F.2d at 1242 (5th Cir. 1982) (reversing a district court when there was "nothing in the record" to support finding of a crime "except the plaintiff's allegations").

[36] *In re Grand Jury Subpoena*, 419 F.3d at 335 (quoting *In re Burlington Northern, Inc.*, 822 F.2d 518, 524-25 (5th Cir. 1987)) (alteration in original).

18 U.S.C. § 1512(b)(1) (knowingly influencing, delaying, or preventing testimony);[37]  (2) 18 U.S.C. § 1512(c)(1) (corruptly concealing a record);[38] (3) 18 U.S.C. § 1512(c)(2) (corruptly obstructing an official proceeding);[39] (4) 18 U.S.C. § 1512(k) (conspiracy to commit any offense under 18 U.S.C. § 1512); (5) La. R.S. 14:118 (public bribery);[40] (6) La. R.S. 14:120 (corrupt influencing);[41] (7) La. R.S. 14:132 (injuring public records);[42] and (8) La. R.S. 14:133 (filing or maintaining false public records).[43] The Court finds Plaintiff has carried only her burden of establishing a prima facie violation of La. R.S. 14:132 (injuring a public record).

I.    **Plaintiff has not made an independent prima facie case that the Board violated (1) 18 U.S.C. § 1512, (2) La. R.S. 14:118, (3) La. R.S. 14:120, or (4) La. R.S. 14:133.**

a.  **Title 18, United States Code, Section 1512**

In terms of the federal statutes she relies on, Plaintiff has failed to establish violations of 18 U.S.C. § 1512(b)(1), § 1512(c)(1), and § 1512(c)(2). The offenses are found in Chapter 73 of Title 18, Section 1512, of the United States Code, which generally deals with obstruction of justice. More specifically, Section 1512 of Chapter 73 criminalizes tampering with a witness, victim, or an informant. Plaintiff has not carried her burden of establishing prima facie violations of §§ 1512(b)(1), 1512(c)(1), and 1512(c)(2) because (1) there was no official proceeding and (2) Plaintiff cannot show the requisite intent element. The Court will address both defects in turn.

First, the existence of an "official proceeding" is required to make a prima facie

---

[37] R. Doc. 302 at p. 7.
[38] R. Doc. 295 at p. 10; *see also* R. Doc. 302 at p. 4.
[39] R. Doc. 306 at p. 3 n.2.
[40] R. Doc. 302 at p. 8.
[41] R. Doc. 306 at p. 3.
[42] R. Doc. 295 at p. 8.
[43] R. Doc. 306 at p. 3.

case that there has been a violation of 18 U.S.C. § 1512(b)(1),[44]  18 U.S.C. § 1512(c)(1),[45] and 18 U.S.C. § 1512(c)(2).[46] The term "official proceeding" is statutorily defined in Title 18, United States Codes, Section 1515(a)(1) as follows:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
> (B) a proceeding before the Congress;
> (C) a proceeding before a Federal Government agency which is authorized by law; or
> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce.

In her briefing, Plaintiff argues the Title IX investigation of Les Miles by Taylor Porter attorneys[47] was an "official proceeding before the Department of Education,"[48] which, if true, would fit the definition of official proceeding at 18 U.S.C. § 1515(a)(1)(C). Plaintiff points to no evidence in the record to show there was any other purported official proceeding before a federal government agency.

The Fifth Circuit considered "the statutory definition and the contextual meaning of the term 'official proceeding'" in *United States v. Ramos* and found that "an 'official proceeding' involves some formal convocation of the agency in which parties are directed

---

[44] "Whoever knowingly uses intimidated, threatens, or corruptly persuades another person . . . with the intent to influence, delay, or prevent the testimony of any person in an *official proceeding* shall be fined under this title or imprisoned not more than 20 years, or both."

[45] "Whoever corruptly alters, destroys, mutilates, or conceals a record, document, or other object . . . with the intent to impair the object's integrity of availability for use in an *official proceeding* shall be fined under this title or imprisoned not more than 20 years, or both."

[46] "Whoever corruptly otherwise obstructs, influences, or impedes any *official proceeding* . . . shall be fined under this title or imprisoned not more than 20 years, or both."

[47] Plaintiff also argues Miriam Segar was involved in the Taylor Porter investigation. Plaintiff cites to no evidence for this contention. *See* R. Doc. 302 at p. 7. Even if this were true, this fact does not affect the Court's finding that Plaintiff has failed to establish the existence of an "official proceeding before a Federal Government agency."

[48] R. Doc. 295 at p. 10 ("The Miles Investigation was an official proceeding of the Department of Education.").

to appear, instead of any informal investigation conducted by any member of the agency."[49] Indeed, "'official proceeding' is consistently used throughout § 1512 in a manner that contemplates a formal environment in which persons are called to appear or produce documents."[50] As a result, "in all the instances in which the term 'official proceeding' is actually used in § 1512, its sense is that of a hearing rather than simply any investigatory step taken by an agency."[51]

Looking to the facts of *Ramos*, the Fifth Circuit was faced with deciding whether an internal investigation conducted by U.S. Customs and Border Protection, a federal government agency, into border patrol agents who shot at a drug smuggler near the United States-Mexico border constituted an "official proceeding."[52]  The Fifth Circuit looked at the statute as a whole:

> As can plainly be seen, the statute is focused on incidents in which one person has exercised direct or indirect force or influence on another in order to corrupt some official proceeding; this focus is in keeping with the stated purpose of the statute: "[T]o enhance and protect the necessary role of crime victims and witnesses in the criminal justice process."[53]

This focus "indicate[d] to [the Fifth Circuit] that Congress did not intend for 'official proceedings' to include internal investigations into agency employee conduct."[54] Accordingly, the Fifth Circuit held the "Border Patrol's internal investigation of alleged employee misconduct" was not an "official proceeding within the meaning of" 18 U.S.C. § 1515 even when that investigation was conducted by a federal agency.[55]

*Ramos* highlights two fatal flaws with Plaintiff's reliance on 18 U.S.C. §

---

[49] *United States v. Ramos*, 537 F.3d 439, 462-63 (5th Cir. 2008).
[50] *Id.* at 463.
[51] *Id.*
[52] *Id.* at 462-63.
[53] *Id.* at 462.
[54] *Id.*
[55] *Id.* at 462-63.

1515(a)(1)(C) in support of her contention that the Title IX investigation of Les Miles by Taylor Porter attorneys was an "official proceeding before the Department of Education."[56] First, internal investigations of employee misconduct like the one conducted by Taylor Porter are not "official proceedings" under Fifth Circuit precedent. If an internal investigation of employee misconduct *by a federal government agency itself* is not an "official proceeding,"[57] then clearly neither is a similar investigation conducted by a private law firm. Second, even if the Taylor Porter investigation was an official proceeding, which it was not, Taylor Porter conducted it, meaning the "official proceeding" was not "before a Federal Government agency."[58] By Plaintiff's own admission, the investigation of Miles was an internal one conducted by Taylor Porter.[59]

Further, to the extent Plaintiff suggests she may rely on a hypothetical investigation before a federal government agency that never materialized to prove prima facie violations of the federal criminal laws she cites, she may not. While the Fifth Circuit has recognized "a proceeding need not be actually pending at the time of the obstructive act," there must be, at some point, an official proceeding before a federal government agency.[60] It is permissible for the official proceeding to commence sometime after the criminal act occurs, provided a nexus exists between the criminal act and the official proceeding.[61] Plaintiff cites no evidence establishing, nor does she advance any argument that, an official proceeding before a federal government agency occurred.

Second, baked into the intent element of 18 U.S.C. §§ 1512(b) and 1512(c) is the

---

[56] R. Doc. 295 at p. 10 ("The Miles Investigation was an official proceeding of the Department of Education.").
[57] *Ramos*, 537 F.3d at 462-63.
[58] 18 U.S.C. § 1515(a)(1)(C).
[59] R. Doc. 295 at p. 12.
[60] *Id.*
[61] *See United States v. Simpson*, 741 F.3d 539, 552 (5th Cir. 2014).

requirement that there be an official proceeding. Section 1512(b)(1) requires corrupt "intent to influence, delay, or prevent the testimony of any other person in an official proceeding." Section 1512(c) likewise requires corrupt intent to either "impair" an object "for use in an official proceeding" or "otherwise obstruct . . . any official proceeding." Because the Court has found there was no official proceeding, the intent element required to prevail under 18 U.S.C. §§ 1512(b) and 1512(c) fails.

Plaintiff also cites 18 U.S.C. § 1512(k), which makes it a crime to conspire to commit any offense under 18 U.S.C. § 1512. Presumably, Plaintiff argues the crime was a conspiracy, the object of which was obstruction of justice by violating 18 U.S.C. §§ 1512(b)(1), 1512(c)(1), and 1512(c)(2). The Fifth Circuit has "identified the elements of a § 1512(k) conspiracy as: (1) an agreement between the [offender] and at least one other person to pursue the object of the conspiracy, (2) the [offender's] knowledge of the unlawful purpose of the agreement, and (3) [the taking of] an overt act . . . by one of the conspirators toward carrying out the object of the conspiracy."[62] The Fifth Circuit also has held the intent element for conspiracy is "the same degree of criminal intent as is necessary for proof of the underlying § 1512 substantive offense."[63] The Court has found Plaintiff failed to carry her prima facie burden of establishing the corrupt intent element for the underlying § 1512 substantive offenses. As a result, Plaintiff has failed to carry her prima facie burden of establishing the corrupt intent element for § 1512(k) purposes. Accordingly, Plaintiff has not made an independent prima facie case of a conspiracy to commit a crime or fraud, *i.e.*, the violation of § 1512(k).

---

[62] *United States v. Said*, 2023 WL 167213, at *3 (5th Cir. 2023).
[63] *United States v. Fisch*, 851 F.3d 402, 407 (5th Cir. 2017) (Clement, J.). This is an exception to the rule that "a conviction for conspiracy requires proof of an agreement and an overt act in furtherance of the conspiracy while a conviction for the underlying offense[, unlike the conviction for conspiracy,] requires proof of each element of th[e] [substantive] offense." *See United States v. Henderson*, 1994 WL 397718 (5th Cir. 1994).

### b. Louisiana Revised Statute 14:118

In terms of public bribery criminalized by La. R.S. 14:118,[64] Plaintiff argues the settlement reached between Student 2, a public employee,[65] and the Board constitutes public bribery. As the Louisiana Supreme Court has described it,

> Public bribery may be defined generally as the voluntary giving or offering to, or the acceptance of or offer to accept directly or indirectly by any public officer, official or public employee, et cetera, anything of apparent, present, or prospective value, with the intent to influence such person in relation to his position, official duty or employment, or to incline him to act contrarily to known rules of honesty and integrity. LSA-R.S. 14:118. It is an offense against public justice, the gist of the crime being the wrong done to the people by corruption in the public service.[66]

The Court finds the requirement of "specific intent" to influence conduct in relation to Student 2's position, official duty, or employment "or to incline [Student 2] to act contrarily to known rules of honesty and integrity" embedded in the crime of public bribery precludes Plaintiff's ability to characterize the Board's "giving" of funds to Student 2, as part of a lawful settlement negotiated at arms-length by represented parties, as a bribe. Any other reading of La. R.S. 14:118 would lead to an absurd result; that is, all settlements with public employees would constitute public bribery. The Court's conclusion conforms with strong public policy in favor of voluntary settlement of civil suits. The evidence before the Court establishes the Board's and Student 2's intent was to

---

[64] La. R.S. 14:118 prohibits "[t]he giving or offering to give, directly or indirectly, anything of apparent, present, or prospective value" to, inter alia, a "public employee" or a witness or potential witness in a "trial or other proceeding before any court, board, or officer authorized to hear evidence or take testimony" with "the intent to influence his conduct in relation to his position, employment, or duty."

[65] While Student 2 may have been a potential witness in some potential proceeding, with respect to witnesses and potential witnesses La. R.S. 14:118 requires there to be an active or ongoing "trial or other proceeding before any court, board, or officer authorized to hear evidence or take testimony." *See* La. R.S. 14:118; *see also id.* Reporter's Comment; *see also State of Louisiana v. DeKay*, 387 So.2d 570, 572 (La. 1980). Plaintiff has not established the existence of an ongoing trial or other proceeding. Accordingly, the Court only considers Plaintiff's arguments with respect to public bribery of a public employee and not of a witness.

[66] *State v. Bloomenstiel*, 106 So.2d 288, 290 (La. 1958); *see also State v. Hingle*, 677 So.2d 603, 607-08 (La. App. 2 Cir. 6/26/1996) (addressing public bribery of a potential witness and describing the specific intent element as specific intent to influence a witness's testimony).

settle a civil dispute in good faith without "specific intent" to influence conduct in relation to Student 2's position, official duty, or employment in an improper manner. At its core, Plaintiff has not shown the settlement between Student 2 and the Board was "an offense against public justice" or a "wrong done to the people," which the Louisiana Supreme Court says describes "the gist of" public bribery.[67] As a result, Plaintiff has failed to carry her burden of showing a prima facie violation of La. R.S. 14:118.

### c.  Louisiana Revised Statute 14:120

In terms of corrupt influencing, Plaintiff references La. R.S. 14:120, which makes corrupt bribery a crime, in a heading in her briefing but offers no argument in support thereof.[68] The Court is left to guess what Plaintiff's argument is and the evidence on which she may rely. As a result, Plaintiff has failed to carry her burden of showing a prima facie violation of La. R.S. 14:120.

### d.  Louisiana Revised Statute 14:133

In terms of filing and maintaining false public records, La. R.S. 14:133 criminalizes filing or maintaining public records that contain false statements of fact. Plaintiff argues the Student Complaint Memo contains false statements of fact because it "concluded Miles had not violated any laws or his employment contract."[69] An opinion that Miles likely did not violate laws or his employment contract is a legal opinion, and legal opinions are not statements of fact.[70] As a result, Plaintiff has failed to carry her burden of showing a prima facie violation of La. R.S. 14:133.

The Court will now address the instance in which Plaintiff has carried her burden against the Board—a prima facie violation of La. R.S. 14:132 (injuring a public record).

---

[67] *Bloomenstiel*, 106 So.2d at 290.
[68] *See* R. Doc. 306 at p. 3.
[69] *Id.* at p. 4.
[70] *See Geiling v. Wirt Financial Servs., Inc.*, 2014 WL 8473822 (E.D. Mich. 12/31/2014).

## II.    Plaintiff has made an independent prima facie case that the Board violated La. R.S. 14:132(B).

The Louisiana Supreme Court "has determined that the right of access to public records is a fundamental right guaranteed by La. Const. art. XII § 3, and whenever there is any doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public's right of access."[71] Accordingly, the right of access to public records is guaranteed by the Louisiana Constitution and Public Records Law.[72] These constitutional and statutory rights of access to public records are construed liberally.[73] Any exception to the Public Records Law must be narrowly construed, with any doubt resolved in favor of the public's right of access.[74] To reflect the seriousness of the protection for Louisiana citizens' right of access to public records, the Louisiana Legislature criminalizes concealment of public records in La. R.S. 14:132.

In the case at bar, Plaintiff relies on La. R.S. 14:132(B) in her effort to invoke the crime-fraud exception to obtain an unredacted version of the Student Complaint Memo, an unredacted version of the Taylor Porter billing records, and documents underlying or associated with each. Plaintiff argues the Board committed a crime by violating La. R.S. 14:132(B), "Injuring Public Records," when it "unlawfully conceal[ed] the Miles Report[, a public record,] in [Taylor Porter lawyers'] law offices."[75] When Plaintiff mentions the "Miles Report" in this context, she is referencing at a minimum the Memo to File, Student Complaint Memo, and the Attachments.[76] It may be that the Board also concealed the

---

[71] *Landis v. Moreau*, 779 So.2d 691, 694 (La. 2001).
[72] *R.T. Talley v. La. Dep't Transp. & Devel.*, 2023 WL 2199685, at *5 (La. App. 1 Cir. 2/24/2023).
[73] *Id.*
[74] *Id.*
[75] R. Doc. 295 at p. 9.
[76] The Attachments include, in part, proposed policies and policy acknowledgement forms/letters that may well have been promulgated by the University at some point after May 15, 2013. Ultimately, however, the Court has been provided neither argument nor evidence to support such a finding.

Directive Letter and attachments sent to, and signed by, Leslie Miles,[77] but the Court does not reach the issue because Plaintiff does not argue this point.

Looking to the language of the statute, La. R.S. 14:132(B) provides in pertinent part:

> Second degree injuring public records is the intentional . . . concealment of any record, document, or other thing, defined as a public record pursuant to R.S. 44:1 et seq. and required to be preserved in any public office or by any person or public officer pursuant to R.S. 44:36.

Accordingly, Plaintiff must make a prima facie showing that (1) a record was intentionally concealed by the Board; (2) that record was a public record under La. R.S. 44:1 at the time the of concealment;[78] and (3) that record was required to be preserved in any public office or by any person or public officer pursuant to La. R.S. 44:36.[79] Although the Board argues only the Plaintiff's failure to make a prima facie case as to the second element,[80] the Court will review all three elements.

To make a prima facie case, Plaintiff "'must produce evidence such as will suffice until contradicted and overcome by other evidence … [or, in other words,] a case which has proceeded upon sufficient proof to that stage where it will support [a] finding if evidence to the contrary is disregarded.'"[81] "The burden of establishing a prima facie case of crime for this purpose in the civil discovery context is not great and is certainly less than the standard that a district attorney or other prosecutor would use in pursuing

---

[77] The Directive Letter requires it to be "maintained in the files of [Leslie Miles' lawer's] law offices and . . . [the] law offices [of Taylor Porter] *only*" and proceeds to detail to the measures both the Board and Leslie Miles are required to take to prevent disclosure under the Public Records Law. *See* R. Doc. 316-1 (BOS023963 – BOS023977).

[78] Plaintiff does not argue the Taylor Porter billing records are a public record.

[79] La. R.S. 14:132.

[80] R. Doc. 305 at p. 7.

[81] *In re Katrina Canal Breaches Consol. Litig*., 2008 WL 4401970 at *11 (E.D. La. 9/22/2008) (quoting *In re Grand Jury Proceedings*, 641 F.2d 199, 203 (5th Cir. 1981)) (alterations supplied by *Katrina Canal Breaches*; emphasis omitted).

criminal charges."[82] Plaintiff need not "establish the essential elements of a crime or fraud beyond a reasonable doubt, since the crime-fraud exception does not require a *completed* crime or fraud but only that the client have consulted the attorney in an *effort* to complete one."[83] If Plaintiff makes this prima facie showing, the burden of persuasion then shifts to the party asserting the privilege to give a reasonable explanation of the conduct or communication.[84]

First, Plaintiff has provided evidence establishing, on a prima facie basis, the Board intentionally concealed the Memo to File, Student Complaint Memo, and Attachments beginning on May 15, 2013, at Taylor Porter's law offices. "Near the end of February 2013, a student employee in the Athletic Department reported . . . interactions with [Leslie Miles] that made her uncomfortable enough to quit her part-time position."[85] Sometime after that, "the Chancellor asked Taylor Porter to investigate the situation."[86] On May 15, 2013, Taylor Porter lawyer Vicki Crochet penned the May 15, 2013 Memo to File, documenting the discussion by some members of the Board regarding Taylor Porter's investigation of the sexual harassment claims lodged against Leslie Miles and the method by which the Student Complaint Memo and Attachments were to be preserved.[87] Crochet's Memo to File reads in pertinent part:

> The [Student Complaint Memo and Attachments] were hand delivered and discussed in a meeting on May 15, 2013. Those reviewing the [documents] were: Garret "Hank" Danos (Chair of the Board of Supervisors), Robert "Bobby" Yarborough (Board Chairman Elect), Stanley Jacobs (Chairman of the Board – Athletic Committee), Shelby McKenzie (LSU Lead Legal Counsel), Joe Alleva (Vice Chancellor and Director of Athletics), and Miriam Segar (Senior Associate A.D./Senior Woman Administration). Also

---

[82] *Id*. at *10.
[83] *Id*.
[84] *Gutter v. E.I. Dupont de Nemours*, 124 F.Supp.2d 1291, 1307 (S.D. Fla. 9/20/2000) (citing *In re: Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1225 (11th Cir. 1987)).
[85] R. Doc. 190-5 at p. 3.
[86] *Id*.
[87] *Id*. at p. 2.

present at the meeting and participating in the discussion were Vicki Crochet and Bob Barton of Taylor Porter.

Following a comprehensive discussion . . ., all copies of the [documents] were returned to Taylor Porter to maintain in its file. . . .

After review and discuss of the investigation, those present agreed to and accepted the findings and recommendations of counsel . . . . Also, those present agreed that this was appropriate administrative action that could and should be taken without further review by the full Board.[88]

The Memo to File establishes the Student Complaint Memo and its Attachments were hand delivered in a meeting on May 15, 2013, attended by Vicki Crochet and Bob Barton (Taylor Porter lawyers), Garret "Hank" Danos (Board Chair), Robert "Bobby" Yarborough (Board Chair-elect), Stanley Jacobs (Chairman of the Athletic Committee), Shelby McKenzie (in-house counsel), Joe Alleva (Vice Chancellor and Director of Athletics), and Miriam Segar (Senior Associate Athletic Director/Senior Woman Administrator).[89] The meeting participants were provided only hard copies (not electronic copies) of the Student Complaint Memo and Attachments.[90] The participants discussed, *inter alia,* the Student Complaint Memo and Attachments and then returned their hard copies to the Taylor Porter lawyers.[91] The participants agreed all hard copies of the Student Complaint Memo and Attachments were to be preserved in Taylor Porter's offices.[92] The participants agreed no further review by the Board was necessary.[93] No meeting participant retained a copy of the Student Complaint Memo or Attachments—all copies were returned to Taylor Porter.[94] Joseph Alleva, a meeting participant, testified in

[88] *Id.*
[89] *Id.*
[90] *Id.*
[91] *Id.*
[92] *Id.*
[93] *Id.*
[94] *Id.*

his deposition that the Memo to File prepared by Vicki Crochet is accurate.[95] Joseph Alleva also testified the chosen method of preservation—preservation in the law offices of Taylor Porter—was, he believes, designed to "stop [the Taylor Porter investigation] from becoming public information."[96] The Memo to File, Student Complaint Memo, and Attachments were preserved exclusively in Taylor Porter's law offices for approximately eight years.

Looking deeper into the Student Complaint Memo, page 8 reflects consideration of the possibility of the Board, "in the face of a public records request[,] . . . tak[ing] the position that" "any written directive or other document generated regarding the resolution of" Student 2's complaint against Leslie Miles "is protected from production by the privacy rights of the individuals involved."[97] Still, the Student Complaint Memo cautions, "there is no guarantee that such a document might not have to be produced either as a result of a public records request or other legal proceeding."[98] "*In order to attempt to minimize the possibility of this*," the Student Complaint Memo calls for "any written directive" to Leslie Miles to be maintained exclusively in the law offices of Taylor Porter and the law firm representing Leslie Miles.[99]

In a similar manner, the August 29, 2013 Directive Letter from the Board's counsel (Taylor Porter) to Leslie Miles's counsel (Peter Ginsberg), provides in pertinent part:

> The original and all copies of this letter will be maintained in the files of your law offices and undersigned counsel's law offices *only*. Miles, his counsel, LSU, and its counsel, agree to keep this letter (and its contents) confidential unless compelled to divulge it by final order of a court of competent jurisdiction; any such order shall be contested by LSU's counsel

---

[95] At the request of the Court, Plaintiff's counsel provided a copy of Joseph Alleva's deposition transcript on January 17, 2023, by email. A copy of that deposition transcript is attached to this Order and Reasons. *See* R. Doc. 316-2 (deposition page numbers 133-34).

[96] *Id.* (deposition page number 135).

[97] R. Doc. 190-5 at p. 10.

[98] *Id.*

[99] *Id.* (emphasis added).

and, at Miles' option, Miles' undersigned counsel. Should your office, Miles, our office, or LSU receive a public records request, subpoena, court order or other legal process seeking this document, the recipient of the request shall provide notice and a copy of the request to the other party and counsel for the other party within twenty-four (24) hours of receiving the request. Neither you, undersigned counsel, Miles, or LSU will release this document without a final order of a court of competent jurisdiction requiring such release.

Approximately eight years later, in 2021, a news agency filed a mandamus action against the Board in the Nineteenth Judicial District Court, Parish of East Baton Rouge, seeking the release "of the investigation report by the law firm Taylor Porter into former LSU football coach Les Miles."[100] The mandamus action stemmed from the Board's denial of a journalist's request for the "investigation report," *i.e.*, the Student Complaint Memo, under the Public Records Law. At that time, Louisiana State University Assistant General Counsel Johanna Posada denied the public records request, explaining "[t]he employee record [sought] is not subject to disclosure under the Louisiana Public Records Law pursuant to a right of privacy granted by the Louisiana Constitution."[101] It bears mentioning that, in Posada's email, the rationale expressed for non-disclosure of the "employee record" is not predicated on the document either failing the definition of a public record or falling into any statutory exemption, such as the exception for attorney work product.[102] Instead, the proffered rationale for non-disclosure is a loose reference to

---

[100] This mandamus action is captioned "Kenny Jacob versus Thomas Galligan, Interim President, in his official capacity as Custodian of Records for Louisiana State University" and bears case number 703-746. "Federal courts may 'take judicial notice of the public records in . . . prior state court proceedings.'" *Romious v. Williams*, 2021 WL 6108025 (E.D. La. 04/13/21) (quoting *Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. App'x 888, 892 (5th Cir. 2020)). Accordingly, this Court may take judicial notice of the pleadings in the state court mandamus action.

[101] At the request of the Court, the Board's counsel provided copies of the pleadings in the state mandamus action. An exhibit to the petition for mandamus is an e-mail exchange between Johanna Posada and journalist Kenneth Jacoby. A copy of that email exchange is attached to this Order and Reasons. *See* R. Doc. 316-3.

[102] *See Hilbun v. State ex rel. Div. of Admin.*, 745 So.2d 1189, 1190 (La. App. 1 Cir. 11/5/1999) (recognizing that an employee's right to privacy in employment records may prevent disclosure, but it does not alter the definition of a public record).

the privacy rights of public employees in their employment file. Ultimately, the Board voluntarily released a redacted version of the Student Complaint Memo, an unredacted version of the Memo to File, an unredacted version of the Attachments, and an unredacted version of the Directive Letter and attachments to the news agency before any judicial determination was made.[103]

Moreover, in  2021, a report prepared by law firm Husch Blackwell at the behest of the Board following "various Title IX-related incidents,"[104] confirms "there was no file of [the Taylor Porter investigation] at the University. Instead, [it] was intentionally stored offsite."[105]

As another section of this Court held in *In re Katrina Canal Breaches Consolidated Litigation* ("*Katrina Litigation*"), at the prima facie stage, it is permissible to reach an inference of criminal intent by looking at the facts and circumstances surrounding the alleged criminal conduct. [106] In *Katrina Litigation*, in the aftermath of Hurricane Katrina, defendant Lafarge illegally entered homes in the Ninth Ward to steal timepieces to "be used in . . . litigation" out "of concern that the [timepieces]" would be "lost or destroyed" during cleanup efforts.[107] The presiding judge determined the attorney-client privilege that protected "communications, portions of witness statements and tangible things concerning [the defendant]'s unauthorized taking of the timepieces" was overcome by the crime-fraud exception.[108] In so doing, the court found the defendant, with the assistance of its counsel, violated La. R.S. 14:62 and committed simply burglary.[109] "A prima facie

---

[103] R. Doc. 219-2 at p. 1. The redactions made in the version of the Student Complaint Memo produced in the mandamus action and the version produced to Plaintiff in this case differ slightly.
[104] R. Doc. 219-1 at p. 3.
[105] *Id.* at p. 52.
[106] *In re Katrina Canal Breaches Consol. Litig*., 2008 WL 4401970, at *11 (E.D. La. 9/22/2008).
[107] *Id.* at *6.
[108] *Id.* at *6, *13.
[109] *Id.* at *11.

case of simple burglary or theft requires proof of criminal intent."[110] The court was able to infer the requisite criminal intent because there was evidence the defendant's investigators entered into homes intentionally, took timepieces, and kept timepieces for three years without any attempt to locate or notify the rightful owners.[111]

Applying the principles of *Katrina Litigation* to the case at bar, all of the circumstances surrounding the concealment in 2013, taken together, enable the Court to reach an "inference of criminal intent necessary to establish a prima facie case of" second degree injury to a public record.[112] Specifically, to reach this inference, the Court has considered: (1) the circumstances surrounding the May 15, 2013 meeting; (2) the Memo to File; (3) page eight of the Student Complaint Memo; (4) the Directive Letter; (5) the long period of concealment; (6) Alleva's deposition testimony; and (7) Husch Blackwell's confirmation that files relating to Taylor Porter's investigation were intentionally stored offsite. Accordingly, Sharon Lewis has presented sufficient prima facie evidence of an intent by the Board to conceal the Memo to File, Student Complaint Memo, and Attachments. By contrast, the Board provides no evidence and asserts no argument to rebut this inference.

Second, Plaintiff has provided evidence establishing, on a prima facie basis, the Memo to File, Student Complaint Memo, and Attachments all fit the definition of a public record in La. R.S. 44:1 at the time of the alleged offense. La. R.S. 44:1 provides in relevant part:

> All . . . writings . . . prepared . . for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning

---

[110] *Id.*

[111] *Id.*

[112] *Id.*

the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are "public records."[113]

No party disputes the Memo to File, Student Complaint Memo, and Attachments, prepared by Taylor Porter at the behest of, and for, a public university fit this definition of a public record.[114] The Board argues, however, that an exception to this definition of a "public record" exists for "attorney work product" prepared in anticipation of litigation.[115] Specifically, La. R.S. 44:4.1 excepts from the  definition of a public record "any writings, records, or other accounts that reflect the mental impressions, conclusions, opinions, or theories of an attorney or an expert, obtained or prepared in anticipation of litigation or in preparation for trial."[116] The Board is correct in that an exception to the public records law exists for attorney work product. However, the burden falls on the party asserting the exception to establish its application.[117] "As the party seeking to prevent disclosure, [that party] bears the burden of proving that the records are exempt from the provisions of the public records law."[118] Here, the exception for attorney work product can be broken down into two elements: (1) mental impressions of a lawyer; (2) that are prepared in anticipation of litigation or in preparation for trial.

It is undisputed that the Memo to File, Student Complaint Memo, and Attachments reflect, in part, the mental impressions of a lawyer. It is disputed, however,

---

[113] La. R.S. 44:1(A)(2)(a).

[114] The Court rejects the Board's reliance on *Texaco, Inc. v. Louisiana Land & Exploration Co.*, 805 F.Supp.385 (M.D. La. 1992). *Texaco* only stands for the proposition that privileged information need not be *disclosed* under Louisiana's public records law. In this case, the Board does not argue the entirety of the Memo to File, Student Complaint Memo, and Attachments, which were concealed in toto at Taylor Porter's law offices, is privileged. Instead, the Board argues only limited portions of the Student Complaint Memo are privileged. Had the Board only concealed those privileged portions of the Student Complaint Memo, perhaps its reliance on *Texaco* would have some merit. Accordingly, not only is *Texaco* not binding, but, in the case at bar, *Texaco* is inapplicable.

[115] *See, e.g.*, R. Doc. 305 at p. 7.

[116] La. R.S. 44:4.1.

[117] *See, e.g.*, *Terrebonne Parish Consolidated Gov't v. Duval, et al.*, 340 So.3d 1099, 1108 (La. App. 1 Cir. 2/18/2022) ("As the party seeking to prevent disclosure, [that party] bears the burden of proving that the records are exempt from the provisions of the public records law.").

[118] *Id.*

whether the Memo to File, Student Complaint Memo, and Attachments were prepared in anticipation of litigation or in preparation for trial, *i.e.*, the second element of La. R.S. 44:4.1(C). Plaintiff argues the Memo to File, Student Complaint Memo, and Attachments were not. The Board—the party carrying the burden of establishing the work product exception applies—did not even attempt to argue the Memo to File, Student Complaint Memo, and Attachments were prepared in anticipation of litigation or in preparation for trial. Likely, this is because Louisiana courts have held internal investigative reports prepared by lawyers and non-lawyers in the course of regular business are not "prepared in anticipation of litigation or in preparation for trial." For example, in *Simmons v. Transit Management of Southeast Louisiana, Inc.*, the Louisiana Court of Appeal for the Fourth Circuit determined a company's internal investigative report was not prepared in anticipation of litigation.[119] In reaching this conclusion, the Louisiana Fourth Circuit considered whether the internal investigative report was prepared in the regular course of business.[120] In that case, the record indicated the investigative report "was prepared by a non-lawyer, in the course of regular business whenever an accident occurs."[121] As a result, the court found the document was not prepared in anticipation of litigation.[122]

In this case, the Memo to File, Student Complaint Memo, and Attachments were prepared by counsel, but the Board does not present evidence or any argument that it was outside the regular course of business for Taylor Porter to conduct internal investigations of sexual harassment allegations that surfaced in the Athletics Department. To the contrary, there is evidence suggesting it was, in fact, in the regular course of business: (1) the Student Complaint Memo states that, in connection with Taylor Porter's preparation

---

[119] 780 So.2d 1074, 1077 (La. App. 4 Cir. 2/7/2001).
[120] *Id.*
[121] *Id.*
[122] *Id.*

of the Report, "Taylor Porter assum[ed] the role usually undertaken by the Human Resources Department;"[123] (2) Joseph Alleva testified in his deposition that, to his knowledge, the Memo to File, Student Complaint Memo, and Attachments were not prepared in anticipation of litigation;[124] and (3) the Husch Blackwell report states "Taylor Porter . . . did considerable legal work for the Athletics Department."[125] Whatever the case may be, the Board has failed to carry its burden of coming forward with evidence to establish the Memo to File, Student Complaint Memo, and Attachments fit the exception to Louisiana's Public Records Law at La. R.S. 44:4.1(C) because they constitute attorney work product.[126]

Third, the Memo to File, Student Complaint Memo, and Attachments were required to be preserved in a public office or by a person or public officer pursuant to La. R.S. 44:36. This element addresses the time period during which a public record must be preserved. Under La. R.S. 44:36, generally, "[a]ll persons and public bodies having custody or control of any public record . . . shall exercise diligence and care in preserving the public record for the period . . . of time specific by the law for public records."[127] If the time period during which the Memo to File, Student Complaint Memo, and Attachments were required to be preserved elapsed before the alleged offense began to occur, on May 15, 2013, then there can be no violation of La. R.S. 14:132. Subject to certain exceptions, "public records shall be preserved and maintained for a period of at least three years from the date on which the public record was made."[128] Plaintiff has provided evidence that the

---

[123] R. Doc. 190-5 at p. 5.
[124] R. Doc. 316-2 (deposition page numbers 128-29).
[125] R. Doc. 219-1 at p. 51.
[126] *See Dutton v. Guste*, 395 So.2d 683, 685 (La. 1981) (Marcus, J.) (reversing a lower court and ordering inspection under the Public Records Law when there was no evidence that documents otherwise fitting the definition of a public record were prepared in anticipation of litigation or in preparation for trial).
[127] La. R.S. 44:36(A).
[128] *Id.*

Memo to File, Student Complaint Memo, and Attachments were created on May 15, 2013 *and* the alleged offense began to occur on the same day.[129] As a result, under no set of circumstances had the time period for preservation of these documents elapsed when the alleged offense occurred. Plaintiff has shown, on a prima facie basis, the Memo to File, Student Complaint Memo, and Attachments were required to be preserved in a public office or by a person or public officer pursuant to La. R.S. 44:36. The Board has not provided any evidence or argument to rebut Plaintiff's evidence.

At bottom, "[t]he burden of establishing a prima facie case of crime for this purpose in the civil discovery context is not great and is certainly less than the standard that a district attorney or other prosecutor would use in pursuing criminal charges."[130] For civil discovery purposes, Plaintiff has made an independent prima facie showing that the Board violated La. R.S. 14:132, injuring a public record, by preserving the Memo to File, Student Complaint Memo, and Attachments in the law offices of Taylor Porter with an intent to conceal. The Board has failed to rebut this showing.

### III. Plaintiff has made a prima facie showing the May 15, 2013 meeting, Memo to File, Student Complaint Memo, and Attachments were in furtherance of a crime.

When a party makes a prima facie showing that a crime has been committed, she must then demonstrate that the client intended to further a crime during the attorney-client representation. "The test is whether the client's purpose is the furtherance of a [continuing or] future fraud or crime"[131] because "the client is the holder of the privilege."[132] This test involves a two-part showing: (1) that an attorney-client

---

[129] R. Doc. 190-5 at p. 2.
[130] *In re Katrina Canal Breaches Consol. Litig.*, 2008 WL 4401970, at *10 (E.D. La. 9/22/2008).
[131] *Southern Scrap Material Co. v. Fleming*, 2003 WL 21474479, at *2 (E.D. La. 2003) (internal citations omitted).
[132] *In re Grand Jury Proceedings #5 Empanelled January 28, 2004*, 401 F.3d 247, 251 (4th Cir. 2005).

communication was made in furtherance of a crime; and (2) that a purpose of the client in that communication was the furtherance of that crime.[133] Accordingly, the Court will first consider whether the relevant communications between the Board and Taylor Porter were made in furtherance of a crime. Second, the Court will consider whether a purpose of the Board in those communication was the commission of that crime.

First, Plaintiff has provided sufficient evidence to establish the relevant communications, *i.e.*, the May 15, 2013 meeting, Memo to File, Student Complaint Memo, and Attachments were in furtherance of a crime. The Memo to File by Vicki Crochet documents the Board's discussion of the Student Complaint Memo and the method by which it and the Attachments were to be preserved.[134] Because a document memorializing the Board's May 15, 2013 discussion of the Student Complaint Memo and Attachments— the Memo to File—prescribes the concealment of those documents as the meeting participants'[135] approved method of preservation, they are plainly "in furtherance" of that concealment. For the same reason, the May 15, 2013 meeting of, *inter alia*, some members of the Board and Taylor Porter attorneys was in furtherance of the alleged offense because during that meeting preservation by concealment was discussed and agreed to.

Second, the Court must consider the Board's purposes in seeking the legal advice that culminated in the communications. Taylor Porter investigated allegations made by a student worker against Leslie Miles.[136] That investigation resulted in the Student Complaint Memo and Attachments, which were discussed by some members of the Board with Taylor Porter attorneys and high-level university officials during a meeting on May 15, 2013. Plaintiff has presented evidence in the form of the Memo to File establishing

---

[133] *In re Katrina Canal Breaches Consol. Litig.*, 2008 WL 4401970, at *13.
[134] R. Doc. 190-5 at p. 2.
[135] Again, this meeting included members of the Board.
[136] R. Doc. 190-5 at p. 3.

that, during that May 15, 2013 meeting with counsel present, it was agreed the Student Complaint Memo and Attachments would be concealed in Taylor Porter's law offices.[137] After that meeting, the Memo to File dated May 15, 2013 memorialized the agreed-upon method of preservation—concealment exclusively in Taylor Porter's law offices.[138] Alleva, a participant during the May 15, 2013 meeting testified this was done, he believes, to prevent public disclosure of Taylor Porter's investigation, *i.e.*, to injure a public record.[139] Following the May 15, 2013 meeting, the Memo to File, Student Complaint Memo, and Attachments were, in fact, concealed in Taylor Porter's law offices for approximately eight years. Only in 2021, in response to a lawsuit in which a journalist sought disclosure "of the investigation report by the law firm Taylor Porter into former LSU football coach Les Miles," did the Board voluntarily release redacted versions of the documents and the concealment, for the most part, end. This evidence is sufficient for the Court to find a purpose of the Board in communicating with Taylor Porter on May 15, 2013, was to further a crime; namely, concealment of a public record to prevent public disclosure of its contents. In a situation such as this one, the crime-fraud exception is meant to be applied because "the client has no legitimate interest in seeking legal advice in planning future [or ongoing] criminal activities."[140]

## IV.   The crime-fraud exception applies only to privileged communications reasonably related to the fraudulent or criminal activity.

"After the party seeking disclosure meets its *prima facie* showing that the client intended to further an ongoing crime or fraud during the attorney-client relationship such that the crime-fraud exception applies, the *only* attorney-client communications and

---

[137] *Id.* at p. 2.
[138] *Id.*
[139] R. Doc. 316-2 (deposition page number 135).
[140] *See In re Intern'l Sys. & Controls Corp. Sec. Lit.*, 693 F.2d 1235, 1242 (5th Cir. 1982).

work product materials falling within the scope of the crime-fraud exception[, and thus subject to disclosure,] are those shown to hold 'some valid relationship' to the *prima facie* violation such that they 'reasonably related to the fraudulent [or criminal] activity.'"[141] "[T]he breadth of the crime-fraud exception's scope [ ] stands for a sense of limitation or condition."[142] Simply, the crime-fraud exception removes the privilege only from privileged communications that reasonable relate to the crime, not all prior communications between the lawyer and the client.[143]

"Courts have disagreed on the degree of relatedness required to meet th[is] stage of the inquiry."[144] The Fifth Circuit has "on only rare occasions addressed what is sufficient to establish that [a] privileged communication was reasonably related to" a crime.[145] "[T]he standard [must] not be too precise or rigorous. A finding that the [privileged information] reasonably relates to the subject matter of the possible violation[] should suffice."[146] In this case, Plaintiff seeks the unredacted versions of the Student Complaint Memo and related-Taylor Porter billing records, as well as documents underlying or associated with each. The Court will address each document in turn.

First, the Court finds the redacted privileged information in the Student Complaint Memo does not reasonably relate to the concealment of the Memo to File, Student Complaint Memo, and Attachments in Taylor Porter's law offices. The Court has reviewed the unredacted Student Complaint Memo in-camera and compared it to the redacted version the Board produced to Plaintiff.[147] The redactions made by the Board are of (1)

---

[141] *In re Grand Jury Subpoena*, 419 F.3d 329, 346 (5th Cir. 2005) (emphasis added).
[142] *Id.* at 344.
[143] *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d at 1243.
[144] *See In re Sealed Case*, 676 F.2d 793, 815 (D.C. Cir. 1982).
[145] *In re Boeing Company*, 2021 WL 3233504, at *3 (5th Cir. 2021).
[146] *In re Sealed Case*, 676 F.2d at 815.
[147] R. Doc. 297.

personal identifiers of Student 2 and (2) privileged legal advice. The parties agree redactions of personal identifiers of Student 2 are proper and, regardless of the outcome reached herein, should remain in place. Further, without divulging the contents of the privileged legal advice, after careful consideration, the Court finds no reasonable relationship exists between the redacted legal advice and the crime of injuring a public record. The only portions of the Memo to File, Student Complaint Memo, and Attachments that reasonably relate to the crime are those portions of the Memo to File detailing preservation exclusively in the law offices of Taylor Porter and page 8 of the Student Complaint Memo referencing an attempt to minimize the possibility of disclosure under the Public Records Law. These have already been produced to Plaintiff in an unredacted form. The crime-fraud exception does not extend far enough to reach the privileged legal advice redacted from the Student Complaint Memo because those redactions are about the legal effects of Student 2's allegations, not about concealment.

Second, the Court finds the privileged information in the Taylor Porter billing records does not reasonably relate to the concealment of the Memo to File, Student Complaint Memo, and Attachments in Taylor Porter's law offices. The relevant Taylor Porter billing records identified by Plaintiff are those from the months of July and August of 2013. The Court has reviewed the unredacted Taylor Porter billing records in-camera and compared them to the redacted version the Board produced to Plaintiff.[148] Without divulging the contents of those privileged materials, the Court has considered each entry carefully and determined the relationship between them and the crime of injury to a public record is too far attenuated to support a finding that the crime-fraud exception applies.

---

[148] R. Doc. 312.

Third, Plaintiff seeks documents underlying or associated with the Memo to File, Student Complaint Memo, Attachments, and Taylor Porter billing records. In so doing, Plaintiff fails to identify particular documents she contends are reasonably related to the crime of injury to a public record. At this time, the Court defers ruling on Plaintiff's request for these documents because the Court cannot determine whether a reasonable relationship exists between them and the prima facie violation of La. R.S. 14:132.

<u>**CONCLUSION**</u>

**IT IS ORDERED** that the Board's Motion for Protective Order is **GRANTED** with respect to preventing Plaintiff's discovery of the redacted portions of the Student Complaint Memo.

**IT IS FURTHER ORDERED** that the Board's Motion for Protective Order is **GRANTED** with respect to preventing Plaintiff's discovery of the redacted Taylor Porter billing records.

**IT IS FURTHER ORDERED** that the Court **DEFERS** ruling on Plaintiff's request for documents underlying or associated with the Memo to File, Student Complaint Memo, Attachments, and Taylor Porter billing records.

**IT IS FURTHER ORDERED** that a video status conference is set for **Wednesday, March 15, 2023, at 2:00 p.m.**, to discuss any remaining discovery issues. The Court already has provided counsel with the instructions necessary to participate.

New Orleans, Louisiana, this 13th day of March, 2023.

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**