UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**SHARON LEWIS,**       **CIVIL ACTION**
  **Plaintiff**

**VERSUS**       **NO. 21-198-SM-RLB**

**BOARD OF SUPERVISORS OF LOUISIANA**
**STATE UNIVERSITY AND AGRICULTURAL**
**AND MECHANICAL COLLEGE,**
  **Defendant**

### ORDER AND REASONS

Before the Court is a Motion for Reconsideration of the Court's March 14, 2023 Order and Reasons filed by Sharon Lewis ("Plaintiff").[1] The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("the Board") filed an opposition.[2] Plaintiff's Motion for Reconsideration was deemed submitted on April 7, 2023.[3] For the reasons that follow, Plaintiff's Motion is **GRANTED** as stated herein.

### LAW AND ANALYSIS

Plaintiff moves this Court under Rule 54(b) of the Federal Rules of Civil Procedure to reconsider the March 14, 2023 Order and Reasons finding the crime-fraud exception

---

[1] R. Doc. 318 (asking for reconsideration of R. Doc. 316).
[2] R. Doc. 323. The Board titles its opposition in part a "Request for Further Relief." The Board did not timely file a motion for reconsideration and the Court declines to construe the Board's opposition as such a motion. Accordingly, to the extent the Board seeks "further relief" from the Court's March 14, 2023 Order and Reasons, the Court hereby denies such a request. Even if the Board had filed a proper motion for reconsideration, it would be denied as all of the Board's arguments in R. Doc. 323 constitute new arguments or cleaned-up arguments made in an effort to shore up deficiencies in its original briefing that could have been made before this Court ruled on March 14, 2023. *See Advocare Int'l LP v. Horizon Labs., Inc.*, 524 F.3d 679, 691 (5th Cir. 2008) (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003)). For example, the Board mentions La. R.S. 44:4(56), which appears to create an exception to the definition of a "public record" for certain information in connection with student reports. This argument was available to the Board before the Court ruled on March 14, 2023, meaning it is not a basis for reconsideration. In any event, the Board's reliance on that statutory exception would have failed even if the argument had been timely made because La. R.S. 44:4(56) was not enacted until 2018—five years after the concealment began in 2013. *See* 2018 La. Sess. Law. Serv. Act 512 (H.B. 270) (West) (approved May 28, 2018).
[3] R. Doc. 321 at p. 2.

1

to privilege and work product applies.[4] The Court's Order and Reasons did not adjudicate all claims, and, as a result, is not a final judgment. When, as here, "a party seeks to revise an order that adjudicates fewer than all the claims among all the parties, Federal Rule of Civil Procedure 54(b) controls."[5] "The general practice of courts in this district has been to evaluate Rule 54(b) motions to reconsider under the same standards that govern Rule 59(e) motions to alter or amend a final judgment."[6] This Court expressly adopts that practice, and applies the standards applicable to Rule 59(e) motions to alter or amend a final judgment.

A Rule 59(e) motion to alter or amend "calls into question the correctness of a judgment," and courts have considerable discretion in deciding whether to grant such a motion.[7] To prevail on a Rule 59(e) motion, the movant must clearly establish at least one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence not previously available; or (3) a manifest error in law or fact.[8] "Manifest error" is one that "is plain and indisputable."[9] A Rule 59(e) motion is "not the vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."[10] Instead, Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or to present newly discovered

---

[4] R. Doc. 318-1 at p. 1.
[5] *Tucker v. Unitech Training Acad., Inc.*, No. CV 15-7133, 2018 WL 11319092, at *1 (E.D. La. Feb. 21, 2018) (quoting *S. Snow Mfg. Co., Inc. v. Snowizard Holdings, Inc.*, 921 F. Supp. 2d 548, 563-64 (E.D. La. 2013))
[6] *Tucker*, 2018 WL 11319092, at *1 (citing *Reyes v. Julia Place Condominiums Homeowners Ass'n, Inc.*, No. 12-2043, 2016 WL 4272493, at *3 (E.D. La. Aug. 15, 2016) and *Snowizard*, 921 F. Supp. 2d at 565).
[7] *See, e.g., In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002).
[8] *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005). *See also Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003); *Norris v. Causey*, No. 14-1598, 2016 WL 311746, at *4 (E.D. La. Jan. 26, 2016).
[9] *See, e.g., Pechon v. La. Dep't of Health and Hospitals*, No. 08-0664, 2009 WL 2046766, at *4 (E.D. La. July 14, 2009) (quoting *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004); *Bank One, Texas, N.A. v. F.D.I.C.*, 16 F. Supp. 2d 698, 713 (N.D. Tex. 1998) ("[A] manifest error is an obvious mistake or departure from the truth.") (internal quotation marks omitted)).
[10] *Templet v. Hydrochem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004) (citations omitted).

evidence."[11] "A manifest error is not shown by the disappointment of the losing party, rather it is the wholesale disregard, misapplication, or failure to recognize controlling precedent."[12]

Plaintiff moves for reconsideration of this Court's March 14, 2023 Order and Reasons, in which this Court found Plaintiff carried her prima facie burden of showing the Board violated La. R.S. 14:132(B), "Injuring Public Records," when it concealed documents stemming from an investigation conducted by Taylor Porter into allegations made by a student worker against Leslie Miles.[13] That investigation resulted in the creation of several documents, to wit: (1) the May 15, 2013 "memo to file" drafted by Vicki M. Crochet (hereinafter "Memo to File") (BOS-023945); (2) the eight-page document titled "Student Complaint" dated May 15, 2013 (hereinafter "Student Complaint Memo") (BOS023946 – BOS023953); (3) nine pages of attachments (hereinafter "Attachments") (BOS023954 – BOS023962); and (4) the written directive letter and attachments (hereinafter "Directive Letter and attachments") sent by Taylor Porter on behalf of the Board to Leslie Miles and his counsel (BOS023963 – BOS023977).[14] Plaintiff specifically moves for reconsideration of the Court's finding that: "It may be that the Board also concealed the Directive Letter and the attachments sent to, and signed by, Leslie Miles, but the Court does not reach the issue because Plaintiff does not argue this point."[15] Plaintiff argues she did make such an argument and the Court has made an error of fact.

Plaintiff is correct. In a footnote in her original briefing, Plaintiff argued the Board, through its counsel, violated La. R.S. 14:132(B) when it concealed the Directive Letter and

---

[11] *Id.* (citations omitted).
[12] *Factor King, LLC v. Block Builders, LLC*, 192 F.Supp.3d. 690, 693 (M.D. La. 2016) (citation and internal quotations marks omitted).
[13] R. Doc. 316 at p. 24.
[14] *Id.* at p. 1 n.2.
[15] *Id.* at pp. 13-14.

3

the attachments.[16] Thus, the Court made an error of fact when it found Plaintiff did not argue the Board concealed the Directive Letter and the attachments. Accordingly, the Court will now, solely on the basis of the briefing and evidence that was before the Court when it issued its March 14, 2023 Order and Reasons,[17] reconsider its ruling and determine whether Plaintiff carried her burden of showing a prima facie violation of La. R.S. 14:132(B) with respect to the Directive Letter and attachments.

To invoke the crime-fraud exception, first, the moving party must "make an independent prima facie case that a crime [or fraud] has been committed."[18] A prima facie case for this purpose is evidence of a crime "such as will suffice until contradicted and overcome by other evidence," *i.e.*, "a case which has proceeded upon sufficient proof to that stage where it will support a finding if evidence to the contrary is disregarded."[19] Second, if the moving party has made a prima facie showing, the moving party must then demonstrate that the client intended to further a crime during the attorney-client representation. "The test is whether the client's purpose is the furtherance of a [continuing or] future fraud or crime; it is not enough that a communication merely provides evidence of fraud" or a crime.[20] "The burden of establishing a prima facie case of crime for this purpose in the civil discovery context is not great and is certainly less

---

[16] R. Doc. 302 at p. 10 n.21.
[17] R. Docs. 289, 305, and 308 (Board's briefing); R. Docs. 295, 302, and 306 (Plaintiff's briefing); *Metairie Bank & Trust Co. v. Payne*, 2000 WL 979980, at *1 (E.D. La. 7/17/2000) (Fallon, J.) ("Motions for reconsideration should not be avenues for relitigating old matters, raising new arguments, or submitting evidence that could have been presented before.").
[18] *Ward v. Succession of Freeman*, 854 F.2d 780, 790 (5th Cir. 1988).
[19] *In re Grand Jury Subpoena*, 419 F.3d at 336 (quoting *In re Intern'l Sys. and Controls Corp. Securities Litigation*, 693 F.2d 1235, 1242 (5th Cir. 1982)).
[20] *Southern Scrap Material Co. v. Fleming*, 2003 WL 21474479, at *2 (E.D. La. 6/18/2003) (internal citations omitted). The Court defers reaching the third step, *i.e.*, whether the privileged information bears a relationship to the alleged crime, because that issue will be more appropriately considered in connection with Plaintiff's pending Motion to Compel.

4

than the standard that a district attorney or other prosecutor would use in pursuing criminal charges."[21]

First, Plaintiff presented sufficient evidence to make out a prima facie case that the Board concealed the Directive Letter and attachments in violation of La. R.S. 14:132(B). The elements of that statute required Plaintiff to make a prima facie showing: (1) that a record was intentionally concealed by the Board; (2) that record was a public record under La. R.S. 44:1 at the time of the concealment; and (3) that record was required to be preserved in any public office or by any person or public officer pursuant to La. R.S. 44:36.[22] In terms of the first element, the Court made the following findings in its March 14, 2023 Order and Reasons:

> "Near the end of February 2013, a student employee in the Athletic Department reported . . . interactions with [Leslie Miles] that made her uncomfortable enough to quit her part-time position." Sometime after that, "the Chancellor asked Taylor Porter to investigate the situation." On May 15, 2013, Taylor Porter lawyer Vicki Crochet penned the May 15, 2013 Memo to File, documenting the discussion by some members of the Board regarding Taylor Porter's investigation of the sexual harassment claims lodged against Leslie Miles and the method by which the Student Complaint Memo and Attachments were to be preserved. Crochet's Memo to File reads in pertinent part:
>
>> The [Student Complaint Memo and Attachments] were hand delivered and discussed in a meeting on May 15, 2013. Those reviewing the [documents] were: Garret "Hank" Danos (Chair of the Board of Supervisors), Robert "Bobby" Yarborough (Board Chairman Elect), Stanley Jacobs (Chairman of the Board – Athletic Committee), Shelby McKenzie (LSU Lead Legal Counsel), Joe Alleva (Vice Chancellor and Director of Athletics), and Miriam Segar (Senior Associate A.D./Senior Woman Administration). Also present at the meeting and participating in the discussion were Vicki Crochet and Bob Barton of Taylor Porter.

---

[21] *In re Katrina Canal Breaches Consol. Litig.*, 2008 WL 4401970, at *10 (E.D. La. 9/22/2008).
[22] La. R.S. 14:132.

5

> Following a comprehensive discussion . . ., all copies of the [documents] were returned to Taylor Porter to maintain in its file. . . .
>
> After review and discuss of the investigation, those present agreed to and accepted the findings and recommendations of counsel . . . . Also, those present agreed that this was appropriate administrative action that could and should be taken without further review by the full Board.

The Memo to File establishes the Student Complaint Memo and its Attachments were hand delivered in a meeting on May 15, 2013, attended by Vicki Crochet and Bob Barton (Taylor Porter lawyers), Garret "Hank" Danos (Board Chair), Robert "Bobby" Yarborough (Board Chair-elect), Stanley Jacobs (Chairman of the Athletic Committee), Shelby McKenzie (in-house counsel), Joe Alleva (Vice Chancellor and Director of Athletics), and Miriam Segar (Senior Associate Athletic Director/Senior Woman Administrator). The meeting participants were provided only hard copies (not electronic copies) of the Student Complaint Memo and Attachments. The participants discussed, inter alia, the Student Complaint Memo and Attachments and then returned their hard copies to the Taylor Porter lawyers. The participants agreed all hard copies of the Student Complaint Memo and Attachments were to be preserved in Taylor Porter's offices. The participants agreed no further review by the Board was necessary. No meeting participant retained a copy of the Student Complaint Memo or Attachments—all copies were returned to Taylor Porter. Joseph Alleva, a meeting participant, testified in his deposition that the Memo to File prepared by Vicki Crochet is accurate. Joseph Alleva also testified the chosen method of preservation—preservation in the law offices of Taylor Porter—was, he believes, designed to "stop [the Taylor Porter investigation] from becoming public information." The Memo to File, Student Complaint Memo, and Attachments were preserved exclusively in Taylor Porter's law offices for approximately eight years.

Looking deeper into the Student Complaint Memo, page 8 reflects consideration of the possibility of the Board, "in the face of a public records request[,] . . . tak[ing] the position that" "any written directive or other document generated regarding the resolution of" Student 2's complaint against Leslie Miles "is protected from production by the privacy rights of the individuals involved." Still, the Student Complaint Memo cautions, "there is no guarantee that such a document might not have to be produced either as a result of a public records request or other legal proceeding." "In order to attempt to minimize the possibility of this," the Student Complaint Memo calls for "any written directive" to Leslie Miles to be maintained exclusively in the law offices of Taylor Porter and the law firm representing Leslie Miles.

6

In a similar manner, the August 29, 2013 Directive Letter from the Board's counsel (Taylor Porter) to Leslie Miles's counsel (Peter Ginsberg), provides in pertinent part:

> The original and all copies of this letter will be maintained in the files of your law offices and undersigned counsel's law offices only. Miles, his counsel, LSU, and its counsel, agree to keep this letter (and its contents) confidential unless compelled to divulge it by final order of a court of competent jurisdiction; any such order shall be contested by LSU's counsel and, at Miles' option, Miles' undersigned counsel. Should your office, Miles, our office, or LSU receive a public records request, subpoena, court order or other legal process seeking this document, the recipient of the request shall provide notice and a copy of the request to the other party and counsel for the other party within twenty-four (24) hours of receiving the request. Neither you, undersigned counsel, Miles, or LSU will release this document without a final order of a court of competent jurisdiction requiring such release.

Approximately eight years later, in 2021, a news agency filed a mandamus action against the Board in the Nineteenth Judicial District Court, Parish of East Baton Rouge, seeking the release "of the investigation report by the law firm Taylor Porter into former LSU football coach Les Miles." The mandamus action stemmed from the Board's denial of a journalist's request for the "investigation report," i.e., the Student Complaint Memo, under the Public Records Law. At that time, Louisiana State University Assistant General Counsel Johanna Posada denied the public records request, explaining "[t]he employee record [sought] is not subject to disclosure under the Louisiana Public Records Law pursuant to a right of privacy granted by the Louisiana Constitution." It bears mentioning that, in Posada's email, the rationale expressed for non-disclosure of the "employee record" is not predicated on the document either failing the definition of a public record or falling into any statutory exemption, such as the exception for attorney work product. Instead, the proffered rationale for non-disclosure is a loose reference to the privacy rights of public employees in their employment file. Ultimately, the Board voluntarily released a redacted version of the Student Complaint Memo, an unredacted version of the Memo to File, an unredacted version of the Attachments, and an unredacted version of the Directive Letter and attachments to the news agency before any judicial determination was made.

Moreover, in 2021, a report prepared by law firm Husch Blackwell at the behest of the Board following "various Title IX-related incidents," confirms "there was no file of [the Taylor Porter investigation] at the University. Instead, [it] was intentionally stored offsite."[23]

---

[23] R. Doc. 316 at pp. 15-19 (internal quotations and citations omitted).

All of these circumstances enabled the Court to reach an "inference of criminal intent necessary to establish a prima facie case of" second degree injury to a public record by the Board.[24] By extension, the Court finds Plaintiff presented sufficient prima facie evidence that enabled the Court to reach an inference of an intent by the Board to conceal the Directive Letter and attachments in violation of La. R.S. 14:132(B). The Board presented neither evidence nor argument in its original briefing to rebut this inference.[25]

Further, with respect to the second element of La. R.S. 14:132(B), Plaintiff presented sufficient evidence to establish the Directive Letter and attachments fit the broad definition of a public record at La. R.S. 44:1, which provides:

> All . . . writings . . . prepared . . for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are "public records."[26]

Looking at the relevant briefing,[27] no party disputed the Directive Letter and attachments, prepared by Taylor Porter at the behest of, and for, a public university fit this definition of a public record. The Board made an effort to argue in its original briefing, however, that an exception to this definition of a "public record" exists for "attorney work product" prepared in anticipation of litigation.[28] The exception for attorney work product is properly broken down into two elements: (1) mental impressions of a lawyer; (2) that are prepared in anticipation of litigation or in preparation for trial.[29] "As the party seeking to

---

[24] *Id.* at p. 20.
[25] R. Docs. 289, 305, and 308 (Board's briefing).
[26] La. R.S. 44:1(A)(2)(a).
[27] R. Docs. 289, 305, and 308 (Board's briefing); R. Docs. 295, 302, and 306 (Plaintiff's briefing).
[28] *See, e.g.*, R. Doc. 305 at p. 7.
[29] La. R.S. 44:4.1.

8

prevent disclosure, [the Board] b[ore] the burden of proving that the records [we]re exempt from the provisions of the public records law."[30] The Board offered no evidence or argument that the Directive Letter and attachments were prepared in anticipation of litigation or in preparation for trial.[31] Thus, the Board did not carry its burden of showing the exemption applied. Conversely, Plaintiff presented sufficient prima facie evidence that the Directive Letter and attachments fit the definition of a public record in 2013.

Third, Plaintiff presented evidence that the Directive Letter and attachments were required to be preserved in a public office or by a person or public officer pursuant to La. R.S. 44:36. This element is simply concerned with the time period during which a public record must be preserved. Under La. R.S. 44:36, generally, "[a]ll persons and public bodies having custody or control of any public record . . . shall exercise diligence and care in preserving the public record for the period . . . of time specified by the law for public records."[32] If the time period during which the Directive Letter and attachments were required to be preserved elapsed before the alleged offense began to occur then there can be no violation of La. R.S. 14:132. Subject to certain exceptions, "public records shall be preserved and maintained for a period of at least three years from the date on which the public record was made."[33] Plaintiff provided evidence that the Directive Letter and attachments were created some time in between May 15, 2013 and August 29, 2013, and that the alleged offense began to occur by approximately September 10, 2013, when Leslie Miles read and signed the Directive Letter and attachments.[34] As a result, Plaintiff showed that under no set of circumstances had the time period for preservation of these

---

[30] *Terrebonne Parish Consolidated Gov't v. Duval, et al.*, 340 So.3d 1099, 1108 (La. App. 1 Cir. 2/18/2022).
[31] To be clear, the Board could have raised such arguments, particularly because Plaintiff expressly did so in her briefing. *See* R. Doc. 295 at p. 12.
[32] La. R.S. 44:36(A).
[33] *Id.*
[34] R. Doc. 316-1 at pp. 19-21.

9

documents elapsed when the alleged offense occurred. By contrast, the Board provided neither evidence nor argument to rebut such a finding.[35] In sum, with respect to the first element of the crime-fraud exception framework, Plaintiff presented sufficient evidence to make out a prima facie case that the Board "preserved" the Directive Letter and attachments in violation of La. R.S. 14:132(B).

Moving to the second step of the crime-fraud exception framework, in its March 14, 2023 Order and Reasons, the Court determined Plaintiff presented sufficient evidence to support a finding that (1) certain documents stemming from the Taylor Porter investigation were made in furtherance of a crime; and (2) a purpose of the Board in those communications was the commission of that crime.[36] The Court finds the same rationale applies to the Directive Letter and attachments.

First, the Court finds Plaintiff submitted sufficient evidence to support a finding that the Directive Letter and attachments were made in furtherance of the violation of La. R.S. 14:132(B) because the Directive Letter prescribes the concealment, as found *supra*, of those documents as the approved method of preservation. Thus, the documents are plainly "in furtherance" of the violation of La. R.S. 14:132(B).

Second, the Court must consider the Board's purposes in seeking the legal advice that culminated in the Directive Letter and attachments. Taylor Porter investigated allegations made by a student worker against Leslie Miles.[37] That investigation resulted in, *inter alia*, the Directive Letter and attachments, which "LSU . . . authorized [Taylor Porter] to provide [to] Les Miles."[38] The Court has already found, *supra*, Plaintiff presented sufficient evidence of the Board's intention to conceal the Directive Letter and

---

[35] R. Docs. 289, 305, and 308 (Board's briefing).
[36] R. Doc. 316 at pp. 24-26.
[37] R. Doc. 190-5 at p. 3.
[38] R. Doc. 316-1 at p. 19.

10

attachments. That finding, plus the Directive Letter's direction to maintain "[t]he original and all copies of [it]" "in the files of" Peter Ginsberg's law office and the law offices of Taylor Porter,[39] enables the Court to find a purpose of the Board in communicating with Taylor Porter was to further a crime; namely, a violation of La. R.S. 14:132(B). In a situation such as this one, the crime-fraud exception is meant to be applied because "the client has no legitimate interest in seeking legal advice in planning future [or ongoing] criminal activities."[40]

## CONCLUSION

**IT IS ORDERED** that Plaintiff's Motion for Reconsideration[41] is **GRANTED**. Although the Directive Letter and attachments have been provided by the Board to Plaintiff without redaction, the issue of what privileged information reasonably relates to the concealment of those documents, and thus is subject to discovery, still remains.[42]

**New Orleans, Louisiana, this 24th day of April, 2023.**

                                                 _____
                                                   **SUSIE MORGAN**
                                    **UNITED STATES DISTRICT JUDGE**

---

[39] *Id.* at pp. 20-21.
[40] *See In re Intern'l Sys. & Controls Corp. Sec. Lit.*, 693 F.2d 1235, 1242 (5th Cir. 1982).
[41] R. Doc. 318.
[42] The Court will defer ruling on Plaintiff's arguments about which "communications are reasonably related to the LSU BOS' concealment of the MDL in [] 2013 and 2021" and the Board's arguments about relevance and proportionality because those arguments are more appropriately considered in connection with Plaintiff's pending Motion to Compel. R. Docs. 318-1 at pp. 8-9; R. Doc. 323 at p. 19.