## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

SHARON LEWIS,
    Plaintiff

CIVIL ACTION

VERSUS

NO.  21-198-SM-RLB

BOARD OF SUPERVISORS OF LOUISIANA
STATE UNIVERSITY AND AGRICULTURAL
AND MECHANICAL COLLEGE,
    Defendant

### ORDER AND REASONS

Before the Court is a Motion to Compel Deposition Testimony and Document Production filed by Sharon Lewis ("Plaintiff").[1] The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board") filed an opposition,[2] Stanley Jacobs filed an opposition,[3] and Robert Barton and Vicki Crochet ("Dismissed TP Defendants") filed a Motion for Protective Order, which the Court construes as an opposition to the Motion to Compel.[4] Plaintiff filed a reply.[5] For the reasons that follow, the Motion to Compel is **GRANTED** as stated herein.

---

[1] R. Doc. 324.

[2] R. Doc. 334.

[3] R. Doc. 333.

[4] R. Doc. 325. With respect to the Dismissed TP Defendants' argument that the Court's crime-fraud exception ruling was in error, *see* R. Doc. 325-1 at pp. 1-24, the Court finds this is, in reality, a request for reconsideration of the Court's March 14, 2023 Order and Reasons under Rule 59(e), which the Dismissed TP Defendants lack standing to make. The Court notes that, though the Dismissed TP Defendants attended status conferences where the Court discussed the issue, *see* R. Docs. 297 and 307, the Dismissed TP Defendants stood idly by while the Board and Plaintiff extensively litigated the crime-fraud exception issue. At no point did the Dismissed TP Defendants file a motion for protective order or request an opportunity to brief the issue (to fulfill their "ethical duty to preserve a [former] client's confidences") before the ruling was issued on March 14, 2023. Under these circumstances, even if the Dismissed TP Defendants had standing to seek reconsideration, to consider the Dismissed TP Defendants' arguments questioning the correctness of this Court's ruling on the basis of new arguments or cleaned-up versions of already considered arguments flies in the face of the Fifth Circuit's prohibition on using a Rule 59(e) motion to relitigate old matters and raise issues that "could, and should, have been made before [a ruling was] issued." *See Advocare Intern. LP v. Horizon Laboratories, Inc.*, 524 F.3d 679, 691 (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003)). Thus, to the extent the Dismissed TP Defendants request reconsideration, the request is denied. R. Doc. 325. Nevertheless, the Court will consider the Dismissed TP Defendants' arguments in opposition to the Motion to Compel based on relevance and proportionality below. R. Doc. 325-1 at pp. 24-25.

[5] R. Doc. 336.

## **BACKGROUND**

The background of this case has been extensively laid out in the twelve opinions issued by this Court since its inception.[6] The Court will recite only the procedural developments relevant to the instant discovery dispute. On October 28, 2022, the Board filed a motion for protective order requesting "(1) [r]elief from noticed depositions and written discovery having no bearing on Plaintiff's Title IX and Title VII claims; and (2) [r]elief from the noticed depositions of [the Board's former] Attorneys (Vicki Crochet and Bob Barton) who not only have no relevant testimony to provide [related to Plaintiff's Title IX and Title VII claims], but for whom [the Board] has asserted attorney client privilege and work product doctrine/immunity, to the maximum extent allowable by law."[7] Plaintiff filed three opposition briefs,[8] and the Board filed two reply briefs.[9] Plaintiff argued, to the extent she sought privileged communications or attorney work product, the crime-fraud exception to privilege and work product should apply.

During a status conference with the parties on December 12, 2022, the parties urged the Court to decide the crime-fraud exception issue before deciding any remaining issues presented by the Board's motion for protective order.[10] The crime-fraud exception issue was submitted for this Court's consideration on December 19, 2022.[11] On March 14, 2023, the Court issued its Order and Reasons finding the crime-fraud exception applies.[12] Nevertheless, the Court granted the Board's motion for protective order to the extent it sought to prevent Plaintiff's discovery of the redacted portions of the Student Complaint

---

[6] *See* R. Docs. 107, 124, 165, 185, 254, 255, 280, 283, 284, 316, 332, and 335.
[7] R. Doc. 289.
[8] R. Docs. 295, 302, and 306.
[9] R. Docs. 305 and 308.
[10] R. Doc. 316 at p. 3.
[11] R. Doc. 308.
[12] *See generally id.* (finding the crime-fraud exception applies in a twenty-nine-page Order and Reasons).

Memo and the redacted Taylor Porter billing records,[13] reasoning such redactions were not reasonably related to the concealment described in the Court's ruling.[14] The Court deferred ruling on Plaintiff's request for unidentified documents underlying or associated with the Memo to File, Student Complaint Memo, Attachments, and Taylor Porter billing records.[15]

On March 15, 2023, the Court held a status conference with the parties to discuss the status of the case and the March 14, 2023 Order and Reasons.[16] During the conference, the Court ordered the parties to prepare letters to the Court "setting forth in detail any additional written discovery and depositions needed, as well as other discovery-related issues."[17] The Court also set an additional status conference on March 28, 2023.[18]

On March 27, 2023, Plaintiff filed a motion for reconsideration of the March 14, 2023 Order and Reasons, requesting that the Court amend its ruling to find the Directive Letter and attachments were also part of the concealment described therein.[19] The Court granted Plaintiff's motion for reconsideration.[20]

---

[13] *See id.* at p. 1 n.2 ("The documents in dispute stem from an investigation conducted by Taylor Porter, a law firm, into allegations made by a student worker employed by Louisiana State University's Athletic Department against Leslie Miles. When the Plaintiff refers to the "Miles Report," she is referring to the (1) May 15, 2013 "memo to file" drafted by Vicki M. Crochet (hereinafter "Memo to File"); (2) eight-page document titled "Student Complaint" dated May 15, 2013 (hereinafter "Student Complaint Memo"); and (3) nine pages of attachments (hereinafter "Attachments"). The Board produced to Plaintiff an unredacted version of the Memo to File (BOS-023945), a redacted version of the Student Complaint Memo (BOS023946 – BOS023953), and an unredacted version of the Attachments (BOS023954 – BOS023962). The Board also produced to Plaintiff an unredacted version of the written directive letter and attachments (hereinafter "Directive Letter and attachments") sent by Taylor Porter on behalf of the Board to Leslie Miles and his counsel (BOS023963 – BOS023977). BOS023945 through BOS023977 are attached to this Order and Reasons and made a part of the record. See R. Doc. 316-1.").

[14] *Id.* at p. 29. The Court conducted in-camera review to make this assessment.

[15] *Id.*

[16] R. Doc. 317.

[17] *Id.* at p. 2.

[18] *Id.*

[19] R. Doc. 318 (asking for reconsideration of R. Doc. 316).

[20] R. Doc. 335.

On March 28, 2023, the Court held a status conference with the parties to discuss, *inter alia*, their letters sent to the Court.[21] In light of those letters and the discussion with the parties, the Court ordered Plaintiff to file the instant Motion to Compel the written discovery and depositions sought in her letter and to respond to Board's objections expressed during the March 28, 2023 status conference.[22]

Consistent with the March 28, 2023 Order and Plaintiff's letter,[23] Plaintiff filed the instant Motion to Compel on April 11, 2023, which was submitted for this Court's consideration on April 26, 2023.[24] Plaintiff seeks to depose Stanley Jacobs, Leslie Miles, Vicki Crochet, Robert Barton, Mary Leach Werner, Valencia Sarpy Jones, James Williams, and Jimmie Woods. Plaintiff also seeks production from the Board of two categories of documents. Broadly speaking, issues of discoverability and the application of the Court's March 14, 2023 Order and Reasons and April 25, 2023 Order and Reasons are raised by Plaintiff's Motion to Compel, which the Court will now address.

## LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[25] "Information within the scope of discovery need not be admissible in evidence to be discovered."[26] At the discovery stage, relevant evidence includes "[a]ny matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in

---

[21] R. Doc. 321 (minute entry with letters attached thereto).

[22] *Id.* at p. 2. The Court also ordered a status conference be set for May 10, 2023, to discuss any outstanding discovery issues, to set a new trial date and pretrial deadlines, and to set a deadline for Plaintiff to issue a Rule 30(b)(6) notice to the Board. *Id.* The Court continued this status conference until May 18, 2023. R. Doc. 338.

[23] *See* R. Doc. 321.

[24] R. Doc. 324.

[25] FED. R. CIV. PRO. 26(b); *see also Miller v. Sam Houston Univ.*, 986 F.3d 880, 891 (5th Cir. 2021).

[26] *Id.*

that case."[27] "[T]he threshold for relevance at the discovery stage [under Rule 26(b) of the Federal Rules of Civil Procedure] is lower than at the trial stage" under Federal Rule of Evidence 401.[28] Discovery should be allowed unless the party opposing discovery establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery."[29] If relevance is in doubt, the court should be permissive in allowing discovery.[30] The Fifth Circuit recently has instructed the discovery "standard is broad, especially when viewed in the context of Title VII" claims.[31] This broader scope is necessary given the nature of litigation, where determinations of discoverability are made well in advance of trial.[32] Likewise, "broad discretion is afforded to the district court when deciding discovery matters,"[33] and the Court must determine the scope of discovery "in light of the relevant facts of the particular case."[34]

A party seeking discovery must comply with Rule 26(b)(1)'s proportionality limits on discovery requests.[35] When considering whether discovery is proportional to the needs of the case, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

---

[27] *Stevenson v. Benjamin*, 2022 WL 12309062, *1 (5th Cir. 10/21/2022) (quoting *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991)); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978); *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 4/11/2011).

[28] *Rangel*, 274 F.R.D. at 590.

[29] *Dotson v. Edmonson*, 2017 WL 11535244, at *2 (E.D. La. 11/21/2017) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2/4/2005)).

[30] *E.E.O.C. v. Simply Storage Mgmt., L.L.C.*, 270 F.R.D. 430, 433 (S.D. Ind. 5/11/2010) (quoting *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987)).

[31] *Miller v. Sam Hous. State Univ.*, 986 F.3d 880, 891 (5th Cir. 2021); *see also Trevino v. Celanese Corp.*, 701 F.2d 397, 405 (5th Cir. 1983) ("The imposition of unnecessary limitations on discovery is especially frowned upon in Title VII cases.").

[32] *Rangel*, 274 F.R.D. at 590 n.5.

[33] *Miller*, 986 F.3d at 891 (citing *Crosby v. la. Health Serv. & Indemnity Co.*, 647 F.3d 258, 261 (5th Cir. 2011)).

[34] *See Conboy v. Edward D. Jones & Co.*, 140 F. App'x 510, 517 (5th Cir. 2005).

[35] *Muslow v. Bd. of Supervisors of La. State Univ.*, 2021 WL 4239102, *2 (E.D. La. 7/22/2021) (M.J., Currault).

expense of the proposed discovery outweighs its likely burden."[36] If a party resists discovery on grounds of proportionality, it bears the burden of making a specific objection and showing that the discovery fails Rule 26(b)'s proportionality calculation by coming forward with specific information to address the proportionality considerations.[37]

While the discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials,[38] discovery does have "'ultimate and necessary boundaries.'"[39] Rule 26(b)(2)(C) mandates that the Court limit the frequency or extent of discovery otherwise allowed, if it determines: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope of Rule 26(b)(1)."[40] Further, Rule 26(b) "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition."[41] While relevancy in the discovery context is broader than in the trial context, that legal tenet should not be misapplied to allow fishing expeditions in discovery.[42]

"The party filing the motion to compel bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence."[43] "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party

---

[36] FED. R. CIV. PRO. 26(b).

[37] *Mir v. L–3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 226 (N.D. Tex. 8/22/2016).

[38] *Herbert v. Lando*, 441 U.S. 153, 176 (1979) (citations omitted).

[39] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

[40] FED. R. CIV. PRO. 26(b)(2)(C)(i)–(iii).

[41] *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011).

[42] *Trident Mgmt. Grp., LLC v. GLF Constr. Corp.*, No. 16-17277, 2017 WL 3011144, at *4 (E.D. La. 7/14/2017) (citations omitted); *see also Crosby*, 647 F.3d at 264; *Ganpat v. E. Pac. Shipping, PTE, Ltd.*, No. 18-13556, 2020 WL 1046336, at *3 (E.D. La. 3/4/2020) (Morgan, J.).

[43] *Summers v. Louisiana*, 2021 WL 4392309, *3 (M.D. La. 9/24/2021) (internal quotations and citations omitted).

resisting discovery to show why the discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted."[44]

## LAW AND ANALYSIS

In her Motion to Compel, Plaintiff seeks to compel the depositions of eight individuals and the production of two categories of documents. The Court takes each request in turn.

### I. Plaintiff may depose Jacobs, Miles, Barton, Crochet, Werner, Jones, Williams, and Woods.

#### A. *A deposition of Stanley Jacobs is compelled.*

Plaintiff requests she be allowed to depose Stanley Jacobs, a member of the Board from 1997 to 2018,[45] about three topics: (1) the Board's knowledge of the alleged hostile work environment in the LSU Athletics Department created by Leslie Miles; (2) the identity of the relevant decisionmakers with respect to Plaintiff;[46] and (3) the alleged steps the Board took to conceal Leslie Miles' conduct of sexual harassment and Title IX violations from 2013 to 2016.[47]

For purposes of discovery, the Court finds the Board's knowledge of the alleged hostile work environment (topic 1) bears on Plaintiff's Title VII hostile work environment claim and the identity of the relevant decisionmakers (topic 2) bears on Plaintiff's Title VII and Title IX retaliation claims.[48]

To prevail on a Title VII hostile work environment claim, at trial, Plaintiff must

---

[44] *Id.*
[45] R. Doc. 333 at p. 5.
[46] R. Doc. 336 at p. 3.
[47] R. Doc. 324 at pp. 5-6. To be clear, the sexual harassment, Title IX violations, hostile work environment, and discrimination described in this Order and Reasons are all alleged conduct lifted from Plaintiff's second amended complaint.
[48] *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991). Because the deposition of Jacobs is not a Rule 30(b)(6) deposition of the Board, Jacobs, a former Board member, can only testify in his deposition about his own knowledge of the incidents described in Plaintiff's second amended complaint and his knowledge of other Board members' and employees' understanding of the same.

prove: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her membership in the protected group; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[49] With respect to the fifth element, an "employer" includes higher management or "someone who has power to take action to remedy the problem."[50] As the Supreme Court has explained it, "[i]n determining whether an actionable hostile work environment claim exists, we look to '*all the circumstances*,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[51] Likewise, to prevail on her retaliation claims under Title VII and Title IX, Plaintiff must show, for example, the relevant decisionmakers had knowledge of her protected activity at the time of any alleged acts of retaliation.[52]

Plaintiff's employer was the Board.[53] Plainly, the knowledge of the Board regarding the hostile work environment alleged by Plaintiff (topic 1) bears on her claim because knowledge of her employer is a required element of a Title VII hostile work environment claim.[54] Plaintiff argues the Board controlled the day-to-day operations of the Athletics Department.[55] Stanley Jacobs was a member of the Board for a large part of the period

---

[49] *Johnson v. PRIDE Industries, Inc.*, 7 F.4th 392, 399-400 (5th Cir. 2021).

[50] *Sharp v. City of Houston*, 164 F.3d 923, 929 (5th Cir. 1999).

[51] *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116-17 (2002).

[52] *Collins v. Jackson Pub. Sch. Dist.*, 609 Fed.Appx. 792, 795 (5th Cir. 2015) ("The language of the anti-retaliation provision of Title IX and Title VII are similar and 'should be accorded a similar interpretation.' . . . Unless a defendant knows that a plaintiff 'engaged in any protected activity' at the time of the alleged retaliation, causation has not been shown.").

[53] *Robertson v. Bd. of Sup'rs of Louisiana State University*, 273 F.3d 1108 (5th Cir. 2001).

[54] *Johnson v. PRIDE Industries, Inc.*, 7 F.4th 392, 399-400 (5th Cir. 2021).

[55] R. Doc. 324 at p. 3.

during which Plaintiff contends she was subject to a hostile work environment.[56] The Fifth Circuit holds, under certain circumstances, "higher management's" knowledge "may be imputed to the employer."[57] Said simply, Plaintiff may be able to impute individual Board members' knowledge to the Board to satisfy the "employer knowledge" element of her Title VII hostile work environment claim. Thus, the Court is left with the firm conviction that knowledge of the members of the Board, including Jacobs, regarding the hostile work environment alleged by Plaintiff is a "matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in that case," namely, the Plaintiff's employer's knowledge.[58] Equally as apparent, the identity of the relevant decisionmakers (topic 2), which the Court concludes is unclear at this stage of the litigation, bears on Plaintiff's retaliation claims as that information forms a part of a required element as well.[59] Plaintiff has carried her initial burden of showing the information sought bears on a claim or defense.[60] The Court will now consider objections raised by the Board and Jacobs.

In opposition, the Board offers no specific argument with respect to Stanley Jacobs being required to testify about these two topics.[61] In one relevant part of its briefing, the Board does contend "Plaintiff is not required to show that *a* [particular] member of the Board was aware of the alleged retaliation and hostile environment."[62] Apparently, the Board is arguing that a deposition of Jacobs and other Board members is not necessary because the knowledge of any one Board member is not required. This argument misses

---

[56] R. Doc. 333 at p. 5.
[57] *Sharp v. City of Houston*, 164 F.3d 923, 929-30 (5th Cir. 1999).
[58] *Stevenson v. Benjamin*, 2022 WL 12309062, *1 (5th Cir. 10/21/2022) (quoting *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991)); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978); *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 4/11/2011).
[59] *Collins v. Jackson Pub. Sch. Dist.*, 609 Fed.Appx. 792, 795 (5th Cir. 2015).
[60] *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991).
[61] *See* R. Doc. 334.
[62] *Id.* at p. 5 (emphasis and alteration added).

the mark. Plaintiff wishes to depose the identified individual Board members, including Jacobs, to discover what these Board members or other decisionmakers knew because what they knew may bear on what the Board knew.[63] With respect to Plaintiff's hostile work environment claim, Plaintiff *is* required to show that her employer, the Board, had knowledge of alleged discrimination. To the extent the Board argues only a 30(b)(6) deposition of the Board is proportional to the needs of the case because only the testimony of the representative of the Board is relevant, the Court disagrees. To discover the Board's knowledge of the alleged discrimination, Plaintiff is entitled to a 30(b)(6) deposition, as well as depositions of the identified individual Board members, as a deposition pursuant to Rule 30(b)(6) is substantially different from a witness's deposition as an individual.[64] Moreover, with respect to her retaliation claim, Plaintiff must show at trial, for example, that the relevant decisionmakers had knowledge of her protected activities. At this stage of the litigation it is unclear who the relevant decisionmakers were at all relevant times. Some or all of the Board members to be deposed may have been decisionmakers or know who the decisionmakers were. Thus, the Board's argument fails for this reason also.

Elsewhere in its opposition, the Board generally argues "[t]o the extent Plaintiff is attempting to base her hostile work environment claim on alleged conduct by Miles, any such claim is prescribed" and thus, discovery of conduct related to Miles is irrelevant.[65] The Court declines the Board's invitation to rule on the merits of the prescription issue as a predicate to ruling on a discovery matter. Moreover, separate and apart from the prescription issue and the continuing violation doctrine, acts that "fall outside of the statute of limitations[, though not actionable,] . . . may be used as relevant background

---

[63] *Sharp v. City of Houston*, 164 F.3d 923, 929-30 (5th Cir. 1999).

[64] *See generally La. Pacific Corp. v. Money Mkt. 1 Inst'l Inv. Dealer*, 285 F.R.D. 481, 486-89 (N.D. Calif. 9/10/2012) (explaining that "[t]he testimony of an individual . . . is distinct from the testimony of an entity"); *see also Golden v. Stein*, 2020 WL 13553710, *4 (S.D. Iowa 4/14/2020).

[65] R. Doc. 334 at p. 6.

evidence in support of a timely claim."[66]

Moving to Stanley Jacobs' opposition, he raises several specific concerns: (1) "Jacobs has no knowledge of the circumstances of Lewis' employment with LSU" because Lewis "was not a member of the [Board] when Lewis was terminated in 2022;"[67] and (2) Jacobs was not Lewis' employer.[68] First, that Jacobs was not a member of the Board when Lewis was terminated in 2022 does not ipso facto mean Jacobs has no knowledge of the alleged hostile work environment and retaliation perpetrated by Leslie Miles and others beginning in 2013. To the contrary, Plaintiff has provided evidence suggesting Jacobs is knowledgeable about many of the accusations that strike at the core of Plaintiff's lawsuit.[69] Thus, the Court finds Jacobs' first argument unpersuasive.

Second, Jacobs offers no legal support for his contention that because he himself was not Plaintiff's employer he cannot be compelled to sit for a deposition in connection with an employment lawsuit. For example, co-workers in an employment discrimination case like the one sub judice regularly are required to sit for depositions even though they personally are not the plaintiff's employer. There is even greater justification for requiring a member of the Board, which was Plaintiff's employer, to sit for a deposition.

---

[66] *See Cesario v. Jewel Food Stores, Inc.*, 2020 WL 996498, *17 (N.D. Ill. 3/2/2020) (emphasis added); *see also National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 116-17 (2002) (noting that an employee may use "prior acts as background evidence in support of a timely claim"). The same rationale holds true for untimely Title IX violations—though they are not actionable themselves, they may be used as relevant background evidence in support of a timely claim.

[67] Notably, Jacobs offers no declaration to accompany this representation. *See Ronald A. Katz Technology Licensing, L.P. v. Verizon Comm., Inc.*, 2002 WL 31356302 (E.D. Penn. 10/16/2002).

[68] The remainder of Jacobs' arguments are boilerplate objections or unsupported. *See Weatherspoon v. 739 Iberville, LLC*, 2022 WL 824618, *5-6 (E.D. La. 3/18/2022) (Roby, J.).

[69] *See* R. Doc. 324-2. In her Motion to Compel, Plaintiff argues Stanley Jacobs waived the attorney-client privilege of communications between Jacobs and Taylor Porter (the Board's counsel) concerning the Miles Investigation on account of a *Sports Illustrated* interview from 2021 in which Jacobs allegedly told the publication he was "strongly encouraged by attorneys and the then-school president to keep the matter secret." This argument fails. The privilege belongs to the Board and it is well-settled that Jacobs, a *former* member of the Board even in 2021, cannot unilaterally and individually waive the privilege that belongs to the Board. *See, e.g.*, *In re PWK Timberland, LLC*, 549 B.R. 366 (W.D. La. 105) ("Federal case law clearly holds that a corporation's attorney-client privilege belongs to the corporation, not the corporation's officers and directors and shareholders."); *Breuder v. Bd. Trustees*, 2021 6091731, *5-6 (N.D. Ill. 12/23/2021).

Accordingly, the Court finds this second argument meritless. For these reasons, Plaintiff is entitled to depose Jacobs to ask about his knowledge of the alleged hostile work environment in the LSU Athletics Department created by Leslie Miles and others and the identities of the relevant decisionmakers with respect to Plaintiff.

Turning to the third topic identified by Plaintiff, the Court finds evidence of steps the Board allegedly took to conceal Leslie Miles' alleged sexual harassment and Title IX violations from 2013 to 2016 (topic 3) is discoverable because this information may lead to admissible evidence bearing on Plaintiff's Title VII and Title IX claims.[70] "'When a plaintiff must prove intentional discrimination, a district court can abuse its discretion by limiting a plaintiff's ability to show the atmosphere in which the plaintiff operated.'"[71] "Evidence of other wrongs or acts may be admissible to prove, for example, defendant's motive, intent, plan, knowledge or absence of mistake in an employment discrimination case."[72]

As explained by Plaintiff's briefing and statements made by counsel during the March 28, 2023 status conference, Plaintiff's argument is that a jury will be more willing to believe she was retaliated against and subjected to a hostile work environment on account of her reports of student complaints of sexual harassment and Title IX violations by Leslie Miles if she is able to show the atmosphere in which she worked—that is, an atmosphere in which efforts allegedly were made to conceal reports of sexual harassment and Title IX violations perpetrated by Leslie Miles. The Court agrees with Plaintiff's argument. The Fifth Circuit has recognized "an atmosphere of condoned sexual

---

[70] In so doing, the Court rejects the Board's argument that this testimony fails the relevancy standard employed at the discovery stage. R. Doc. 334 at pp. 4-6, 10.

[71] *Thompson v. UOP, LLC*, 2021 WL 1669595, *3 (M.D. La. 4/28/2021) (quoting *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 358 (5th Cir. 1995)).

[72] *Marchese v. Secretary, Dep't Interior,* 2004 WL 2297465 *2 (E.D. La. 10/12/2004). And again, the relevance standard is even broader in the discovery context than it is for admissibility purposes at trial, the context in which *Marchese* was decided.

harassment in a workplace increases the likelihood of retaliation for complaints in individual cases."[73] The Court will not deprive Plaintiff of the opportunity to discover the nature of the underlying incidents and the alleged subsequent efforts at concealment.[74] For these reasons, Plaintiff will be allowed to depose Jacobs about the nature of the underlying incidents and the steps the Board allegedly took to conceal Leslie Miles' conduct of sexual harassment and Title IX violations from 2013 to 2016.[75]

Consistent with Part I.F of this Order and Reasons, though Plaintiff is entitled to depose Jacobs about the topics she has identified, to the extent any questions invade the attorney-client relationship between the Board and Taylor Porter, Plaintiff's counsel must limit his examination to questions bearing a reasonable relationship between the information sought and the Board's concealment of the Memo to File, Student Complaint Memo, Attachments, and Directive Letter and attachments.[76] Moreover, Jacobs may assert privilege to the extent Plaintiff seeks discovery of confidential communications between Jacobs and his counsel, Jimmy Faircloth, Jr., Barbara Melton, and M. Katherine Price.

### B. A deposition of Leslie Miles is compelled.

Plaintiff requests she be allowed to depose Leslie Miles about two topics: (1) whether Miles subjected Plaintiff to a hostile work environment and retaliation from 2012 and 2016 and (2) concealment of his alleged sexual harassment and Title IX violations

---

[73] *Kelly v. Boeing Petroleum Servs., Inc.* 61 F.3d 350, 359 (quoting *Hawkins v. Hennepin Technical Center*, 900 F.2d 153, 156 (8th Cir.), *cert. denied*, 498 U.S. 854 (1990)) (internal alteration omitted).

[74] *Miller v. Sam Houston State Univ.*, 986 F.3d 880, 892 (5th Cir. 2021) (highlighting the dangers of imposing discovery restrictions that "suffocate[]any chance for [the plaintiff] to present her claims").

[75] "Plaintiff asks the Court to address whether Plaintiff may question Jacobs about any conversation he had with Taylor Porter Lawyers." R. Doc. 324 at p. 7 n.30. The Court believes Plaintiff's question is more appropriately phrased, "Does the crime-fraud exception overcome all privileged communications between Jacobs and Taylor Porter lawyers?" The answer to that question is obviously no, as the crime-fraud exception only applies to communications reasonably related to the crime or fraud.

[76] As a reminder, the Protective Order at R. Doc. 204 applies to information about "the identity of 'Student 1' and 'Student 2.'" R. Doc. 204 at p. 2.

from 2013 to 2016 and in 2021. Obviously, the first topic bears on Plaintiff's Title VII and Title IX retaliation claims and Title VII hostile work environment claim, all three of which involve alleged conduct by Leslie Miles. With respect to the second topic, the Court has already found, supra, testimony about the steps the Board allegedly took to conceal Leslie Miles' alleged sexual harassment and Title IX violations from 2013 to 2016 bears on Plaintiff's claims. The Court's reasoning applies equally to a finding that Miles' own knowledge of alleged concealment efforts from 2013 to 2016 and in 2021, as well testimony about his involvement in that concealment, bears on Plaintiff's hostile work environment and retaliation claims. The Court rejects the Board's objection based on relevancy. Moreover, as previously explained, the Court declines the Board's invitation to rule on the merits of the prescription issue as a predicate to ruling on this discovery matter.[77]

Plaintiff is entitled to depose Miles about the topics she has identified. Nevertheless, Miles may assert privilege to the extent Plaintiff seeks discovery of confidential communications between Miles and his counsel, Peter Ginsberg and Christopher Zainey, Jr.

### C.  Depositions of Robert Barton and Vicki Crochet are compelled.

Plaintiff requests she be allowed to depose Taylor Porter lawyers Robert Barton and Vicki Crochet about two topics: (1) the Board's 2013 to 2021 concealment of documents stemming from the Miles Investigation; and (2) alleged efforts of the Board and the Board's employees to cover-up complaints of sexual harassment and Title IX violations during Plaintiff's tenure at LSU. The Court has found, supra, these topics bear

---

[77] It is worth mentioning that the Board does not object on the basis of privilege—this is likely because there exists no attorney-client relationship between Miles and the Taylor Porter lawyers.

on Plaintiff's Title IX and Title VII claims.[78] The Court finds Barton and Crochet likely have relevant testimony in light of the Court's March 24, 2023 ruling.[79]

In opposition, the Board cites to *Theriot v. Parish of Jefferson* for the proposition that "deposing an opposing party's attorney is highly disfavored."[80] *Theriot* presented a challenge to a redistricting plan in Jefferson Parish that a group of plaintiffs argued was racially motivated and constituted illegal racial gerrymandering.[81] During the course of that litigation, the magistrate judge quashed the depositions of the defendants' counsel, which plaintiffs sought under the premise that defense counsel were "the only persons with information about how or why redistricting . . . occurred."[82] The Fifth Circuit affirmed, reasoning that "federal courts have disfavored the practice of taking the deposition of a party's attorney; instead, the practice should be employed only in limited circumstances."[83] The Board ignores the context of the Fifth Circuit's statement, which was in reference to a larger discussion of concerns with allowing depositions of opposing counsel on matters relating to a pending case.[84] As federal district courts have recognized, such concerns "are less pronounced when . . . the subject matter of the deposition of opposing counsel is not his conduct in the pending case *but his percipient knowledge of the events surrounding a prior concluded litigation*."[85] Here, Crochet and Barton are

---

[78] Accordingly, the Court hereby rejects the Dismissed TP Defendants' arguments about relevance. R. Doc. 325-1 at pp. 24-25. The remainder of the arguments raised in R. Doc. 325-1 at pp. 24-25 are boilerplate objections, meaning they are not sufficient to prevent the discovery sought by Plaintiff.

[79] R. Doc. 316.

[80] R. Doc. 334 at p. 13 n.31.

[81] 185 F.3d 477, 491 (5th Cir. 1999).

[82] *Id.*

[83] *Id.*

[84] *Id.* (citing *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) (a case in which the Eighth Circuit explained deposing current opposing counsel is disfavored because it disrupts the adversarial system, adds to the burdens and costs of litigation, and could chill candid communications)). The Eighth Circuit has explained that its *Shelton* rule "was intended to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy." *See Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 729-30 (8th Cir. 2002).

[85] *ATS Products, Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 532 (N.D. Calif. 9/14/2015) (emphasis added).

former counsel, not current opposing counsel. Therefore, Barton and Crochet are simply percipient witnesses, and *Theriot* is distinguishable.

Consistent with Part I.F of this Order and Reasons, though Plaintiff is entitled to depose Barton and Crochet about the topics she has identified, to the extent any questions invade the attorney-client relationship between the Board and Taylor Porter, Plaintiff's counsel must limit his examination to questions bearing a reasonable relationship between the information sought and the Board's concealment of the Memo to File, Student Complaint Memo, Attachments, and Directive Letter and attachments. Moreover, Barton and Crochet may assert privilege to the extent Plaintiff seeks discovery of confidential communications between them and their own counsel, Joseph E. Cullens, Jr., Avery Pardee, Brandon Black, John Guenard, Pauline Hardin, and Renee' Crasto.

### D. Depositions of Mary Leach Werner, Valencia Sarpy Jones, James Williams, and Jimmie Woods are compelled.

Plaintiff requests she be allowed to depose current Board members Mary Leach Werner, Valencia Sarpy Jones, James Williams, and Jimmie Woods about five topics: (1) the Board's knowledge of the hostile work environment and retaliation Plaintiff alleges she suffered from 2012 to 2016 and in October 2020; (2) the Board's knowledge of the concealment of documents in 2013 and 2021 stemming from the Taylor Porter investigation of Leslie Miles; (3) the Board's knowledge in December 2020 of Wilson's past history or sexual harassment accusations against him; (4) the Board's knowledge of retaliation Plaintiff alleges she suffered because she reported Frank Wilson for sexual harassment; and (5) investigations by the Board of Frank Wilson after it became aware four women accused Frank Wilson of sexual harassment.[86]

---

[86] Again, because the depositions of these individuals are not Rule 30(b)(6) depositions, they can only testify about their own knowledge.

With respect to topics 1 and 2, the Court already has found knowledge of the hostile work environment and retaliation Plaintiff alleges she suffered bears on her Title IX and Title VII claims (topic 1). The Court also has found knowledge of concealment of documents in 2013 and 2021 stemming from the Taylor Porter investigation bears on Plaintiff's Title IX and Title VII claims (topic 2).

With respect to the third and fourth topics, the Court finds the Board's knowledge in December 2020 of Wilson's past history of being accused of sexual harassment (topic 3) and the Board's knowledge of retaliation that Plaintiff alleges she suffered on account of her reports of sexual harassment by Frank Wilson (topic 4) bears on Plaintiff's hostile work environment and retaliation claims against the Board. In terms of her claims, Plaintiff alleges "[s]ometime in 2013 Running Back Coach Frank Wilson came into Plaintiff's office, closed the door and pulled out his erect penis and asked her to touch it," [87] which Plaintiff alleges she reported. [88] Plaintiff alleges Frank Wilson sexually harassed her and others from 2012 to 2016,[89] conduct she reported.[90] Plaintiff alleges "[i]n December 2021[,] the [Board] approved the hiring of Frank Wilson as Associate Head Coach."[91] On January 5, 2022, Plaintiff's employment was terminated.[92] She alleges her termination was in violation of Title VII.[93] As the Board notes, Plaintiff alleges her termination was related to Wilson's hiring because of her prior report of sexual harassment allegations against Wilson.[94]

---

[87] R. Doc. 219 at p. 18, ¶ 88.
[88] *Id.*
[89] *Id.* at p. 18, ¶ 90.
[90] *Id.*
[91] *Id.* at p. 18, ¶ 91.
[92] *Id.*
[93] *Id.*
[94] R. Doc. 334 at p. 11.

The Court finds topics 3 and 4 are relevant to Plaintiff's claims for retaliation and hostile work environment, as stated in her second amended complaint,[95] for two reasons. First, to prevail on her hostile work environment claim at trial Plaintiff must prove, inter alia, her employer knew or should have known of the harassment in question and failed to take prompt remedial action.[96] The Board's knowledge in December 2020 of the history of sexual harassment allegations against Wilson (topic 3) directly bears on the knowledge element that is a hallmark of a hostile work environment claim.[97] Second, to prevail on her retaliation claims, Plaintiff must prove at trial, inter alia, the Board took an adverse employment action against her. As a result, topic 4, the Board's knowledge of alleged acts of retaliation, *i.e.*, adverse employment actions, bears on Plaintiff's retaliation claims.[98]

In opposition, the Board argues Plaintiff is not entitled to the discovery sought because "Plaintiff does not have a Title IX claim for employment discrimination, so Plaintiff cannot maintain a Title IX claim against Wilson" and because "Plaintiff did not allege a Title VII claim for harassment by Frank Wilson, . . . Plaintiff did not file an EEOC charge related to her Wilson allegations."[99]  First, Plaintiff is not bringing, or attempting to maintain, a Title IX claim against Wilson. Plaintiff brings a Title IX retaliation claim and Title VII retaliation and hostile work environment claims against the Board. Likewise, Plaintiff does not allege a Title VII claim for harassment by Frank Wilson; rather, she

---

[95] In Count V of Plaintiff's second amended complaint, titled "Hostile Work Environment," Plaintiff "adopts and incorporated by reference the previously plead factual allegations in the preceding paragraphs as if fully pleaded herein." *See* R. Doc. 219 at p. 67, ¶ 308. Likewise, in Count VI of Plaintiff's second amended complaint, titled Retaliation, "adopts and incorporated by reference the previously plead factual allegations in the preceding paragraphs as if fully pleaded herein." This captures Plaintiff's allegations about Frank Wilson.

[96] *Johnson v. PRIDE Industries, Inc.*, 7 F.4th 392, 399-400 (5th Cir. 2021).

[97] And again, individual Board members knowledge may, under certain circumstances, be imputed to the Board. *See Sharp v. City of Houston*, 164 F.3d 923, 929-30 (5th Cir. 1999).

[98] *Feist v. La. Dep't of Justice*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007)).

[99] R. Doc. 334 at p.11, p. 11 n.26.

brings a Title VII hostile work environment claim against the Board.[100] To support that claim, Plaintiff apparently intends to use evidence of alleged harassment by Frank Wilson. To do so, she needs to be able to discover such evidence, to the extent it exists. Because the Board's two arguments are based on lack of relevance of the testimony to claims Plaintiff failed to bring, the Court finds the arguments are without merit. Plaintiff is entitled to discover the Board's knowledge of reports of harassment allegedly perpetrated by Frank Wilson and the Board's knowledge of retaliation Plaintiff may have suffered on account of her reporting Frank Wilson for sexual harassment (topics 3 and 4).

With respect to the fifth topic, the Court finds the investigations undertaken by the Board after it became aware four women accused Frank Wilson of sexual harassment bears on Plaintiff's hostile work environment claim. The fifth element of a Title VII hostile work environment claim is that the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[101] Testimony from Board members about remedial actions, including investigations of Frank Wilson, bears on the inquiry of whether the Board "failed to take prompt remedial action."[102]

Accordingly, all five topics identified by Plaintiff bear on her claims. Beyond this, the Board argues "[s]eeking this testimony from non-decisionmakers is overly burdensome, harassing, irrelevant, and not proportional to the needs of the case,"[103] a

---

[100] The Court finds the allegations in Plaintiff's complaint with respect to Frank Wilson are reasonably related to the allegations in Plaintiff's Charge of Discrimination that (1) she was subjected to a "continuing pattern of hostile work environment" and (2) she "engaged in protected activity by reporting sexist and racist behavior among athletic officials and, from 2009 to present, [she was] subjected to retaliation and a hostile work environment." R. Doc. 219-8 at pp. 2, 3; *see also Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002) ("jurisdiction exists over Title VII claims only if they have been included in an EEOC charge 'or are based on conduct subsequent to the EEOC charge which is "reasonably related" to that alleged in the EEOC charge.").

[101] *Johnson v. PRIDE Industries, Inc.*, 7 F.4th 392, 399-400 (5th Cir. 2021).

[102] *See, e.g.*, *Goode v. Billington*, 932 F.Supp.2d 75, 91 (D.D.C. 3/25/2021) (in the context of a Title VII hostile work environment claim, finding it relevant to consider whether an employer took remedial action "even after the Plaintiff's termination").

[103] R. Doc. 334 at p. 11.

burden of proof the Board carries.[104] However, the Board assumes, while citing no evidence, that these Board members are non-decisionmakers, when, in the Court's view, the identity of the relevant decisionmakers has not been established at this stage of the litigation.[105] Moreover, to the extent the Board argues testimony from Werner, Jones, Williams, and Woods is otherwise "overly burdensome, harassing, irrelevant, and not proportional to the needs of the case," the Board fails to specify how the discovery request is overly burdensome and fails to specify how the Board will be harmed if it is forced to respond to the request, meaning the objections are boilerplate. "Courts throughout the country have long interpreted the rules to prohibit general, boilerplate objections."[106]

Consistent with Part I.F of this Order and Reasons, though Plaintiff is entitled to depose Werner, Jones, Williams, and Woods about the topics she has identified, to the extent any questions invade the attorney-client relationship between the Board and Taylor Porter, Plaintiff's counsel must limit his examination to questions bearing a reasonable relationship between the information sought and the Board's concealment of the Memo to File, Student Complaint Memo, Attachments, and Directive Letter and attachments. Moreover, Werner, Jones, Williams, and Woods may assert privilege to the extent Plaintiff seeks discovery of confidential communications between them and their own counsel.

### E. Plaintiff is granted leave to take over ten depositions.

In its opposition, the Board indicates that, "[b]ecause Plaintiff is seeking more than ten depositions, she must seek and obtain leave of Court" for any deposition in excess of ten.[107] The Board is correct. Implicit in Plaintiff's Motion to Compel is a request for, inter

---

[104] *Summers v. Louisiana*, 2021 WL 4392309, *3 (M.D. La. 9/24/2021) (internal quotations and citations omitted).
[105] After all, Plaintiff seeks deposition testimony from Jacobs on this point.
[106] *Weatherspoon v. 739 Iberville, LLC*, 2022 WL 824618, *5 (E.D. La. 3/18/2022).
[107] R. Doc. 334 at p. 3 n.6.

alia, leave of Court to exceed the presumptive limit on the number of depositions permitted under the Federal Rules of Civil Procedure. The Court will now consider that request.

While the scope of discovery should "be accorded broad and liberal treatment," discovery "has ultimate and necessary boundaries."[108] Rule 30(a)(2)(A)(i) establishes a default limitation on the number of depositions, providing in relevant part: "A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2) . . . if the parties have not stipulated to the deposition and . . . the deposition would result in more than 10 depositions being taken [by any party]."[109] Rule 26(b)(2)(A) provides the Court with discretion to alter these limits.[110]

In light of the broad relevance standard in discovery,[111] the Court has determined the burden on the parties to participate in these additional depositions, and considering the amount in controversy, the parties' resources, the importance of the issues at stake and the discovery, is not disproportionate to the needs of this case. Despite the Board's, Jacobs', and the Dismissed TP Defendants' contentions, this is not a simple employment discrimination matter. Indeed, a review of the factual allegations underlying Plaintiff's second amended complaint, the multi-year scope of the allegations in question, and the lengthy docket sheet, reveals very little about this case is simple.[112] Moreover, no evidence has been presented to show *undue* burden on account of the additional depositions.[113]

---

[108] *Michael G. Stag, L.L.C. v. Stuart H. Smith, L.L.C.*, 2021 WL 3809077, *2-3 (E.D. La. 8/26/2021) (Currault, M.J.) (internal quotations omitted).
[109] FED. R. CIV. PRO. 30(a)(2)(A)(i).
[110] *Michael G. Stag, L.L.C.*, 2021 WL 3809077 at *2.
[111] *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2/4/2005) (citation omitted) ("Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.").
[112] *See Breuder v. Bd. Trustees*, 2021 WL 1165089 (N.D. Ill. 3/25/2021).
[113] This Order and Reasons does *not* grant any party unlimited leave to take more depositions over the presumptive limit. Should any party seek to take additional depositions and the parties are unable to stipulate to the same, that party must file a properly supported motion for leave setting forth the information that must be considered under Rule 26.

### F. The Court will attempt to employ a collaborative approach to resolve the potential privilege issues.

At the outset, Plaintiff generally is *not* permitted to discover privileged communications or attorney work product, unless the Court's crime-fraud exception rulings as applied overcome those protections.[114] The Court's crime-fraud exception rulings extend only to the Board's privileged communications and attorney work product that are "reasonably related" to the Board's concealment of the Memo to File, Student Complaint Memo, Attachments, and Directive Letter and attachments.[115] The Court's rulings do not apply to "all prior communications between the lawyer and the client" or all attorney work product—"'the breadth of the crime-fraud exception's scope [] stands for a sense of limitation or condition.'"[116]

There may be disputes during the depositions of these eight individuals about privilege. In the context of the crime-fraud exception, the Fifth Circuit has provided little guidance to district courts tasked with determining which attorney-client communications are reasonably related to the crime or fraud. Obviously, it is difficult to make such a determination before a deposition without knowing what the questions or answers will be. During the May 18, 2023 status conference, the Court will discuss with the parties possible options to facilitate the depositions, implement this Court's crime-fraud exception rulings, and prevent disclosure of communications that are protected by the attorney-client privilege. The parties should be prepared to discuss this issue. Counsel for deponents are invited to participate in the status conference and in this discussion.

---

[114] *See* R. Docs. 316, 335.
[115] R. Doc. 316 at pp. 26-29; *see also* R. Doc. 335 at p. 11.
[116] R. Doc. 316 at p. 27 (quoting *In re Grand Jury Subpoena*, 419 F.3d 329, 344 (5th Cir. 2005)).

## II.     The Court finds the document discovery sought by Plaintiff is appropriate.

### A. The Board is compelled to produce the 2021 Frank Wilson background report.

Plaintiff argues the Board should be compelled to produce documents responsive to the following requests, which relate to alleged sexual harassment by Frank Wilson:

- <u>Frank Wilson Request No. 1</u>: Request for documents, emails, or text messages that were generated as a result of the Board's investigation of Frank Wilson after learning Sharon Lewis "and two other former LSU employees" accused Frank Wilson of sexual harassment and sexual assault in 2022.[117]

- <u>Frank Wilson Request No. 2</u>: Request for documents referencing any investigation of Frank Wilson while he was employed at LSU.[118]

In opposition, the Board asserts, and it is uncontroverted, that the Board produced all "non-privileged, relevant emails or ESI which were responsive to the requests" after the parties "agreed on relevant search terms."[119] The Board, nevertheless, concedes Scott Woodward testified in his deposition that in 2021 a background report was ordered on Frank Wilson before he was re-hired,[120] but the background report has not been produced to Plaintiff.[121] While the Board argues in a footnote that it is "not aware" of any Frank Wilson background report,[122] it does not detail any efforts it presumably made to search for the background report referenced by Scott Woodward in his deposition before making that representation in its briefing. The Court finds a 2021 background report on Frank

---

[117] R. Doc. 324 at p. 12
[118] *Id.*
[119] R. Doc. 334 at p. 12.
[120] *Id.*; *see also* R. Doc. 324-4 at pp. 80-81 (Woodward's deposition testimony).
[121] The Board acknowledges that Plaintiff can ask Rempe about the Frank Wilson background report, yet there is no explanation offered about why Plaintiff can depose Rempe about this topic but not discover the background report. R. Doc. 334 at p. 13. If the background report exists and the Board's concern is confidentiality, it may produce it subject to the protective order.
[122] *Id.* at p. 13 n.29.

Wilson would bear on Plaintiff's hostile work environment claim and retaliation claims because it may reveal the Board's knowledge of sexual harassment allegations made against Frank Wilson. The Board will be ordered to produce either the 2021 Frank Wilson background report to Plaintiff by **May 25, 2023**, or, if the Board maintains that the background report does not exist after a diligent search, detail and report to Plaintiff the efforts it made to locate the background report by the same date. From the briefing before the Court, it appears this order resolves the discovery dispute with respect to Frank Wilson.

### B. The Board is compelled to produce documents related to concealment as stated herein.

Plaintiff argues the Board should be compelled to produce documents responsive to the following requests, which relate to alleged efforts by the Board to conceal sexual harassment allegations made against Leslie Miles:

- <u>Concealment Request No. 1</u>: Request for emails between LSU General Counsel offices, Taylor Porter, and the LSU BOS and administrators discussing opposing the release of the Student Complaint Memo and Directive Letter to Kenny Jacob in 2021.[123]

- <u>Concealment Request No. 2</u>: Request for unredacted Taylor Porter billing records in the matter of *Jacoby v. Galligan*, case no. 703746

- <u>Concealment Request No. 3</u>: Request for emails and text messages between Peter Ginsberg, Edward Hardin, Vicki Crochet, and Robert Barton discussing the release of the Student Complaint Memo and Miles Directive Letter after *USA Today* issued a public records request on December 14, 2020.

- <u>Concealment Request No. 4</u>: Request for emails and text messages between Miles' attorneys and Taylor Porter attorneys discussing *USA Today* writ of mandamus in *Jacoby v. Galligan*, case no. 703746

---

[123] "Plaintiff asks the Court to address whether . . . LSU must produce any emails between Jacobs and Taylor Porter Lawyers discussing the Miles Investigation." R. Doc. 324 at p. 7 n.30. The Court believes Plaintiff's question is more appropriately phrased, "Does the crime-fraud exception overcome all privileged communications between Jacobs and Taylor Porter lawyers?" The answer to that question is obviously no, as the crime-fraud exception only applies to communications reasonably related to the crime or fraud.

- <u>Concealment Request No. 5</u>: Request for emails and text messages between Vicki Crochet and Robert Barton discussing "settlement agreement with LSU BOS and administrators in 2013 and 2021"

At the outset, the Court already has found, supra, evidence of the steps the Board allegedly took to conceal Miles' conduct of sexual harassment and Title IX violations from 2013 to 2016, and in 2021, bears a relationship to Plaintiff's Title VII and Title IX claims for purposes of discovery. For the reasons already expressed, and because these five requests for production seek discovery of the same alleged concealment efforts, the documents bear a relationship to Plaintiff's claims.

To facilitate the production of emails and text messages included in the production, the parties must meet and confer by no later than **May 23, 2023**, to identify particularized search terms to be used to locate responsive documents. All production will be completed as stated herein by no later than **June 6, 2023**. Production may be made subject to the protective order, if justified.

Documents responsive to Concealment Request Nos. 1, 2, and 5, to be produced by June 6, 2023, likely will yield what would be privileged attorney-client communications and/or attorney work product were it not for the Court's Orders and Reasons on the crime-fraud exception. When the Board makes it production to Plaintiff, if any documents are withheld, the Board must provide a privilege/attorney work product log. At the time of the Board's production to Plaintiff, any document listed on its privilege/attorney work product log must be submitted for this Court's in-camera review. At that point, the Court will determine (1) whether any privilege and/or attorney work product protections apply and (2) whether the Court's crime-fraud exception rulings overcome those protections.

In the Court's view, documents responsive to Concealment Request Nos. 3 and 4, to be produced by June 6, 2023, are unlikely to yield privileged attorney-client communications and/or attorney work product. Nevertheless, if the Board contends

otherwise, when the Board makes its production to Plaintiff, it must provide a privilege/attorney work product log. At the time of the Board's production to Plaintiff, any document listed on its privilege/attorney work product log must be submitted for this Court's in-camera review. At that point, the Court will determine (1) whether any privilege and/or attorney work product protections apply and (2) whether the Court's crime-fraud exception rulings overcome those protections.

## **CONCLUSION**

**IT IS ORDERED** that Plaintiff's Motion to Compel[124] is **GRANTED** as stated herein. Plaintiff is granted leave of Court to take the additional depositions requested in her Motion to Compel.[125] Stanley Jacobs, Leslie Miles, Robert Barton, Vicki Crochet, Mary Leach Werner, Valencia Sarpy Jones, James Williams, and Jimmie Woods shall appear for depositions on a date that is mutually agreeable to the parties and deponents. The scopes of the depositions are limited to the topics identified in this Order and Reasons.

**IT IS FURTHER ORDERED** that the Board produce the 2021 Frank Wilson background report to Plaintiff by **May 25, 2023**, or, if the Board maintains that the background report does not exist after a diligent search, detail and report to Plaintiff the efforts it made to locate the background report by the same date.

**IT IS FURTHER ORDERED** that the parties meet and confer by no later than **May 23, 2023**, to identify particularized search terms to be used to locate emails and text messages responsive to Concealment Request Nos. 1, 3-5. The Board's production to Plaintiff of documents responsive to Concealment Request Nos. 1-5 shall be completed on or before **June 6, 2023**. Any documents withheld on the basis of attorney-client privilege or attorney work product doctrine must be identified on a log that is produced to Plaintiff

---

[124] R. Doc. 324.
[125] FED. R. CIV. PRO. 30(a)(2)(A).

at the time of production. Those withheld documents, along with the log, must be submitted for this Court's in-camera review by **June 6, 2023**.

**IT IS FURTHER ORDERED** that the Board's request for a protective order is **DENIED**.[126]

**IT IS FURTHER ORDERED** that Stanley Jacobs' request for a protective order is **DENIED**.[127]

**IT IS FURTHER ORDERED** that Stanley Jacobs' request for an award of reasonable expenses and attorney's fees is **DENIED**.[128]

**IT IS FURTHER ORDERED** that the Dismissed TP Defendants' request for a protective order is **DENIED**.[129]

**New Orleans, Louisiana, this 17th day of May, 2023.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[126] R. Doc. 334.
[127] R. Doc. 333.
[128] *Id.* at p. 2.
[129] R. Doc. 325.