UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
BATON ROUGE DIVISION

SHARON LEWIS                                                Civil Action No: 21-198-BAJ-RLB

Plaintiff

V.                                                          JUDGE SUSIE MORGAN

BOARD OF SUPERVISORS OF LOUISIANA                           MAGISTRATE JUDGE RICHARD
STATE UNIVERSITY ET. AL.                                    L. BOURGEOIS

Defendant

PLAINTIFF'S MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION TO COMPEL DEPOSITION TESTIMONY
OF WINSTON DeCUIR AND SANCTIONS
AND
REQUEST FOR EXPEDITED CONSIDERATION

MAY IT PLEASE THE COURT:

**I. Background**

Winston DeCuir Jr, Vice President of Legal Affairs and General Counsel[1] testified before the Louisiana State Senate Select Committee on Women and Children (Senate) on March 10, 2021,[2] March 26, 2021,[3] April 8, 2021,[4] and November 15, 2021[5] about matters relevant to Plaintiff's Title VII and Title IX claims. Former Title IX Coordinator Jennie Stewart testified in her deposition that DeCuir ordered that all Title IX complaints in athletics be directed to Miriam Seagar, in violation of federal and state law.[6] Stewart further testified the General Counsel's office told her it had investigated Plaintiff's complaints of retaliation.[7] Additionally, Stewart in

---

[1] https://www.lsu.edu/general-counsel/attorneys/winston-decuir.php
[2] https://senate.la.gov/s_video/videoarchive.asp?v=senate/2021/03/031021SCWC_0: Starting at 3:35:31.
[3] https://senate.la.gov/s_video/videoarchive.asp?v=senate/2021/03/032621SCWC_0: Starting at 1:05:38.
[4] https://senate.la.gov/s_video/videoarchive.asp?v=senate/2021/04/040821SCWC_0: Starting at 0:02:38.
[5] https://senate.la.gov/s_video/videoarchive.asp?v=senate/2021/11/111521WC: Starting at 1:120:29.
[6] *See* R. Doc. 324-3 p.5 L 2-9
[7] Id. p.9

1

a 2020 text[8] with Title IX Investigator Jeffrey Scott accused DeCuir of sexism. Thus, DeCuir's testimony is relevant to Plaintiff's Title VII and Title IX claims.

Before filing this motion to compel Plaintiff attempted to work with the Board's Counsel and DeCuir to set a deposition date. However, the Board's Counsel and DeCuir have willfully and knowingly acted in bad faith, ignored the Court's discovery order and refused to follow the Federal Rules of Discovery. Plaintiff has concluded, given the Board's Counsel and Board refusal to provide deposition dates for Mary Leach Werner, Valencia Sarpy Jones and Jimmie Woods, DeCuir has no intention to set for a deposition either.[9] The deadline for all discovery to be completed is October 4, 2023. Consequently, Plaintiff issued a Notice of Deposition[10] to DeCuir to be deposed on September 21, 2023 and filed this motion to compel. Therefore, for the following reasons Plaintiff respectfully request the Court grant her motion to compel Winston DeCuir to sit for deposition on September 21, 2023:

**II. Law and Argument**

    A. Judicial Notice

The Court may take judicial notice of the recorded video Senate hearings on Senate's website. *Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 518-19 (5th Cir. 2015) (taking judicial notice of "public records contained on the Mississippi Secretary of State's and the Virginia State Corporation Commission's websites"); *Huskey v. Jones*, 45 F.4th 827, 831 n.3 (5th Cir. 2022) (citing *Kitty Hawk Aircargo, Inc. v. Chao* , 418 F.3d 453, 457(5th Cir. 2005) (taking judicial notice of approval by the National Mediation Board published on the

---

[8] *See* Exhibit 1: The document was produced in discovery in *Abbey Owens v. LSU et al* No.21-242-WBV-SDJ
[9] The Board's Counsel assured Plaintiff's counsel on a August 15, 2023 meet and confer call that Werner and Sarpy Jones depositions would be held before September 15, 2023. The Board's Counsel continues to refuse to provide deposition dates for both.
[10] *See* Exhibit 2 DeCuir Notice of Deposition.

agency's website); and *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam) (taking judicial notice of a Texas agency's website). Therefore, the Court may take judicial notice of the video recorded Senate hearings on the state agency's website.

B. <u>DeCuir testimony before the Senate</u>

Plaintiff anticipates the Board will assert DeCuir's testimony is subject to the attorney-client privilege. However, a client waives the attorney-client privilege by failing to assert it when confidential information is sought. *Nguyen v. Excel Corp.*, 197 F.3d 200, 206-207 (5th Cir. 1999). When a lawyer testifies in the presence of his client and the client does not object, the client waives the attorney client privilege.[11] *Drimmer v. Appleton*, 628 F. Supp. 1249, 1251 (S.D.N.Y. 1986). For the following reasons the Board consented to DeCuir's testimony before the Senate:

On March 10, 2021 DeCuir and LSU interim President Thomas Galligan appeared before the Senate. In the presence of President Galligan, DeCuir testified to among other things: the discipline imposed on Miriam Segar and Verge Ausberry[12]; Title IX complaints not reaching the Title IX office;[13] and why Title IX complaints in Athletics went through Segar and not the Title IX Coordinator;[14]

On March 26, 2021 DeCuir, Robert Dampf and Mary Leach Werner appeared before the Senate.[15] In the presence of Dampf and Werner, DeCuir testified to among

---

[11] Not all of DeCuir's testimony was privileged.
[12] March 10, 2021 testimony at 4:07:47- 4:09:14: The Husch Blackwell documented Plaintiff's allegation that Segar and Ausberry retaliated against her for reporting Title IX violations and subjected Plaintiff to a hostile work environment. Plaintiff has the right to depose DeCuir on who he talked, what documents he reviewed and whether LSU considered Plaintiff's allegations against Segar and Ausberry in deciding what discipline was appropriate.
[13] Id. 4:28:54 – 4:30: Plaintiff alleges in her complaint that the Board was overseeing a catch and kill scheme of Title IX complaints in Athletics.
[14] March 26, 2021: 4:38:10 – 4:39:28. *Id*.
[15] Dampf was Chairman of the Board and Werner was Chair of the Athletic Committee

3

other things: the Les Miles investigation[16]; and *USA Today* request for the Student Complaint Memo and Directive Letter.[17] At the hearing Dampf and Werner did not object to DeCuir's testimony.

On April 8, 2021 DeCuir appeared before the Senate. DeCuir testified to among things the Board's reaction to Plaintiff holding a press conference and filing her complaint.[18] DeCuir made it clear that he was speaking on behalf of the administration.[19] Furthermore, DeCuir, on behalf of the Board extended an invitation to the Senate to come to LSU's Baton Rouge campus.[20]

On November 15, 2021 DeCuir appeared with LSU President William F. Tate before the Senate. The Senate asked DeCuir to update it on litigation. In the presence of Tate, DeCuir testified that Plaintiff was taking advantage of LSU's by filing her lawsuit.[21] Tate did not object to DeCuir testifying.

These facts show the Board on March 10, 2023, March 26, 2023, April 8, 2023 and November 15, 2023 "voluntarily permitted" DeCuir to testify about privileged communications before the Senate. *Drimmer v. Appleton* at 1252. Thus, the Board waived the attorney-client privilege by implied consent." Id.

The facts here are analogous to those in *Drimmer v. Appleton.* In *Drimmer* the Defendant's lawyer testified in open Court, with his client present , concerning the parties settlement agreement. Much of the lawyers testimony about the settlement

---

[16] Id. 1:32:47- 1:34:41, 1:52:36 – 1:53:11
[17] Id. 1:55 – 2:04:40. Plaintiff has the right to depose DeCuir on who did he talk to, what documents he reviewed and who made the decision to fight the release of the Student Complaint Memo and Directive Letter.
[18] April 8, 2021 testimony: 0:02:55-0:10:18
[19] Id.
[20] Id.
[21] November 15, 2021: 1:3215 – 1:34:10

4

agreement concerned matters within the scope of the attorney-client privilege" *Id. at* 1250. The Plaintiff's then sought to depose the Defendant's lawyer about his testimony in open Court. The question before the Court was whether the Defendants presence in open court during their lawyer's testimony and failure to object to that testimony, operated as a waiver of the attorney-client privilege? *Id. at* 1251. The Court found that neither the lawyer or his client objected to questions asked to the lawyer and the attorney-client privilege was waived. *Id*. at 1252.

Here, unlike in *Drimmer,* DeCuir voluntarily gave testimony before the Senate. *Id*. at 1252.[22] At no point did Galligan, Dampf , Werner and Tate object. Moreover, the LSU officials were encouraging DeCuir to answer questions, even handing him the microphone. Thus, the Board waived the attorney-client privilege as to any of DeCuir's testimony before the Senate.

<u>Werner, Dampf, Galligan and Tate testimony before the Senate</u>

Plaintiff may depose DeCuir concerning testimony that Werner, Dampf, Galligan and Tate gave before the Senate. Neither, DeCuir, Werner, Dampf, Galligan or Tate asserted the attorney-client privilege over their testimonies. Thus, the Board waived the attorney-client privilege. *Id.*

<u>Stanley Jacobs Letter to the Senate</u>

The Senate read[23] Stanley Jacobs letter[24] in the presence of DeCuir, Dampf and Werner. Jacob's letter included legal advice that Robert Barton and Vicki Crochet gave

---

[22] In *Drimmer* the lawyer was called to testify by opposing counsel.
[23] March 26, 2021: 1:43:41 – 1:44:40 and 1:47:37 – 1:49:21
[24] R. Doc. 381-10

Jacobs' during the Miles' investigation in 2013.[25] Neither, DeCuir, Dampf or Werner objected to Jacobs' disclosure of privileged communications. *Nguyen v. Excel Corp.*, at 206-207. Thus, the privileged communications between Jacobs and Taylor Porter were waived by consent. Therefore, Plaintiff may depose DeCuir as to what he knows about Taylor Porter directing Jacobs to conceal the Miles investigation.

These facts show that the Board knowingly and willfully disclosed privilege communications to the Senate to deflect from its tortious conduct against Plaintiff and others.[26] When a party entitled to claim the attorney-client privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege."'" *United States v. Bolton*, 908 F.3d 75, 101 (5th Cir. 2018). Therefore, the Board waived the attorney-client privilege to all of DeCuir's testimony before the Senate.

C. Jennie Stewart Deposition testimony.

Former LSU Title IX Coordinator Jennie Stewart testified in her deposition that DeCuir ordered Stewart, over her objections, that all Title IX complaints in athletics were to be directed to Miriam Segar.[27] At all material times DeCuir was acting at the behest of Board members as LSU's General Counsel. Plaintiff seeks to depose DeCuir to show which Board members knew about and/or directed DeCuir to issue the illegal directive to Stewart. The Board's attorneys did not object to Stewart's testimony and the attorney-client privilege was waived. *Nguyen v. Excel Corp.*, at 206-207.

---

[25] R.Doc. 384-1
[26] *See* R. Doc.384-1 pp. 5-6
[27] *See* R. Doc. 324-3 p.5 L 2-9

Crime-Fraud Exception

Plaintiff anticipates that Board members will argue that DeCuir conversation with Stewart is privileged communications. However, Plaintiff shows the Board utilized DeCuir to violate of *Louisiana Revised Statute 14:134 (*malfeasance in office) and the crime-fraud exception applies. In order to make a *prima facie* case Board members violated *La. R.S. 14:134*, Plaintiff has to show Board members are public officers and they intentionally refused or failed to perform a duty lawfully required of them, or they intentionally performed such a duty in an unlawful manner. *State v. Groce*, 786 So. 2d 200, 201-02 (La. Ct. App. 2001) (citing *State v. Davis*, 93-599 (La. 4/11/94); 634 So.2d 1168.)) For a public officer or employee to be charged with malfeasance in office, there must be a statute or provision of law which imposes an affirmative duty upon him." *State v. Petitto*, 59 So. 3d 1245, 1251 (La. 2011).

Board members are public officers. "Public officer' means any state, district, parish or municipal office, elective or appointive, or any position as member on a board or commission, elective or appointive, when the office or position is established by the constitution or laws of this state." *Sauls v. Tangipahoa Parish School Board*, 273 So. 2d 899, 901 (La. Ct. App. 1973). Article VIII § 7 of the Louisiana State Constitution established the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College. Therefore, Board members are 'public officers". *Id*. It is not in dispute DeCuir is a "public employee."

The Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 et seq., and its implementing regulations, 34 C.F.R. Part 106 and "Campus Accountability and Safety Act" *La. Stat. tit. 17 § 3399.11* et seq., imposed a duty on the Board implement procedures per DOE guidelines[28] to investigate complaints sexual harassment and sexual violence.[29]

---
[28] *See* the Dear Colleague Letter R.Doc. 381-3
[29] *Id.*

7

Furthermore, 20 U.S.C. §§ 1681 et seq., 34 C.F.R. Part 106 and *La. Stat. tit. 17 § 3399.13(A)* imposed a duty on Board members to insure all Title IX complaints be directed to the Title IX Coordinator[30] or a designated person trained in Title IX. [31] *Id.* 1251.

Stewart testimony shows the Board had a specific intent to violate *La. R.S. 14:134*. The object of the malfeasance statute is to punish a breach of duty committed with the required culpable state of mind. *Id*. at 1254. Here, Stewart testified she insisted that Title IX complaints in athletics be directed to the Title IX Coordinator, but that " *Winston DeCuir disagreed with me. It was his proposal to let athletics stand as a separate effectively institution for campus coordinator and that no reports --it was unreasonable to expect that everybody was going to report directly, that those should still go to Miriam."*[32] This was a knowingly and willful violation of 20 U.S.C. §§ 1681 et seq., 34 C.F.R. Part 106 and *La. Stat. tit. 17 § 3399.13(A)*.

Stewart further testified that after former LSU President F. King Alexander directed that all Title IX complaints go the Title IX Coordinator, she later learned sometime in 2020 that Joe Alleva sent out an email countering Alexander's directive. [33] According to Stewart and confirmed by the Husch Blackwell Report,[34] Alleva's email directed that all Title IX complaints in athletics were to be directed to Segar. Alleva simply would not have countermanded Alexander's directive without the Board's approval and consent.

---

[30] R. Doc 381-3 p 7 ¶ 3; R. Doc. 219-1 p.10 ¶ 3; The Title IX regulations state in 34 C.F.R. § 106.8(a): "Each recipient must designate and authorize at least one employee to coordinate its efforts to comply with its responsibilities under this part, which employee must be referred to as the 'Title IX Coordinator.' Additionally, under 34 C.F.R. § 106.45(b)(1)(iii), the Title IX Coordinator must serve without bias or conflicts of interest, and receive the training specified in that provision.
[31] R. Doc 381-3 p 7 ¶ 3; R. Doc. 219-1 p.10 ¶ 3; The Title IX regulations state in 34 C.F.R. § 106.8(a): "Each recipient must designate and authorize at least one employee to coordinate its efforts to comply with its responsibilities under this part, which employee must be referred to as the 'Title IX Coordinator.' Additionally, under 34 C.F.R. § 106.45(b)(1)(iii), the Title IX Coordinator must serve without bias or conflicts of interest, and receive the training specified in that provision.
[32] *See* R. Doc. 324-3 p.5 L 2-9
[33] *See* R. Doc. 324-3 p. 6 L. 24-25, p. 7 L. 1-5.
[34] *See* R.Doc. 291-1 p.3 37 ¶¶ 3-4.

Thus, DeCuir's illegal directive was part of an ongoing[35] "capture and kill"[36] scheme by the Board to "silo"[37] Title IX complaints in athletics. Plaintiff has made *a prima facie* showing Board members intentionally refused to perform their lawful duty to implement Title IX regulations per DOE and State guidelines and they intentionally performed their federal and state mandated duties in an unlawful manner. Therefore, Plaintiff has made a *prima facie* case that Board members utilized Winston DeCuir to violate *La. R.S. 14:134* when DeCuir directed Segar to violate *20 U.S.C. §§ 1681 et seq, 34 C.F.R. Part 106*, and *La. Stat. tit. 17 § 3399.11* et seq.

General Counsel's investigation of Lewis complaints of retaliation

Stewart testified the General Counsel's office told her it had investigated Plaintiff's complaints of retaliation.[38] During Stewart's deposition the Board's attorneys did not assert the attorney-client privilege over her discussions with DeCuir and the General Counsel's office. *Nguyen v. Excel Corp.*, at 206-207. Therefore, the Board waived the attorney-client privilege and Plaintiff may depose DeCuir about the GC's office investigation of Lewis complaints of retaliation.

Frank Wilson

In his testimony before the Senate DeCuir repeatedly stated that he and the current Board were committed to changing "the culture"[39] at LSU. However, a background report conducted on Frank Wilson before he was rehired by the Board stated:

> *"A former LSU Athletics administrator, Sharon Lewis, accused Wilson and former director of player personnel Sherman Morris of telling Lewis to "hire fewer black women*

---

[35] Starting in 2013 the Board violated § 1512 when it concealed the Miles Title IX investigation. See R. Doc. 379-1 and R.Doc. 395.
[36] R.Doc. 219 ¶ 137
[37] R.Doc. 219 ¶ 118
[38] R. Doc. 324-3 p.9
[39] *See* DeCuir March 10, 2021 testimony. This was constant theme of DeCuir, Werner, Dampf and Galligan throughout their testimony at the Senate.

*student workers or - at the very least - Black women student workers who had lighter skin.*"[40]

Furthermore, DeCuir and the Board are aware that multiple women, including Plaintiff, under oath, have accused Wilson of sexual harassment and sexual assault.[41] Wilson remains employed at LSU. As a result, Plaintiff seeks to depose DeCuir on whether the Board investigated Plaintiff's allegations listed in Wilson's background investigation and new allegations of sexual harassment that have come forward.[42]

Additionally, in a May 20, 2020 text message[43] between Stewart and Title IX investigator Jeffrey Scott, the following exchange took place:

*Stewart: I feel like Winston shoots down my ideas unless a man endorses them.*

*Scott: I didn't want to say that but I've noticed that too….it's very concerning to me.*

*Stewart: I'm glad you picked up on it. It feels very weird. I'm not sure if it is toward other women or just me.*

Based on Stewart's text and Wilson's continued employment at LSU, Plaintiff seeks to depose DeCuir on the pervasive sexist culture that continues to exist at LSU. This is relevant to Plaintiff's Title VII hostile work environment claims. Therefore, the Court should grant Plaintiff's motion to compel and order Winston DeCuir to sit for a deposition on September 21, 2023.

Proportionality

Plaintiff is seeking to depose DeCuir as to his testimony before the Senate and Jenny Stewarts allegations only.[44]

---

[40] *See* Exhibit 3 Wilson Redacted Background Report
[41] Plaintiff has alleged she was terminated because reported Wilson for sexual harassment.
[42] On March 26, 2021 Werner testified once the Board became aware that credible allegations had been made against an employee, the Board had duty to investigate. At 1:36:27 – 1:38:28.
[43] *See* Exhibit 1
[44] Plaintiff reserve the right to depose DeCuir, if the 5th Circuit denies the Board writ.

Relevance

For the reasons stated *supra* DeCuir's testimony is relevant to Plaintiff's Title IX and Title VII claims.

**III. Conference with Opposing Counsel.**

Plaintiff's Counsel attempted without success to schedule a timely meet and confer conference with the Board's Counsel. However, the Board's counsel acting in bad faith ignored Plaintiff emails[45] and refuse to agree upon a timely date to conduct a meet and confer call.

**IV**. **Attorney Fees and Cost**

The Board's Counsel, Board and DeCuir have acted in bad faith. FRCP 37(d)(3) authorizes this Court to award reasonable and necessary attorney fees resulting from a party's discovery abuses. When parties or their attorneys engage in bad faith conduct, the Court should usually rely on the Federal Rules for sanctions." *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.,* 2 F.3d 1397, 1410 (5th Cir. 1993), cert. denied, 510 U.S. 1073 (1994) (*citing Chambers v. NASCO,* 501 U.S. 32, 50 (1991)). "A party shows bad faith by delaying or disrupting the litigation or hampering the enforcement of a court order." *Ocean-Oil Expert Witness, Inc. v. O'Dwyer*, 451 Fed.Appx. 324, 332 (5th Cir. 2011). A court may rely on its inherent authority to impose sanctions when "a party's deplorable conduct is not effectively sanctionable pursuant to an "existing rule or statute." *Carroll v. Jaques Admiralty L. Firm, P.C.*, 110 F.3d 290, 292 (5th Cir. 1997) (citing, respectively, *Chambers,* 501 U.S. at 50; *Nat. Gas Pipeline Co.,* 2 F.3d 1397 at 1406).

---

[45] *See* Exhibit 4 email chain between Plaintiff and Board counsel.

Here, the Board's Counsel has willingly and knowingly violated the Court's discovery Order; [46] set deposition dates for Werner only to arbitrarily upset them;[47] refused to set a deposition date for Sarpy Jones;[48] and repeatedly delayed a meet and confer call on DeCuir deposition.[49] This shows the Board's Counsel and Board have abandoned any pretense they intend to follow the Court's discovery order or Federal Rules of Discovery. Therefore, the Court should impose sanctions on Board's Counsel, the Board and DeCuir including but not limited to attorney fees and cost until they comply with the Court's discovery order.

## V. EXPEDITED CONSIDERATION

The deadline for all discovery to be completed on October 4, 2023. Plaintiff respectfully request the Court expedite its consideration of this proper motion to compel.

## VI. Conclusion

For the reasons stated herein, Winston DeCuir should be compelled to set for a deposition on September 21, 2023 and the Court impose sanctions against the Board's Counsel and DeCuir.

Respectfully submitted:

*/s/ Larry English*
Larry English, LSB No. 22772
LARRY ENGLISH, ATTORNEY AT LAW
423 W. 127 Street, 7th Floor
New York, New York 10027
917-531-3909
Englishlaw2008@gmail.com

---

[46] *See* Plaintiff's Motion to Compel Mary Leach Werner and Sarpy Jones depositions R.Doc. 396-1; Motion to Compel Stanley Jacobs deposition R.Doc. 384-1; and Motions to Enforce Court's Discovery Order R.Doc. 359 and R.Doc. 368;
[47] R.Doc. 396-1
[48] Id.
[49] *See* Exhibit 3

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served on all counsel of record using the Court's CM/ECF system on September 4, 2023.

*/s/ Larry English*