UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

SHARON LEWIS,
    Plaintiff

CIVIL ACTION

VERSUS

NO. 21-198-SM-RLB

BOARD OF SUPERVISORS OF LOUISIANA
STATE UNIVERSITY AND AGRICULTURAL
AND MECHANICAL COLLEGE,
    Defendant

## ORDER AND REASONS

Before the Court is Plaintiff Sharon Lewis's Motion for Reconsideration[1] of the Court's March 14, 2023 Order and Reasons[2] concerning a Motion for Protective Order[3] filed by Defendant Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board"). Lewis has not established reconsideration is appropriate; instead, she substantially rehashes prior arguments using evidence that was available to her at the time she opposed the Board's Motion for Protective Order. Accordingly, the Motion for Reconsideration is **DENIED.**

## BACKGROUND

The history of this case is set forth extensively in prior Orders and Reasons.[4] The Court recounts only the procedural history relevant to this motion.

On March 14, 2023, the Court issued its Order and Reasons granting the Board's Moton for Protective Order as to Lewis's discovery of the redacted portions of the Student Complaint Memo and redacted Taylor Porter Billing records and deferring certain of

---

[1] R. Doc. 379.
[2] R. Doc. 316.
[3] R. Doc. 289.
[4] *See, e.g.*, R. Doc. 254.

1

Plaintiff's other document requests.⁵ Essential to the Court's ruling was its determination that Plaintiff had not made a prima facie case that the Board and its Taylor Porter lawyers violated 18 U.S.C. § 1512 (tampering with a witness, victim, or an informant), La. R.S. 14:118 (public bribery), or La. R.S. 14:133 (filing or maintaining false public records).⁶

More than four months later, on July 21, 2023, Plaintiff filed the instant motion, styled as a "Rule 54(b) Motion to Amend the March 14, 2023 Order and Reasons."⁷ Plaintiff agues that the Court made "a manifest error of fact and law" when it ruled that she had not made a prima facie case concerning 18 U.S.C. § 1512, La. R.S. 14:118, or La. R.S. 14:133 (the "statutes"). She also argues that new discovery from related state-court proceedings support her claims that the Board and its attorneys violated the statutes. Dismissed defendants and non-parties Robert Barton and Vicki Crochet, partners at Taylor Porter, filed their opposition on August 11, 2023.⁸ The Board filed its opposition on August 18, 2023.⁹ Plaintiff replied on August 23, 2023.¹⁰

## LAW AND ANALYSIS

Generally, the courts in this district evaluate a motion to reconsider an interlocutory order under the same standards as those governing a motion to alter or amend a final judgment brought pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.¹¹

A motion for reconsideration pursuant to Rule 59(e) of the Federal Rules of Civil Procedure "must clearly establish either a manifest error of law or fact or must present

---

⁵ *See generally* R. Doc. 306.
⁶ *See id.*
⁷ R. Doc. 379-1 at p. 1.
⁸ R. Doc. 387.
⁹ R. Doc. 391.
¹⁰ R. Doc. 395.
¹¹ *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. CIV.A. 09-4369 R, 2010 WL 1424398, at *4 (E.D. La. Apr. 5, 2010) ("The general practice of this court has been to evaluate motions to reconsider interlocutory orders under the same standards that govern Rule 59(e) motions to alter or amend a final judgment.").

newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued."[12] "Reconsideration is an extraordinary remedy that must be used sparingly,"[13] and at no point may it be used to "re-urge matters that have already been advanced by a party."[14]

In deciding motions under the Rule 59(e) standards, the courts in this district have considered the following factors:

> (1) whether the movant demonstrates the motion is necessary to correct manifest errors of law or fact upon which the judgment is based;
> (2) whether the movant presents new evidence;
> (3) whether the motion is necessary in order to prevent manifest injustice; and
> (4) whether the motion is justified by an intervening change in the controlling law.[15]

As an initial matter, the Court notes, contrary to the Board's argument otherwise,[16] that Plaintiff's motion is timely. The time limits of Rule 59 do not apply in this matter because the order appealed is interlocutory. Rules 59 and 60 set forth deadlines for seeking reconsideration of final judgments.[17]

The Order and Reasons that Plaintiff wishes the Court to amend—through reconsideration—concerns Plaintiff's arguments that the crime-fraud exception to attorney-client privilege applies to certain discovery related to the Board's dealings with its attorneys at Taylor Porter.[18]

---

[12] *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (citations omitted) (internal quotation marks omitted).
[13] *Lightfoot v. Hartford Fire Ins. Co.*, CIV.A. 07-4833, 2012 WL 711842, at *3 (E.D. La. Mar. 5, 2012)
[14] *Helena Labs. Corp. v. Alpha Sci. Corp.*, 483 F.Supp.2d 538, 539 (E.D. Tex.2007) (citing *Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir.1990)).
[15] *Castrillo*, 2010 WL 1424398, at *4.
[16] R/ Dpc/ 391 at pp. 3–4.
[17] *See Carter v. Farmers Rice Milling Co., Inc.*, 33 F. App'x 704 (5th Cir. 2002); *Lightfoot*, 2012 WL 711842, at *2 The Court's statement in a footnote in R. Doc. 335 that the Board "did not timely file a motion for reconsideration" is inadvertently misleading. *See* R. Doc. 335 at p.1, n.2. As the remainder of that footnote makes clear, the Board did not file a motion for reconsideration at all, and the Court declined to construe its "Request for Further Relief" as a motion for reconsideration. The Court set forth in that footnote its reasons for finding that any motion for reconsideration by the Board would have been denied even if filed.
[18] *See* R. Doc. 316 at pp. 2–3.

3

The attorney-client privilege "exists to encourage full disclosure of pertinent information by clients to their attorneys."[19] This protection extends "to past criminal violations" because "the client, given the nature of [an] adversary system, has a legitimate interest in securing informed representation without fear of forced disclosure."[20] Be that as it may, "the client has no legitimate interest in seeking legal advice in planning future [or ongoing] criminal activities."[21] The crime-fraud exception is "firmly entrenched in the common law of attorney-client privilege."[22] As a result, the crime-fraud exception "comes into play [and defeats attorney-client privilege] if 'the client consults an attorney for advice that will assist the client in carrying out a contemplated illegal or fraudulent scheme.'"[23]

The Fifth Circuit has established a three-part test that must be satisfied by the party moving to apply the crime-fraud exception; the first step requires the moving party to "make an independent prima facie case that a crime [or fraud] has been committed."[24] A prima facie case for this purpose is evidence of a crime "such as will suffice until contradicted and overcome by other evidence," *i.e.*, "a case which has proceeded upon sufficient proof to that stage where it will support a finding if evidence to the contrary is disregarded."[25]

In its March 14, 2023, the Court ruled that Plaintiff had not made a prima-facie case with respect to three crimes underlying her theories for the application of the crime-

---

[19] *See In re Intern'l Sys. & Controls Corp. Sec. Lit.*, 693 F.2d 1235, 1242 (5th Cir. 1982).
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.* (quoting *In re Murphy*, 560 F.2d 326, 337 (8th Cir. 1977)).
[24] *Ward v. Succession of Freeman*, 854 F.2d 780, 790 (5th Cir. 1988).
[25] *In re Grand Jury Subpoena*, 419 F.3d at 336 (quoting *In re Intern'l Sys. and Controls Corp. Securities Litigation*, 693 F.2d 1235, 1242 (5th Cir. 1982)). The second and third steps require, respectively, the moving party to show intent for the communications to further the crime and that the information bears a relationship to the alleged crime or fraud. *See* R. Doc. 316 at pp. 4–6 (citing cases).

4

fraud exception. Plaintiff now seeks reconsideration of the ruling that she did not make a prima-facie case.[26]

### I.  Plaintiff has not shown that any of the reconsideration factors apply to the Court's ruling on 18 U.S.C. § 1512.

Plaintiff's first argument is that [t]he Court made a manifest error of fact and law when it ruled the Miles investigation was a routine internal investigation of employee misconduct."[27] Plaintiff argues that instead, she "specifically alleged in her Complaint [that Taylor Porter was] conducting a Title IX investigation of Les Miles."[28]

As the Court explained in its March 14, 2023 Order and Reasons, the existence of an "official proceeding" is required for Plaintiff to make her prima facie case that there has been a violation of § 1512.[29] Fifth Circuit case law has thoroughly defined an "official proceeding" for the purposes of § 1512,[30] and the Court's prior Order and Reasons on this point methodically compared Plaintiffs' allegations to the elements of an "official proceeding" for the purposes of § 1512.[31] The Court found that the Title IX investigation of Les Miles by Taylor Porter Attorneys was not an official proceeding as defined for the purposes of § 1512.[32]

In her instant motion, Plaintiff repeatedly remounts her prior arguments that failed to establish the existence of an official proceeding for the purposes of § 1512.[33] That the parties *called* the investigation a Title IX investigation does mean that internal investigation satisfied the more thorough and precise requirements of an "official proceeding" under Fifth Circuit case law. That the campus Office of Civil Rights is

---

[26] *See generally* R. Doc. 379-1.
[27] R. Doc. 379-1 at p. 2.
[28] *Id.* at pp. 2–3.
[29] R. Doc. 316 at pp. 7–8.
[30] *United States v. Ramos,* 537 F.2
[31] R. Doc. 316 at pp. 6–10.
[32] *Id.*
[33] R. Doc. 379-1 at pp. 4–6.

5

obligated to the Department of Education and must satisfy certain Title IX regulations does not mean, as Plaintiff would have the Court find,[34] an internal investigation conducted by an outside law firm is an official proceeding under Title IX.[35] As with her prior arguments, Plaintiff draws analogies between *some* elements of § 1512 and *some* requirements of Title IX and asks the Court to find that the outsourced internal investigation conducted by Taylor Porter squarely satisfies the thorough requirements of an "official proceeding" as established by the Fifth Circuit. This is manifestly not the case, as the Court previously held.

Similarly, because Plaintiff's arguments fail with respect to the existence of an official proceeding, they also fail with respect to whether the Board and Taylor Porter had the intent to violate § 1512, as there can be no intent to violate when the necessary condition—the existence of an official proceeding—is missing.[36]

The Court will deny Plaintiff's motion to reconsider its prior ruling that Plaintiff has not made a prima facie case that the Board and Taylor Porter violated 18 U.S.C. § 1512.

## II.  Plaintiff has not shown that any of the reconsideration factors apply to the Court's ruling on La. R.S. 14:118.

Plaintiff next argues that it was "a manifest error of fact and law" for the court to rule that she did not make a prima facie case that the Board violated La. R.S. 14:118 when it reached a settlement with Student 2. La. R.S. 14:118 criminalizes a range of behaviors characterized as public bribery: "[t]he giving or offering to give, directly or indirectly, anything of apparent, present, or prospective value" to, inter alia, a "public employee" or a witness or potential witness in a "trial or other proceeding before any court, board, or

---

[34] *See* R. Doc. 379-1 at pp. 4–7.
[35] *See* R. Doc. 379-1 at pp. 4–5; R. Doc. 316 at pp. 9–10.
[36] *See* R. Doc. 316 at p. 10.

6

officer authorized to hear evidence or take testimony" with "the intent to influence his conduct in relation to his position, employment, or duty."

Once again, the evidence before the Court establishes the Board's and Student 2's intent was to settle a civil dispute in good faith without "specific intent" to influence conduct in relation to Student 2's position, official duty, or employment in an improper manner. Plaintiff does not offer new evidence to rebut this.

Plaintiffs' arguments for reconsideration are a full remounting of her prior arguments, each of which was previously considered in the Court's prior Order and Reasons.[37] Plaintiff still has not shown the settlement between Student 2 and the Board was "an offense against public justice" or a "wrong done to the people," which the Louisiana Supreme Court says describes "the gist of" public bribery.[38] While Plaintiff supplements her arguments with rebuttals of the Court's prior ruling, she urges reconsideration on the basis of evidence or arguments previously available to her—"arguments which could, and should, have been made before the [Court's Order and Reasons] issued"[39] on "matters that have already been advanced by a party."[40] No factor

---

[37] Plaintiff's arguments as to La. R.S. 14:118 are so thoroughly repetitive of the prior briefing and rulings on this point that Plaintiff's chief case law illustration draws on a case cited by the Court in its prior ruling. *See* R. Doc. 316 at p. 11, n.65. When she does so, Plaintiff inaccurately analogizes the matters concerning Student 2 to that of *State v. DeKay*, 387 So. 2d. 570 (La. 1980). Once again, La. R.S. 14:118 "requires there to be an active or ongoing trial or other proceeding before any court, board, or officer authorized to hear evidence or take testimony.'" R. Doc. 316 at p. 11 n. 65 (quoting La. R.S. 14:118). In drawing her analogy to *DeKay*, Plaintiff fails to note that the mother of the two minor students, subject to the settlement with the school headmaster, *had testified before a grand jury* regarding the headmaster's "crimes against nature." *DeKay*, 387 So. 2d 572. There was no such analogous proceeding here with respect to the requirements of La. R.S. 14:118.
[38] *State v. Bloomenstiel*, 106 So.2d 288, 290 (La. 1958); *see also State v. Hingle*, 677 So.2d 603, 607-08 (La. App. 2 Cir. 6/26/1996) (addressing public bribery of a potential witness and describing the specific intent element as specific intent to influence a witness's testimony).
[39] *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (citations omitted) (internal quotation marks omitted).
[40] *Helena Labs. Corp. v. Alpha Sci. Corp.*, 483 F.Supp.2d 538, 539 (E.D. Tex.2007) (citing *Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir.1990)).

for reconsideration supports the Plaintiff's motion with respect to La. R.S. 14:118, so the Court will deny the motion.

### III. Plaintiff has not shown that any of the reconsideration factors apply to the Court's ruling on La. R.S. 14:133.

Lastly, Plaintiff alleges that the Court made a "manifest error of fact and law" when it ruled that "Plaintiff did not make a prima facie case the Board violated La. R.S. 14:133."[41] La. R.S. 14:133 criminalizes filing or maintaining public records that contain false statements of fact. Previously, Plaintiff argued the Student Complaint Memo contains false statements of fact because it "concluded Miles had not violated any laws or his employment contract."[42] The Court previously ruled[43] that an opinion that Miles likely did not violate laws or his employment contract is a legal opinion, and legal opinions are not statements of fact.[44] Plaintiff now makes an argument nearly identical to her prior one on the basis of information available to her before the Court's prior ruling on this issue.

Plaintiff's argument for reconsideration is that the Directive Letter was "materially altered" before being deposited in state court records and with records at LSU.[45] However, the evidence Plaintiff provides, emails between counsel for Leslie Miles and Taylor Porter counsel, shows those attorneys working to make sure the statements contained in the Directive Letter[46] *were* accurate. In sum, Plaintiff does not take issue with what is *included* in the Directive Letter, but rather, what was left out. Plaintiff argues that "credible facts" were "remove[d]" from the Directive Letter but then claims that the letter

---

[41] R. Doc. 379-1 at p. 13.
[42] R. Doc. 306 at p. 4.
[43] R. Doc. 316 at p. 12.
[44] *See, e.g., Geiling v. Wirt Financial Servs., Inc.*, 2014 WL 8473822 (E.D. Mich. 12/31/2014).
[45] R. Doc. 316 at pp. 13–14.
[46] R. Doc. 316-1 at pp. 19–21.

8

"contained a false statement and false representation of a material fact."[47] This does not withstand reason. The evidence provided by Plaintiff shows an effort to ensure the Directive Letter was accurate, even if underinclusive of Plaintiff's preferred conclusions and summaries.

Furthermore, this argument was available to Plaintiff prior to the Court's first ruling on this issue. Plaintiff questioned a witness about this issue in a state court proceeding on March 7, 2023.[48] Plaintiff had the emails in her possession at that time, and she very likely possessed them some time before. The Court's prior Order and Reasons did not issue until March 14, 2023.[49] Even if Plaintiff raised a colorable argument as to La. R.S. 14:133—and she does not—this timeline makes clear this argument was available to her before the Board's Motion for Protective Order was decided, and it is not an appropriate grounds for reconsideration. The Court will deny Plaintiff's motion to reconsider its prior ruling that Plaintiff did not make a prima facie case with respect to La. R.S. 14:133.

## CONCLUSION

No factor for reconsideration supports the Court reconsidering or amending its March 14, 2023, Order and Reasons. Accordingly;

Plaintiff's Motion for Reconsideration of the Court's March 14, 2023, Order and Reasons is **DENIED.**

**New Orleans, Louisiana, this 17th of October, 2023.**

*Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[47] R. Doc. 379-1 at pp. 13–14.
[48] *See* R. Doc. 336-2 at pp. 1–3.
[49] R. Doc. 316.