## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**SHARON LEWIS,**
    **Plaintiff**

**CIVIL ACTION**

**VERSUS**

**NO. 21-198-SM-RLB**

**BOARD OF SUPERVISORS OF LOUISIANA**
**STATE UNIVERSITY AND AGRICULTURAL**
**AND MECHANICAL COLLEGE,**
    **Defendant**

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment [1] filed by Defendant, Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board"). The Board's motion for summary judgment seeks judgment in its favor on "each and every remaining claim of Plaintiff."[2]

In its memorandum in support of the motion for summary judgment, the Board asserts that the "only claims that remain" are claims for "Title IX retaliation after April 8, 2020,"[3] "Title VII retaliation,"[4] and Title VII "sex and race discrimination."[5] Plaintiff has brought a Title VII hostile work environment claim.[6] Because a hostile work environment is discriminatory conduct against a protected class, the Court assumes the Board included this claim in its reference to Plaintiff's "sex and race discrimination" claim.[7] In any event, the Board's main argument is that the Fifth Circuit does not recognize a claim for

---

[1] R. Doc. 424.
[2] R. Doc. 424 at p. 1.
[3] R. Doc. 424-14 at p. 1. This time period is prescribed by a prior Order and Reasons. *See* R. Doc. 107 at pp. 12–18.
[4] *Id.*
[5] *Id.*
[6] See R. Doc. 219 at pp. 67–68.
[7] R. Doc. 424-14 at p. 1.

1

*retaliatory* hostile work environment,[8] rather than any argument with respect to Plaintiff's actual hostile work environment claim. The Court will assume the Board also is seeking summary judgment on Plaintiff's hostile work environment claim.

The motion for summary judgment was filed October 11, 2023.[9] Plaintiff filed an opposition[10] on October 18, 2023 and filed a supplemental response[11] to the Board's Statement of Undisputed Material Facts[12] on October 24, 2023. The Board filed its reply on November 7, 2023.[13] For the reasons that follow, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14]

"An issue is material if its resolution could affect the outcome of the action."[15] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[16] All reasonable inferences are drawn in favor of the nonmoving party.[17] There is no genuine issue of material fact if, even viewing the evidence in the light most

---

[8] *See Heath v. Bd. of Sup. for South. Univ. & Agri. and Mech. Coll.*, 850 F.3d 731, 741 n.5 (5th Cir. 2017) ("We have not recognized a retaliatory hostile work environment cause of action.")

[9] *Id.*

[10] R. Doc. 432.

[11] R. Doc. 436.

[12] R. Doc. 424-15.

[13] R. Doc. 444.

[14] Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[15] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

[16] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

[17] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[18]

If the dispositive issue is one for which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[19] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[20]

On the other hand, if the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[21] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the

---

[18] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

[19] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

[20] *Celotex*, 477 U.S. at 322–24.

[21] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322–24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. and Pro. §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

moving party is entitled to summary judgment as a matter of law.[22] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[23] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[24] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[25] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[26]

Still, "unsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim.

---

[22] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[23] *Celotex*, 477 U.S. at 332–33.
[24] *Id.*
[25] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[26] *Id.*; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.

'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[27]

## LAW AND ANALYSIS

I.    **The court has jurisdiction over Plaintiff's Title VII retaliatory discharge claim because Plaintiff exhausted her administrative remedies.**

Plaintiff's Second Amended Complaint includes a claim for retaliation under Title VII.[28] The claim adopts the previously plead factual allegations, which included allegations of retaliatory discharge.[29] The Board argues the Court lacks jurisdiction as Plaintiff's retaliatory discharge claim is barred because Plaintiff's failed to exhaust her administrative remedies related to this claim.[30]

While it is true Plaintiff's EEOC charge was filed prior to her termination,[31] Plaintiff's claim of retaliatory discharge "grows out of" the allegations of sexual and racial discrimination and retaliation detailed in the EEOC charge.[32] Plaintiff's EEOC charge includes descriptions of incidents of discrimination and retaliation from 2009-2021.[33] It states, "I engaged in protected activity by reporting sexist and racist behavior among athletic officials and, from 2009 to present, I have been subjected to retaliation and a hostile work environment."[34] Plaintiff argues her eventual termination in 2022 was based on similar retaliatory motives.[35]

---

[27] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[28] R. Doc. 219 at pp. 68-69.
[29] *Id.* at p. 68.
[30] R. Doc. 424-14 at p. 15.
[31] Plaintiff filed her EEOC charge on April 15, 2021 (R. Doc. 219-8). She was terminated on January 5, 2022 (R. Doc. 219 at p. 18).
[32] R. Doc. 219-8 at p. 2 (Plaintiff alleging a "continuing pattern of hostile work environment, gender discrimination and race discrimination").
[33] R. Doc. 219-8 at p. 3.
[34] *Id.*
[35] R. Doc. 432 at 21.

Because Plaintiff's allegation of retaliatory discharge under Title VII grows out of the same kind of retaliation against the protected activity described in the EEOC charge, additional exhaustion of administrative remedies is not required.[36] "The district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court."[37]

## II.    There Are undisputed facts.

The Board accepts as true the Plaintiff's facts and allegations for the purposes of this motion.[38] In addition, the undisputed facts are those facts set out in the Board's Statement of Undisputed Material Facts that Plaintiff admits are true in her response to that statement.[39]

## III.    There are genuine issues of material fact with respect to Plaintiff's Title IX retaliation claim.

To prove her Title IX retaliation claim, Plaintiff must show (1) she engaged in activity protected by Title IX, (2) suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action.[40] "[A] a Title IX retaliation claim only covers conduct protected by Title IX."[41] The parties do not dispute that the first element is satisfied: Plaintiff engaged in activity protected by Title IX.[42]

The parties disagree as to whether there are disputed facts with respect to the second and third elements of a Title IX retaliation claim. First, the Court addresses the

---

[36] *Gupta v. E. Texas State Univ.,* 654 F.2d 411, 414 (5th Cir. 1981).

[37] *Id.*

[38] R. Doc. 424-14 at p. 1 n.1.

[39] *Compare* R. Doc. 424-15 *with* R. Doc. 436.

[40] Normore v. Dallas Indep. Sch. Dist., 3:18-CV-02506-E, 2023 WL 3937785, at *23 (N.D. Tex. June 9, 2023) (citing *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014)).

[41] *Taylor-Travis v. Jackson State Univ.*, 984 F.3d 1107, 1119 (5th Cir.2021).

[42] *See* R. Doc. 424-14 at p. 6 ("[Plaintiff] cannot satisfy elements two or three [of the Title IX retaliation framework."); R. Doc. 432 at pp. 11–12 (Plaintiff acknowledging the Board's concession as to element one and describing her Title IX protected activity).

6

Board's arguments that there are no genuine disputes of material fact as to whether an adverse action took place, and second the Court addresses the Board's argument that there are no genuine disputes of material fact as to causal connections between the alleged adverse actions and Plaintiff's Title IX protected activity.

### A. There is no dispute that Plaintiff suffered an adverse employment action when she was terminated; there are genuine disputes of material fact as to whether Plaintiff also suffered an adverse employment action when she received a promotion with no pay raise.[43]

At least one adverse employment action is undisputed: Plaintiff was terminated in January 2022.[44] This is sufficient for Plaintiff to meet the first element of a Title IX retaliation claim by showing she suffered an adverse employment action.[45] The Court will examine whether the Plaintiff also suffered an additional adverse employment action.

The Board contests whether Plaintiff has suffered an additional adverse action in what it represents as her allegation that she failed to receive a promotion in 2020.[46] The Board argues that it is an undisputed material fact that Plaintiff was promoted in August 2020, to Associate Athletic Director, saying, it is undisputed that Plaintiff *does not argue* she was "denied any promotion."[47] For support, the Board cites to Lewis's testimony that, in August 2020, she received a "promotion [that] came with no [additional compensation]"[48] and argues that this shows she received a promotion.[49] The Board acknowledges Lewis's alleged adverse action is "her issue . . . with her pay."[50]

---

[43] Though there are genuine disputes of material fact as to whether Plaintiff suffered an adverse employment action, at least one adverse employment action is undisputed: she was terminated in January 2022. R. Doc. 424-15 at ¶ 48; R. Doc. 436 at ¶ 48. The Court will later address the parties' causation arguments as to this adverse employment action. *See* Part III.B, *infra*.

[44] R. Doc. 424-15 at ¶ 48; R. Doc. 436 at ¶ 48.

[45] The Court will later address the parties' causation arguments as to this adverse employment action.

[46] R. Doc. 424-14 at pp. 7–8.

[47] R. Doc. 424-15 at ¶ 15.

[48] R. Doc. 424-1 at pp. 38–39.

[49] R. Doc. 424-15 at ¶ 36; R. Doc. 424-14 at p. 8.

[50] R. Doc. 424-14 at p. 8.

In response, Plaintiff denies that her claim is based on her failure to be promoted. Instead, Plaintiff argues that the August 2020 promotion "was a promotion in name only."[51] For support, Plaintiff cites the same deposition testimony offered by the Board: that she received an "increase in duties" that she believes "should have come with [a] pay increase."[52]

It is undisputed that Plaintiff was terminated,[53] and further, there is a genuine dispute as to whether Plaintiff's lack of pay increase upon her 2020 promotion was an adverse employment action.[54] The Board argues that her promotion without a pay increase was not an adverse employment action.[55] Plaintiff has introduced a dispute of material fact as to whether her being named an Associate Athletic Director in August 2020 without a pay increase was itself an adverse action under Title IX.[56]

### B.   There are genuine disputes of material fact as to the causal connections between the adverse actions and Plaintiff's Title IX protected activity.

Though it is uncontested that Plaintiff was terminated in January 2022,[57] there is a genuine dispute of material fact with respect to the cause of that termination. Specifically, the parties dispute who terminated Plaintiff and why.

The Board argues that Plaintiff's termination from LSU was part of a broader remaking of the football department after Brian Kelly was hired as head football coach, and accordingly, Kelly was ultimately responsible for Plaintiff's termination.[58] For

---

[51] R. Doc. 436 at ¶ 36.
[52] R. Doc. 424-1 at pp. 38–39.
[53] R. Doc. 424-15 at ¶ 48; R. Doc. 436 at ¶ 48.
[54] R. Doc. 424-15 at ¶ 36, 37; R. Doc. 436 at ¶¶ 36, 37.
[55] R. Doc. 424-14 at p. 8.
[56] R. Doc. 424-15 at ¶ 36, 37; R. Doc. 436 at ¶¶ 36, 37. Plaintiff does not dispute the Board's contention that a salary comparison was done, R. Doc. 424-15 ¶ 37, but does dispute the Board's contention that Wendy Nall performed that comparison. R. Doc. 436 at ¶ 37. Plaintiff points to Scott Woodward's deposition testimony, R. Doc. 405-4 at pp. 70-71, in which he stated that Stephanie Rempe performed the comparison.
[57] R. Doc. 424-15 at ¶ 48; R. Doc. 426 at p. 14.
[58] *E.g.,* R. Doc. 424-15 at ¶ 26; R. Doc. 424 at pp. 4–5.

support, they point to Kelly's sworn declaration that he made "global changes" to the football department,[59] that he "did not have any discussions about terminating her specifically,"[60] and thus and that Plaintiff's termination was simply "a result of [his] taking over as head coach."[61] The Board's argument is that Plaintiff's termination was not retaliation for her Title IX protected activity—specifically, reporting allegations of sexual harassment by members of the LSU football department.[62]

Plaintiff denies that Kelly was responsible for her termination or that it was part of his larger remaking of the football department, pointing to his seemingly contradictory deposition testimony in which he states he did not terminate Plaintiff: asked whether he recommended Plaintiff "be relieved of her employment," Kelly responded that he "[n]ever" did so because he "clearly understood [her] situation was one to leave alone" and "not within [his] purview."[63] At a minimum, there is a genuine dispute as to whether Brian Kelly had the authority to terminate Plaintiff and whether he gave the order to do so. This dispute in turn reveals a larger dispute of fact as to who *did* terminate Plaintiff and why.

With respect to another alleged adverse action, Plaintiff's lack of a pay raise when she was promoted in 2020, there is a genuine dispute as to what measure of control, if any, Verge Ausberry possessed over Plaintiff's pay or promotions. The Board contends it is undisputed that "Ausberry was not involved in setting Plaintiff's pay (or in her promotion)," pointing to Plaintiff's deposition testimony in which she said she did not

---

[59] R. Doc. 424-12 at ¶ 2.
[60] *Id.* at ¶ 6.
[61] *Id.*
[62] *See* R. Doc. 424-14 at pp. 10–13.
[63]  R. Doc. 405-5 at p. 36.

have a "sense" [64]  nor "direct evidence"[65] that Ausberry "played a role" in her pay or promotion.

Plaintiff denies that this is an undisputed fact, pointing to allegations that Ausberry held some influence over the decisions of athletic director Scott Woodard,[66] whom Plaintiff believes was "someone who had [something] to do with [her] promotion."[67] Specifically, Plaintiff testified in her deposition that Ausberry said "she had to go through [Ausberry]" to discuss her promotion with Woodward,[68] that Woodard was Ausberry's "boy,"[69] and that Ausberry told Plaintiff she would "never get promoted [at LSU] because [she] turned [Ausberry] in" for harassing conduct and the "hostile work environment" Plaintiff believes Ausberry created for her.[70]

Plaintiff's evidence creates a genuine dispute of material fact as to whether Ausberry, who had knowledge of Plaintiff's protected activity, held control over her promotion or pay, and this in turn creates a dispute of material fact as to whether her protected activity caused her Title IX adverse employment action: her promotion without a pay increase.

## IV. There are genuine disputes of material facts with respect to Plaintiff's Title VII claims.

### A. There are genuine disputes of material fact as to Plaintiff's claim for Title VII retaliation.

Title VII prohibits an employer from taking adverse employment action against an employee because she engages in a protected activity.[71] As a result, to establish a prima

---

[64] Lewis Depo., R. Doc. 424-1 at p. 39.

[65] Lewis Depo., R. Doc. 424-3 at p. 39; *see also* R. Doc. 424-4 at p. 28.

[66] R. Doc. 219 at ¶ 84.

[67] Lewis Depo., R. Doc. 424-1 at p. 39.

[68] Lewis Depo., R. Doc. 432-4 at p. 130.

[69] *Id.*

[70] *Id.* at p. 131.

[71] *Joseph v. Phillips*, 2014 WL 5429455 at *3 (E.D. La. Oct. 24, 2014).

facie case of retaliation a plaintiff must show that: (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action.[72]

### 1. There is no dispute that Plaintiff engaged in protected activity.

"Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII."[73] The filing of an EEOC charge is a protected activity.[74]

The Board claims Plaintiff's complaint makes no mention of Title VII protected activity, and instead states "the 'protected activity' she engaged in was reporting Title IX violations."[75] However, it is undisputed that Plaintiff filed an EEOC charge on April 15, 2021.[76] Moreover, Plaintiff complained to Stephanie Rempe about racial discrimination in Scott Woodward's hiring and promoting practices in July 2020.[77] Accordingly, the Court finds Plaintiff engaged in protected activity.

### 2. The Board took adverse employment action against Plaintiff.

The Board accepts as true that Plaintiff suffered an adverse employment action when she was terminated on January 5, 2022.[78]

---

[72] *Feist v. La. Dep't of Justice*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007)).

[73] *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (quoting *Green v. Administrators of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002), as amended on denial of reh'g and reh'g en banc (Apr. 26, 2002)).

[74] *Rainey v. Fannie Mae*, 46 F. App'x 732 (5th Cir. 2002) (citing *Green v. Administrators of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002), as amended on denial of reh'g and reh'g en banc (Apr. 26, 2002)).

[75] R. Doc. 424-14 at p. 14.

[76] R. Doc. 424-15 at ¶¶ 23, 62.

[77] Lewis Depo. at pp. 108-109.

[78] R. Doc. 424-15 at ¶ 33. Termination is considered an "adverse employment action" under Title VII *(see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006)).

Plaintiff further claims she was promoted without an increase in compensation in August 2020.[79] The Board does not contest this allegation.[80] The Fifth Circuit has recognized denials of pay increases can be adverse employment actions under Title VII.[81]

> ### 3. There exist genuine issues of material fact as to whether a causal connection exists between Plaintiff's protected activities and the adverse employment actions.

Regarding the causal connection between Plaintiff's termination and her filing of an EEOC charge, the Board argues Plaintiff provided no evidence to support a finding of retaliatory motive.[82] In response, Plaintiff provides evidence that she was issued a Right to Sue Letter from the EEOC on January 3, 2022[83] and was terminated on January 5, 2022.[84] Plaintiff argues "a three-day time lapse is sufficient to show a causal connection,"[85] citing  the Fifth Circuit's decision in *Evans v. City of Houston*, which held that a five day time lapse between protected activity and adverse employment action was sufficient to provide a causal connection.[86] However, Plaintiff's receipt of her Right to Sue Letter was not a protected activity. Rather, her filing of the EEOC charge on April 15, 2021 was the protected activity at issue in this claim. Approximately nine months elapsed between Plaintiff's filing of the EEOC charge and her termination. This time period, *standing alone*, is unlikely to be within the very close proximity that is necessary to establish causation.[87]

---

[79] Lewis Depo. at pp. 129-130.
[80] R. Doc. 424-14 at 22. ("The Board adopts the evidence in Section II.A.2.a showing its legitimate non-retaliatory/non-discriminatory reason that Plaintiff's lack of pay increase [sic].").
[81] *Fierros v. Texas Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001).
[82] R. Doc. 444 at p. 8.
[83] R. Doc. 219-9.
[84] R. Doc. 421-4.
[85] R. Doc. 432 at p. 20.
[86] 246 F.3d 344, 354 (5th Cir. 2001).
[87] *See, e.g., Hill v. Brown*, 2022 WL 3094329, at *12 (W.D. La. 7/19/2022) (citing *Besser v. Texas Gen. Land Office*, 834 Fed. App'x. 876, 885 (5th Cir. 2020) (finding two and one-half months, standing alone, is not within the very close proximity that is necessary to establish causation)).

Plaintiff correctly notes she may "show causal connection despite a significant time gap if there is other evidence of retaliation."[88] As other evidence of causal connection between her EEOC complaint and her termination, Plaintiff provides evidence that Scott Woodward was aware she had filed an EEOC charge[89] and Woodward subsequently signed Plaintiff's termination letter.[90] Moreover, Plaintiff was on a leave of absence from the time she filed her EEOC charge until her termination.[91] Absence from the office during the period between a protected activity and an adverse employment action may support a finding of causal connection.[92] The Board maintains Brian Kelly, not Woodward, made the decision to terminate Plaintiff,[93] and Plaintiff offered no evidence Kelly was aware of her EEOC charge.[94] Accordingly, there are genuine issues of material fact as to who made the decision to terminate Plaintiff and whether the decision was caused by Plaintiff's filing of an EEOC charge.

The Board does not directly challenge Plaintiff's claim of a causal connection between Plaintiff's complaint to Stephanie Rempe about racial discrimination in Scott Woodward's hiring and promoting practices in July 2020 and Plaintiff's denial of a pay increase with her promotion in August 2020.[95] It is uncontested that Woodward approved Plaintiff's promotion in August 2020.[96] In his deposition testimony, Woodward confirmed he approved Plaintiff's promotion without a pay increase at that time.[97]

---

[88] R. Doc. 432 at p. 13 (citing *Vargas v. McHugh*, 630 F. App'x 213, 217 (5th Cir. 2015)).
[89] Woodward Depo. at p. 66.
[90] R. Doc. 421-4.
[91] R. Doc. 424-15 at ¶ 7.
[92] *See Fugarino v. Milling, Benson, Woodward LLP*, No. CV 21-594, 2022 WL 11082725 *6 (E.D. La. Oct. 19, 2022) (finding a reasonable jury could infer causal connection between a protected activity and termination where Plaintiff was on a four-month maternity leave between the events).
[93] R. Doc. 424-14 at ¶ 8.
[94] R. Doc. 444 at p. 8 n.15.
[95] *See generally*, R. Doc. 424-14; R. Doc. 444.
[96] R. Doc. 424-15 at ¶ 20.
[97] Woodward Depo. at pp. 70-71.

Woodward further testified that Rempe made the analysis to determine the proper amount of Plaintiff's salary and Woodward accepted her recommendation.[98] Woodward confirmed he did not meet with Plaintiff in the fall of 2020 to discuss her salary, despite Plaintiff's attempts to do so.[99] Plaintiff argues this circumstantial evidence creates a genuine issue of material fact as to the causal connection between Plaintiff's complaint to Rempe and Plaintiff's denial of a pay increase.[100] The Court agrees.

### B. Plaintiff's claims of Title VII hostile work environment based on sex and race discrimination.

The Board includes Plaintiff's hostile work environment claims in its request for summary judgment on the race and sex discrimination claims.[101] The *McDonnell Douglas* burden-shifting analysis does not apply to Plaintiff's claims of hostile work environment under Title VII.[102]

To establish a claim of hostile work environment on the basis of race or sex, "a plaintiff must show that (1) she is a member of a protected class; (2) she suffered unwelcomed harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment 'affected a term, condition, or privilege of employment'; and (5) 'the employer knew or should have known; about the harassment and 'failed to take prompt remedial action.'"[103]

---

[98] *Id.*

[99] *Id*. at pp. 62-63.

[100] R. Doc. 432 at p. 19.

[101] R. Doc. 424-14 at p. 19.

[102] Other circuits have concluded the *McDonnell Douglas* burden-shifting does not apply in the context of hostile work environment claims under Title VII. *See Pollard v. E.I. DuPont de Nemours Co.*, 213 F.3d 933, 943 (6th Cir. 2000) (explaining that the *McDonnell Douglas* framework cannot apply to a hostile work environment sexual harassment claim because "there is no legitimate justification for such an environment, and thus recourse to the *McDonnell Douglas* test is not warranted"), rev'd on other grounds; see also *Martin v. Nannie & The Newborns, Inc.*, 3 F.3d 1410, 1417 n.8 (10th Cir. 1993) overruled on other grounds; *Johnson v. Booker T. Washington Broad Serv., Inc.*, 234 F.3d 501, 510-11 (11th Cir. 2000) (the district courts should employ normal principles of proof and pleading allocation.). This Court adopted this reasoning in *Dowdell v. Culpepper & Assocs. Sec. Servs., Inc.*, No. CV 19-11410, 2020 WL 5095274 *7 (E.D. La. Aug. 28, 2020).

[103] *West v. City of Houston*, 960 F.3d 736, 741–42 (5th Cir. 2020) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

As to the first element, it is undisputed that as an African American woman, Plaintiff is a member of a protected class on the basis of both her race and her sex.[104] Plaintiff claims she suffered unwelcomed harassment because of both her race[105] and her sex.[106]

### 1. Racially hostile work environment.

As to the second and third elements, regarding unwelcomed harassment because of her race, Plaintiff's deposition testimony reflects that 1) Ausberry referred to her as "an angry Black woman" in 2020;[107] 2) in August 2015, Ausberry said that Austin Thomas (a white male) "looked like a General manager" and that's why he was promoted over Plaintiff (a Black woman);[108] and 3) Les Miles made comments in Plaintiff's presence that he wanted to hire "blondes with big boobs" and thought Black girls were "ugly" throughout his tenure before 2016.[109] Plaintiff also reported Frank Wilson pressured her to hire more "light skinned black girls" on behalf of Miles before 2016.[110] The Board does not dispute these claims for purposes of summary judgment,[111] so the Court finds the second and third elements of Plaintiff's hostile work environment claim on the basis of race are established.

To establish the fourth element, a plaintiff must show that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."[112] "Harassment

---

[104] R. Doc. 424-15 at ¶ 1.
[105] R. Doc. 219 at ¶ 309; R. Doc. 432 at 23-26.
[106] R. Doc. 432 at pp. 23-26.
[107] Lewis Depo. at p. 618.
[108] Lewis Depo. at pp. 366, 653-656.
[109] *Id.* at pp. 366, 567-568, 653-54.
[110] R. Doc. 405-9 at p. 1.
[111] R. Doc. 424-14 at pp. 19-20.
[112] *La Day*, 302 F.3d at 482 (quoting *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269 (5th Cir. 1998)) (internal quotation marks omitted).

affects a term, condition, or privilege of employment when it is '*severe* or *pervasive*.'"[113] Courts must look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance" in determining whether conduct is hostile or abusive.[114] In this case, it is clear from Plaintiff's deposition testimony and report to HR that she found the Board's conduct to be subjectively offensive.[115] Therefore, the question before the Court is whether the complained-of conduct was also objectively offensive.

It is an undisputed fact that only one of these alleged incidents of race-based harassment occurred within the Title VII statutory time period, namely, Ausberry's reference to Plaintiff as an "angry Black woman" in 2020. The Board argues the "continuing violation" doctrine should not apply to allow consideration of the other, prior acts of race-based harassment in determining whether harassment was sufficiently pervasive to constitute a hostile work environment. Unless the continuing violation theory applies, the statutory time period for EEOC claims is within 300 days of the EEOC charge.[116] In this case, that would mean any conduct occurring after June 19, 2020 should not be considered in determining whether the harassment was sufficiently pervasive, since Plaintiff filed her EEOC charge on April 21, 2021.[117]

To apply the continuing violation doctrine, (1) the plaintiff must demonstrate that the separate acts are related; and (2) the violation must be continuing; intervening action

---

[113] *Russel v. Univ. of Tex. of Permian Basinl*, 234 F. App'x  195, 205 (5th Cir. 2007) (quoting *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 482 (5th Cir. 2002)) (emphasis added).
[114] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998); *see also Calmes v. JPMorgan Chase Bank*, 943 F. Supp. 2d 666, 680 (E.D. La. 2013).
[115] Lewis Depo. at pp. 366, 567-568, 618 653-54; R. Doc. 405-9; R. Doc. 219-8.
[116] *Kirkland v. Big Lots Store, Inc.*, 547 F. App'x 570, 572 (5th Cir. 2013).
[117] R. Doc. 219-8.

by the employer, among other things, will sever the acts that preceded it from those subsequent to it.[118] Two considerations are particularly relevant for a continuing violation claim:

> The first is subject matter: Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (e.g., a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision?[119]

To show recurrence, frequency and identity of the wrongdoer are relevant.[120] Moreover, "the Fifth Circuit has found that a 'three-year break' between incidents will defeat any attempt to establish a continuing violation."[121]

In this case, more than three years elapsed between Ausberry's comment that Plaintiff was an "angry black woman" in 2020, and any of the incidents of race-based harassment that occurred during the tenure of Wilson or Miles. It is uncontested that Miles left LSU in September 2016[122] and Wilson left in January 2016.[123] Plaintiff offers no evidence of acts of race-based harassment that occurred between December 31, 2016 and January 1, 2020.[124] Because of the more than three-year gap between alleged incidents of harassment, the Court finds the continuing violation doctrine does not apply to Plaintiff's claim of a racially hostile work environment.[125] As such, the Court considers only Ausberry's 2020 comment when determining whether the harassment was sufficiently pervasive to affect a term, condition, or privilege of employment.

---

[118] *Heath*, 850 F.3d at 738 (quoting *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009).
[119] *Berry v. Board of Supervisors of La. St. Univ.*, 715 F.2d 971, 981 (5th Cir.1983); *See Heath*, 850 F.3d at 736.
[120] *Butler v. MBNA Tech., Inc.,* 111 F. App'x 230, 233 (5th Cir. 2004).
[121] R. Doc. 424-14 at p. 24 (citing *Butler*, 111 F. App'x at 234).
[122] R. Doc. 424-15 at p. 2.
[123] *Id.*
[124] Plaintiff suggests Ausberry subjected her to a "pervasive hostile working environment ... because of her gender" between 2012 and 2021. (R. Doc. 432). However, she does not indicate that any harassment by Ausberry during this period was on the basis of race.
[125] *See Butler*, 111 F. App'x at 234.

"Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."[126] The Board argues the "isolated reference to Plaintiff as an angry black woman (though unprofessional) does not amount to severe and pervasive harassment."[127] The Court agrees. While Ausberry's 2020 comment was discriminatory, it did not, on its own, constitute a hostile work environment based on race.[128] Since the Board has established there is no evidence on the record to support a claim of "severe and pervasive harassment" on the basis of race, the Court grants summary judgment in favor of the Board as to Plaintiff's claim of Title VII hostile work environment on the basis of race.[129]

The Court notes that application of the "three-year rule" to Plaintiff's hostile work environment claim on the basis of race does not preclude introduction of evidence about incidents that occurred outside the statutory time period in support of Plaintiff's Title VII discrimination or retaliation claims, including her sexually hostile work environment claim discussed below.[130] "[A]n atmosphere of condoned sexual harassment in a workplace increases the likelihood of retaliation for complaints in individual cases.... "[B]ecause an employer's past discriminatory policy and practice may well illustrate that

---

[126] *Faragher*, 524 U.S. at 788 (internal quotation marks omitted).

[127] R. Doc. 424-14 at pp. 19-21.

[128] *See Cuthbertson v. First Star Logistics, LLC*, 638 F. Supp. 3d 581, 592 (W.D.N.C. 2022) (referring to plaintiff as an "angry black woman," among other conduct, was insufficient to constitute a hostile work environment); *Robinson v. City of Atlanta*, 2010 WL 11440788, at *5 (N.D. Ga. Dec. 21, 2010), report and recommendation adopted, 2011 WL 13096497 (N.D. Ga. Mar. 14, 2011) (collecting cases) (use of the term "angry black woman" on two occasions did not constitute a hostile work environment); *Peeler v. Premier Ambulatory Surgical Ctr., LLC*, 2019 WL 13290394, at *31 (N.D. Ga. Feb. 6, 2019), report and recommendation adopted, 2019 WL 13292758 (N.D. Ga. Mar. 29, 2019) (where only evidence of race based epithet directed at plaintiff was single use of "angry black woman" comment, such was insufficient to constitute a hostile work environment).

[129] Since the Board has establish there is no genuine dispute of material fact as to the fourth element of Plaintiff's Title VII claim for a hostile work environment on the basis of race, it is entitled to summary judgment as a matter of law as to this claim without the Court's consideration of the fifth element.

[130] *See, e.g. Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 359 (5th Cir. 1995) (quoting *Hawkins v. Hennepin Tech. Ctr.*, 900 F.2d 153, 156 (8th Cir. 1990)

the employer's asserted reasons for disparate treatment are a pretext for intentional discrimination, this evidence should normally be freely admitted at trial."[131]

### 2.    Sexually hostile work environment.

As to the second and third elements of her sexually hostile work environment claim, that is unwelcomed harassment because of her sex, Plaintiff's deposition testimony reflects that 1) Ausberry called her a "stupid incompetent bitch" at some point before Wilson left LSU in 2016;[132] 2) Ausberry referred to her as "an angry Black woman" in 2020;[133] 3) Wilson made numerous sexual advances on her including grabbing her breasts and butt and propositioning her for sex before his original departure in 2016;[134] 4) Miles made numerous sexist comments about students in Plaintiff's presence during his tenure before 2016 including instructing Plaintiff to hire prettier blonde girls;[135] 5) Ya'el Loften testified that Plaintiff reported to her that Wilson exposed his penis to Plaintiff in 2013;[136] 6) other employees witnessed Ausberry "hollering" and "screaming" at Plaintiff between 2012 and 2021;[137] and 7) Wilson was rehired by LSU in December 2021.[138] The Board does not dispute the truth of these allegations for purposes of summary judgment.[139]  Whether an environment is sufficiently hostile or abusive depends on a totality of circumstances.[140] The Court finds Plaintiff has presented sufficient evidence for a reasonable jury to infer the second and third elements of Plaintiff's hostile work environment claim on the basis of sex are established.

---

[131] *Id.*
[132] Lewis Depo. at p. 278.
[133] *Id.* at p. 618.
[134] *Id.* at pp. 344-350.
[135] Id. at p. 568.
[136] Lofton Depo. at p. 51.
[137] R. Doc. 432 at p. 24 (citing Lofton Depo. at pp. 59-63).
[138] R. Doc. 424-15 at ¶ 28.
[139] R. Doc. 424-14 at pp. 19-20.
[140] *Saketoo v. Administrators of Tulane Educational Fund*, 31 F.4th 990 (5th Cir. April 21, 2022).

As to the fifth element, Plaintiff has presented evidence that she reported instances of harassment based on sex to HR. In 2012, Plaintiff reported Les Miles's sexual harassment of her and others to Miriam Segar.[141] She reported Frank Wilson's sexual harassment of her to Yael Lofton.[142] In 2014, Plaintiff reported Ausberry's harassment of her to Segar.[143] In 2019, Plaintiff submitted detailed accounts of sexual harassment by Miles, Wilson, and Ausberry to HR.[144] Wilson was rehired by the Board in December 2021.[145] Plaintiff claims the rehiring of Wilson following her complaints, and the Board's ongoing "protection" of "Wilson from a Title IX investigation," indicate the Board failed to take prompt remedial action following their knowledge of the harassment. Accordingly, the Court finds Plaintiff has introduced sufficient evidence for a reasonable jury to find she established the fifth element of her hostile work environment claim on the basis of sex.

Thus, the question before the Court with regard to Plaintiff's claim of a hostile work environment based on sex discrimination is whether Plaintiff can establish the fourth element of her claim. In other words, was the alleged conduct was objectively offensive, or sufficiently severe and pervasive to constitute a harassment? As with Plaintiff's claim of a racially hostile work environment, it is an undisputed fact that Plaintiff's allegations of sexual harassment by Miles and Wilson prior to 2016 fall outside the Title VII statutory time period.[146] As discussed above, the Fifth Circuit has found that a "three-year break"

---

[141] R. Doc. 302-6 at p. 1.
[142] R. Doc. 405-14 at p. 2.
[143] R. Doc. 295-10.
[144] R. Doc. 405-9.
[145] R. Doc. 424-15 at ¶ 28.
[146] Unless the continuing violation theory applies, the statutory time period for EEOC claims is within 300 days of the EEOC charge. (*Kirkland v. Big Lots Store, Inc.*, 547 F. App'x 570, 572 (5th Cir. 2013)). In this case, that would be any conduct occurring after June 19, 2020 since Plaintiff filed her EEOC charge on April 21, 2021. (R. Doc. 219-8).

between incidents will defeat any attempt to establish a continuing violation."[147] Because of the more than three-year gap between the incidents of harassment, the Court finds the continuing violation doctrine does not apply to incidents of harassment that occurred in 2016 or before.[148]  As such, when determining whether Plaintiff was subject to a hostile work environment based on her sex, the Court considers only 1) the claim that Ausberry repeatedly screamed at Plaintiff from 2012-2021; 2) Ausberry's 2020 comment that Plaintiff was an "angry black woman"; and 3) the rehiring of Frank Wilson.

Regarding the claim that Ausberry subjected Plaintiff to a hostile work environment by repeatedly "hollering" and "screaming" at Plaintiff, the Board argues "Plaintiff failed to offer any evidence that he did so based on a protected trait and, instead, admitted Ausberry got along well with other black females."[149] Plaintiff alleged Ausberry subjected her to "pervasive hostile working environment ... because of her gender" between 2012 and 2021.[150] While Plaintiff has not offered evidence of the specific content of Ausberry's yelling, the totality of the evidence shows there exists a genuine issue of material fact as to whether Ausberry's conduct was based on Plaintiff's gender.

Moreover, Ausberry referred to Plaintiff as an "angry Black woman" in 2020, which supports Plaintiff's claim that Ausberry subjected her to a hostile work environment based on her sex. Accordingly, Plaintiff has carried her burden of demonstrating the existence of genuine disputes of material fact precluding the entry of summary judgment on her Title VII hostile work environment claim on the basis of sex.

---

[147] R. Doc. 424-14 at p. 24 (citing *Butler*, 111 F. App'x at 234).
[148] *See Butler*, 111 F. App'x at 234.
[149] R. Doc. 444 at p. 10.
[150] R. Doc. 432 at p. 25.

**C.    Plaintiff's claims for race and sex discrimination.**

A plaintiff may use either direct or circumstantial evidence to prove a case of intentional discrimination on the basis of race or sex under Title VII.[151] "Direct evidence is evidence which, if believed, proves the fact [of intentional discrimination] without inference or presumption."[152] If a plaintiff presents direct evidence, the *McDonnell Douglas* test does not apply.[153] More often, a plaintiff relies on circumstantial evidence, which requires the court to apply the *McDonnell Douglas* burden-shifting analysis.[154] Under the *McDonnell Douglas* test, the plaintiff must first demonstrate a prima facie case of discrimination.[155] If successful, the burden of production shifts to the defendant to show a legitimate and nondiscriminatory basis for the adverse employment decisions.[156] Finally, the plaintiff must then show the defendant's proffered reason is pretextual or unworthy of belief.[157]

Where a plaintiff presents "direct evidence that the employer placed substantial, though unquantifiable, reliance on a forbidden factor in making the employment decision … it is appropriate to require the defendant … to show that its decision would have been justified by wholly legitimate concerns."[158] In other words, in such a case, the burden shifts to the defendant to show legitimate reasons for the employment action once direct evidence of discrimination is produced. In the Civil Rights Act of 1991, Congress modified the *Price Waterhouse* rule by creating liability where direct evidence of discrimination exists, even if the employer can prove other factors motivated the adverse employment

---

[151] *U.S. Postal Service Bd. Of Governors v. Aikens*, 460 U.S. 711, 714 n. 3 (1983).
[152] *Brown v. East Miss. Elec. Power Ass'n,* 989 F.2d 858, 861 (1993).
[153] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)
[154] *Smith v. Touro Infirmary,* 2015 WL 5093487 at *2 (E.D. La. Aug. 28, 2015) (applying *McDonnell Douglas* analysis to determine motion for summary judgment).
[155] *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1087 (5th Cir. 1994) (applying *McDonnell Douglas* test).
[156] *Id.*
[157] *Id.*
[158] *Price Waterhouse v. Hopkins*, 490 U.S. 228, 231 (1989).

action.[159] That is to say, the other motivating factors now mitigate damages, but do not preclude liability.

In this case, Plaintiff presented evidence that Ausberry called her an "angry Black woman" in 2020.[160] While this comment implicates both Plaintiff's race and sex, it does not, by itself, indicate that Plaintiff's employer placed substantial reliance on a forbidden factor in making an employment decision. Therefore, it cannot be considered direct evidence of discrimination and the *McDonnell Douglas* burden-shifting analysis applies.[161]

The *McDonnell Douglas* framework applicable to Title VII claims of discrimination requires Plaintiff to produce evidence to establish a prima facie case of discrimination by showing that she (1) was in a protected class, (2) was qualified for the position, (3) suffered an adverse employment action, and (4) was treated less favorably than similarly situated employees outside of her protected class.[162]

It is undisputed that, as an African American woman, Plaintiff is a member of a protected class on the basis of both her race and her sex.[163] Plaintiff has identified two adverse employment actions: 1) Plaintiff was terminated on January 5, 2022;[164] and 2) Plaintiff was promoted without an increase in compensation in August 2020.[165] The Fifth Circuit has recognized denials of pay increases can be adverse employment actions under Title VII.[166]

---

[159] *Garcia v. City of Houston*, 201 F.3d 672, 676 (5th Cir. 2000); *see also* 42 U.S.C. § 2000e–2(m); *Buchanan v. City of San Antonio*, 85 F.3d 196, 200 (5th Cir.1990).
[160] Lewis Depo. at p. 618.
[161] *Smith v. Touro Infirmary,* 2015 WL 5093487 at *2 (E.D. La. Aug. 28, 2015) (applying *McDonnell Douglas* analysis to determine motion for summary judgment).
[162] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).
[163] R. Doc. 424-15 at ¶ 1.
[164] R. Doc. 424-15 at ¶ 33. Termination is considered an "adverse employment action" under Title VII *(see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006)).
[165] Lewis Depo. at pp. 129-130.
[166] *Fierros v. Texas Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001).

**1.    There are genuine issues of material fact as to Plaintiff's claim of sex and race discrimination in relation to her termination.**

As to the fourth element of the prima facie case for discrimination related to Plaintiff's termination, the Board claims nearly 40 employees were terminated at the same time as Plaintiff, when Brian Kelly arrived at LSU.[167] "Of those terminated, many were men, and many were White, negating that [Plaintiff's] race or sex played a role in the termination."[168] Plaintiff, meanwhile, maintains that her termination would not have occurred but for her protected class identities.[169] Moreover, Plaintiff's claim that she has "few peers if any in the SEC" introduces a genuine issue of material fact as to whether any of the nearly 40 persons terminated at the same time were "similarly situated" with Plaintiff.[170]

The Board argues, even if Plaintiff could demonstrate a prima facie case of discrimination based on her termination, the Board could show a nondiscriminatory and legitimate basis for the action, since "[s]taff turnover as a result of a coaching change is a legitimate reason for Plaintiff's termination."[171]

Once Defendant produces a "legitimate, nondiscriminatory and nonretaliatory reason, the burden shifts to Plaintiff to show that [Defendant's] reasons were pretextual."[172] Plaintiff offers several arguments for why the Board's reason was pretextual. First, Plaintiff provides evidence that it was not Kelly, but Scott Woodward, who signed her termination letter.[173] Woodward was aware of Plaintiff's reports of sexual

---

[167] R. Doc. 424-14 at p. 11.
[168] *Id.* at p. 21 (citing Nall Decl. ¶6).
[169] R. Doc. 432 at pp. 11-12.
[170] *Id.* at p. 16 (citing R. Doc. 405-4 at pp. 70-71).
[171] *Id.*
[172] *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).
[173] R. Doc. 421-4.

24

harassment and her EEOC charge.[174] Next, Plaintiff argues she was terminated at the time her reported sexual harasser, Frank Wilson was rehired, and the Board "continue[s] to protect Wilson from a Title IX investigation."[175] Plaintiff further claims Ausberry referred to her as an "angry black woman,"[176] and was otherwise hostile to her on the basis of her race and sex in the months leading up to termination.[177] Ausberry and Woodward were close personal friends.[178] Moreover, even if the Board can prove other, legitimate factors motivated the adverse employment action, if Plaintiff can establish that the decision was in-part motivated by prohibited discrimination, the Board still will be liable.[179]

The jury must weigh the credibility of the evidence presented by Plaintiff and the Board to resolve the factual disputes relating to whether the reason given for her termination was pretextual. If Plaintiff's position is proven, a reasonably jury could infer discrimination was at least a partial motive for Plaintiff's termination. Accordingly, there are genuine issues of material fact as to the reasons for Plaintiff's termination and whether the decision was based in full or in part on Plaintiff's membership in a protected class.

**2. There are genuine issues of material fact as to Plaintiff's claim of sex and race discrimination in relation to her promotion without salary increase.**

As discussed above, Plaintiff has established she is a member of a protected class and suffered an adverse employment action by being promoted without an increase in pay, thereby establishing the first and third elements of the prima facie case for

---

[174] Woodward Depo. pp. 66-67, 82-84.
[175] R. Doc. 432 at p. 25.
[176] *Id.* at p. 19.
[177] *Id.* at p. 24.
[178] R. Doc. 432 at p. 18. Woodward described the two as close personal friends (Woodward Depo. at p. 14); Ausberry referred to Woodward as "my boy."
[179] *Garcia v. City of Houston*, 201 F.3d 672, 676 (5th Cir. 2000); *see also* 42 U.S.C. § 2000e–2(m); *Buchanan v. City of San Antonio*, 85 F.3d 196, 200 (5th Cir.1990).

discrimination related to Plaintiff's promotion without an increase in salary.[180] As to the second and fourth elements, the Board argues:

> Plaintiff cannot establish that she was treated worse than any similarly situated employees based on her race or gender. ... At the time of her leave, the comparative data shows Plaintiff was one of the highest-paid persons in her job title. Of the nine employees occupying the position of Associate Athletic Director, Plaintiff was the fourth highest-paid. The third highest-paid person was also a Black female, negating her suggestion of race and gender discrimination.[181]

In response, Plaintiff claims that Dr. LaKeitha Poole and Andrea Tape, who were also promoted in in August 2020, received salary increases with their promotions.[182] Plaintiff further argues Ausberry's salary was doubled when he was promoted in 2019.[183] Moreover, Plaintiff asserts she "has few peers if any in the SEC," making it difficult to draw comparisons between similarly situated employees.[184] Plaintiff claims she approached Ausberry in November and December 2020 about her lack of salary increase and Ausberry told Plaintiff "she would never be promoted because she used Title IX too much and had reported him."[185]

Plaintiff's claim that she has "few peers if any in the SEC" introduces a genuine issue of material fact as to whether others with her job title were truly similarly situated. Ausberry's response to Plaintiff's inquiry about the lack of salary increase also raises a genuine issue of material fact regarding her treatment in comparison to others who were similarly situated. The jury must weigh the credibility of the evidence presented by Plaintiff and the Board to resolve the factual disputes relating to whether Plaintiff can establish a claim of discrimination related to her promotion without salary increase.

---

[180] *See* Section C, *supra*, pp. 22-23.
[181] R. Doc. 424-14 at p. 22.
[182] R. Doc. 432 at 7 (citing Lewis Affidavit at ¶ 3).
[183] *Id.* at p. 17.
[184] *Id.* at pp. 16-17.
[185] R. Doc. 432 at p. 18.

Accordingly, the Board's motion for summary judgment must be denied on Plaintiff's claims of sex and race discrimination under Title VII.

### CONCLUSION

The Board's Motion for Summary Judgment on Plaintiff's Title IX and Title VII claims is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS ORDERED** that judgment be entered in favor of the Board as to Plaintiff's Title VII hostile work environment claim on the basis of race.

**IT IS FURTHER ORDERED** that the Board's motion for summary judgment is **DENIED** as to all other claims.

**New Orleans, Louisiana, this 1st day of December, 2023.**

_____

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**