UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

SHARON LEWIS,  			CIVIL ACTION
    Plaintiff

VERSUS  				NO. 21-198-SM-RLB

BOARD OF SUPERVISORS OF LOUISIANA
STATE UNIVERSITY AND AGRICULTURAL
AND MECHANICAL COLLEGE,
    Defendant

### ORDER

Before the Court is a Memorandum Regarding Defendant's Objections to Plaintiff's Trial Exhibits filed by Defendant Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board").[1] The Board objects to 16 categories of exhibits encompassing 55 exhibits in total. Plaintiff has filed a memorandum in opposition.[2] The Court rules on each below.

### Exhibit No. 100

The Board objects to Exhibit No. 100 as offered by Plaintiff. The document is described as an "LSU Athletic Department Agreed upon Procedures Report." The Board objects on hearsay, relevance, and authenticity grounds.[3] In response, "Plaintiff agrees with [the] Board['s] objection and will not offer at trial."[4] Accordingly, the objection is **OVERRULED AS MOOT.**

---

[1] R. Doc. 516.
[2] R. Doc. 518.
[3] R. Doc. 516 at pp. 1–2.
[4] R. Doc. 518 at p 1.

1

**Exhibit Nos. 101, 105**

The Board objects to Exhibits 101 and 105 "on the grounds of relevance and unfair prejudice."[5] Exhibit 101 is described as "United States Department of Education Office of Civil Rights 'Questions and Answers on the Title IX Regulations on Sexual Harassment' (July 2021) (Updated June 28, 2022)." The Board describes this exhibit as a guidance document created by the Department of Education in July 2021 and updated in June 2022.[6] Exhibit 105 is described as "LSU Mandatory Reporter Guide." The Board represents this guide was created in 2021. The Board objects to both exhibits and to the highlighting on Exhibit 105 added by the Plaintiff.[7] Plaintiff argues that both documents are relevant to show the duty of the Board and its members under Title IX regulations and further argues that this evidence "may be critical for the jury's assessment of whether a given employer,"—in this case, the Board—was more likely than not to have acted from an unlawful motive."[8]

The Court will instruct the jury on the law applicable to this case. The use of guides issued by other sources would be confusing.[9] The Board's objection is **SUSTAINED.** Provided, in the event witnesses deny they were required to report sexual misconduct under LSU policy, the Plaintiff may request that the Court reconsider this ruling and allow Exhibit 105 to be introduced as an exhibit and used in questioning witnesses.

---

[5] R. Doc. 516 at p. 2.
[6] *Id.*
[7] *Id.*
[8] R. Doc. 518 at p. 2.
[9] Fed. R. Evid. 403.

**Exhibit No. 102**

The Board objects to Exhibit 102 as offered by Plaintiff "on grounds of relevance."[10] Exhibit 102 is described as "[Frequently Asked Questions] for PM-73 at LSU." The Board points out the document was issued in 2018, so it can relate only to plaintiff's prescribed claim of a retaliatory Title IX investigation related to Plaintiff's failure to report.[11] The Board further argues this exhibit would only confuse the jury because it does not pertain to the determination of whether Plaintiff engaged in protected Title IX activity. The Board also argues the exhibit lacks a foundation under Federal Rule of Evidence 901.[12] In response, Plaintiff argues the document is "relevant to show the policies in place when Plaintiff reported" Title IX violations within the LSU athletics department.[13]

PM-73 is unobjected-to Exhibit 4. Presumably, Exhibit 102 is based on the information contained in PM-73. Exhibit 102 is, in effect, duplicative. The best evidence of the policy is the policy adopted by the Board, which is PM-73. In addition, Exhibit 102 lacks a foundation because it is unclear who prepared it and whether it is part of an officially adopted policy.[14] The Board's objection is **SUSTAINED.**[15]

**Exhibit Nos. 103, 104, 108, 110**

The Board objects to Exhibits 103, 104, 108, and 110 "on grounds of relevance and unfair prejudice" because these documents relate to the Title IX response by LSU and its efforts to make changes to the Title IX system for students, and Plaintiff has not made a

---

[10] R. Doc. 516 at p.2.
[11] *Id.* at pp. 2–3.
[12] *Id.*
[13] R. Doc. 518 at p. 2.
[14] *See* Fed. R. Evid. 901(a).
[15] *See* Fed. R. Evid. 403.

3

claim arising out of LSU's compliance with Title IX as to students.[16] The Board also argues that Exhibits 103 and 110, which contain highlighting, are "neither authentic nor appropriate and should be reserved for demonstratives."[17] Exhibit 103 is described as "Galligan Action Plan." Exhibit 104 is described as "March 5, 2021 Thomas Galligan to the entire LSU Community." Exhibit 108 is described as "March 2021 A Letter from Athletics Director Scott Woodward: Husch Blackwell Report." Exhibit 110 is described as "March 5, 2021 MINUTES LSU Board of Supervisors MEETING," with the Husch Blackwell report dated March 3, 2021, attached. In response, Plaintiff argues that Exhibits 103 and 104 are relevant to show the "mandatory reporting requirements in place when the Board and LSU officials became aware [of] the allegations of sexual misconduct against Frank Wilson in 2021."[18] Plaintiff further argues Exhibits 108 and 110 are relevant as evidence of the "working environment in [the] athletics department" for Plaintiff and her Title IX retaliation claims.[19]

The Court finds these exhibits to relevant and not unfairly prejudicial.[20] Plaintiff is required to remove any highlighting from the exhibits before use. The Board's objections are **OVERRULED.**

**Exhibit No. 106**

The Board objects to Exhibit 106 as offered by Plaintiff "on the grounds of relevance, unfair prejudice, and lack of foundation."[21] The Board correctly describes Exhibit 106 as "the Southern Association of Colleges and Schools Commission on Colleges

---

[16] R. Doc. 516 at p. 3.
[17] *Id.*
[18] R. Doc. 518 at p. 2.
[19] R. Doc. 518 at p. 2.
[20] Fed. R. Evid. 403.
[21] R. Doc. 516 at p. 3.

4

('SACSCOC') Standard 5.2.b."[22] The Board emphasizes it believes "SACSCOC Standard 5.2.b does not have any relevance [to] this issue."[23] In response, Plaintiff argues Standard 5.2.b "is relevant to the disputed issue of material fact as to who ordered Plaintiff's termination."[24]

As the Board notes, Standard 5.2.b was the subject of its prior Motion in Limine No. 6, which the Court granted in part and denied in part.[25] As the Court wrote, "SACSCOS Standard 5.2.b may have some relevance to the disputed issue of material fact as to who ordered Plaintiff's termination,"[26] and that relevance is not outweighed by the risk of unfair prejudice. Accordingly, the Board's objection to Exhibit 106 on relevance and unfair prejudice grounds is **OVERRULED.**

**Exhibit No. 107**

The Board objects to Exhibit 107 as offered by Plaintiff.[27] The document is described as "March 7, 2022 NCAA Notice of Allegations to the President of Louisiana State University." The Board objects on relevance and undue prejudice grounds. In response, "Plaintiff agrees with the Board['s] objections" and concedes the exhibit "will not be offered at trial."[28] Accordingly, the objection is **OVERRULED AS MOOT.**

**Exhibit No. 109**

The Board objects to Exhibit 109 as offered by Plaintiff "on the grounds of

---

[22] *Id.* at p. 4.
[23] *Id.*
[24] R. Doc. 518 at p. 3.
[25] R. Doc. 507 at pp. 7–8.
[26] *Id.* at p. 8.
[27] R. Doc. 516 at p. 4.
[28] R. Doc. 518.

5

relevance and unfair prejudice."[29] Document 109 is described as "Louisiana State University Board of Supervisors Rules and Regulations *Effective September 13, 2021*." In response, Plaintiff argues "Exhibit 109 is relevant to show the Board['s] fiduciary [duty] to . . . implement Title IX policies."[30]

The Plaintiff has made no claims against the Board based on a violation of Board members' fiduciary duties. The exhibit is irrelevant.[31] The Board's objection is **SUSTAINED.**

**Exhibit Nos. 111–126: Alleged Concealment**

The Board objects to Exhibits 111–126 "on grounds of relevance, hearsay, unfair prejudice, and lack of foundation."[32] The exhibits, generally described, are emails, communications, and memos among the Board, its Taylor Porter attorneys, counsel for Les Miles, and other counsel in the wake of allegations of sexual misbehavior against Les Miles. As the Board acknowledges, the Court already has ruled in its Order and Reasons on the Board' Motion in Limine No. 3 the documents are relevant and the risk of prejudice with respect to such "concealment" evidence does not exceed its probative value.[33] Indeed, Plaintiff responds that the exhibits are relevant for the purposes mentioned in that Order and Reasons.[34]

As the Court noted in its rulings on several motions in limine,[35] in an employment discrimination case, relevant evidence "typically includes unflattering testimony about

---

[29] R. Doc. 516 at p. 4.
[30] R. Doc. 518 at p. 4.
[31] Fed. R. Evid. 401.
[32] R. Doc. 516 at p. 5.
[33] R. Doc. 509. Plaintiff may not refer to "crime-fraud," the rulings of this Court or the Fifth Circuit, or describe the documents as being "concealed."
[34] R. Doc. 518 at p. 4.
[35] *See, e.g.*, R. Docs. 508, 509.

6

the employer's history," which is evidence that "in other kinds of cases may well unfairly prejudice the jury against the defendant."[36] Yet in these cases, "such background evidence may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive."[37] Indeed, a "plaintiff's ability to prove discrimination"—or retaliation—"indirectly, circumstantially, must not be crippled by evidentiary rulings that keep out probative evidence because of crabbed notions of relevance or excessive mistrust of juries."[38] Accordingly, the Court finds the exhibits relating to the alleged misconduct by Les Miles and the investigation of that misconduct are relevant and their relevance is not outweighed by the risk of undue prejudice.

As to its objections on hearsay and authenticity grounds, the Board stipulates to authenticity of several of the exhibits in this category.[39] The other exhibits in this category, if properly authenticated, may be admitted as business records.[40] The Court reserves further rulings on hearsay and authenticity grounds until the exhibits are introduced at trial. Accordingly, the objection is **OVERRULED** as to relevance and unfair prejudice grounds. The Court defers until trial its ruling on hearsay and lack of foundation.

**Exhibit Nos. 127, 141–153**

The Board objects to Exhibits 127, and 141–153 "on grounds of relevance, hearsay, and unfair prejudice."[41] The Board correctly points out that "these documents pertain to certain testimony before and statements submitted to the Louisiana Senate Select

---

[36] *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1103 (8th Cir. 1988).
[37] *Id.*
[38] *Riordan v. Kempiners*, 831 F.2d 690, 698 (7th Cir. 1987).
[39] The Board stipulates to the authenticity of Exhibits 111, 114, 117, and 125.
[40] Fed. R. Evid. 803(6).
[41] R. Doc. 516 at p. 6.

7

Committee for Women and Children [the "Committee"]."[42] Plaintiff responds that the "exhibits are collectively relevant" for the reasons detailed in this Court's Order and Reasons with respect to the Board's Motion in Limine No. 5: To Exclude Evidence, Argument, and Testimony Regarding Proceedings Before the Senate Having No Relationship to Plaintiff's Claims.[43]

As detailed in the Order and Reasons on the Board's Motion in Limine No. 5, the Court finds the Committee Evidence is relevant. This evidence, collectively, includes Board members' statements to the Committee upon its inquiry into the handling of Title IX complaints by LSU after the release of the Husch Blackwell Report. The Board members' representations as to the university's Title IX policies and compliance are relevant to Plaintiff's Title IX claims.[44] Similarly, the court has already ruled that evidence and testimony concerning the Les Miles investigation is relevant.[45] For the same reasons, the Court finds that the Committee Evidence's relevance is not outweighed by risk of undue prejudice.[46] Further, the vast majority of the exhibits are not hearsay. Statements, like those in these exhibits, offered against an opposing party are not hearsay when those statements are "made by the party's agent or employee on a matter within the scope of that relationship and while it existed."[47] The Board members made statements to the Committee as agents of the Board, within the scope of that relationship, at the time the relationship existed. Accordingly, the Board's objections to Exhibits 127, 141–144, and 146–153 are **OVERRULED.** Exhibit 145 is a video clip of the Committee discussing the

---

[42] *Id.*
[43] R. Doc. 508.
[44] *See* Fed. R. Evid. 401.
[45] *See* R. Doc. 509 at p. 6 (Plaintiff is "permitted to inquire as to the facts surrounding Miles's conduct, the investigation, the public records request, and where the related documents were held").
[46] Plaintiff's use of this evidence is limited in accordance with this Court's other rulings on motions in limine. *See id.*
[47] *See* Fed. R. Evid. 801(d)(2)(D).

letter from Stanley Jacobs. No member of the Committee is listed as a witness by either party. The video may be admitted as a record of a regularly conducted activity,[48] but Plaintiff must authenticate the record pursuant to Federal Rule of Evidence 803(6)(D). The Court defers ruling on Exhibit 145.

**Exhibit Nos. 128, 129**

The Board objects to Exhibits 128 and 129 on "grounds of relevance."[49] Exhibit 128 is described as "Sharon Lewis PM-73 Investigation File" and Exhibit 129 is described as "2014 Segar Note Lewis Complaint Ausberry." The Board argues that Exhibit 128 "contains documents with no relevance, as they arise out of Plaintiff's prescribed complaints regarding a retaliatory PM-73 investigation." The Board argues that Exhibit 129, a complaint by Plaintiff against a coworker, "is not at issue in this lawsuit."[50] Plaintiff argues that both are relevant as "evidence of discriminatory or retaliatory atmosphere regarding Plaintiff's remaining Title IX and/or Title VII claims."[51]

The Court finds these exhibits have some relevance to the issues to be placed before the jury, and the probative value is not substantially outweighed by the risk of undue prejudice.[52] The other employee's name may be redacted from Exhibit 129. The Board's objections to Exhibits 128 and 129 are **OVERRULED.**

**Exhibit Nos. 130, 132, 133**

The Board objects to Exhibits 130, 132, and 133 on "grounds of unfair prejudice,

---

[48] Fed. R. Evid. 803(6).
[49] R. Doc. 516 at p. 7.
[50] R. Doc. 516 at p. 7.
[51] R. Doc. 518 at p. 4.
[52] Fed. R. Evid. 403.

9

lack of foundation, and hearsay."[53] Collectively, the exhibits are described as text messages among Sharon Lewis, Miriam Seager, and Nikole Jessie.[54] The Board correctly describes the exhibits as "*photos* of text messages" and raises concerns about authenticity, context, and hearsay.[55] In response, Plaintiff argues that the text messages are probative of "[w]hether Frank Wilson's past harassment of Plaintiff was known" to those who may have terminated Plaintiff, and thus relevant to her retaliation and discrimination claims.[56] Plaintiff does not address the Board's authenticity or hearsay arguments.

The text messages are relevant and their probative value is not substantially outweighed by the risk of unfair prejudice with respect to Exhibits 130 and 133, assuming the author or recipient of each text message is able to authenticate it. Any probative value of Exhibit 132 is substantially outweighed by the risk of unfair prejudice.[57] The Board's objection is **OVERRULED** as to Exhibits 130 and 133 and **SUSTAINED** as to Exhibit 132.

**Exhibit No. 131**

The Board objects to Exhibit 131 on the grounds that it is "inadmissible character evidence" attempting to show that "Winston DeCuir, LSU's general counsel, possessed a particular character trait, namely, that he was discriminatory towards women."[58] The exhibit is described as "Jennifer Stewart text message to Jeffrey Scott about Winston DeCuir." In response, "Plaintiff agrees with [the] Board's objection and will not offer"[59]

---

[53] R. Doc. 516 at p. 7.
[54] Ms. Jessie's name was previously not revealed at Plaintiff's request, but Plaintiff has used Ms. Jessie's full name in her recent pleadings.
[55] R. Doc. 516 at p. 7 (emphasis in original).
[56] R. Doc. 518 at p. 5.
[57] Fed. R. Evid. 403.
[58] R. Doc. 516 at p. 7.
[59] R. Doc. 518 at p. 5.

10

the exhibit at trial. Accordingly, the objection is **OVERRULED AS MOOT.**

**Exhibit No. 134**

The Board objects to Exhibit 134 "on grounds of relevance."[60] The exhibit is described as "Sharon Lewis [EEOC] Right to Sue Letter." The Board argues that "Plaintiff's Title VII retaliation claim is unrelated" to receipt of the letter because such receipt "is not protected activity and is not probative of any substantive fact or issue in this case."[61] The Board further argues that because there is no probative value to the letter, the letter is a source of undue prejudice.[62] In response, Plaintiff offers that the "[e]xhibit is relevant to show the [causal] connection to Plaintiff['s] termination and filing of her EEOC complaint."[63]

The Right to Sue Letter, issued long after the EEOC received Plaintiff's complaint, is not probative of the timing of the *filing* of Plaintiff's EEOC complaint. Further, the presentation of such a letter to a jury may unduly prejudice the Board by confusing the jury as to the significance of the letter; the letter essentially serves as notice that a complainant has exhausted her administrative remedies and may now turn to the courts. Plaintiff may use other evidence to show a causal connection between her termination and the *filing* of her complaint, but the Court finds that any limited probative value of Exhibit 134 is substantially outweighed by the danger of unfair prejudice and confusion.[64] The Board's objection is **SUSTAINED.**

---

[60] R. Doc. 516 at p. 8.
[61] *Id.*
[62] *Id.*
[63] R. Doc. 518 at p. 5.
[64] Fed. R. Evid. 403.

**Exhibit Nos. 135, 136**

The Board objects to Exhibits 135 and 136 "on the grounds of undue delay, wasting time, and needlessly presenting cumulative evidence."[65] The exhibits are described as "Frank Wilson Background Report [from] Watchdog Strategies" and "Frank Wilson Employment Contract." The Board argues that it is undisputed "Wilson was rehired as an assistant football coach in December of 2021," so any evidence to show this fact is cumulative, and "[t]o the extent [his contract] is being relied upon for any other reason . . . it is irrelevant."[66] The Board further argues that if "the background report is being offered to show that LSU had knowledge of" the complaints against Wilson, it is cumulative, because, the Board argues, LSU would have known about the allegations from Lewis's complaint in this matter, filed "before the background check was conducted and before Wilson was rehired."[67] In response, Plaintiff argues that the background check is relevant to show "whether Frank Wilson's past harassment of Plaintiff was known to the individual(s) who terminated Plaintiff" and, "to the extent Plaintiff's reporting of said harassment was causally connected to her termination, the evidence is probative and not unfairly prejudicial."[68] Plaintiff further argues that Wilson's employment contract is relevant to show it "contained a moral clause."[69] Plaintiff argues that if the Board knew of the allegations against Wilson and nevertheless "continued to employ him," the contract may thus be relevant to showing the Board's "motive and intent."[70]

The Court adopts its prior reasoning as to evidence and testimony regarding Frank

---

[65] R. Doc. 516 at p. 8.
[66] *Id.* at pp. 8–9.
[67] *Id.* at p. 9.
[68] R. Doc. 518 at p. 5.
[69] *Id.*
[70] *Id.*

12

Wilson.[71] The Court ruled there is a genuine issue of material fact as to who ordered Plaintiff's termination and why.[72] To the extent Wilson's past harassment of Plaintiff was known to the individual(s) who terminated Plaintiff and to the extent Plaintiff's reporting of said harassment was causally connected to her termination, the evidence is probative and not unfairly prejudicial. Further, Plaintiff has argued Wilson's rehiring evinces sexual discrimination and/or retaliation on the part of the decisionmaker(s) who were aware of Plaintiff's allegations of sexual harassment against Wilson and nonetheless rehired him.[73] As such, evidence regarding the rehiring of Wilson is relevant to Plaintiff's remaining claims for Title VII sex discrimination and hostile work environment and/or Title IX retaliation. The Board's objections to Exhibits 135 and 136 are **OVERRULED.**

**Exhibit Nos. 137, 138, 139, 140: Declarations and Out of Court Statements**

The Board objects to Exhibits 137–140 as "inadmissible hearsay."[74] The Board further objects to Exhibit 140 "as it was not disclosed in the Pretrial Order and should be excluded for that reason alone."[75] The exhibits are described as follows: Exhibit 137 is "Brian Kelly Declaration"; Exhibit 138 is "Stephanie Rempe Declaration"; Exhibit 139 is "Mary Leach Werner Statement to the Louisiana State Senate"; Exhibit 140 is "William F. Tate Declaration." In response, Plaintiff addressees the relevance of each of the exhibits, but does not address the Board's argument that the exhibits are hearsay.

The Board's objection to Exhibit 140 is **SUSTAINED** as the exhibit was not included in the pretrial order as required.[76]

---

[71] *See* R. Doc. 507 at pp. 5–7.
[72] R. Doc. 501 at p. 8.
[73] *See, e.g.*, R. Doc. 432 at p. 25.
[74] R. Doc. 516 at p. 9.
[75] *Id.*
[76] *See* R. Doc. 528; R. Doc. 468-1 at p. 4.

13

The Board's objections on hearsay grounds as to Exhibits 137, 138, and 139 are **OVERRULED** because the exhibits are not hearsay. As to Exhibits 137 and 138, the respective sworn declarations of Brian Kelly and Stephanie Rempe, Federal Rule of Evidence 801(d)(2)(B) plainly provides that a statement is not hearsay if the statement is (1) offered against an opposing party and (2) is one the party manifested that it adopted or believed to be true.[77] Plaintiff offers the declarations against the Board in support of her case, and the Board manifested its belief in the truth of the declarations when it filed them into the record and offered them as true statements in support of its motion for summary judgment.[78] As to Exhibit 139, the statement of Mary Leach Werner, the Court again notes[79] that statements offered against an opposing party are not hearsay when those statements are "made by the party's agent or employee on a matter within the scope of that relationship and while it existed."[80] Werner made this statement to the Louisiana State Senate as an agent of the Board, within the scope of that relationship, at the time the relationship existed. The Board's objections are overruled.

**Exhibit No. 154**

The Board objects to Exhibit No. 154 "as inadmissible character evidence" under Federal Rule of Evidence 404. The board also objects on relevance and undue prejudice grounds.[81] The exhibit is described as "LSU video of Frank Wilson discussing Black History Month after [LSU] became aware of the allegations of Frank Wilson's sexual misconduct." In response, "Plaintiff agrees with [the] Board['s] objections" and concedes

---

[77] Fed. R. Evid. 801(d)(2)(B).
[78] *See, e.g.*, R. Doc. 424-14 at pp. 2, 4, 5, 10, 10 n.18, 11, 12, 19.
[79] *See* R. Doc. 508.
[80] Fed R. Evid. 801(d)(2)(D).
[81] R. Doc. 516 at p. 9.

14

the exhibit "will not be offered at trial."[82] Accordingly, the objection is **OVERRULED AS MOOT.**

New Orleans, Louisiana, this 10th day of December, 2023.[83]

*Susie Morgan*
_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[82] R. Doc. 518 at p. 6.
[83] The parties are reminded that (in the absence of a stipulation) all exhibits must be authenticated or identified in accordance with Federal Rule of Evidence 901.