SHARON LEWIS                                    Civil Action No: 21-198-SM-RLB

Plaintiff

V.                                              JUDGE SUSIE MORGAN

BOARD OF SUPERVISORS OF LOUISIANA               MAGISTRATE JUDGE RICHARD
STATE UNIVERSITY AND                            L. BOURGEOIS
AGRICULTURAL AND MECHANICAL
COLLEGE,
 Defendant

## MOTION TO LEAVE TO FILE
## CORRECTED COPY R. DOC. 555-1

**NOW INTO COURT**, through undersigned counsel, come Plaintiff , Sharon Lewis, and

files a motion to leave to file a corrected copy of R. Doc. 555-1. The corrections are as follows:

1. Page 15 First paragraph stated:

"Although, Kelly stated he eliminated Plaintiff position,  he never confirmed his

statement in his deposition that he did not terminate Plaintiff. **Id. pp. 25, 27-28.** "

Corrected to:

"Although, Kelly stated he eliminated Plaintiff position,  he never confirmed his statement in

his deposition **that he eliminated Plaintiff's position**. **Id. pp. 25, 27-28.** "

Respectfully submitted this 18th day of January 2024.

2. Page 19 First paragraph stated:

'The uncontradicted and unimpeached evidence is so strong in Plaintiff's favor

reasonable jurors could only have found Plaintiff was terminated for filing an EEOC

complaint."

Corrected to:

"The uncontradicted and unimpeached evidence is so strong in Plaintiff's favor

reasonable jurors could only have found Plaintiff  **received no pay increase** for filing

an EEOC complaint. "

The only other changes were typos and formatting.

Respectfully submitted:

*/s/ Larry English*
Larry English, LSB No. 22772
LARRY ENGLISH, ATTORNEY AT LAW
423 W. 127 Street, 7th Floor
New York, New York 10027
917-531-3909
Englishlaw2008@gmail.com

/s/Albert Van-Lare
Albert Van-Lare
125 Maiden Lane, Suite 510
New York, NY 10038
(212) 608 – 1400
vanlareesq@aol.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served on all counsel of record

using the Court's CM/ECF system on January 18, 2024.

*/s/ Larry English*

SHARON LEWIS                    Civil Action No: 21-198-SM-RLB

Plaintiff

V.                              JUDGE SUSIE MORGAN

BOARD OF SUPERVISORS OF LOUISIANA    MAGISTRATE JUDGE RICHARD
STATE UNIVERSITY AND                L. BOURGEOIS
AGRICULTURAL AND MECHANICAL
COLLEGE,
 Defendant

### PLAINTIFF'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF HER RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, A NEW TRIAL MAY IT PLEASE THE COURT:

COME NOW, Plaintiff, Sharon Lewis, by and through counsel, and files her Memorandum of Authorities in Support of her Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial, and would show unto the Court as follows:

### INTRODUCTION

This matter arises out of Plaintiff Sharon Lewis' allegation the Louisiana State University Board of Supervisors (Defendant) subjected her to Title IX retaliation for reporting Les Miles in 2012 and 2013 and reporting Frank Wilson in 2019 for sexually harassing Student Workers. Plaintiff further allege that as a result of her engaging in Title IX protected activity she was denied a pay increase in August 2020 and terminated on February 4, 2022.

This matter further arises out of Plaintiff's allegation Defendant subjected her to Title VII retaliation for filing an EEOC complaint. Plaintiff further alleges as a result of her engaging in Title VII protected activity she was denied a pay increase in August 2020 and terminated on February 4 2022.

This matter arises out Verge Ausberry subjecting Plaintiff to a Hostile Work

Environment (HWE) and Defendant rehiring Frank Wilson in December 2021.

Plaintiff requested relief include a declaration Defendant violated Title IX when they failed to provide Plaintiff with a pay increase in August 2020 and terminated her in February 2022; and Defendant violated Title VII when they failed to provide Plaintiff with a pay increase in August 2020 and terminated her in February 2022;  and subjected Plaintiff to a HWE from April 2020 until her termination in February 2022.

Plaintiff's Title IX and Title VII claims were tried before this Court on December 11 2023 through December 20, 2023. Plaintiff moved for a Judgment as a Matter of Law pursuant to Fed. R. Civ. P. Rule 50(a)  at the close of her case as to Plaintiff's claims for monetary damages and judgment as to Plaintiff's Title IX and Title VII claims. **Trial Tr. Excerpt Day 5 pp. 201 – 211**. Plaintiff's motion was denied.  Plaintiff renewed her Fed. R. Civ. P. Rule 50(a) motion at the close of Defendant's case. **Trial Tr. Excerpt Day 6 Afternoon Session p. 155.** Plaintiff's motion was denied. The jury returned a verdict denying all of Plaintiff's claims. R. Doc. 546.

Plaintiff now timely file her Renewed Motion for a Judgment as a Matter of Law or, in the alternative, a New Trial, as to Plaintiff's claims submitted to the jury in accordance with Fed. R. Civ. P. 50(b) and 59(b).

LEGAL STANDARD AND AUTHORITY

This Court may grant a renewed judgment as a matter of law ("JMOL") under Fed. R. Civ. P. 50(b). "A motion for judgment as a matter of law in a case tried by a jury . . . is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 578 (5th Cir. 2018) (citation and internal quotation marks omitted)). "JMOL should be granted when . . . 'a party has been fully heard on an issue and there

is no legally sufficient evidentiary basis for a reasonable jury to find for that party . . ..'"
*Montano v. Orange Cty., Texas*, 842 F.3d 865, 873 (5th Cir. 2016) (quoting *Williams v. Hampton*, 797 F.3d 276, 282 (5th Cir. 2015)). "[A]ll reasonable inferences are drawn in favor of the nonmovant, with the credibility of witnesses and weight of the evidence being within the sole province of the jury." Id. at 874. t is the non-moving party's burden to "at least establish a conflict in substantial evidence on each essential element of their claim." *North Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.*, 898 F.3d 461, 473 (5th Cir. 2018) (quoting *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d 1034, 1039 (5th Cir. 2011)). "The court can only grant a motion for judgment as a matter of law "if the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable people could not arrive at a contrary verdict." "*Vetter v. McAtee*, 850 F.3d 178, 185 (5th Cir. 2017).

[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 151 (2000). "That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses.'" *Id* (citation omitted).

A district court may grant a new trial under Fed. R. Civ. P. 59(a) when it is necessary "to prevent injustice." *Stafford v. Lamorak Ins. Co.*, 754 F. App'x 241, 243  (5th Cir. 2018). Fed. R. Civ. P. 59(a)  allows the district court to grant a new trial if it "finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course*." Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985) (citations omitted). In deciding a motion for a new trial, this Court "need not take the

view of the evidence most favorable to the verdict winner, but may weigh the evidence." *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982).

ARGUMENT

**I.**    **Plaintiff is Entitled to Judgment as a Matter of Law.**

Plaintiff is entitled to a judgment as a matter of law (JMOL) because the Defendant's employees and Board members have admitted to evidence that supports Plaintiff's JMOL. Furthermore, the evidence is so one sided in favor of Plaintiff reasonable jurors could not have found Plaintiff did not prove by a preponderance of the evidence her Title IX and Title VII claims. In the alternative, this Court should order a new trial in this matter, as the verdict is against the weight of the evidence.

A.   Defendant discriminatory policy of protecting coaches from Title IX jurisdiction.

Juror Instruction 22 stated "*You must disregard any evidence outside the statutory period. However, conduct outside the statutory period may provide context or background for conduct occurring during the statutory period*."[1] While the jurors were required to disregard Defendant's discriminatory policy during the pre-prescriptive[2] period and post termination,[3] the one-sided uncontradicted and unimpeached evidence, nevertheless, provided the jurors background and context the Defendant had an intentional discriminatory policy to protect coaches from Title IX jurisdiction. The uncontradicted and unimpeached evidence shows Defendant's discriminatory policy remained in place during the prescriptive period:

1.   Husch Blackwell Report (HBR)

In 2020 Defendant retained the law firm Husch Blackwell law firm to conduct a review

---

[1] R. Doc. 551 p. 10
[2] *infra*
[3] *infra*

of Defendant's compliance with Title IX.[4] **Trial Tr. Excerpt Day 4  Afternoon Session p. 29**.

Board of Supervisor Mary Leach Werner admitted The Husch Blackwell firm had no prior

relationship with Defendant. **Id**.  On March 5, 2021 the Defendant adopted and released the

HBR.[5] **Id. pp. 30-31**.  The HBR documented Defendant's failure to properly implement Title

IX policies in the prescriptive period. The HBR made the following findings[6]:

1. The University did not handle various items identified in the USA Today article in a manner consistent with obligations under Title IX, widely recognized best practices, and/or University policy.

2. Various incidents of athletics-related misconduct have not been appropriately reported to the University's Title IX Coordinator. We are especially concerned about a lack of reporting prior to November 2016 for reasons discussed below. It is worth noting, though, that our concerns about reporting are not limited to Athletics. Institutional reporting policy and training have been unclear for years.

3. The University's Title IX Office has never been appropriately staffed or provided with the independence and resources to carry out Title IX's mandates. We have identified concerns that the Office has at times not handled those matters reported to it appropriately. Again, while the USA Today article focused primarily on Athletics, we found deficiencies in a variety of different matters.

Former Interim President Thomas Galligan in a March 5, 2021 email[7] to the LSU community

stated about the HBR findings:

> "*Perhaps most troubling of all the report's findings is the understanding that, whether through our actions or inactions, our institution betrayed the very people we are sworn to protect. Our job is to protect[8] our students and support them in their times of need. It has become clear we haven't always fully lived up to our commitment.*"

Werner agreed with Galligan's admission. **Id. p. 34**.  Werner's testimony before the Louisiana

State Senate Select Committee on Women and Children supported the findings of the HBR.  **Id.**

---

[4] R. Doc. 550-58 p. 14
[5] R. Doc. 550-58 pp. 1-2.
[6] R. Doc. 550-58 pp. 16-17
[7] R. Doc. 550-55 p. 1
[8] Sharon Lewis was a responsible employee who reported Les Miles and Frank Wilson in 2012, 2013 and 2019 and the Defendant had a duty under DOE regulations and LSU PM 73 Memorandum to protect her from retaliation.

**pp. 61-69**[9] Scott Woodward on March 5, 2020 issued a public letter agreeing with the HBR findings.[10] As stated herein the HBR is uncontradicted and unimpeached evidence Defendant's discriminatory policy was in effect in the prescriptive period.

2.  The General Counsel's Office control of Title IX Coordinator

The evidence is uncontroverted and unimpeached the Title IX Coordinator (T9C) remained under the General Counsel's Office (GC) during the prescriptive period. Stewart admitted T9C was not removed from the GC' office until 2021. **Trial Tr. Excerpt Day 2 p. 34** Stewart admitted the T9C placed under the GC' office was a conflict. **Trial Tr. Excerpt Day 2 pp. 28-33.** Werner also confirmed this was a conflict. **Trial Tr. Excerpt Day 4  Afternoon Session pp. 37-38.** The HBR found the Title IX Coordinator's placement under the GC' office was "rife with conflict of interest concerns. [11] Stewart admitted she repeatedly raised concerns about the T9C' office under the control of the GC but the university ignored them. **Id. pp. 34-35**

Stewart's concerns proved correct when LSU Vice President and General Counsel Winston DeCuir directed Stewart to break Title IX regulations. Stewart admitted DeCuir directed her that all Title IX complaints in athletics were to be directed to Miriam Segar. **Id pp. 74-84**. Segar admitted she was aware of DeCuir's directions to Stewart. **Trial Tr. Excerpt Day 3 pp. 126-127.**

However, during the prescriptive period Taylor Porter was still advising the Athletic Department on all Title IX issues. Scott Woodward admitted Taylor Porter was the "Athletic Department's General Counsel or Outside Counsel" when he was hired in 2019. **Trial Tr.**

---

[9] Exhibit video Pla41.
[10] R. Doc. 550-57
[11] HBR R. Doc. 550-58 p. 154

**Excerpt Day 4 p.75.** Scott Woodward admitted he called the GC' office to report Plaintiff Title IX complaint rather than report it to the T9C. **Trial Tr. Excerpt Day 4 pp. 64, 66.**

Stewart admitted the LSU Permanent Memorandum 73[12] has made clear that if you have knowledge of sexual misconduct and you do not report you may be terminated. **Trial Tr. Excerpt Day 2 pp. 111-113.** Stewart admitted that actual knowledge is "if something comes to you through your general work duties" through direct reporting or an incidental conversation. Stewart admitted the report of sexual harassment does not have to be reported directly to the individual to trigger the mandatory reporting requirement. **Id. 117.** Stewart admitted that if information comes to an institution about sexual misconduct of an employee, it has a duty to respond. **Id. pp. 117-118**

Woodward admitted that a background investigation[13] done in conjunction with Human Resources was conducted on Frank Wilson before he was rehired. **Trial Tr. Excerpt Day 4 pp. 80-81.** The background investigation contained allegations of Title IX violations made by Plaintiff against Wilson.[14]

Brian Kelly stated Human Resources told him Frank Wilson could be hired. **Trial Tr. Excerpt Day 6 pp. 8-9.** Kelly admitted Stephanie Rempe cleared Frank Wilson to be hired after she conducted a background investigation. **Id. p. 17**. Stephanie Rempe admitted she reviewed Sharon Lewis' allegations in Wilson's background report but she did not report them. **Trial Tr. Excerpt Day 6 pp. 30-31.**

Normand testified Wilson rehiring would have come through HR. **Trial Tr. Excerpt Day 4 Afternoon Session p. 138.** Furthermore, Normand admitted that when Wilson was rehired in

---

[12] R.Doc. 550-40
[13] R. Doc. 550-67
[14] Id. p. 2

2021 Finley's R. Doc. 550-39 was in her office. **Id. p. 138**. Normand further admitted Trey

Jones in the GC office had the document. **Id. pp. 122, 138** Normand admitted HR had a role in

Wilson's rehiring. **Id. p. 140.** Normand admitted that if she was aware Wilson was being

rehired she would have been obligated to forward the information to the T9C. **Id. p. 143.**

Woodward, Kelly, Rempe, Normand and Jones all received allegations of sexual

misconduct against Wilson through their general work duties and they were required to report

Wilson to the Title IX Office.[15] However, the uncontradicted and unimpeached evidence

showed Woodward, Kelly, Rempe, Normand and Jones did not report Wilson to the T9C per

mandatory reporting requirements.[16] The evidence is uncontroverted and unimpeached

Defendant put forth no written evidence at trial that the allegations against Wilson had ever

been investigated. Therefore, no reasonable person reviewing the one-sided and overwhelming

evidence in Plaintiff's favor could not have found that during the prescriptive period Defendant

had in place a discriminatory policy to protect coaches from sexual misconduct.

### B.  Plaintiff's Title IX Claims

 Juror Instruction 23 stated that in order for Plaintiff to prove unlawful retaliation,

Plaintiff must prove all three of the following elements by a preponderance of the evidence:

1.  Plaintiff engaged in protected activity (Reported Title IX Conduct);

2.  The Board took an adverse employment action against Plaintiff; and

3.  The Board's decision to take an adverse actions against Plaintiff was because she engaged in protected activity.

#### 1.  Title IX Retaliation

a.  Plaintiff reported Miles, Frank Wilson and Verge Ausberry.

---

[15] **Trial Tr. Day 2 Excerpt p. 122-123**
[16] R. Doc. 550-50 p. 13

The evidence is uncontradicted and unimpeached Plaintiff reported Les Miles' sexual

misconduct in 2012 and 2013.[17]  The evidence is uncontradicted and unimpeached Plaintiff

reported Frank Wilson and Verge Ausberry for facilitating Les Miles' sexual harassment of

Student Workers on May 15, 2019.[18] The evidence is uncontradicted and unimpeached

Plaintiff's allegations against Frank Wilson was included in the 2021 background investigation

of Frank Wilson.[19]  Therefore, Plaintiff proved by a preponderance of the evidence she engaged

in protected activity.

> b. Plaintiff suffered an adverse employment action.

Woodward signed a termination letter on January 5, 2022 advising Plaintiff her

employment at LSU was terminated effective February 4, 2022.[20] An adverse

employment actions consist of "ultimate employment decisions" such as hiring, **firing,**

demoting, promoting, granting leave, and compensating. *Thompson v. City of Waco*, 764 F.3d

500, 503 (5th Cir. 2014) (citing *McCoy v. City of Shreveport,*492 F.3d 551, 560 (5th

Cir.2007); *Alvarado v. Tex. Rangers,*492 F.3d 605, 612(5th Cir.2007); *Pegram,*361 F.3d at

282)); *E.I. du Pont de Nemours & Co.*, 180 F. Supp. 3d 451, 455 (M.D. La. 2016) (citing

*McCoy v. City of Shreveport* , 492 F.3d 551, 560 (5th Cir.2007) ; *Alvarado v. Tex.

Rangers* , 492 F.3d 605, 612 (5th Cir.2007)). Juror Instruction 23 stated that termination was an

adverse employment action.[21]

August 2020 promotion

The evidence is uncontradicted and unimpeached that when Plaintiff was promoted in

---

[17] *Supra*: R. Doc. 550-61 p.1;  R. Doc. 550-62 p.2
[18] *Supra*: R. Doc. 550-39 pp. 1- 9
[19] Supra: R. Doc. 550-67 p. 2
[20] R. Doc. 550-42
[21] R. Doc. 551 p.12

August 2020, the promotion did not include a pay increase. [22] Therefore, the lack of pay increase for Plaintiff's August 2020 promotion was an adverse employment action. Id. Therefore, Plaintiff proved by a preponderance of the evidence she suffered an adverse employment action.

c.  Plaintiff was retaliated against for engaging in protected activity.

The evidence is so one-sided and overwhelming that reasonable jurors could only have found Defendant retaliated against Plaintiff for engaging in protected activity. It is the Defendant's burden to "at least establish a conflict in substantial evidence on each essential element of their claim." *North Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co*., 898 F.3d 461, 473 (5th Cir. 2018) (quoting *Goodner v. Hyundai Motor Co., Ltd*., 650 F.3d 1034, 1039 (5th Cir. 2011)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support conclusion." *Id* (quoting *Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C*.,  878 F.3d 478, 485 (5th Cir. 2017)). Evidence is legally insufficient "where the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable jurors could not arrive at a contrary verdict.  *N. Cypress Med. Ctr. Operating Co. v. Aetna Life* at 473. Here, the evidence is so strong and overwhelming in favor of Plaintiff,  reasonable jurors could only have found Plaintiff was retaliated against for engaging in protected activity:

1.  Defendant knew Plaintiff engaged in protected activity

The uncontradicted and unimpeached evidence shows Defendant knew Plaintiff engaged in protected activity. The HBR documented Defendant was aware Plaintiff had engaged in protected activity.[23] Segar, Rempe, Normand and Woodward all admitted Plaintiff

---

[22] R. Doc. 550-53
[23] *Supra;* R. Doc. 550-58 pp. 60-88

had engaged in protected activity.[24] Woodward admitted he refused to meet with Plaintiff to discuss her complaints of retaliation. **Trial Tr. Excerpt Day 4 pp. 142-143, 99-100.** Frank Wilson's background report, which was submitted to Human Resources and the GC office, contained Plaintiff allegations against Wilson. Therefore, the one-sided and overwhelming evidence in Plaintiff's favor shows Plaintiff engaged in protected activity.

### 2. Plaintiff was terminated for engaging in protected activity

Defendant intentionally discriminated against Plaintiff when she was terminated in February 2022 for reporting Miles, Wilson and Ausberry. A plaintiff may a prevail on a Title IX claim if she can show direct evidence of discriminatory intent. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002).

While the jurors could not consider the Defendant's pre-prescriptive[25] and post-termination[26] discriminatory policy, they could consider the evidence to put in context, the discriminatory policy that was in place during the prescriptive period. The evidence is uncontradicted and unimpeached that during the prescriptive period Defendant had a policy in place that all Title IX complaints were to go through Segar in violation of Title IX.[27] The uncontradicted and unimpeached evidence shows that until 2021 the T9C was under the control of the GC office in violation of Title IX.[28] The uncontradicted and unimpeached evidence shows General Counsel Winston DeCuir directed Stewart that all Title IX complaints were to

---

[24] *Supra* R. Doc. 550-40 p. 12
[25] *infra*
[26] *infra*
[27] *supra*
[28] *supra*

11

go through Segar in violation of Title IX.[29] The uncontradicted and unimpeached evidence

shows Stephanie Rempe, Woodward, Normand, Human Resources and the GC office did not

forward Plaintiff's allegations of sexual misconduct  listed in Wilson's background report to the

T9C.[30] The uncontradicted and unimpeached evidence shows Normand, Trey Jones, HR and the

GC office did not report Plaintiff's 2019 allegations against Wilson to the T9C office when he

was rehired in 2021.

The PM-73 policy required Normand, Rempe, Woodward, Jones, HR and the GC office

to report the allegations against Wilson when he was rehired in 2021.  Galligan's Action Plan

published on March 17, 2021 stated individuals who did not report would be held

accountable.[31] Werner admitted she agreed with Galligan's action plan. **Trial Tr. Excerpt Day**

**4  Afternoon Session p.p. 39- 56.**  The uncontradicted and unimpeached evidence shows

Normand, Rempe, Woodward, Jones, HR and the GC office failed to report Wilson in order to

protect him from Title IX jurisdiction. The PM-73 policy stated that a *"employee who fails to*

*promptly make the report without good cause or, with the intent to harm or deceive knowingly*

*makes a report that is false, shall be terminated in accordance with the institution's*

*disciplinary procedures*."[32] The uncontradicted and unimpeached evidence shows none of the

employees ever faced discipline for failing to report the allegations against Wilson.

Furthermore, Galligan admitted on March 5 2021 the Defendant had failed to protect the

individuals under Title IX jurisdiction.[33] Plaintiff was a responsible employee who the Defendant

---

[29] *supra*
[30] *supra*
[31] R. Doc. 550-54 p.2
[32] R. Doc. 550-40 p.13
[33] *supra*; R. Doc. 550-55 p. 2

had a duty to protect from retaliation.[34] The Defendant offered no substantial evidence at trial to rebut Galligan's admission of culpability.  *Id.*

Plaintiff contends she was terminated for reporting Frank Wilson in order to protect Wilson from a Title IX investigation. The uncontradicted and unimpeached evidence shows that before Wilson's hiring Board member Colis Temple met with Wilson and Tate at his home and urged Tate to hire Wilson.[35]  Tate admitted he was in the  meeting. **Trial Tr. Excerpt Day 5 Afternoon session pp. 105-106.**  Tate admitted the GC office reviewed Frank Wilson's contract before it was sent to him. **Id. p. 11.**   Tate admitted the GC and Human Resources never presented the background report to him, as he learned about the allegations against Wilson in the newspaper.[36] Tate further admitted he recommended Wilson's employment contract to the Board for approval. **Id. p. 108-115, 129.**

<u>Brian Kelly Admission</u>

Woodward testified Brian Kelly terminated Plaintiff. Trial Tr. **Excerpt Day 4 Afternoon Session pp. 7-8.** However,  Brian Kelly admitted he did not terminate Plaintiff. Kelly stated the following at trial:[37]

> " QUESTION: DID YOU RECOMMEND TO MR. WOODWARD OR MR. AUSBERRY THAT -- DID YOU RECOMMEND TO MR. AUSBERRY OR MR. WOODWARD THAT SHARON LEWIS SHOULD BE RELIEVED OF HER EMPLOYMENT?
>
> " ANSWER: NEVER. I CLEARLY UNDERSTOOD THAT SHARON LEWIS' SITUATION WAS ONE TO LEAVE ALONE, AND THAT WAS TO BE HANDLED BY OUR SENIOR ADMINISTRATION AND THE UNIVERSITY. THAT WAS NOT MY PURVIEW."

---

[34] R. Doc. 550-40 p. 12
[35] *supra*
[36] *infra*
[37] *supra*

Q. THAT WAS YOUR ANSWER. CORRECT?

A. YES.

Q. DO YOU STILL STAND BY THE SAME ANSWER TODAY, COACH?

A. I TERMINATED THE POSITION. THAT'S ALL I DID.

Q. THAT WASN'T MY QUESTION. COACH, I'M SAYING THIS ANSWER -- YOU STILL STAND BY THIS ANSWER TODAY. CORRECT?

A. I CLEARLY UNDERSTOOD THAT SHARON LEWIS' SITUATION WAS NOT MINE.

Q. YOU WON'T ANSWER THE QUESTION, COACH. DO YOU STILL STAND BY THIS ANSWER TODAY?

A. SURE.

**Trial Tr. Excerpt Day pp. 27-28**

Kelly admitted it was Woodward and Ausberry who told him about Plaintiff's employment

status. Kelly was asked who told him Plaintiff's office was off limits Kelly stated:

Q. THANK YOU, SIR

-- " MY CHIEF OF STAFF. WE WERE LIKE, THIS IS THE PERFECT OFFICE. I WANT TO PUT MY CHIEF OF STAFF IN THIS OFFICE. THEY WERE LIKE, 'YOU CANNOT. THAT'S OFF LIMITS RIGHT NOW.' THAT'S WHEN I ASKED THE QUESTION 'WHAT DO YOU MEAN IT'S OFF LIMITS? YOU GAVE ME CARTE BLANCHE TO COME IN HERE AND DO THINGS.' THIS OFFICE IS OFF LIMITS. THAT'S WHEN I WAS BROUGHT UP TO DATE ON THE PENDING -- I BELIEVE MAYBE I AM SAYING IT WRONG -- THAT THERE WAS A PENDING LAWSUIT." SO YOU KNEW THIS THE DAY YOU STEPPED IN THE CAMPUS. CORRECT?

A. CORRECT.

Q. LINE 13: " OKAY. WAS THAT MR. AUSBERRY OR MR. WOODWARD WHO TOLD YOU THIS?

14

" I THINK I GOT IT FROM BOTH OF THEM." THAT'S YOUR ANSWER. DO YOU
REMEMBER THAT?

A.  YEAH, I THINK. I MEAN, I -- I THOUGHT THAT IT WAS FROM BOTH OF
THEM. IT COULD HAVE BEEN FROM ONE OR THE OTHER. I CAN'T FOR
CERTAIN SAY, BUT I THINK IT MIGHT HAVE BEEN FROM ONE OR THE
OTHER.

**Id. p. 23**

Although, Kelly stated he eliminated Plaintiff position,  he never confirmed his statement in his

deposition that he eliminated Plaintiff's position. **Id. pp. 25, 27-28.**  Thus, the mere assertion by

Kelley that he eliminated Plaintiff's position is not substantial evidence legally sufficient to rebut

his admission at trial and in his deposition that he did not terminate Plaintiff. *Id*.

Plaintiff testified her termination was connected to the rehiring of Wilson. **Trial Tr.**

**Excerpt Day 5 Morning Session pp. 73-75.** The evidence is uncontradicted and unimpeached

that LSU officials protected Frank Wilson from a Title IX investigation. Board member Colis

Temple admitted he met with Wilson and LSU President William F. Tate and urged Tate to hire

Wilson at LSU. **Trial Tr.  Excerpt Day 4 Afternoon Session pp. 105- 107**. Tate admitted he

approved Frank Wilson contract.  **Trial Tr. Day 5 Afternoon Session p. 104**.  It is not in

dispute LSU did hire Wilson. Temple directing Tate to hire Frank Wilson violated SACSCOC

Rule 5.2.b.[38]

Moreover, the Wilson background report listed plaintiff as "A former Athletics'

administrator"[39] although she was still employed by Defendant when the report was

commissioned.  Plaintiff testified that after Wilson was rehired Ausberry and Kelly "demanded"

Plaintiff be removed as President of the L-Club. **Id. pp. 78-80.**

---

[38] R. Doc. 550-56
[39] R. Doc. 550-67 p.2

This evidence is so strong and overwhelming in Plaintiff's favor reasonable jurors could only have found Plaintiff was terminated for reporting Miles and Wilson.

3. August 2020 promotion with no pay for engaging in protected activity.

Plaintiff testified Ausberry told her she would never be promoted because she reported Title IX. **Trial Tr. Excerpt Day 5 Morning Session pp. 56-60.** Plaintiff was promoted in August 2020 along with Dr. LaKeitha Poole and Andrea Tepe.[40] Plaintiff did not receive a pay increase when she was promoted.[41] **Trial Tr. Excerpt Day 5 Morning Session pp. 60-62.** Plaintiff testified she attempted to meet with Woodward to complain but he refused. **Trial Tr. Excerpt Day 5 Morning Session pp. 62-64.**

Seagar testified Poole and Tepe received pay increases. **Trial Tr. Excerpt Day 4 Morning Session pp. 39-42.** Ausberry testified that when he received a promotion his salary went from $250,000.00 to $500,000.00. **Trial Tr. Excerpt Day 6 Afternoon Session p. 147.** Ausberry testified Brian Kelley was awarded a $100 million guaranteed contract. **Id.** Ausberry testified Woodward's compensation is $7 million. **Id.**

The uncontradicted and unimpeached evidence is that every employee who received a promotion in Athletics received a pay increase except Plaintiff. The evidence further shows Plaintiff was the only employee promoted without a pay increase who had reported coaches for sexual misconduct.

The Defendant contends Plaintiff's salary was based on comparison with other individuals working in the SEC in the same job is legally insufficient. There is no evidence in the record as to who Plaintiff's salary was compared to. Ausberry admitted Plaintiff's salary was not

---

[40] R. Doc. 550-4 p. 5
[41] R. Doc. 550-53

compared with on campus recruiters at schools that had won multiple national championships as Plaintiff had. **Id. pp. 149- 150.**

The Defendant submitted evidence Plaintiff sent emails that she was happy to be promoted. Plaintiff testified while she was happy to receive a promotion she wanted to receive a pay increase as every other employee in athletics had.  The evidence is so strongly in favor of Plaintiff  reasonable jurors could only have found Plaintiff  did not receive a pay increase in retaliation for her engaging in protected activity.

### C.  Plaintiff's Title VII Claims

Juror Instruction 25[42] stated Plaintiff was to prove by a preponderance of the evidence following:

1.  Plaintiff engaged in protected activity (Reported Title VII Conduct)

2.  The Board took an adverse employment action against Plaintiff: and

3.  The Board's decision to take an adverse action against Plaintiff was because she engaged in protected activity.

#### 1.  Title VII retaliation

a.  Plaintiff engaged in protected activity.

Juror Instruction 25 stated that filing an EEOC complaint is protected activity.[43] The filing of an EEOC complaint is clearly a **protected activity** within the meaning of the statute. *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 330 (5th Cir. 2004) (citing *Walker v. Thompson,* 214 F.3d 615, 629 (5th Cir. 2000) (citing *Dollis v. Rubin,* 77 F.3d 777, 781 (5th Cir. 1995)); *Atkins v. Se. Cmty. Health Sys.*, CIVIL ACTION NO.: 11-00047-BAJ-RLB, at *9 (M.D. La. Mar. 7, 2017) ( citing *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir.

---

[42] R. Doc. 551 p.14
[43] Id. p. 15

2000), abrogated on other grounds, *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (citing *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995)). Plaintiff filed a EEOC complaint on April 15, 2021.[44] **Trial Tr. Excerpt Day 5 Morning Session pp. 65- 67.** Plaintiff proved by a preponderance of evidence she engaged in a protected activity.

b.  <u>Plaintiff suffered an adverse employment action.</u>

The evidence is uncontradicted and unimpeached Plaintiff was terminated.[45] The evidence is uncontradicted and unimpeached Plaintiff was promoted in August 2020 without a pay increase.[46] Plaintiff proved by a preponderance of the evidence she suffered an adverse employment action.

c.  <u>Plaintiff was terminated for engaging in protected activity.</u>

Woodward admitted he was aware Sharon Lewis had filed a EEOC complaint. **Trial Tr. Excerpt Day 4 Afternoon Session p. 18.**  Segar admitted Plaintiff was the only employee terminated after Kelly was hired who filed an EEOC complaint. **Trial Tr. Excerpt Day 4 Morning Session P. 43**.  Rempe admitted she was not aware of any other employee terminated by Kelly who had filed an EEOC complaint. **Trial Tr. Excerpt Day 6 pp. 38.**

Furthermore, Woodward stated Brian Kelly terminated Plaintiff. But Kelly admitted Woodward and Ausberry told him not to touch Plaintiff's employment. Plaintiff named both Woodward and Ausberry in her EEOC complaint.[47] Woodward admitted he refused to meet with Plaintiff to discuss her complaints of retaliation. **Trial Tr. Excerpt Day 5 Morning Session pp. 65-66.**

---

[44] R. Doc. 550-38
[45] *supra*
[46] *supra*
[47] R. Doc. 550-38

d.  Plaintiff was denied a promotion for engaging in protected activity

As stated *supra*, every employee in athletics who received a promotion also received a pay increase. The Defendant produced no substantial evidence Plaintiff's salary was in line with other on-campus recruiters in the SEC. The Defendant did not produce any evidence as to who Plaintiff salary was compared to. Merely asserting they did is legally insufficient given the overwhelming evidence in Plaintiff's favor. The uncontradicted and unimpeached evidence is so strong in Plaintiff's favor reasonable jurors could only have found Plaintiff received no pay increase for filing an EEOC complaint.

## 2.  Hostile Work Environment

Juror Instruction 27[48] stated Plaintiff must prove by a preponderance of the evidence the following:

1.  The conduct was sufficiently severe or pervasive to:

    a.  Alter the terms and conditions of Plaintiff's employment; and

    b.  Create a hostile or abusive work environment; and

`   2. The Board knew, or in the exercise of reasonable care should have known, that

    Plaintiff was being harassed because of her gender. To make this showing Plaintiff

    Must prove that:

        a.  The harassment was known and communicated to a person who had the

        authority to receive, address, or report complaint, even if that person did not

        do so, or the harassment was so open and obvious that the Board should have

        known of it; And

        b.  The Board failed to take prompt remedial action designed to stop the

---

[48] R. Doc. 551 p. 18

harassment.

1. <u>The Conduct was severe and pervasive</u>.

Plaintiff alleged Verge Ausberry subjected her to a HWE based on her race and gender.[49] Plaintiff testified Ausberry called her an angry black woman. **Trial Tr**. **Excerpt Day 6 Afternoon Session pp. 145-146.** Ausberry testified Plaintiff was a racist. **Trial Tr. Excerpt Day 6 Afternoon Session P. 145.** Other than Ausberry's self-serving testimony Defendant produced no evidence or testimony to support Ausberry's outrageous testimony.

Moreover, the HBR documented Ausberry's harassment was continuous. The HBR finding confirmed individuals  who  witnessed Ausberry's "hollering" and "screaming" at Lewis repeatedly "over the course of the last several years."[50] Yael Lofton admitted she was the individual who told HBR about Ausberry's continuous abusive behavior. **Trial Tr. Excerpt Day 5 Morning Session pp. 81-83.**

In 2021 Defendant rehired Frank Wilson who Plaintiff alleged had repeatedly sexually harassed and sexually assaulted her from 2012 to 2016. A reasonable person would find that rehiring Wilson was humiliating.  Wilson's rehiring and Ausberry's verbal abuse is sufficient to show the HWE was pervasive and continuous.

a. <u>The harassment affected Plaintiff 's employment</u>

Plaintiff testified Ausberry told her she would not be promoted because she is an 'angry black woman." **Trial Tr. Excerpt Day 5 Morning Session pp. 65-66.**  Although, Ausberry was not Plaintiff's direct supervisor, Woodward stated they had a very close relationship. **Trial Tr. Excerpt Day 4 Morning Session pp. 60-62.** Plaintiff testified that when Woodward was hired she attempted to meet with him to report "what his No. 2 was doing to me.  **Trial Tr.**

---

[49] Segar admitted Plaintiff reported Ausberry in 2014 for calling her a "stupid bitch." *supra*
[50] R. Doc. 550-58 Fn. 166

**Excerpt Day 5 Morning Session pp. 62-63.** But Woodward refused to meet with Plaintiff. Id.

Moreover, the HBR found Ausberry's harassment of Plaintiff was continuous. The rehiring of Wilson, who had sexually harassed and sexually assaulted Plaintiff, was humiliating. Any reasonable person's working environment would be altered by the rehiring of an individual who had sexually assaulted her.

<u>The Defendant was aware of the HWE</u>

The HBR stated the Deputy Title IX Coordinator was aware there "are several witnesses who have seen Ausberry yell and scream at Lewis, call her profanities, and do other acts of harassment." [51]  Although Plaintiff complained to the Title IX Deputy Coordinator, Ausberry's abuse was not a Title IX issue. However, the PM-73 policy states:

> "If the sex- or gender-based harassment or discrimination does not meet Title IX jurisdictional requirements, then the allegation is "dismissed" as a Title IX case. The case still may be considered for possible investigation and resolution under this policy or the applicable student code of conduct, employee policies, or other relevant policy or procedure."[52]

Thus, the Title IX office was required to forward Plaintiff's complaint to the office of Human Resources or the appropriate department for investigation.  The HBR found despite this being reported to a Deputy Title IX Coordinator, the University never investigated Plaintiff's allegations."[53] Evidence outside of the prescriptive period provides context and background that the Defendant was aware Ausberry was subjecting Plaintiff to a HWE and did not intervene.

Furthermore, Plaintiff testified she told Segar and Ausberry about Wilson's harassment. It was obvious Segar and Ausberry knew that rehiring Wilson would create a HWE for Plaintiff.  Although the jurors could not consider evidence outside of the prescriptive period, the

---

[51] R. Doc. 550-58 p. 78
[52] R. Doc. 550-40 p.10
[53] R. Doc. 550-58 p. 78

findings in the HBR document, background and context shows Ausberry's verbal abuse of

Plaintiff based on her race and gender was ongoing. The evidence is so strong and one-sided in

Plaintiff's favor a reasonable juror could only have found Plaintiff was subjected to a HWE in

the prescriptive period.

## II.     The Defendant's pre-prescriptive and post termination discriminatory policy.

Although the jurors were instructed not to consider evidence outside the prescriptive

period, they could consider evidence as background and context to Plaintiff's Title IX and Title

VII claims. The HBR contains uncontradicted and unimpeached evidence of Defendant's

discriminatory policy that protected coaches accused of sexual misconduct from 2012 to 2020.

No LSU official who testified at trial disputed any of the findings of the HBR. One of the key

findings of the HBR stated:

> "Various incidents of athletics-related misconduct have not been appropriately reported
> to the University's Title IX Coordinator. We are especially concerned about a lack of
> reporting prior to November 2016…"

Galligan and Woodward's statements supporting the HBR, Werner's testimony before the

Senate, the HBR findings and additional evidence cited herein, show the Defendant had an

intentional discriminatory policy to intentionally protect coaches accused of sexual misconduct

from 2012 to 2020. The discriminatory policy is direct evidence that Defendant retaliated against

Plaintiff for reporting Title IX violations from 2012 to 2020 :

Stewart admitted the Dear Colleague Letter[54] (DCL)  required LSU have a Title IX

Coordinator  (T9C) in place and  all Title IX complaints were to be directed to the T9C. **Trial**

**Tr. Excerpt Day 1 pp. 22- 39.**   Stewart admitted there was no T9C in place until 2014.

Stewart admitted that when she was hired as Title IX Coordinator she was LSU's "first attempt

---

[54] R. Doc. 550-52

22

at full-time T9C." Trial Tr. Excerpt Day 2 p. 28  Stewart admitted the PS -75 policy that was in place in 2013 did not comply with Title IX regulations. **Trial Tr. Excerpt Day 2 pp. 15-22.** Stewart admitted Joe Alleva's direction of Title IX complaints to Segar was a violation of DOE guidelines. **Id. 40.**[55]

       1.   <u>Les Miles Title IX Investigation</u>

The evidence is uncontradicted and unimpeached Plaintiff reported Miles had sexually harassed two students.[56] Stewart admitted the sexual harassment complaints filed against Les Miles in 2012 and 2013 should have been filed with the T9C. **Trial Tr. Excerpt Day 1 pp. Vol. II pp 89-90.** The HBR found the hiring of Taylor Porter was a conflict of interest.[57] Stewart admitted Taylor Porter and Peter Ginsberg storing the Student Complaint and Directive Letter in their law offices was a violation of federal and state law. **Trial Tr. Excerpt Day 2 p. 81.** Stewart admitted storing the Student Complaint Memo and Directive Letter off site sets a dangerous precedent. **Trial Tr. Excerpt Day 2 p. 84.**

Plaintiff testified Miles was a serial sexual harasser. **Trial Tr. Excerpt Day 5 Morning Session pp. 16-19.** Stewart admitted allowing Miles to stay at LSU in light of the allegations against him "is not in the spirit of Title IX." **Trial Tr. Excerpt Day 2 p. 89**. Werner testified before the Senate that allowing Miles to remain at LSU was "reprehensible". **Trial Tr. Excerpt Day 4  Afternoon Session p.p. 76-78**.

Stanley Jacobs, Robert Yarborough and Garrett Danos' involvement in the Miles investigation was violation of SACSCOC Rule 5.2.b.[58] Jacobs admitted Vicki Crochet's Memo to File (R.Doc. 550-60 p.1) is an accurate reflection of the parties agreement to store the

---

[55] R. Doc. 550-58 p. 210-211
[56] R. Doc. 550-61; R. Doc. 550-62;
[57] R. Doc. 550-58 p.62
[58] R. Doc. 550-56

Student Complaint Memo off- site. **Trial Tr. Excerpt Day 2 pp. 141- 148.** Werner and Board member Robert Dampf were critical of Jacobs, Yarborough and Danos' conduct during the Miles Investigation. **Trial Tr. Excerpt Day 4  Afternoon Session p.p. 72-74.[59]**.

Jacobs admitted Crochet and Barton made the decision to store the documents in Taylor Porter's law offices. Jacobs stated:

> Q . NOW, TAYLOR PORTER HAS STATED PUBLICLY AND THEY'VE STATED IN COURT FILINGS -- VICKI CROCHET, BOB BARTON AND SHELBY MCKENZIE, THEY HAVE STATED IN COURT FILINGS THAT THEY WERE ACTING AT THE BEHEST AND THE DIRECTION OF THE BOARD AND THEY WERE JUST FOLLOWING ORDERS.

DO YOU HAVE AN OPINION ABOUT THAT?

> A .YES.

> Q.  PLEASE SHARE IT.

> A.  WE DIDN'T RECOMMEND WHERE IT WAS TO BE HOUSED. AT LEAST I DIDN'T. AND I CAN'T REMEMBER ANY OTHER BOARD MEMBER OR DR. JENKINS OR SHELBY MCKENZIE MAKING A RECOMMENDATION. SO IT WASN'T OUR DECISION. **Trial Transcript Excerpt Day 2 p. 147.**

Segar admitted that at the May 15, 2013 meeting the parties discussed the Student Complaint Memo and returned the document back to Taylor Porter. **Trial. Tr. Excerpt Day 5 Afternoon Session pp.160-161.** Segar admitted  "Vicki brought the documents in, and Vicki left with the documents. **Id.**

Taylor Porter concluded Miles' conduct did not constitute sexual harassment under

---

[59] Video Exhibit Pla146

applicable law. The HBR disagreed with those finding.[60] The HBR stated about the handling of

the Miles investigation:

> '*It is difficult to meaningfully determine the full extent of the impact this incident and the University's handling of it had on the climate within the Athletics Department—both in terms of creating a culture which tolerated sexual misconduct and dissuaded employees from reporting that misconduct. It certainly was not positive*.'[61]

The HBR further found the Miles investigation was not consistent with the DCL.[62] Werner and

Dampf testified before the Senate that Jacobs, Danos and Yarborough were not required to

accept Taylor Porter's recommendations. **Trial Tr. Excerpt Day 4  Afternoon Session p.p.**

**75-76.**[63]

2.  Lewis PM-73 Investigation

The evidence is uncontradicted and unimpeached that the 2018 PM-73 investigation[64] of

Plaintiff was done in retaliation for her reporting Title IX violations. The HBR found *"The only*

*person in the entire University who has ever been disciplined in any form for failing to make a*

*report under PM-73 is Athletics Department employee Sharon Lewis, a long-time Football*

*Operations employee and current Associate Athletic Director for Football Recruiting and*

*Alumni Relations. This is ironic because Lewis has lodged several reports of sex harassment*

*throughout her tenure*."[65] Stewart admitted she and the Title IX investigator Jeffrey Scott

agreed with HBR. **Trial Tr. Excerpt Day 2 pp. 71-72.** The HBR found the PM-73

investigation of Plaintiff was "fraught with many of the same missteps that we have seen in

other files we have reviewed."[66] The HBR found the investigation of Plaintiff was

---

[60] Id. p. 62
[61] Id. p. 65
[62] Id. Fn. 131
[63] Video Exhibit Pla.149
[64] R. Doc. 550-58 pp. 72-79
[65] R. Doc. 550-58 p. 60
[66] Id. p. 72

"haphazard."[67]

The HBR criticized Stewart's finding that Plaintiff could have made her complaint through Segar and Ausberry.[68] Stewart admitted her decision was based on the credibility of Plaintiff, Ausberry and Segar. **Trial Tr. Excerpt Day 2 pp. 68, 73-74.** Stewart admitted that if she had been aware Segar had conspired to store the Student Complaint Memo off-site it would have impacted her appeal decision. **Trial Tr. Excerpt Day 2 p. 82**.

Jennifer Normand admitted that based on Plaintiff's report about Title IX violations in Athletics, Human Resources made the decision not to impose discipline on Plaintiff. Lewis asked that the finding be removed from personnel file. The HBR stated:

> "There is no indication of how Title IX, the Office of Legal Affairs, or the Office of Human Resource Management resolved Lewis' request to remove the finding, no indication that anyone at the University formally investigated Lewis' complaints regarding her working environment and potential retaliation, and no investigation of any other Athletics official—including Segar or Ausberry—for failure to report a Title IX concern under PM-73.[69]"

The HBR called the PM-73 investigation of Plaintiff haphazard.[70]

### 3. Plaintiff's March 2019 Report of Sexual misconduct by coaches

Jennifer Normand admitted Plaintiff's attorney Maria Finley forwarded to her and GC Trey Jones Plaintiff's allegations[71] of sexual misconduct against Frank Wilson, Les Miles, Verge Ausberry and others.[72] Stewart admitted Plaintiff's allegations report should have been forwarded to her as the T9C. **Trial Tr. Excerpt Day 2 p. 108-109.** Normand admitted she did not report the matter to the T9C.[73] The HBR stated this about the failure to investigate

---

[67] R.Doc. 550-58 p. 88.
[68] Id. p. 77
[69] R. Doc. 550-58 p. 79
[70] R. Doc. 550-58 p. 88
[71] R. Doc. 550-39
[72] *supra*
[73] *supra*

Plaintiff's allegations:

> There is no indication of how Title IX, the Office of Legal Affairs, or the Office of Human Resource Management resolved Lewis' request to remove the finding, no indication that anyone at the University formally investigated Lewis' complaints regarding her working environment and potential retaliation, and no investigation of any other Athletics official—including Segar or Ausberry—for failure to report a Title IX concern under PM-73.

The evidence is so strong and one-sided in Plaintiff's favor,  reasonable jurors could only find that Defendant had an intentional discriminatory policy in place to protect coaches accused of sexual misconduct from 2012 to 2020. The evidence is so strong and one-sided in Plaintiff's favor that  reasonable jurors could only find that from 2012 to 2020 Defendant retaliated against Plaintiff for reporting Title IX violations.

    Defendant's post termination discriminatory policy.

 While the jurors were required to disregard the Defendant's conduct after Plaintiff was terminated, the uncontradicted and unimpeached evidence showed the Defendant's discriminatory policy remained in place after Plaintiff's termination:

Jessie, Calise Richardson and Plaintiff testified Frank Wilson sexually harassed them. Jessie testified she was aware Wilson had sexually harassed her sister Amber Jessie. Yael Lofton and Jessie both testified Plaintiff told them Wilson exposed himself to her. Brian Kelly admitted he was aware of the women's allegations but he did not report them per the PM-73 policy. **Trial Tr. Excerpt Day 6 pp. 7, 20-22.** Woodward admitted he was aware Plaintiff had made allegations Wilson had exposed himself to her. **Trial Tr. Excerpt Day 4 98-99.** President William F. Tate admitted he was aware of the four women's allegations against Wilson and  did not report them to the T9C or Human Resources. **Trial Tr. Excerpt Day 5 Afternoon Session pp. 120 – 127.**

Werner admitted she was aware of the women allegations against Frank Wilson and did

not report them. **Trial Tr. Excerpt Day 4  Afternoon Session pp. 85-94** Werner admitted the
PM-73 policy required Board members to report employees accused of sexual misconduct. **Id
pp. 79-84.** Werner admitted before the Louisiana State Senate that if Board members became
aware of allegations of sexual misconduct against an employee, they had a duty to report. **Id
pp. 74-75.**[74] Furthermore, Normand, Human Resources and the GC office have never reported
to the T9C Plaintiff's allegations in Wilson's background report.

 **The uncontradicted and unimpeached evidence is so strong and overwhelming in
Plaintiff's favor that reasonable jurors could only have awarded Plaintiff monetary
damages for her Title IX and Title VII claims.**

 III. **In the Alternative Plaintiff is entitled to a New Trial.**

Plaintiff incorporates the arguments in her judgment notwithstanding the verdict as if made
a part herein. A new trial may be granted if the district Court finds the verdict is against the
weight of  the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial
error was committed in its course*." Smith v. Transworld Drilling Co*., 773 F.2d 610, 612–13
(5th Cir. 1985) (citations omitted). "In making this determination, the district court weighs all
the evidence, but need not view it in the light most favorable to the nonmoving party." Id. "[i]f
the trial judge is not satisfied with the verdict of a jury, he has the right — and indeed the duty
— to set the verdict aside and order a new trial." Id.  613 (5th Cir. 1985). The Court should
grant Plaintiff's motion for a new trial because (1) the weight of evidence is against the jury's
verdict (2) Woodward's tampering with jury was actual bias; (3) Michael Victorian calling
Plaintiff's lawsuit a  "Hustle" was a  racial trope intended to inflame the jury and a plain error;
For the following reasons if the Court does not grant Plaintiff's judgment notwithstanding the

---

[74] Video Exhibit Pla148

verdict in the alternative the Court should grant Plaintiff's motion for a new trial:

**A. The jury verdict in favor of dismissing Plaintiff's Title IX claims is Against the Weight of the Evidence.**

The weight of the evidence shows Defendant had a discriminatory policy in place during the prescriptive period. Although the jurors could not consider evidence that occurred before the prescriptive period  and after Plaintiff's termination, it could consider the evidence for background and context. The background evidences showed Defendant had a discriminatory policy in place pre-prescriptive period and after Plaintiff was terminated. Plaintiff put on evidence showing the discriminatory policy remained in place  during the prescriptive period.

1.  Plaintiff's termination

The weight of the evidence shows Plaintiff was terminated because she reported Miles and Wilson. The nine day trial in this case included evidence from both sides. The discriminatory policy was direct evidence the Defendant intentionally retaliated against Plaintiff for reporting Miles and Wilson. The uncontradicted and unimpeached evidence is supported by Defendant's own employees testimony and documents. Moreover, Defendant did not produce any direct evidence to contradict Plaintiff's case:

The weight of the evidence shows the Defendant protected Wilson from Title IX jurisdiction by terminating Plaintiff. Temple and Tate met with  Wilson to discuss Wilson's hiring in 2021.  Rempe commissioned a background investigation of Wilson before he was hired. The background report included allegations by Plaintiff that Wilson had assisted Miles in sexualizing Student Workers. Wilson's background report listed Plaintiff as a former employee, although she was still employed.  Rempe forwarded the background report to Human Resources who was involved in rehiring Wilson.

Before the background investigation HR and the GC office were aware of Plaintiff's

allegations as early as March 2019. LSU's mandatory reporting policies required Normand, Rempe, Trey Jones, HR and the GC office to report Plaintiff's allegations to the T9C when Wilson was rehired in 2021. The Defendant did not put on any direct evidence that Plaintiff's allegations were ever investigated. The HBR confirmed that they were not.

The evidence shows that the General Counsel's office was directly involved in a discriminatory scheme to protect coaches accused of sexual misconduct and retaliate against Plaintiff. Stewart admitted DeCuir directed her that all Title IX complaints in athletics were to go through Segar. When the GC office prepared Wilson's contract, they were aware of the allegations of sexual misconduct against Wilson. Wilson was hired on December 9, 2021 and Plaintiff was notified she was being terminated on January 5, 2022.

There was conflicting evidence as to who terminated Plaintiff. Woodward testified Kelly terminated Plaintiff. Segar and Ausberry testified Plaintiff was terminated with approximately 40 other individuals by Kelley. However, Kelly testified while he eliminated Plaintiff's position, he was told by Woodward and Ausberry not to touch Plaintiff's employment as they and the university would handle it. Kelly stood by that statement at trial. The background report listed Plaintiff as a former employee although she was still employed at LSU.

    2. <u>August 2020 Promotion</u>

The weight of the evidence shows Plaintiff was the only employee who was promoted in athletics who did not receive a pay increase. Plaintiff testified Ausberry told her she would never be promoted because she reported Title IX. Defendant produced no evidence as to who it compared Plaintiff's salary to before denying her a pay increase.

<u>Miriam Segar, Verge Ausberry, Scott Woodward, Brian Kelley, and Frank Wilson's testimonies</u>

were not credible.

The evidence shows Segar, Ausberry, Woodward, Kelly and Wilson's testimonies were not credible:

### a. Miriam Segar

The evidence is uncontradicted and unimpeached that Segar violated federal and state law when she conspired with Board members and Taylor Porter to store the Student Complaint Memo and Directive Letter off-site. Segar admitted she did not report Student One and Student Two Complaints to the T9C. Segar admitted she conspired with Joe Alleva to direct Title IX complaints to her rather than the T9C. Plaintiff testified Alleva directed all athletic employees to report complaints directly to Segar. **Trial Tr. Excerpt Day 5 Morning Session pp. 53-54.** Plaintiff sent Segar an email complaining about coaches sexual harassment and she took no action. **Id. pp. 102-103.** Segar admitted she was suspended for her handling of Title IX complaints. **Trial Tr. Excerpt Day 3 p. 131**. Any and all testimony Segar gave in support of Defendant should be disregarded.

### b. Verge Ausberry

The evidence shows Ausberry had a history of protecting sexual predator and abusers. Plaintiff testified she reported Miles sexualizing Student Workers to Ausberry and he told her to hire prettier girls or go find another job. **Trial Tr. Excerpt Day 5 Morning Session pp. 29 -31.** The HBR found Ausberry protected Drake Davis after he punched Jade Lewis in the stomach.[75] The HBR found that his explanation for why he protected Drake Davis was not credible. [76] The HBR stated about Ausberry's failure to report Drake Davis abuse of Jade Lewis: "**The failure**

---

[75] R. Doc. 550-58 pp. 86 - 87
[76] Id.

could have led to catastrophic consequences."[77] Despite the overwhelming evidence of Miles and Wilson's sexual misconduct Ausberry testified he believes them and not their accusers. **Id. p. 145**. Ausberry's conduct was so egregious he was suspended thirty days and banned from attending football games for a entire season. **Trial Tr. Excerpt Day 6 Afternoon Session P. 136.**

Moreover, Ausberry's self-serving testimony that Plaintiff was a racist was not supported by any other witness at trial.[78] In fact the evidence is just the opposite. Plaintiff admitted she sent emails to Les Miles' wife wishing her a Merry Christmas. **Trial Tr. Excerpt Day 5 Morning Session pp. 96-97.** Yael Lofton, who is white, became emotional on the stand when she was asked about Plaintiff having a nervous breakdown. Ausberry's testimony that Plaintiff was happy to be promoted without any pay was not credible in light of the fact his salary doubled after he was promoted. Any and all testimony Ausberry gave in support of Defendant should be disregarded.

### c. Scott Woodward

As stated more fully *infra* Woodward's impermissible communications with the jury undermined Plaintiff's right to a fair trial. Furthermore, Woodward testified the HBR was flawed. However, he issued a statement on March 5 2021 affirming the finding in the report. Woodward admitted his concern with the HBR was because of its findings concerning Taylor Porter.[79] **Trial Tr. Excerpt Day 4 pp. 73-75.**[80] The record is uncontradicted and unimpeached Taylor Porter broke federal law when it stored the Miles investigation off-site.

---

[77] Id. Fn. 177
[78] Ausberry's unsupported comments Plaintiff was racist was part of a cynical ploy by the Defendant and their legal team to inflame the all-white jury bias. *infra*
[79] Under cross examination Woodward was not able to articulate why he thought the HBR was flawed. **Trial Tr. Excerpt Day 4 pp. 75-76.**
[80] Woodward admitted that he does not know the proper office to refer students if they have a complaint about sexual harassment. **Trial Tr. Excerpt Day 4 pp. 136-137.**

Furthermore, Woodward testified Brian Kelly terminated Plaintiff. But Kelly testified Woodward and Ausberry directed him to leave Lewis' employment alone.   Woodward testified he "assumed" a Title IX investigation of allegations against Wilson was "going on" **Trial Tr. Excerpt Day 4 Afternoon Session p. 17.**  It is simply not credible Woodward would not know whether his Associate Head Football Coach was being investigated by Title IX.  Any  testimony Woodward gave in support of Defendant should be disregarded.

### d.  Brian Kelley

Brian Kelly, who was awarded a $100 million dollar guaranteed contract, was emphatic in his deposition he was told to leave Plaintiff's employment alone. Although, he affirmed that testimony at trial, he nevertheless attempted to mislead the jury that he terminated Plaintiff's "position." Defendant did not produce one document that supported their allegations Kelly terminated Plaintiff or her position. Kelly's testimony that he terminated Plaintiff's position is not credible. Any testimony Kelley gave in support of Defendant should be disregarded.

### e.  Frank Wilson

Plaintiff, Nikole Jessie and Calise Richardson all testified Plaintiff sexually harassed them. Jessie testified she aware Wilson had sexually harassed her sister Amber Jessie. Plaintiff and Jessie testified Wilson sexually assaulted them. Keava Soil-Cromier and Yael Lofton testified Plaintiff told them Wilson had exposed himself to her. In order for the jurors to have believed Wilson, they would have had to conclude that these six women conspired to injure Wilson.[81] That is simply not credible.

Wilson testified he met with Tate and Temple after he was rehired in 2021. However,

---

[81] Richardson made it clear  she was not a friend of Lewis.

Temple and Tate testified the meeting took place before Wilson was rehired.

Wilson testified that two weeks before the trial he was subjected to a Title IX investigation. However, Plaintiff asks the Court to take judicial notice of Defendant's comments in a story published by NBC News on January 12, 2023.[82]  Defendant stated "that like the jurists in the trial, we concluded the allegations were not substantiated."[83] Thus, Wilson's testimony was not credible.  Any  testimony Wilson gave in support of Defendant should be disregarded.

## B. <u>The weight of the evidence was against the jury verdict dismissing Plaintiff's Title VII claims.</u>

1. <u>Retaliatory Termination</u>

It is not in dispute Plaintiff filed an EEOC complaint. It is not in dispute that Plaintiff 's termination was an adverse employment action. It is not in dispute that promoting Plaintiff without a pay raise in August 2020 was an adverse employment action. Woodward, Rempe and Segar all acknowledged they were aware Plaintiff filed an EEOC complaint.

Woodward stated Kelly terminated Plaintiff. However, Kelly testified Woodward and Ausberry told him to leave Plaintiff's employment alone. None of the 40 employees terminated by Kelly had filed an EEOC complaint against Woodward and the Board.

Every employee promoted with Plaintiff in August 2020 received a pay raise. Defendant produced no evidence of who Plaintiff 'salary was allegedly compared with in the SEC.

---

[82] *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, 141 F. Supp. 3d 604, 646 n.34 (M.D. La. 2015) (citing *Benak v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 401 n. 15 (3d Cir.2006) (noting that a court can take judicial notice of newspaper articles to "indicate what was in the public realm at the time))

[83] https://www.nbcnews.com/news/nbcblk/woman-determined-keep-challenging-lsus-athletics-even-jury-dismisses-c-rcna130935;  The PM-73 policy is clear and unambiguous that the allegations against Wilson were to be reported to the Title IX Coordinator or Human Resources for an investigation. This supports Plaintiff's contention the Defendant has a discriminatory policy to protect coaches accused of sexual misconduct.

2.  HWE

Plaintiff testified as to the harassment she suffered under Les Miles and Frank Wilson.

**Trial Tr. Excerpt Day 5 Morning Session pp. 31-34, 41-45.**  Calise Richardson testified that

athletics was dominated by a toxic male culture**.** This testimony provided jurors context and

background for the HWE that existed in the prescriptive period.

The HBR documented Ausberry's harassment of Plaintiff was pervasive and continuous.

Ausberry calling Plaintiff a racist was proof  he called her a angry black woman. Plaintiff

testified Ausberry told Plaintiff she would not be promoted because she was an angry black

woman. Three women testified Frank Wilson sexually harassed them. Rehiring Frank Wilson

subjected Plaintiff to a HWE and altered her employment.

### C.  <u>Woodward's impermissible communication with the jury</u>

Scott Woodward engaged in deliberate non-verbal communications with the jury to

undermine Plaintiff's sixth amendment right to a fair trial "Our system of trial by jury

presupposes that the jurors be accorded a virtual vacuum wherein they are exposed only to those

matters which the presiding judge deems proper for their consideration. This protection and

safeguard must remain inviolate if trial by jury is to remain a viable aspect of our system of

jurisprudence. Any conduct which gives rise to an appearance of evil must be scrupulously

avoided." *United States v. Harry Barfield Company*, 359 F.2d 120, 124 (5th Cir. 1966).

Witnesses testified regarding Woodward's impermissible communications. The detail of

this testimony is currently under seal. Plaintiff respectfully directs the Court  **Trial Tr. Sealed**

**Excerpt Day 4 Morning Session pp. 16, 26 and 35** .

LSU football games are played in the Louisiana Middle District making Woodward 's

impermissible communications with the jurors are even more prejudicial. Woodward's

communications were clearly intended to seek empathy from the jurors. . The harm inherent in deliberate contact or communication [between juror and party] can take the form of subtly creating juror empathy with the party and reflecting poorly on the jury system.") *Doe AW v. Burleson Cnty.*, 1:20-cv-00126-SH, at *1 (W.D. Tex. Feb. 16, 2022)  (citing *Harry Barfield*); *Leger v. Westinghouse Elec. Corp.*, 483 F.2d 428, 430 (5th Cir. 1973) (setting aside jury 3 verdict where juror and defense representative engaged in "deliberate conversations, not inadvertent exchanges or greetings" during trial recess). Given, LSU's Football popularity, Woodward's communications pierced the "virtual vacuum"[84] that should surround the jury and undermined Plaintiff's  sixth amendment right to a fair trial. Plaintiff's motion for a new trial should be granted.

### D.  Michael Victorian accusing Plaintiff and her lawyers as being hustlers was a plain error.

LSU attorney Michael Victorian in his opening statement stated the following:

"BUT THIS LAWSUIT IS A HUSTLE." **Trial Tr. Defendant Opening Statement Day 1 p. 3;**

"BUT THAT'S THE HUSTLE. RIGHT? THAT'S HOW THEY SELL YOU A GOOD STORY. NEVER MIND THE TRUTH." **Id. p. 7**

"THAT'S NOT JUST A GOOD STORY. THAT'S A HUSTLE." **Id. p. 15**

Victorian in his closing statement said:

I ALSO TOLD YOU THAT THIS LAWSUIT IS A HUSTLE. **Trial Tr. Defendant Closing  Statement Day 7 p. 5 ;**

**"**IT'S AN EMOTIONAL SLIGHT OF HAND. LADIES AND GENTLEMEN, THAT IS  THE DEFINITION OF A HUSTLE**." Id. p. 6**

This was a cynical and calculated attempt to inflame the prejudices of the jury. Webster

---

[84] *United States v. Harry Barfield Company*, at 124

dictionary defines hustler as " one who obtains money by fraud or deceit"  This was a deliberate attempt by Defendant to play into the racial stereotype that African-Americans are criminals who cannot be trusted. By introducing irrelevant and unproven allegations that Plaintiff and her lawyers were seeking money from defendant by fraud and deceit, the defense clearly was appealing to the prejudice and bias of members of the jury on the basis of race." *Rojas v. Richardson*, 703 F.2d 186, 191 (5th Cir. 1983). Further, the allegations that Plaintiff's lawsuit is a hustle is "unsupported in the record." *Id.*

The facts that the attorneys at Phelps Dunbar had a young African-American lawyer deliver the demeaning description of Plaintiff, her lawyers and her publicist[85] does not make the unfounded characterization any less offensive and prejudicial. And the fact that Victorian was African-American gave the jurors even more permission to dismiss Plaintiff and her legal team as attempting to defraud Defendant with a frivolous lawsuit.[86] Moreover, Phelps's lawyers cannot point to the Court any evidence  in record to support this offensive and demeaning language toward Plaintiff and her legal team. Id.  It was done for the sole purpose to  appeal "prejudice and bias of members of the jury. Id.

Moreover, if the jurors needed any further proof of Lewis' blackness, the last image in the Defendant's closing power point was an informal picture of Plaintiff smiling in a blue jean jacket. [87] Victorian did not bother to explain to the jurors the relevance of the photo. There was no need to, as the message was clear Sharon Lewis was deceitful, fraudulent and a racist black woman hustling LSU.[88]

---

[85] There is no evidence in the record to support Victorian naming Plaintiff's publicist in his opening statement.
[86] If Phelps lawyers truly believed Plaintiff and her attorneys lawsuit was deceitful and fraudulent then they should have filed Rule 11 sanctions.
[87] See Exhibit 1
[88] The last witness the defendant put on the stand was Verge Ausberry, an African-American who accused Plaintiff of hating white people and being a racist. *supra*

Although Plaintiff did not object to Victorian calling Plaintiff's lawsuit a hustle, Victorian's statement was nevertheless a plain error. *Id.*   Fed.R.Evid. 103(d) provides: "Nothing in this rule [requiring objection to preserve appealability] precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court." Id. at. 190. The obvious and blatant appeal in this case to racial and ethnic prejudice is plain error" Id. at 192.

Given the weight of the evidence was against the jury verdict, Woodward's impermissible communications with the jurors and Phelps Dunbar's lawyers deliberately inflaming the racial bias of the jury, Plaintiff's motion for a new trial should be granted.

## CONCLUSIONS

For the reasons stated herein Plaintiff's Rule 50(b) motion should be granted or in the alternative, the Court should grant Plaintiff's Rule 59(b) motion.

Respectfully submitted:

*/s/ Larry English*
Larry English, LSB No. 22772
LARRY ENGLISH, ATTORNEY AT LAW
423 W. 127 Street, 7th Floor
New York, New York 10027
917-531-3909
Englishlaw2008@gmail.com

/s/Albert Van-Lare
Albert Van-Lare
125 Maiden Lane, Suite 510
New York, NY 10038
(212) 608 – 1400
vanlareesq@aol.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served on all counsel of record

using the Court's CM/ECF system on January 17, 2024.

*/s/ Larry English*